## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| JPMORGAN CHASE BANK, N.A., <br><br> Plaintiff, <br><br> v. <br><br> CHARLIE JAVICE, OLIVIER AMAR, CHARLIE JAVICE, in her capacity as Trustee of CHARLIE JAVICE 2021 IRREVOCABLE TRUST #1, CHARLIE JAVICE, in her capacity as trustee of CHARLIE JAVICE 2021 IRREVOCABLE TRUST #2, and CHARLIE JAVICE in her capacity as trustee of CHARLIE JAVICE 2021 IRREVOCABLE TRUST #3, <br><br> Defendants. | C.A. No. 1:22-cv-01621-MN |

## DEFENDANT OLIVIER AMAR'S OPENING BRIEF IN SUPPORT OF HIS MOTION TO DISMISS

**KOBRE & KIM LLP**
Jacob R. Kirkham (# 5768)
600 North King Street, Suite 501
Wilmington, Delaware 19801
Telephone: (302) 518-6460
Facsimile: (302) 518-6461

Steven G. Kobre (appearance *pro hac vice* forthcoming)
Sean S. Buckley (appearance *pro hac vice* forthcoming)
800 Third Ave
New York, New York 10022
Telephone: (212) 488-1200
Facsimile: (212) 488-1220
Steven.Kobre@kobrekim.com
Sean.Buckley@kobrekim.com

*Attorneys for Defendant Olivier Amar*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND .................................................................................................................... 2

    A.   TAPD and Mr. Amar ............................................................................................... 2

    B.   The JPMC Acquisition ............................................................................................ 2

ARGUMENT ......................................................................................................................... 4

    I.     JPMC'S SECURITY FRAUD CLAIMS FAIL TO SATISFY RULE 9(b) AND THE
PSLRA. ........................................................................................................................ 6

        A.   JPMC Fails to Plead with Particularity that Mr. Amar Made a Materially False or
Misleading Statement or Omission Under Section 10(b) and Rule 10b-5. ........................... 7

        B.   JPMC Fails to Plead with Particularity that Mr. Amar was in "Some Meaningful Sense"
a Culpable Participant in a Violation by Frank Under Section 20(a). ................................... 14

    II.    JPMC'S COMMON LAW CLAIMS FAIL TO SATISFY RULE 9(b). ........................... 15

        A.   JPMC Does Not Plead Any Fraud by Mr. Amar Prior to the Merger Closing, so Its
Claims of Fraud Within the Contract and Fraudulent Concealment Fail. ............................. 16

        B.   JPMC Does Not Plead Any Fraudulent Conduct by Mr. Amar After the Merger Closed,
so the Remaining Common Law Fraud Claims Fail. ......................................................... 19

CONCLUSION ..................................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

Page(s)

Cases

*Agspring Holdco, LLC v. NGP X US Holdings, L.P.*,
  2020 WL 4355555 (Del. Ch. July 30, 2020) .............................................. 16
*AmeriMark Interactive, LLC v. AmeriMark Holdings, LLC*,
  2022 WL 16642020 (Del. Super. Ct. Nov. 3, 2022)............................................. 16
*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................. 4
*Ashland LLC v. Samuel J. Heyman 1981 Continuing Trust for Heyman*,
  2018 WL 3084975 (Del. Super. Ct. June 21, 2018) ............................... 18
*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................. 4
*Belmont v. MB Inv. Partners, Inc.*,
  708 F.3d 470 (3d Cir. 2013) ...................................................... 7, 14, 15
*Brug v Enstar Group Inc.*,
  755 F. Supp. 1247 (D. Del. 1991) ...................................................... 22
*Cal. Pub. Emps. Ret. Sys. v. Chubb Corp.*,
  394 F.3d 126 (3d Cir. 2004) ....................................................... Passim
*Christidis v. First Pa. Mortg. Tr.*,
  717 F.2d 96 (3d Cir. 1983) .................................................................. 4
*In re Advanta Corp. Sec. Litig.*,
  180 F.3d 525 (3d Cir. 1999) ................................................................ 8
*In re Digital Island Sec. Litig.*,
  357 F.3d 322 (3d Cir. 2004) ................................................................ 4
*In re Merck & Co., Inc. Sec., Derivative, & ERISA Litig.*,
  2011 WL 3444199 (D.N.J. Aug. 8, 2011) ........................................... 9
*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*,
  311 F.3d 198 (3d Cir. 2002) ................................................................ 5
*Iotex Commc'ns, Inc. v. Defries*,
  1998 WL 914265 (Del. Ch. Dec. 21, 1998) ....................................... 17
*ITW Glob. Invs. Inc. v. Am. Indus. Partners Cap. Fund IV, L.P.*,
  2017 WL 1040711 (Del. Super. Ct. Mar. 6, 2017)............................. 16
*Ivize of Milwaukee, LLC v. Compex Litig. Support, LLC*,
  2009 WL 1111179 (Del. Ch. Apr. 27, 2009)....................................... 9
*Jackson Nat. Life Ins. Co. v. Kennedy*,
  741 A.2d 377 (Del. Ch. 1999) ........................................................... 16
*Landy v. Federal Deposits Ins. Corp.*,
  486 F.2d 139 (3d 1973) ..................................................................... 20
*Lincoln Nat'l Life Ins. Co. v. Snyder*,
  722 F. Supp. 2d 546 (D. Del. 2010) .................................................... 3
*Maldonado v. Dominguez*,
  137 F.3d 1 (1st Cir. 1998) ................................................................... 8
*Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.*,
  854 A.2d 121 (Del. Ch. 2004) ..................................................... 16, 17

III

*Nicolet, Inc. v. Nutt,*
    525 A.2d 146 (Del. 1987) ........................................................................ 16
*Pension Benefit Guar. Corp. v. White Consol. Indus. Inc.,*
    998 F.2d 1192 (3d Cir.1993) ...................................................................... 2
*Puig v. Seminole Night Club, LLC,*
    2011 WL 3275948 (Del. Ch. July 29, 2011) ............................................ 18
*Rochez Bros. v. Rhoades,*
    527 F.2d 880 (3d Cir. 1975) ...................................................... 14, 15, 20
*Rosenbloom v. Adams, Scott & Conway, Inc.,*
    552 F.2d 1336 (9th Cir.1977) .................................................................... 8
*St. James Recreation, LLC v. Rieger Opportunity Partners, LLC,*
    2003 WL 22659875 (Del. Ch. Nov. 5, 2003) ........................................... 10
*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
    551 U.S. 308 (2007) ............................................................................... 3, 8
*UD Dissolution Liquidating Trust v. Sphere 3d Corp. (In re UD Dissolution Corp.),*
    629 B.R. 11 (D. Del. Bankr. 2021) ........................................................... 18
*Winer Fam. Tr. v. Queen,*
    503 F.3d 319 (3d Cir. 2007) ...................................................................... 5

Statutes

15 U.S.C. § 78t(a) ...................................................................................... 14
15 U.S.C. §§ 78u-4(b)(1), (2) ..................................................................... 5

Rules

Fed. R. Civ. P. 9(b) ............................................................................ Passim
Federal Rule of Civil Procedure 12(b)(6) ..................................... 1, 3, 6, 8

Defendant Olivier Amar ("Mr. Amar") respectfully submits this opening brief in support of his motion to dismiss the Complaint filed by Plaintiff JPMorgan Chase Bank, N.A. ("JPMC") on December 22, 2022, under Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

JPMC's seven-count Complaint for various fraud claims against Mr. Amar rises and falls on alleged fraudulent misrepresentations made in the Merger Agreement between JPMC and TAPD.  But glaringly absent from JPMC's Complaint is any allegation that Mr. Amar made, or was even aware of, any misrepresentation; that he was privy to the Merger Agreement negotiations; or that he was somehow responsible for the alleged misrepresentations in the Merger Agreement.  Mr. Amar was not a party to the Merger Agreement and JPMC does not allege that he was even shown the Merger Agreement prior to its signing.  Rather, JPMC's Complaint rests on either conclusory allegations or, even more damning, on alleged conduct that JPMC admits ***was not used in the negotiation of the Merger Agreement***.  When taken at face value, JPMC's Complaint does little more than establish that Mr. Amar was a non-party to the Merger Agreement, attended no more than one meeting with JPMC before the Merger, legitimately acquired a data set that ***is not alleged to have been used in the negotiation of the Merger***, and then became a dutiful and valuable employee at JPMC after the Merger.  Yet, JPMC strains to saddle Mr. Amar with serious allegations of fraud knowing that what it actually pleads in the Complaint comes nowhere near the required level of specificity and particularity necessary to plead a fraud claim under Rule 9(b) or the PSLRA.  Because JPMC does not plead its claims against Mr. Amar with any particularity, all seven counts fail, and the Complaint against Mr. Amar should be dismissed in full.

## BACKGROUND[1]

### A.  TAPD and Mr. Amar

In 2017, Charlie Javice ("Ms. Javice") founded TAPD, Inc. ("TAPD," "Frank," or the "Company"), a start-up business aimed at helping students navigate the college financial aid process.  D.I. 1 ¶¶ 1–2.  Operating under the trade name "Frank," TAPD assisted current and prospective college students with applications for student financial aid.  *Id.*

Olivier Amar is a former employee of Frank and JPMC.  Mr. Amar's employment at Frank began in March 2017, when he was hired as Executive Vice President of Marketing and Acquisition for a Frank affiliate based in Israel.  A year later, Frank promoted Mr. Amar to Chief Growth Officer, and he relocated to the United States.  In that role, Mr. Amar was primarily responsible for managing Frank's partnerships, sales, and marketing.

### B.  The JPMC Acquisition

By 2021, "one of Frank's largest investors" was in touch with JPMC's Corporate & Investment Bank about a potential partnership or acquisition.  D.I. 1 ¶¶ 37–40.  JPMC was intrigued by an article "touting" Frank's success and by the investor's remarks that Frank was "getting real inbound interest."  D.I. 1 ¶¶ 37–38.  JPMC was especially interested because it was "hoping to grow its market share" on the "student segment."  D.I. 1 ¶ 39.

In July 2021, JPMC sought to acquire Frank.  D.I. 1 ¶ 40.  According to the Complaint, JPMC conducted negotiations and due diligence in that effort.  D.I. 1¶¶ 41–72, 109–15.  For example, JPMC conducted several calls, "all of which were led by [Ms.] Javice," and held two

---

[1] For purposes of this Motion to Dismiss only, Mr. Amar relies on the allegations in the Complaint. *See Pension Benefit Guar. Corp. v. White Consol. Indus. Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993) ("In deciding motions to dismiss, 'courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record.'").

"day-long diligence meetings," during which "[Ms.] Javice "did nearly all the talking on behalf of Frank." D.I. 1 ¶¶ 42, 46, 58–62. Further, according to the Complaint, Frank held another two days of meetings with Ms. Javice and engaged in regular email correspondence with her. D.I. 1 ¶¶ 48–72. JPMC also reviewed documents and information that Ms. Javice uploaded "to the Acquisition Data Room" and provided to Acxiom for JPMC's validation. D.I. 1 ¶¶ 50, 58–62, 64, 68–69, 71–72. Throughout the due diligence process, Mr. Amar participated only once—he attended the first due diligence meeting. D.I. 1 ¶ 43.[2]

A month later, JPMC and TAPD executed a merger agreement (the "Merger Agreement") for the acquisition of Frank (the "Merger"). D.I. 1 ¶ 116; Ex. 1.[3] Ms. Javice signed the Merger Agreement on Frank's behalf. Ex. 1 at 93. Mr. Amar was not party to the Merger Agreement, he did not sign the Merger Agreement, and he was not mentioned in the Merger Agreement save once where Frank's "Knowledge" is defined as "the actual knowledge (after due and reasonable inquiry of their respective direct reports)" of Ms. Javice, Mr. Amar, and Frank's general counsel. D.I. 1 ¶ 117; Ex. 1 at 13.

After the Merger closed in September 2021, Mr. Amar became a JPMC employee. D.I. 1 ¶¶ 30, 132. In June 2022, JPMC initiated an investigation into the Merger and placed Mr. Amar

---

[2] Despite the Complaint's suggestion that Mr. Amar participated in the "full-day due diligence session" at JPMC's offices, JPMC knows—through its "detailed notes," building entry logs, and internal investigation—that Mr. Amar attended the meeting for only approximately 30 minutes via Zoom. *See* D.I. 1 ¶¶ 43, 58. He was not invited to participate in person.

[3] Because the Merger Agreement is incorporated into the Complaint by reference, the Court may consider the Merger Agreement in deciding Mr. Amar's motion to dismiss under Rule 12(b)(6). *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Lincoln Nat'l Life Ins. Co. v. Snyder*, 722 F. Supp. 2d 546, 552 n.4 (D. Del. 2010) ("[I]f a contract or essential document, whose authenticity is not challenged, is the basis of a complaint, it is incorporated by reference and properly relied on by the court on a motion to dismiss."). The Merger Agreement is attached as Exhibit 1 and cited herein as "Ex. 1." All pin-cites to Exhibit 1 refer to the corresponding PDF page number, not the Merger Agreement's internal pagination.

3

on administrative leave.  D.I. 1 ¶¶ 180–81. In October 2022, JPMC terminated Mr. Amar "for cause."  D.I. 1 ¶¶ 30, 181.  Two months later, JPMC sued Mr. Amar for two counts of securities fraud and five counts of common law fraud because, according to JPMC, Mr. Amar "caused" Frank to make false misrepresentations and warranties in the Merger Agreement of which JPMC fails to allege he played a part.

## **ARGUMENT**

JPMC's Complaint fails to meet the pleading requirements of the Federal Rules of Civil Procedure to state a claim against Mr. Amar.  A complaint must be dismissed for failure to state a claim if it lacks "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  While a court, in determining whether a complaint sufficiently states a claim for relief, must "assum[e] that all the allegations in the complaint are true (even if doubtful in fact)," *Twombly*, 550 U.S. at 555, allegations that are no more than legal conclusions "are not entitled to the assumption of truth," *Iqbal*, 556 U.S. at 679.  A complaint with "labels and conclusions" or "naked assertion[s]" without "further factual enhancement" will not survive a motion to dismiss.  *Id.* at 678.

Where a complaint sounds in fraud, the plaintiff "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).  Rule 9(b) requires a plaintiff to plead "(1) [a] specific false representation of material facts; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it should be acted upon; and (5) the plaintiff acted upon it to his damage." *Christidis v. First Pa. Mortg. Tr.*, 717 F.2d 96, 99 (3d Cir. 1983) (citation omitted).  Non-fraud claims based on allegations of fraud must also comply with Rule 9(b).  *See, e.g., In re Digital Island Sec. Litig.*,

357 F.3d 322, 334 (3d Cir. 2004) (applying Rule 9(b) to plaintiffs' non-fraud claim under the SEC's "best price rule" because the claim was grounded in fraud allegations).

The Third Circuit applies Rule 9(b)'s particularity requirement "rigorously" in securities fraud cases. *See Cal. Pub. Emps. Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 144 (3d Cir. 2004). A plaintiff asserting securities fraud claims must specify "the who, what, when, where, and how: the first paragraph of any newspaper story." *Id.* (citation omitted). While "Rule 9(b) falls short of requiring every material detail of the fraud such as date, location, and time," a plaintiff "must use 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002) (citation omitted).

A plaintiff alleging securities fraud "must also comply with the heightened pleading requirements" of the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. §§ 78u-4(b)(1), (2). *See Cal. Pub. Emps. Ret. Sys.*, 394 F.3d at 144. Under the PSLRA, all securities fraud claims under the Securities Exchange Act of 1934 ("Exchange Act") must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." *Id.* (quoting 15 U.S.C. § 78u-4(b)(1)). "Each untrue statement or omission must be set forth with particularity as to 'the defendant' and scienter must be pleaded in regard[] to 'each act or omission' sufficient to support a strong inference that 'the defendant' acted with the required state of mind." *Winer Fam. Tr. v. Queen*, 503 F.3d 319, 335 (3d Cir. 2007).

Here, each of JPMC's claims rely on allegations of fraud, so all seven counts must satisfy Rule 9(b)'s heightened pleading requirements to survive dismissal. *See* D.I. 1 ¶¶ 186–233

(alleging six fraud claims and one unjust enrichment claim based on "misrepresentations" with "intent to induce" through "fraud").  JPMC's two securities fraud claims must comply with the PSLRA as well.  *See* D.I. 1 ¶¶ 186–201 (alleging securities fraud under the Exchange Act).  Indeed, "[f]ailure to meet the threshold pleading requirements demanded by" Rule 9(b) and the PSLRA "justifies dismissal apart from Rule 12(b)(6)."  *Cal. Pub. Emps. Ret. Sys.*, 394 F.3d at 145.  Unless JPMC alleges its securities fraud claims with the "requisite particularity" under Rule 9(b) and the PSLRA, JPMC "may not benefit from inferences flowing from vague or unspecific allegations— inferences that may arguably have been justified under a traditional Rule 12(b)(6) analysis."  *See id.*  Under this "'modified' Rule 12(b)(6) analysis," the Court must disregard any "'catch-all' or 'blanket' assertions that do not comply with the particularity requirements."  *See id.* (citations omitted).

## I.     JPMC'S SECURITY FRAUD CLAIMS FAIL TO SATISFY RULE 9(b) AND THE PSLRA.

JPMC alleges two counts of securities fraud against Mr. Amar:  (1) securities fraud under Section 10(b) of the Exchange Act and Securities and Exchange Commission Rule 10b-5 (Count I); and (2) a control person violation under Section 20(a) of the Exchange Act (Count II).  D.I. 1 ¶¶ 186–201.  Both claims fail because JPMC does not allege that Mr. Amar was made aware or was aware of specific representations to JPMC, or that he was actually involved in the negotiation of the Merger Agreement.  Rather, JPMC expressly admits in its Complaint that Mr. Amar merely purchased a list of information (the "ASL List") and that the ASL List was not used in the negotiations or given to JPMC prior to the Merger closing.  D.I. 1 ¶¶ 12, 133–142.  Thus, Counts I and II of JPMC's Complaint for securities fraud fail because JPMC does not allege that Mr. Amar engaged in any actual fraudulent conduct let alone that he made any affirmative representations to JPMC.

**A. JPMC Fails to Plead with Particularity that Mr. Amar Made a Materially False or Misleading Statement or Omission Under Section 10(b) and Rule 10b-5.**

Rule 10b-5 "makes it 'unlawful . . . [t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person[] in connection with the . . . sale of any security.'" *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 493 (3d Cir. 2013) (citation omitted and alterations in original). Rule 10b-5 "implements" Section 10(b), "which makes it unlawful to 'use or employ, in connection with the purchase or sale of any security . . . , any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the SEC may prescribe." *Id.* (citation omitted and alteration in original).

Under Rule 10b-5, "a plaintiff must show that (1) the defendant made a materially false or misleading statement or omitted to state a material fact necessary to make a statement not misleading; (2) the defendant acted with scienter; and (3) the plaintiff's reliance on the defendant's misstatement caused him or her injury." *Id.* (citation omitted). Scienter is "an intent to deceive, manipulate, or defraud." *Id.* "Rule 10b-5 thus requires 'more than negligent nonfeasance . . . as a precondition to the imposition of civil liability." *Id.* (citations omitted).

Nowhere in the Complaint does JPMC provide the "what, when, where, and how" of any statements or omissions made by Mr. Amar—nor could it. *See Cal. Pub. Emps. Ret. Sys.*, 394 F.3d at 144. In tacit recognition of its inability to do so, JPMC rather alleges broadly that Mr. Amar "caused" Frank to provide several "false representations and warranties" in the Merger Agreement and that Mr. Amar "knew" the representations and warranties were false, but nothing more than those conclusory statements. D.I. 1 ¶¶ 118–31. Relevant to this motion, JPMC never alleges that Mr. Amar was involved in any part of the Merger Agreement or the negotiations of the Merger Agreement. Nor does it allege that he was directly responsible for the representations and warranties made therein.

7

JPMC contends in a conclusory way with respect to Mr. Amar that Mr. Amar knowingly "caused" Frank to falsely represent *in the Merger Agreement* that:  (1) "there ha[d] been no [f]raud" to Frank's knowledge; (2) Frank "ha[d] conducted its business and operated its properties in the ordinary course of business consistent with past practice"; (3) "there ha[d] not occurred any action or event that . . . [']would have been prohibited by' the operating covenants in Section 5.1"; (4) Frank had been "in material compliance with all [l]aws"; (5) Frank "had disclosed all [m]aterial [c]ontracts"; and (6) "[t]here ha[d] not been . . . a misuse or misappropriation of any [t]rade [s]ecrets." *Id.*  JPMC pleads only seven factual allegations specific to Mr. Amar to allege that he knowingly "caused" Frank to make those representations *in the Merger Agreement*.  As explained below, none of those barebone allegations—considered singularly or *in toto*—can satisfy the Rule 12(b)(6) pleading standard let alone provide the requisite particularity under Rule 9(b) or the PSLRA to saddle Mr. Amar with the representations in the Merger Agreement.

*First*, JPMC pleads that Mr. Amar was a member of Frank's management.  D.I. 1 ¶ 120.  But Mr. Amar's position itself does not provide the "when, where, and how" he "caused" Frank to make allegedly false statements.  *See Cal. Pub. Emps. Ret. Sys.*, 394 F.3d at 144; *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 539 (3d Cir. 1999) ("[A]llegations that a securities-fraud defendant, because of his position within the company, 'must have known' a statement was false or misleading are 'precisely the types of inferences which [courts], on numerous occasions, have determined to be inadequate to withstand Rule 9(b) scrutiny.'" (quoting *Maldonado v. Dominguez*, 137 F.3d 1, 10 (1st Cir. 1998))), *abrogated on other grounds by Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007).  Indeed, "[g]eneralized imputations of knowledge do not suffice, regardless of the defendant['s] position[] within the company." *Id.* (citing *Rosenbloom v. Adams, Scott & Conway, Inc.*, 552 F.2d 1336, 1338–39 (9th Cir.1977) ("A director, officer, or even the

president of a corporation often has superior knowledge and information, but neither the knowledge nor the information necessarily attaches to those positions.")).  Mr. Amar's position as an officer of Frank is not enough to satisfy Rule 9(b) or the PSLRA.  *See In re Merck & Co.*, MDL No. 1658 (SRC), 2011 WL 3444199, at *26 (D.N.J. Aug. 8, 2011) (allegations that an officer "must have known" or "should have known" about a particular fact or misrepresentation "without more specific facts about [the officer's] actual review or knowledge of the adverse data, fail to plead his scienter with the particularity required by the PSLRA").

*Second*, JPMC's passing reference to Mr. Amar's designation as a "Knowledge" person in the Merger Agreement is insufficient to salvage its securities fraud claim.  Where Frank's "Knowledge" is implicated in the Merger Agreement, Section 1.2(b) of the Merger Agreement provides that "the phrase 'to the Company's Knowledge' and phrases of similar import or effect are used herein to qualify and limit the scope of any representation or warranty in which they appear and *are not affirmations of any Person's 'superior knowledge' that the representation or warranty in which they are used is true*."  Ex. 1 at 25 (emphasis added).  The Merger Agreement thus expressly rejects that Mr. Amar, as a "Knowledge" person, may be held responsible for the truth of the representations and warranties in the Merger Agreement.  Thus, to the extent that JPMC seeks to attribute representations made in the Merger Agreement to Mr. Amar on the basis of that definition, it does so in direct contradiction to the Merger Agreement's plain language and Delaware contract law.  *See Ivize of Milwaukee, LLC v. Compex Litig. Support, LLC*, 2009 WL 1111179, at *9 (Del. Ch. Apr. 27, 2009) (explaining that "knowledge qualifiers may be used to *limit* representations" and declining to modify such terms and "add to them language that could have been negotiated for but was not" (emphasis added)).  The Complaint's reference to this defined, limited term in the Merger Agreement comes nowhere close to alleging that Mr. Amar

was an "actual participant" in the alleged fraud, as it must to hold him personally liable for any alleged misrepresentations in the Merger Agreement. *See St. James Recreation, LLC v. Rieger Opportunity Partners, LLC*, 2003 WL 22659875, at *8 (Del. Ch. Nov. 5, 2003) (to hold an individual liable on a fraud theory based on representations in corporate writing, a plaintiff must show that the individual "knew or should have known that the written material contained such misrepresentations" and that the individual "was responsible for the delivery of the written material" to the plaintiff).

In any event, JPMC's allegations almost entirely hinge on representations in the Merger Agreement that do not rely on Frank's "Knowledge." Ex. 1 at 13. For example, Merger Agreement Sections 3.6(a), 3.6(b), 5.1(a)(i), 5.1(ii), 5.1(iv), 3.7(a)(i), 3.13(a), and 3.16(h)—which constitute *all but one* of Frank's purported misrepresentations in the Merger Agreement—by their own terms do not rely on Frank's "Knowledge" for the representations made therein that JPMC alleges are fraudulent. Ex. 1 at 13. For the one representation specified by JPMC where Frank's "Knowledge" is mentioned (Section 3.5(b) of the Merger Agreement), JPMC alleges that the representation was false because of the creation of the "Fake Customer List" with the Data Science Professor, but JPMC never pleads even once that Mr. Amar participated in that alleged process. *See* D.I. 1 ¶¶ 77–115 (detailing alleged interactions with the Data Science Professor without any mention of Mr. Amar); D.I. 1 ¶ 120 (". . . Javice and Amar were members of management, and Javice worked with the Data Science Professor to create the Fake Customer List . . . .").

*Third*, JPMC pleads that Mr. Amar did not "purchase the names of customers with no prior relationship to Frank from marketing firms 'in the ordinary course of business.'" D.I. 1 ¶ 122. But JPMC does not plead any facts to support that purchasing the ASL List was in fact outside the

ordinary course of business for Frank apart from its conclusory assertion that it must be so.[4]  And JPMC does not plead "when, where, and how" Mr. Amar "caused" Frank to falsely represent its business practices in the Merger Agreement.  *See Cal. Pub. Emps. Ret. Sys.*, 394 F.3d at 144.  As a non-party, Mr. Amar was not part of the Merger Agreement negotiations.  JPMC does not plead "what" Mr. Amar himself represented to JPMC, "where, when, and how" Mr. Amar himself made any representations to JPMC, or even that Mr. Amar knew about any of Frank's representations in the Merger Agreement.  *See id.*  The Complaint makes only one reference to any contact between JPMC and Mr. Amar during the Frank acquisition:  Mr. Amar allegedly attended the initial due diligence meeting.  *See* D.I. 1 ¶ 43.[5]  This factual allegation is not enough to support JPMC's claim that Mr. Amar "caused" Frank to make any representation in the Merger Agreement under Rule 9(b) or the PSLRA.

*Fourth*, JPMC pleads that Mr. Amar "acquired the ASL List" while Ms. Javice simultaneously "personally retained the Data Science Professor to create the Fake Customer List."  D.I. 1 ¶ 124.  But damning to its claims, JPMC *expressly acknowledges* that "the ASL List arrived too late for [Ms.] Javice and the Data Science Professor to use in creating the Fake Customer List."  D.I. 1 ¶ 12.  Per JPMC's own allegations, the ASL List was not used in the negotiations and played no part in the Merger Agreement.  *See id.*  In any event, Mr. Amar's acquisition of the ASL List does not provide the "when, where, and how" Mr. Amar "caused" Frank to misrepresent anything in the Merger Agreement and remains insufficient under Rule 9(b) or the PSLRA.  *See Cal. Pub. Emps. Ret. Sys.*, 394 F.3d at 144.

---

[4] Indeed, Frank had engaged in contracts with other entities to purchase the names of customers with no prior relationship to Frank.

[5] In reality, Mr. Amar only attended that meeting remotely for no more than approximately 30 minutes to introduce himself.

*Fifth*, JPMC pleads that Mr. Amar and Ms. Javice "directed the Data Science Professor to create fake customer data that inflated Frank's actual customer list by a factor of nearly 15 in order to induce [JPMC] to buy Frank for $175 million."  D.I. 1 ¶ 131.  But this allegation contradicts large sections of the Complaint where JPMC specifies that only Ms. Javice allegedly directed the Data Science Professor to create the alleged "Fake Customer List" leading up to the Merger.  *See* D.I. 1 ¶¶ 77–115 (detailing alleged interactions with the Data Science Professor without any mention of Mr. Amar).[6]  Indeed, this allegation exemplifies JPMC's recklessness throughout the Complaint—throwing in Mr. Amar's name when convenient despite knowing that Mr. Amar was not involved in either the alleged misconduct or any statements, representations, or warranties made to JPMC during the Merger.  This factual allegation thus fails to satisfy Rule 9(b) and the PSLRA for the same reason the others do:  JPMC does not plead "when, where, and how" Mr. Amar "caused" Frank to misrepresent anything in the Merger Agreement.  *See Cal. Pub. Emps. Ret. Sys.*, 394 F.3d at 144.

*Sixth*, JPMC pleads that Mr. Amar "had a Zoom meeting" with Ms. Javice and Frank's Director of Engineering (the "Zoom Meeting") "during which [Ms.] Javice and [Mr.] Amar asked the Director of Engineering to help them create a synthetic list of customer data."  D.I. 1 ¶ 75.  But here, too, JPMC throws in Mr. Amar's name without pleading with particularity about Mr. Amar's role in the meeting.  The Complaint attributes all alleged communication during the meeting to Ms. Javice and the Director of Engineering.  D.I. 1 ¶ 75 ("She asked the Director of Engineering if he could help her take a known set of FAFSA application data and use it . . . .  The Director of

---

[6] To be clear, nothing in this brief should be construed as an admission, confirmation, or any form of verification as to the truth or accuracy of JPMC's allegations against Ms. Javice.  Rather, Mr. Amar emphasizes the Complaint's language to illustrate the notable absence of Mr. Amar in JPMC's own allegations and to show that JPMC does not plead that Mr. Amar engaged in the conduct underlying its fraud claims.

Engineering questioned [the task] . . . , but [Ms.] Javice tried to assure the engineer by claiming that this was perfectly acceptable . . . ."). JPMC does not plead any details about what Mr. Amar did or said during the meeting. This empty allegation cannot satisfy Rule 9(b) and the PSLRA—it does not include any particularity as to "when, where, and how" Mr. Amar "caused" Frank to make misrepresentations in the Merger Agreement. *See Cal. Pub. Emps. Ret. Sys.*, 394 F.3d at 144.

*Seventh*, JPMC pleads that Mr. Amar "caused Frank to acquire the ASL List with the intent of using it directly or indirectly either as a fake customer list to provide to [JPMC] to cover-up that Frank did not have over 4 million customer [sic] for JPMC to market its products and services to, or to induce JPMC to purchase Frank for $175 million." D.I. 1 ¶ 190. But as JPMC states in the Complaint, the acquisition of the ASL List and any alleged "cover-up" activity occurred "too late" to play a part in the Merger Agreement. D.I. 1 ¶ 12. This factual allegation does not provide any details about "when, where, and how" Mr. Amar "caused" Frank to make false representations and warranties in the Merger Agreement and does not satisfy Rule 9(b) or the PSLRA. *See Cal. Pub. Emps. Ret. Sys.*, 394 F.3d at 144. To the contrary, this allegation is contradicted by JPMC's express admission that the ASL List was not used in the Merger negotiations. *See* D.I. 1 ¶¶ 12-13.

JPMC does not plead factual allegations with particularity under Rule 9(b) or the PSLRA to support its claim that Mr. Amar made any materially false or misleading statement or omission under Section 10(b) and Rule 10b-5.[7] Count I thus fails to satisfy Rule 9(b) and the higher hurdle imposed by the PSLRA and should be dismissed with prejudice.

_____

[7] For the same reasons that JPMC fails to plead with particularity that Mr. Amar made a materially false or misleading statement or omission, JPMC also fails to plead with particularity that Mr. Amar acted with scienter and that JPMC's reliance on Mr. Amar's alleged (and, in fact, non-existent) misstatement caused JPMC harm.

**B. JPMC Fails to Plead with Particularity that Mr. Amar was in "Some Meaningful Sense" a Culpable Participant in a Violation by Frank Under Section 20(a).**

Under Section 20(a), "[e]very person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable . . . , unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action." *Belmont*, 708 F.3d at 484 (quoting 15 U.S.C. § 78t(a)).  "Section 20(a) thus opens the possibility of making 'controlling persons jointly and severally liable with the controlled person' for violations of the Exchange Act." *Id.* (citation omitted).

A plaintiff "must prove not only that one person controlled another person, but also that the 'controlled person' is liable under the [Exchange] Act." *Id.* (citation omitted and alteration in original).  And "in order for secondary liability to attach" under Section 20(a), the defendant "must have been a 'culpable participant' in the 'act or acts constituting the violation or cause of action.'" *Id.* (citation omitted).  A defendant must be "in some meaningful sense" a culpable participant "in the fraud perpetuated by [the] controlled person[]." *Rochez Bros. v. Rhoades*, 527 F.2d 880, 885 (3d Cir. 1975) (citation omitted).

Nowhere in the Complaint does JPMC plead with particularity that Mr. Amar played any meaningful role in the representations and warranties made by Frank in the Merger Agreement. According to JPMC, "[b]y and through [his] control position" as Chief Growth Officer and the "second-most senior executive" at Frank, Mr. Amar "caused Frank to make knowingly false representations and warranties to JPMC in the Merger Agreement" in violation of Section 10(b) and Rule 10b-5.  D.I. 1 ¶ 198–99.  But "when, where, and how" did Mr. Amar cause Frank to make any representations or warranties in the Merger Agreement to which he was not party? *See Cal.*

14

*Pub. Emps. Ret. Sys.*, 394 F.3d at 144.  In what "meaningful sense" was Mr. Amar a culpable participant in Frank's allegedly false representations and warranties in the Merger Agreement? *See Rochez Bros.*, 527 F.2d at 885 (3d Cir. 1975); *see also Belmont*, 708 F.3d at 486 ("However, to the extent that [*Lautenberg Foundation v. Madoff*] can be read to suggest that knowledge of the underlying securities law violation is not required, we expressly reject it as incompatible with the 'culpable participation' standard we articulated in *Rochez Brothers*.").  The Complaint is silent. JPMC's vague allegations about Mr. Amar acquiring the ASL List are insufficient given JPMC's own admission that the ASL List was not used as a part of the negotiations.  And JPMC's empty allegations about Mr. Amar attending the Zoom Meeting are similarly insufficient because JPMC does not plead any details about Mr. Amar's role in the Zoom Meeting or how that Zoom Meeting could somehow implicate any meaningful involvement by Mr. Amar in Frank's representations in the Merger Agreement.  The Complaint's silence is fatal to Count II under both Rule 9(b) and the PSLRA.

## II.     JPMC'S COMMON LAW CLAIMS FAIL TO SATISFY RULE 9(b).

JPMC alleges five counts of various common law fraud claims:  fraud within the contract (Count III); fraudulent concealment (Count IV); conspiracy (Count V); aiding and abetting (Count VI); and unjust enrichment (Count VII).  JPMC's common law fraud claims fail to meet the pleading requirements of Rule 9(b) for two principal reasons.  *First*, JPMC's allegations of fraud against Mr. Amar before the Merger closed are irredeemable based on JPMC's express admission in the Complaint that the ASL List was not used in negotiations or in any other way prior to the Merger closing.  Because JPMC does not allege that Mr. Amar was involved in the negotiations of the Merger Agreement, JPMC fails to state any fraud claim against Mr. Amar that relies on pre-

Merger conduct.  *Second*, the allegations against Mr. Amar post-Merger likewise fail because they do not plead with particularity any actual fraudulent conduct by Mr. Amar.

**A.  JPMC Does Not Plead Any Fraud by Mr. Amar Prior to the Merger Closing, so Its Claims of Fraud Within the Contract and Fraudulent Concealment Fail.**

JPMC's five counts of common law fraud all require similar elements.  Count III, fraud within the contract—*i.e.*, fraudulent inducement—requires a false statement or misrepresentation. *See ITW Glob. Invs. Inc. v. Am. Indus. Partners Cap. Fund IV, L.P.*, 2017 WL 1040711, at *6 (Del. Super. Ct. Mar. 6, 2017).  Count IV, fraudulent concealment, requires that a "defendant took some action affirmative in nature designed or intended to prevent, and which does prevent, the discovery of facts giving rise to the fraud claim . . . ."  *Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.*, 854 A.2d 121, 150 (Del. Ch. 2004) (footnote omitted).  Count V, conspiracy to commit fraud, requires "an unlawful act done in furtherance of the conspiracy."  *Nicolet, Inc. v. Nutt,* 525 A.2d 146, 149 (Del. 1987).  Count VI, aiding and abetting fraud, requires "knowledge and substantial assistance."  *AmeriMark Interactive, LLC v. AmeriMark Holdings, LLC*, No. N21C-12-175 MMJ CCLD, 2022 WL 16642020, at *11 (Del. Super. Ct. Nov. 3, 2022) (alteration adopted) (citing *Agspring Holdco, LLC v. NGP X US Holdings, L.P.*, No. CV 2019-0567-AGB, 2020 WL 4355555, at *20 (Del. Ch. July 30, 2020)).  And Count VII, unjust enrichment, requires "the absence of justification and the absence of a remedy provided by law."  *Jackson Nat. Life Ins. Co. v. Kennedy*, 741 A.2d 377, 393 (Del. Ch. 1999).

In short, JPMC's common law fraud claims all require either a fraudulent or wrongful act by Mr. Amar or knowledge of a fraud by Mr. Amar.  JPMC does not plead either of those elements against Mr. Amar pre-Merger.  As to Mr. Amar's conduct, JPMC fails to allege a single act taken by Mr. Amar before the Merger that contributed to the negotiations of the Merger Agreement, much less an act constituting a fraud.  As discussed above in Section II, *supra*, JPMC's allegations

16

of fraud against Mr. Amar before the Merger closed are unsalvageable based on JPMC's express admission that the ASL List was not used in negotiations and was in no way given to JPMC prior to the Merger closing.

As to Mr. Amar's knowledge, JPMC's allegation that Mr. Amar was an officer of Frank is not sufficient to plead that he had knowledge of any alleged misrepresentations under Rule 9(b). JPMC relies on Mr. Amar's position as an officer of Frank to plead that he must have known that Frank's representations and warranties in the Merger Agreement were false.  But "Delaware law [] does not permit the conclusion that a defendant knew of certain facts involving an organization merely because the defendant had a position of responsibility within that organization." *Metro Commc'n Corp. BVI*, 854 A.2d at 148; *see Iotex Commc'ns, Inc. v. Defries*, No. 15817, 1998 WL 914265, at *4–5 (Del. Ch. Dec. 21, 1998) (a complaint fails to plead that a defendant director had knowledge that a co-director and related corporation intended to breach certain contracts where there was no specific allegation that the defendant director participated in the negotiations or execution of the contracts).

As discussed in Section I(A), *supra*, Mr. Amar's designation as a "Knowledge" person in the Merger Agreement is also insufficient to plead with particularity under Rule 9(b) that Mr. Amar knew of Frank's alleged misrepresentations.  JPMC's allegations mainly rely on representations in the Merger Agreement that do not depend on Frank's "Knowledge." Ex. 1 at 13.  And as to the one representation in the Merger Agreement implicating Frank's "Knowledge" in the Complaint, JPMC's allegations revolve around the purported "Fake Customer List" process in which JPMC never pleads Mr. Amar's involvement.  *See* D.I. 1 ¶¶ 77–115, 120.  Regardless, Section 1.2(b) of the Merger Agreement expressly rejects that Mr. Amar may be held responsible for the truth of

the representations and warranties in the Merger Agreement based on his designation as a "Knowledge" person. Ex. 1 at 25.

JPMC does not plead with particularity that Mr. Amar engaged in actual fraudulent conduct before the Merger or that Mr. Amar had any knowledge of fraudulent conduct before the Merger, so it fails to satisfy Rule 9(b) as to any pre-Merger fraud allegations. Specifically, this failure defeats Count III (fraud within the contract) and Count VII (unjust enrichment) because those counts depend on solely pre-Merger conduct. Fraud within the contract—*i.e.*, fraudulent inducement—is a claim alleging that the defendant's fraud caused the plaintiff to enter into the contract, which cannot be sustained by alleged conduct that occurred after the contract was executed. *See, e.g.*, *Ashland LLC v. Samuel J. Heyman 1981 Continuing Trust for Heyman*, 2018 WL 3084975, at *10 (Del. Super. Ct. June 21, 2018) ("A plaintiff cannot rely on a misrepresentation made after the parties executed an agreement for a fraudulent inducement claim."); *Puig v. Seminole Night Club, LLC*, 2011 WL 3275948, at *4 (Del. Ch. July 29, 2011) (a fraudulent inducement claim "must have accrued by . . . the date that [plaintiff] entered into" the contract at issue). Likewise, unjust enrichment rests on the receipt of wrongfully obtained contract consideration, which cannot implicate conduct that occurred after the contract's execution. *See UD Dissolution Liquidating Trust v. Sphere 3d Corp. (In re UD Dissolution Corp.)*, 629 B.R. 11, 52–53 (D. Del. Bankr. 2021) (where unjust enrichment is based on contract consideration, the claim can only survive dismissal if the plaintiff plausibly alleges that it was fraudulently induced to enter the contract). Because JPMC fails to plead with particularity under Rule 9(b) as to any fraudulent or wrongful conduct against Mr. Amar before the Merger, Counts III, IV, V, VI, and VII should be dismissed with prejudice.

**B. JPMC Does Not Plead Any Fraudulent Conduct by Mr. Amar After the Merger Closed, so the Remaining Common Law Fraud Claims Fail.**

Because JPMC does not plead with particularity any fraudulent conduct against Mr. Amar before the Merger, JPMC's claims for fraudulent concealment (Count IV), conspiracy (Count V), and aiding and abetting (Count VI) would need to rely on post-closing fraudulent conduct by Mr. Amar; but JPMC fails to plead with particularity any fraudulent conduct against Mr. Amar after the Merger closed. After the Merger, Mr. Amar became a JPMC employee. D.I. 1 ¶ 30. The only mention of any action taken by Mr. Amar after the Merger closed is one line in the Complaint alleging that, in response to an email from an undisclosed JPMC sender, Mr. Amar stated that he was "not sure we'll make Monday's deadline." D.I. 1 ¶ 167. JPMC does not allege that Mr. Amar engaged in any other post-closing conduct. The allegation that Mr. Amar sent an innocuous email about a deadline does not establish a fraudulent act, substantial assistance with a fraudulent act, or knowledge of a fraudulent act that even comes close to satisfying the requirements of Rule 9(b).

Consideration of JPMC's pre-Merger and post-closing allegations—individually or *in toto*—do not satisfy Rule 9(b)'s particularity requirement to support fraudulent concealment, conspiracy, or aiding and abetting. Post-closing, JPMC's allegations boil down to two things: (1) Mr. Amar was present at the Zoom Meeting; and, (2) Mr. Amar acquired the ASL List. But, as discussed above in Section I, *supra*, the purchase of the ASL List is not in itself a wrongful or fraudulent act. Likewise, as discussed above in Section I(A), *supra*, JPMC does not plead with any detail what Mr. Amar purportedly did or said during the Zoom Meeting. *See* D.I. 1 ¶ 75. Like the purchase of the ASL List, Mr. Amar's presence at the Zoom Meeting was legal conduct, and nothing in the Complaint converts that legal conduct into wrongful activity.

Even taken together, these allegations do not establish any substantial assistance, affirmative action, or unlawful action in furtherance of any fraud. "To meet the substantial

assistance element, [a] plaintiff must plead that the defendant[] who served as [a] secondary actor[] consciously participated in the fraudulent acts." *See Brug v Enstar Group Inc.*, 755 F. Supp. 1247 at *1256 (D. Del. 1991).  In other words, "it is essential that the plaintiff show an agreement to accomplish a wrongful purpose." *See Rochez Bros.*, 527 F.2d at *889.  But here, JPCM does not plead with particularity such conscious participation or agreement to accomplish fraud.  JPMC alleges that a "user list" was given to JPMC that was allegedly a subset of the ASL List.  D.I. ¶ 171.  But JPMC pleads nothing about who made the "user list," or when, where, how, or even who transferred the "user list" to JPMC.  And not a single mention of Mr. Amar in connection with this "user list."  JPMC's allegation that Mr. Amar attended an initial meeting and acquired the ASL List—which were not fraudulent acts—with no further factual allegations of fraudulent conduct cannot satisfy the particularity requirement of Rule 9(b) to establish fraudulent concealment, conspiracy, or aiding and abetting.  *See Landy v. Federal Deposits Ins. Corp.* 486 F.2d 139 at *163 (3d Cir. 1973) ("Plaintiffs, thus, would premise liability on these facts which would equate 'substantial assistance' with a business transaction [. . .] which foreseeably permits one of the parties to it [. . .] to independently engage in illegal action as to other parties (plaintiffs).").  Accordingly, Counts IV, V, and VI, should be dismissed with prejudice for failure to state a claim.

## <u>CONCLUSION</u>

Because JPMC fails to satisfy the heightened pleading requirements as to all claims, the Complaint against Mr. Amar should be dismissed with prejudice.

Respectfully Submitted,


**KOBRE & KIM LLP**

Dated:  March 1, 2023

*/s/ Jacob R. Kirkham*
Jacob R. Kirkham (# 5768)
600 North King Street, Suite 501
Wilmington, Delaware 19801
Telephone: (302) 518-6460
Facsimile: (302) 518-6461
Jacob.Kirkham@kobrekim.com

Steven G. Kobre (appearance *pro hac vice*
forthcoming)
Sean S. Buckley (appearance *pro hac vice*
forthcoming)
800 Third Ave
New York, New York 10022
Telephone: (212) 488-1200
Facsimile: (212) 488-1220
Steven.Kobre@kobrekim.com
Sean.Buckley@kobrekim.com

*Attorneys for Defendant Olivier Amar*