**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| JPMORGAN CHASE BANK, N.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHARLIE JAVICE, OLIVIER AMAR, | ) | |
| CHARLIE JAVICE, in her capacity as Trustee | ) | |
| of CHARLIE JAVICE 2021 IRREVOCABLE | ) | C.A. No. 22-01621-MN |
| TRUST #1, CHARLIE JAVICE, in her | ) | |
| capacity as Trustee of CHARLIE JAVICE | ) | |
| 2021 IRREVOCABLE TRUST #2, and | ) | |
| CHARLIE JAVICE in her capacity as Trustee | ) | |
| of CHARLIE JAVICE 2021 IRREVOCABLE | ) | |
| TRUST #3, | ) | |
| | ) | |
| Defendants. | ) | |

**JPMC'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS AND
COMPEL ARBITRATION OF CHARLIE JAVICE'S COUNTERCLAIMS, OR
ALTERNATIVELY TO STAY COUNTERCLAIMS IN FAVOR OF ARBITRATION**

OF COUNSEL:

Tibor L. Nagy, Jr.
Tracy O. Appleton
Jason A. Kolbe
DONTZIN NAGY & FLEISSIG LLP
980 Madison Avenue
New York, NY 10075
(212) 717-2900

William M. Regan
Allison M. Wuertz
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
(212) 918-3000

Dated March 20, 2023

POTTER ANDERSON & CORROON LLP
Peter J. Walsh, Jr. (#2437)
Michael A. Pittenger (#3212)
Jonathan A. Choa (#5319)
Carla M. Jones (#6046)
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
mpittenger@potteranderson.com
pwalsh@potteranderson.com
jchoa@potteranderson.com
cjones@potteranderson.com

*Attorneys for JPMorgan Chase Bank, N.A.*

## <u>TABLE OF CONTENTS</u>

**PRELIMINARY STATEMENT** ................................................................................................. 1

**RELEVANT BACKGROUND** .................................................................................................. 4

**I.  IN SEPTEMBER 2021, JPMC ACQUIRED FRANK FOR $175 MILLION AND HIRED JAVICE
AS ITS HEAD OF STUDENT SOLUTIONS** ..................................................................... 4

    A.  The Merger Agreement Set Forth The Terms Of JPMC's Acquisition Of Frank ............ 4

    B.  The Employment Agreement Set Forth The Terms Of Javice's Employment—Including
The Parties' Agreement On Termination For "Cause" ....................................................... 4

    C.  The Payment Direction Agreement Deferred Approximately $7.1 Million Of Javice's
Acquisition Payment To September 2023—And Conditioned That Payment On Javice
Not Having Been Terminated "For Cause" As Defined In The Employment Agreement 5

**II.  IN NOVEMBER 2022, JPMC TERMINATED JAVICE FOR "CAUSE"** ...................................... 6

    A.  In November 2022, JPMC Terminated Javice For "Cause" ............................................... 6

    B.  Because JPMC Terminated Javice For Cause, Javice Became Ineligible For Any
Outstanding Payments And Compensation Under Her Employment Agreement And The
Payment Direction Agreement ......................................................................................... 6

**III.  JPMC SUED JAVICE IN CONNECTION WITH THE ACQUISITION—AND JAVICE RESPONDED
BY ASSERTING COUNTERCLAIMS FOR WRONGFUL TERMINATION UNDER THE
EMPLOYMENT AGREEMENT, CHALLENGING HER TERMINATION FOR "CAUSE"** ............... 7

    A.  JPMC Sued Javice To Recover Proceeds Paid To Her In The Merger ............................ 7

    B.  Javice Answered The Complaint And Asserted Six Counterclaims That Are All
Premised On Her Claim That JPMC's Termination Of Her Employment Was Not "For
Cause" Under The Employment Agreement ..................................................................... 7

**LEGAL STANDARD** ............................................................................................................ 9

**ARGUMENT** ......................................................................................................................... 9

**I.  THE BINDING ARBITRATION AGREEMENT IS VALID AND ENFORCEABLE** .......................... 9

**II.  THE EMPLOYMENT AGREEMENT COUNTERCLAIMS ARE SUBJECT TO BINDING
ARBITRATION** ...................................................................................................... 10

**III.  THE NEW YORK LABOR LAW COUNTERCLAIM IS SUBJECT TO BINDING ARBITRATION** .. 11

IV.  THE PAYMENT DIRECTION COUNTERCLAIMS AND DECLARATORY JUDGMENT
     COUNTERCLAIMS ARE SUBJECT TO BINDING ARBITRATION ............................................. 12

   A.  The Payment Direction Counterclaims Are Subject To Binding Arbitration Because
       They Arise From Javice's Allegation That She Was Terminated "Without Cause … As
       Defined In The Employment Agreement" ...................................................................... 12

       1.  Javice's Payment Direction Counterclaims Fall Under The Binding Arbitration
           Agreement Because They "Arise Out Of Or Relate To" Her "Separation" From
           JPMC .................................................................................................................... 12

       2.  The Payment Direction Counterclaims Also Must Be Arbitrated Because A
           "Necessary Element" Of Those Counterclaims Is Establishing That Javice Was Not
           Terminated For Valid "Cause" Under The Employment Agreement ....................... 13

       3.  Compelling Arbitration Of The Payment Direction Counterclaims Gives Effect To
           All Relevant Terms Of The Parties' Agreements—And, In Any Case, The Court
           Must Resolve Any Ambiguity In Favor Of Arbitration ........................................... 15

   B.  The Declaratory Judgment Counterclaim Must Be Arbitrated ...................................... 17

       1.  The Declaratory Judgment Counterclaim Seeks A Declaration That Javice "Was
           Improperly Terminated Under The Employment Agreement" And Related
           Declarations—And Therefore Is Subject To The Employment Agreement's Binding
           Arbitration Agreement ........................................................................................... 17

       2.  The Payment Direction And Restricted Stock Unit Components Of Javice's
           Declaratory Judgment Counterclaims Are Subject To Binding Arbitration ............ 18

V.  IF JAVICE CONTESTS JPMC'S CONSTRUCTION OF THE BINDING ARBITRATION
    AGREEMENT, THIS COURT SHOULD DEFER TO AN ARBITRATOR ON THRESHOLD
    QUESTIONS OF ARBITRABILITY .......................................................................... 19

CONCLUSION ................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abreu v. Fairway Mkt. LLC*,
No. 17-CV-9532 (VEC), 2018 WL 3579107 (S.D.N.Y. July 24, 2018) ...............................11

*Allstate Ins. Co. v. Toll Bros., Inc.*,
171 F. Supp. 3d 417 (E.D. Pa. 2016) ......................................................................................17

*Berkery v. Cross Country Bank*,
256 F. Supp. 2d 359 (E.D. Pa. 2003) .......................................................................................9

*Borgarding v. JPMorgan Chase Bank*,
2016 WL 8904413 (C.D. Cal. Oct. 31, 2016) .........................................................................10

*Bouskos v. J.P. Morgan Chase Bank, N.A.*,
2020 WL 8483909 (E.D. Cal. Dec. 21, 2020) .........................................................................10

*Brayman Const. Corp. v. Home Ins. Co.*,
319 F.3d 62 (3d Cir. 2003).................................................................................................13, 14

*CA, Inc. v. Ingres Corp.*,
No. CIV. A. 4300-VCS, 2009 WL 4575009 (Del. Ch. Dec. 7, 2009), *aff'd*, 8
A.3d 1143 (Del. 2010) ..............................................................................................................15

*Council of Dorset Condo. Apartments v. Gordon*,
801 A.2d 1 (Del. 2002) ..................................................................................................15, 16, 17

*Deering v. Graham*,
2015 WL 424534 (D.N.J. Jan. 30, 2015) .................................................................................20

*Dizon v. J.P. Morgan Chase*,
2023 WL 2456063 (D. Del. Mar. 10, 2023) .........................................................................9, 10

*E. Hedinger AG v. Brainwave Sci., LLC*,
363 F. Supp. 3d 499 (D. Del. 2019).......................................................................................9, 20

*Ganz v. SM Kids, LLC*,
2019 WL 4013970 (D. Del. Aug. 26, 2019) .......................................................................15, 16

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
139 S. Ct. 524 (2019).............................................................................................................19, 20

*JPMorgan Chase & Co. v. Custer*,
2016 WL 927339 (D.N.J. Mar. 10, 2016)................................................................................10

*Miguel v. JPMorgan Chase Bank, N.A.*,
  2013 WL 452418 (C.D. Cal. Feb. 5, 2013)................................................................10

*Montero v. JPMorgan Chase & Co.*,
  2016 WL 193392 (N.D. Ill. Jan. 15, 2016) ...............................................................10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983).................................................................................................9, 17

*In re NBR Antitrust Litig.*,
  207 F. App'x 166 (3d Cir. 2006) ..................................................................3, 13, 14

*Nidec Corp. v. Seagate Tech. LLC*,
  No. 21-52-RGA, 2021 WL 3048456 (D. Del. July 20, 2021) ...................................20

*Penn Outdoor Servs. LLC v. JK Consultants*,
  No. CV 17-2791, 2018 WL 3831398 (E.D. Pa. Aug. 10, 2018)................................18

*PNY Techs., Inc. v. Samsung Elecs. Co.*,
  No. CIV.A. 10-4587 SRC, 2011 WL 900154 (D.N.J. Mar. 14, 2011) .....................15

*Reading Health Sys. v. Bear Stearns & Co.*,
  900 F.3d 87 (3d Cir. 2018)...................................................................................9, 17

*In re Remicade (Direct PurJPMCr) Antitrust Litig.*,
  938 F.3d 515 (3d Cir. 2019)........................................................................................9

*Ross Dress for Less, Inc. v. VIWY, L.P.*,
  570 F. App'x 123 (3d Cir. 2014) .........................................................................17, 18

*Ryan v. JPMorgan Chase & Co.*,
  924 F. Supp. 2d 559 (S.D.N.Y. Feb. 21, 2013).......................................................10

*Sanum Inv. Ltd. v. San Marco Cap. Partners LLC*,
  263 F. Supp. 3d 491 (D. Del. 2017).............................................................................4

*Smash v. Dover Downs, Inc.*,
  2022 WL 2966431 (D. Del. July 27, 2022) ...............................................................20

*Woodruff v. Dollar Gen. Corp.*,
  2022 WL 17752359 (D. Del. Dec. 19, 2022).............................................................20

**Statutes**

15 U.S.C. § 78aa ..................................................................................................................7

N.Y. Lab. Law § 740 ...........................................................................................................8

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ........................................................................20

Plaintiff JPMorgan Chase Bank, N.A. ("JPMC") respectfully submits this opening brief in support of its motion to dismiss and compel arbitration of the counterclaims (the "Counterclaims," ECF No. 10) filed by Defendant and Counterclaimant Charlie Javice ("Javice").[1]

## PRELIMINARY STATEMENT

This proceeding is about Javice's and her co-conspirator Olivier Amar's ("Amar") false merger representations, nothing more. As detailed in JPMC's complaint (the "Complaint"), JPMC acquired Javice's startup TAPD, Inc. d/b/a Frank ("Frank") in August 2021 for $175 million. To induce JPMC to purchase Frank, Javice and Amar caused Frank to make false representations and warranties in the operative acquisition and merger agreement (the "Merger Agreement" or "MA," ECF No. 16).[2] Javice answered the Complaint and, to divert attention from her misconduct, has asserted six Counterclaims all premised on her allegation that JPMC wrongfully terminated her employment in November 2022 (*i.e.*, 14 months after the acquisition closed). This Court should dismiss the Counterclaims because they are all subject to binding arbitration.

Javice's Offer and Retention Agreement (the "Employment Agreement" or "EA," Ex. A) contains a Binding Arbitration Agreement (the "Binding Arbitration Agreement" or "BAA"), separately signed and agreed to by Javice, that mandates binding arbitration of all employment-related disputes between her and JPMC. By its broad terms, the Binding Arbitration Agreement requires "binding arbitration" of "all legally protected employment-related claims" that "arise out of or relate to [Javice's] employment or separation from employment," including claims for

---

[1] Unless otherwise noted, all citations to "¶ __" or "p. __" refer to paragraphs or pages, respectively, in the Counterclaims; citations to "Ex.___" refer to exhibits to the March 20, 2023 Declaration of Tibor L. Nagy, Jr.; citations to "JPMC Compl." refer to JPMC's original Complaint (ECF No. 1); citations to "Javice Ans. ¶ __" refer to paragraphs of Javice's Answer; and all emphasis in quotations has been added by JPMC.

[2] For ease of reference, unless otherwise noted, all defined terms used herein have the same meanings as in the Counterclaims (*e.g.*, "Merger Agreement," ¶ 16 & Javice Ans. ¶ 15).

"retaliation"; "tortious acts"; "failure to pay wages"; "breach of an express or implied contract"; and "violations of any other common law, federal, state or local statute."  BAA §§ 1–2.  Thus, while JPMC's claims belong in this Court, any employment claims plainly belong in arbitration.

Javice's six Counterclaims are subject to binding arbitration because, as alleged in Javice's pleading, each arises out of JPMC's decision to terminate her employment for "Cause," pursuant to the terms of her Employment Agreement.  *See* ¶¶ 110, 115, 121, 130, 141, 154.  Because JPMC terminated Javice for "Cause," she became ineligible to receive certain compensation:

> • The Employment Agreement provided Javice with a $20 million retention award (the "Retention Award"), unless she was terminated for "Cause," pursuant to and as defined in the Employment Agreement.  ¶ 17.

> • Pursuant to a side agreement to the Merger Agreement (the "Payment Direction Agreement" or "PDA," Ex. B), Javice was to be paid approximately $7.1 million (the "Retained Amount") in September 2023, so long as she remained employed by JPMC at that time.  After JPMC terminated Javice for "Cause," it was no longer obligated to pay Javice the Retained Amount because, pursuant to the PDA, she was only entitled to receive the Retained Amount if JPMC had terminated her employment "*without* 'Cause' … **as defined in the Employment Agreement**."  ¶ 121.

All of Javice's six Counterclaims allege that JPMC did not properly terminate her for "Cause" as defined in the Employment Agreement, and they each demand that JPMC pay her the "Retention Award" and/or the "Retained Amount."  ¶¶ 110, 115, 118, 121, 128, 130, 132, 140, 141, 154.

Javice's Counterclaims thus fall squarely within the scope of the Binding Arbitration Agreement.  First, four of the Counterclaims explicitly invoke the Employment Agreement and/or assert retaliation claims:

> • Count I ("Declaratory Relief"): a claim for a declaratory judgment that "Ms. Javice was improperly terminated under the Employment Agreement."  ¶ 110(a).

> • Count II ("Breach of Contact—Employment Agreement"): a claim for breach of the "Employment Agreement" seeking "the full value of the Retention Award that was due to her … under the Employment Agreement."  ¶ 118.

> • Count IV ("Breach of the Implied Covenant of Good Faith and Fair Dealing—Employment Agreement"): a claim for breach of the implied covenant of good faith

and fair dealing (the "implied covenant" or "GFFD") implied in the "Employment Agreement," seeking the same relief as Count II.

• Count VI ("Retaliatory Action in Violation of N.Y. Lab. Law § 740"): a claim for violation of N.Y. Labor Law Section 740 premised on Javice's allegation that "JPMC took retaliatory action or actions against Ms. Javice," including "JPMC's failure to pay Ms. Javice in full in accordance with its contractual obligations" under the Employment Agreement. ¶ 154.

Thus, on their face, these four Counterclaims fall within the Binding Arbitration Agreement and should be compelled to arbitration.

Javice's two remaining Counterclaims are for breaches of contract and the implied covenant of GFFD related to the Payment Direction Agreement (Counts III and V, respectively, and together, the "Payment Direction Counterclaims"). Those two Counterclaims are likewise subject to the Binding Arbitration Agreement in the Employment Agreement because, while the Payment Direction Agreement does not itself contain an arbitration clause: (i) it explicitly references the "Employment Agreement" and incorporates its "termination ... for Cause" definition (PDA § D; *see* ¶ 121); and (ii) Javice thus premises her Payment Direction Counterclaims on her allegations that JPMC "terminated Ms. Javice's employment *without* valid Cause," again invoking the terms of the Employment Agreement (¶¶ 123, 141). The Payment Direction Counterclaims therefore must be arbitrated because (a) they "arise out of or relate to" Javice's "separation from employment" pursuant to the Employment Agreement and, thus, fall within the broad scope of the Binding Arbitration Agreement (BAA § 2), and (b) a "necessary element" of those Counterclaims is Javice's challenge to her termination for "Cause," which itself plainly is subject to arbitration. *In re NBR Antitrust Litig.*, 207 F. App'x 166, 168 (3d Cir. 2006).

Accordingly, JPMC respectfully requests that the Court dismiss Javice's Counterclaims and compel them to arbitration. In the alternative, JPMC respectfully requests a stay of the Counterclaims pending arbitration of the disputes advanced in them.

3

## RELEVANT BACKGROUND

I.   **IN SEPTEMBER 2021, JPMC ACQUIRED FRANK FOR $175 MILLION AND HIRED JAVICE AS ITS HEAD OF STUDENT SOLUTIONS**

A.   **The Merger Agreement Set Forth The Terms Of JPMC's Acquisition Of Frank**

In August 2021, JPMC and Frank executed the Merger Agreement, which Javice signed on Frank's behalf, and which set forth the terms by which JPMC agreed to acquire Frank for $175 million.  *See* Javice Ans. ¶ 116.  On September 14, 2021, JPMC consummated the acquisition of Frank pursuant to the Merger Agreement.  *See* JPMC Compl. ¶¶ 73–98; Javice Ans. ¶ 132.

B.   **The Employment Agreement Set Forth The Terms Of Javice's Employment— Including The Parties' Agreement On Termination For "Cause"**

Contemporaneously with the Merger Agreement, JPMC agreed to hire Javice as the new "Head of Student Solutions" for the Frank business unit within JPMC.  EA at 1.  On August 4, 2021, JPMC and Javice executed the Employment Agreement, pursuant to which Javice became a JPMC employee "on the closing of the Merger" on September 14, 2021.[3]  EA at 1; *see* ¶ 17.

The Employment Agreement authorized JPMC to terminate Javice's employment for "Cause," which was defined to include, among other things, "an act of fraud or dishonesty or malfeasance in the course of [Javice's] service to the Firm;" "a violation of … JPMC's material policies applicable to [Javice] or … JPMC's Code of Conduct;" and "any grossly negligent or willful act or failure to act that is materially injurious" to JPMC's interests.  EA, App. I at 1.

Pursuant to the Employment Agreement, Javice became "eligible" for discretionary incentive compensation as a JPMC employee, including potential bonus payments in cash and restricted stock.  EA at 1.  Javice also became "eligible" for the Retention Award, in three payments

---

[3] In deciding this motion, the Court may consider "the documents on which [Javice's] claims are based," including the EA, with its BAA, and the PDA.  *Sanum Inv. Ltd. v. San Marco Cap. Partners LLC*, 263 F. Supp. 3d 491, 494 (D. Del. 2017).

over three years, "subject to" Javice's "continued employment" through each vesting date.  *Id.* at 2; ¶ 64.  However, the Employment Agreement provided that any outstanding Retention Award payments would not vest if Javice failed to remain in "compliance with [JPMC's] Code of Conduct," (¶ 64), or if Javice's employment was "terminated by . . . [JPMC] with Cause" (EA at 3).  In addition, a "Clawback Recapture" clause (the "Clawback Provision") authorized JPMC to "cancel" the Retention Award and "recover" any previous Retention Award payments or incentive compensation if Javice was "terminated for Cause," among other grounds.  EA, App. I at 1–2.

Javice separately executed the Binding Arbitration Agreement as Appendix IV to the Employment Agreement.  BAA, App. IV at 5.  In it, Javice agreed in relevant part as follows:

1.      SCOPE: Any and all "Covered Claims" (as defined below) between me and JPMorgan Chase … shall be submitted to and resolved by final and binding arbitration in accordance with this Agreement.

2.      COVERED CLAIMS: "Covered Claims" include all legally protected employment-related claims … that I now have or in the future may have against JPMorgan Chase . . . which arise out of or relate to my employment or separation from employment with JPMorgan Chase and all legally protected employment-related claims that JPMorgan Chase has or in the future may have against me, including, but not limited to, … failure to pay wages, bonuses or other compensation, tortious acts, wrongful, retaliatory and/or constructive discharge, breach of an express or implied contract, promissory estoppel, unjust enrichment, and violations of any other common law, federal, state, or local statute, ordinance, regulation or public policy ….

8.      SEVERABILITY: … Any dispute as to the arbitrability of a particular issue pursuant to this Agreement is to be resolved in arbitration. …

BAA §§ 1–2, 8.

**C.      The Payment Direction Agreement Deferred Approximately $7.1 Million Of Javice's Acquisition Payment To September 2023—And Conditioned That Payment On Javice Not Having Been Terminated "For Cause" As Defined In The Employment Agreement**

Instead of immediately receiving at closing all merger consideration allocated to her, Javice agreed that she would earn the final Retained Amount of approximately $7.1 million only by

5

managing the Frank business unit within JPMC for at least two years.  Pursuant to the Payment Direction agreement, "the Retained Amount shall only become due and payable ... if [Javice] remains employed with [JPMC] through the second anniversary of the Effective Time" of the merger, *i.e.*, September 14, 2023.  PDA § C.  However, the PDA also provided that if Javice's "employment with [JPMC] terminates … at any time prior to when the Retained Amount is … paid ... by [JPMC] *without 'Cause' … as defined in … the Employment Agreement*," then JPMC would pay the Retained Amount "within fifteen days following" her termination.  PDA § D; ¶ 121.

## II.  IN NOVEMBER 2022, JPMC TERMINATED JAVICE FOR "CAUSE"

### A.  In November 2022, JPMC Terminated Javice For "Cause"

In November 2022, JPMC terminated Javice for Cause pursuant to the terms of the Employment Agreement.  JPMC Compl. ¶ 181; Javice Ans. ¶ 181.  JPMC sent Javice a formal termination notice (the "Termination Letter," Ex. C) on November 4, 2022.  *See* ¶ 98.

### B.  Because JPMC Terminated Javice For Cause, Javice Became Ineligible For Any Outstanding Payments And Compensation Under Her Employment Agreement And The Payment Direction Agreement

Because of Javice's termination for "Cause" under her Employment Agreement, and her failure to remain in compliance with JPMC's Code of Conduct, Javice became ineligible for her Retention Award.  EA at 3; App. I at 1–2.  These events also entitled JPMC to "recover" incentive compensation previously paid to Javice pursuant to the Clawback Provision.  EA, App. I at 1–2.  JPMC therefore notified Javice by letter on November 22, 2022 (the "Clawback Letter," Ex. D), that (i) Javice was not entitled to the Retention Award; (ii) Javice must return $162,500 in incentive compensation previously paid to her; and (iii) JPMC was canceling unvested restricted stock awards previously granted to Javice with an estimated value of $162,500.  *See* ¶ 100.

In addition, because of Javice's termination for "Cause," she became ineligible to receive the Retained Amount: under the Payment Direction Agreement, Javice would have received the

Retained Amount only if she had been terminated "*without* 'Cause" as defined in the Employment

Agreement.  PDA § D.  But as JPMC terminated Javice *with* "Cause," it never became obligated

to, and did not, pay the Retained Amount following Javice's termination.  *See id.*

### III. JPMC SUED JAVICE IN CONNECTION WITH THE ACQUISITION—AND JAVICE RESPONDED BY ASSERTING COUNTERCLAIMS FOR WRONGFUL TERMINATION UNDER THE EMPLOYMENT AGREEMENT, CHALLENGING HER TERMINATION FOR "CAUSE"

#### A. JPMC Sued Javice To Recover Proceeds Paid To Her In The Merger

In December 2022, JPMC commenced this action against Javice and Amar to recover the

$175 million paid to Frank based on the numerous false representations and warranties in the

Merger Agreement.  *See generally* JPMC Compl.  JPMC brought suit in this Court because

disputes arising under the Merger Agreement must be brought in federal or state courts in

Delaware, and federal courts have exclusive jurisdiction over JPMC's claims pursuant to federal

securities laws.  *See* MA § 9.10; 15 U.S.C. § 78aa; Javice Ans. ¶ 25 & n.3.

#### B. Javice Answered The Complaint And Asserted Six Counterclaims That Are All Premised On Her Claim That JPMC's Termination Of Her Employment Was Not "For Cause" Under The Employment Agreement

In an attempt to distract from the evidence of her fraudulent merger representations, Javice

responded to JPMC's Complaint by filing Counterclaims asserting various grievances based on

her post-merger employment by JPMC.[4]  Each of the Counterclaims rests on the contention that

---

[4] The Counterclaims are replete with baseless allegations that JPMC will contest vigorously in arbitration.  There is simply no merit to Javice's allegation that any federal regulations or student privacy laws: (1) prohibited marketing to Frank's limited group of historical customers, using contact information they provided to Frank on Frank's website; (2) limited the use of information that future customers might similarly provide directly to Frank on Frank's website; or (3) prohibited the marketing of JPMC products on Frank's website.  Javice was not a whistleblower— she misstates the relevant regulations and she was terminated for her misconduct—and the factual claims she makes regarding due diligence are flatly contradicted by written evidence and common sense.

JPMC terminated Javice without having valid "Cause" within the meaning of her Employment

Agreement:

1. **The Declaratory Judgment Counterclaim (Count I):** This Counterclaim alleges that (a) Javice "was improperly terminated under the Employment Agreement;" (b) the "Termination Letter is null and void;" (c) JPMC had "no basis to terminate Ms. Javice for Cause;" (d) JPMC "terminated Ms. Javice's employment without Cause;" (e) Javice "is entitled to the full value of her Retention Award;" (f) Javice "is entitled to" the Retained Amount "because [JPMC] terminated her employment without Cause;" (g) Javice "did not engage in any activity" that would trigger the Clawback Provision; (h) because JPMC terminated Javice "without Cause," Javice "is not obligated to return $162,500, or any other compensation," to JPMC; and (i) Javice "retains her restricted stock units" previously granted to her as incentive compensation. ¶ 110.

2. **The Employment Agreement Counterclaims (Counts II, IV):** These Counterclaims assert that Javice "was not validly terminated for Cause" (¶ 115, Count II), or that JPMC "manufacture[d] a bad-faith, sham, pretextual termination for Cause" to deprive Javice of the Retention Award (¶ 130, Count IV), and on that basis seek payment of the Retention Award (¶ 118, Count II; ¶¶ 132, 137, Count IV; p. 102, Prayer for Relief at (2)). These Counterclaims specifically *invoke* the Employment Agreement and its implied covenant, and allege that each was "breached." ¶¶ 114, 130–35, 137 & p. 97.

3. **The Payment Direction Counterclaims (Counts III, V):** Similarly, because Javice could not receive the Retained Amount pursuant to the PDA unless she either remained employed in September 2023 or else was terminated "without 'Cause' … as defined in the Employment Agreement" (¶ 121, Count III; *see* PDA §§ C, D), these Counterclaims first assert that JPMC either "terminated Ms. Javice's employment without valid Cause" (¶ 123, Count III), or else that JPMC "manufacture[d] a bad-faith, sham, pretextual termination for Cause" (¶ 141, Count V). On that basis, these Counterclaims seek payment of the Retained Amount (¶ 128, Count III; ¶¶ 140–41, 145, Count V; p. 102, Prayer for Relief at (3)).

4. **The New York Labor Law Counterclaim (Count VI):** Finally, Count VI of the Counterclaims asserts that JPMC violated Section 740 of the New York Labor Law ("NYLL") by taking "retaliatory actions" against Javice on account of Javice's "concerns" about supposedly "unlawful activities" in connection with JPMC's business plan for Frank. P. 99; ¶ 152. These alleged "retaliatory actions" included, among other things, "Ms. Javice's discharge"—*i.e.*, her termination by JPMC for "Cause." ¶ 154.

Accordingly, Javice's Counterclaims all arise from her "employment or separation from

employment"—precisely the type of claims that Javice agreed to bring in arbitration, and not this

Court, when she executed the Binding Arbitration Agreement. *See* BAA §§ 1–2.

8

## LEGAL STANDARD

Federal courts apply a "strong federal policy, embodied in the [Federal Arbitration Act, ("FAA")], favoring arbitration." *Reading Health Sys. v. Bear Stearns & Co.*, 900 F.3d 87, 103 (3d Cir. 2018). Pursuant to this policy, which requires that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," courts routinely compel arbitration of claims that arguably fall within the scope of an arbitration agreement. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, (1983); *see, e.g., E. Hedinger AG v. Brainwave Sci., LLC*, 363 F. Supp. 3d 499, 499–503 (D. Del. 2019) (granting motion to compel arbitration); *Berkery v. Cross Country Bank*, 256 F. Supp. 2d 359, 365 (E.D. Pa. 2003) (same).

"[B]efore compelling any party to arbitrate … , a court must consider two 'gateway' questions: (1) whether the parties have a valid arbitration agreement … (*i.e.*, its enforceability), and (2) whether a concededly binding arbitration clause applies to a certain type of controversy (*i.e.*, its scope)." *In re Remicade (Direct PurJPMCr) Antitrust Litig.*, 938 F.3d 515, 519 (3d Cir. 2019). Here, the Binding Arbitration Agreement is enforceable and governs all Counterclaims.

## ARGUMENT

### I.   THE BINDING ARBITRATION AGREEMENT IS VALID AND ENFORCEABLE

The Binding Arbitration Agreement, which Javice separately executed, is valid and enforceable. *See* BAA at 5; ¶ 41; Javice Ans. ¶ 69. As an initial matter, numerous courts—including this Court—have evaluated substantially identical arbitration provisions in JPMC's agreements with other employees, and held them to be enforceable. *See, e.g., Dizon v. J.P. Morgan Chase*, 2023 WL 2456063, at *4 (D. Del. Mar. 10, 2023).[5] The Binding Arbitration Agreement,

---

[5] *See Jpmorgan Chase & Co. v. Custer*, 2016 WL 927339, at *5 (D.N.J. Mar. 10, 2016) (enforcing substantially identical agreement); *Bouskos v. J.P. Morgan Chase Bank, N.A.*, 2020 WL 8483909 (E.D. Cal. Dec. 21, 2020) (same); *Ryan v. JPMorgan Chase & Co.*, 924 F. Supp. 2d 559 (S.D.N.Y. Feb. 21, 2013) (same); *Montero v. JPMorgan Chase & Co.*, 2016 WL 193392 (N.D. Ill. Jan. 15,

which is the same in all material respects to the arbitration clauses at issue in those cases, should be enforced as well.  *See id.*  There also is no question that Javice intentionally agreed to be bound by all provisions in the Binding Arbitration Agreement.  Not only did she separately sign and agree to the Binding Arbitration Agreement (*see* EA, App. IV), but Javice herself contends that she and JPMC "are parties to … the Employment Agreement" (¶ 17), and that JPMC must pay her the Retention Award pursuant to it (¶¶ 17, 118).  By affirmatively relying on the Employment Agreement to which the Binding Arbitration Agreement is appended, Javice already concedes the arbitration provisions in it are binding.  The Court therefore should enforce the Binding Arbitration Agreement by compelling arbitration of all Counterclaims falling within its scope.

## II.   THE EMPLOYMENT AGREEMENT COUNTERCLAIMS ARE SUBJECT TO BINDING ARBITRATION

Counts II and IV of Javice's Counterclaims fit squarely within the Binding Arbitration Agreement because they assert that JPMC breached the Employment Agreement or its implied covenant.  As noted, under the Binding Arbitration Agreement, "'Covered Claims' include all legally protected employment-related claims ... which arise out of or relate to [Javice's] employment or separation from employment" with JPMC, including claims for "failure to pay wages, bonuses or other compensation," or for "breach of an express or implied contract."  BAA § 2.  That is exactly what Counts II and IV allege:

> • In Count II, Javice claims that JPMC "breached the Employment Agreement," because JPMC "had no valid basis to terminate [Javice] for Cause" (¶ 114), seeking payment of the Retention Award (¶ 118).  This claim plainly "arise[s] out of" Javice's "employment or separation from employment," and constitutes a claim for "bonuses or other compensation," as well as a claim for "breach of an express ... contract."  BAA § 2.

> • In Count IV, Javice claims that JPMC "unfairly interfered with Ms. Javice's receipt of the Employment Agreement's benefits" (¶134) by "manufactur[ing] a bad-faith, sham, pretextual termination for Cause in order to cause Ms. Javice to forfeit the Retention

2016) (same); *Borgarding v. JPMorgan Chase Bank*, 2016 WL 8904413 (C.D. Cal. Oct. 31, 2016) (same); *Miguel v. JPMorgan Chase Bank, N.A.*, 2013 WL 452418 (C.D. Cal. Feb. 5, 2013) (same).

Award" (¶ 130).  This claim likewise "arise[s] out of" Javice's "employment or separation from employment," and constitutes a claim both for failure to pay "bonuses" and for breach of an "express or implied contract."  BAA § 2.

Javice thus agreed to arbitrate these claims when she executed the Binding Arbitration Agreement, and she should be compelled to do so.

## III.   THE NEW YORK LABOR LAW COUNTERCLAIM IS SUBJECT TO BINDING ARBITRATION

The Binding Arbitration Agreement also applies to Javice's NYLL Counterclaim.  The Binding Arbitration Agreement encompasses "employment-related" claims for "violations of any other common law, [or] federal, state, or local statute."  BAA § 2.  In Count VI, Javice alleges that JPMC violated the NYLL because it engaged in "retaliatory action or actions against Ms. Javice because she objected to or refused to participate in an activity, policy or practice of JPMC that she reasonably believed was in violation of law, rule or regulations."  ¶ 153.  The Binding Arbitration Agreement thus expressly includes the NYLL claim in Count VI, because it alleges the violation of a "statute, ordinance, regulation or public policy."  BAA § 2.  Moreover, as noted above, JPMC's alleged "retaliatory actions" include "Ms. Javice's discharge" (¶ 154)—*i.e.*, her termination by JPMC for "Cause."  Count VI thus also alleges a "retaliatory … discharge" and "arise[s] out of or relate[s] to [Javice's] employment or separation from employment."  BAA § 2. It too must be compelled to arbitration.  *See, e.g., Abreu v. Fairway Mkt. LLC*, No. 17-CV-9532 (VEC), 2018 WL 3579107, at *2 (S.D.N.Y. July 24, 2018) (compelling arbitration of NYLL claims where the arbitration agreements included claims "under any federal, state, or local law").

## IV.   THE PAYMENT DIRECTION COUNTERCLAIMS AND DECLARATORY JUDGMENT COUNTERCLAIMS ARE SUBJECT TO BINDING ARBITRATION

### A.   The Payment Direction Counterclaims Are Subject To Binding Arbitration Because They Arise From Javice's Allegation That She Was Terminated "Without Cause … As Defined In The Employment Agreement"

The Payment Direction Counterclaims must be arbitrated both because they fall within the broad scope of the Binding Arbitration Agreement, and because they incorporate Javice's challenge to her termination for "Cause"—a dispute the parties plainly agreed to arbitrate.

### 1.   Javice's Payment Direction Counterclaims Fall Under The Binding Arbitration Agreement Because They "Arise Out Of Or Relate To" Her "Separation" From JPMC

First, Javice's Payment Direction Counterclaims fall within the plain terms of the Binding Arbitration Agreement.  Because the Payment Direction Agreement incorporates the definition of "Cause" from the Employment Agreement (PDA § D; ¶ 121), Javice expressly premises her Payment Direction Counterclaims on allegations that JPMC terminated Javice without valid "Cause."  *See* ¶¶ 123 (Count III), 141 (Count V, alleging that JPMC "manufacture[d] a bad faith, sham, pretextual termination for Cause").  As relief for these claims, Javice seeks to compel JPMC to pay the Retained Amount.  *See* ¶¶ 128, 143; p. 102, Prayer for Relief at (3).

The Binding Arbitration Agreement, which governs "*all* legally protected employment-related claims," therefore encompasses these claims.  BAA § 2.  The claims that JPMC "terminated Javice's employment without valid Cause" (¶ 123) and "manufacture[d]" bad-faith excuses to terminate Javice for "Cause" (¶ 141) both "arise out of or relate to" Javice's "separation from employment" with JPMC pursuant to the Employment Agreement (BAA § 2).  Likewise, because Javice seeks payment of the Retained Amount on the basis that her employment was terminated "without valid Cause" (¶ 123) "as defined in the Employment Agreement" (¶ 121) and that JPMC "manufacture[d] ... Cause" (¶ 141), the Payment Direction Counterclaims also constitute

"employment-related" claims for "failure to pay ... other compensation" (BAA § 2). And all of the Payment Direction Counterclaims are also "employment related" claims for "breach of an express or implied contract" (BAA § 2). Consequently, they are within the scope of, and must be arbitrated pursuant to, the Binding Arbitration Agreement.

> **2.      The Payment Direction Counterclaims Also Must Be Arbitrated Because A "Necessary Element" Of Those Counterclaims Is Establishing That Javice Was Not Terminated For Valid "Cause" Under The Employment Agreement**

Independently, the Payment Direction Counterclaims also should be arbitrated because, as pled, they hinge on the parties' dispute over whether JPMC breached the Employment Agreement—which itself is clearly subject to arbitration. *See supra*, Argument, I. Under controlling Third Circuit law, where a claim before the court arising under an agreement without an arbitration clause nevertheless "relate[s] sufficiently" to a parallel arbitration, that claim should be arbitrated as well. *Brayman Const. Corp. v. Home Ins. Co.*, 319 F.3d 62 (3d Cir. 2003). Here, the Payment Direction Counterclaims not only substantially "relate" to the substance of arbitrable claims, they *require* Javice to prevail on her challenge to JPMC's termination of her employment for "Cause" in arbitration.

The Third Circuit's decision applying the *Brayman* standard in *In re NBR Antitrust Litigation*, 207 F. App'x at 168, is instructive and controlling here. In *NBR*, ParaTec, a defendant, asserted a crossclaim for indemnification against its codefendants. The LLC agreement that provided for ParaTec's indemnification did not mandate arbitration. However, the merits of the indemnification claim turned on whether the parties had fulfilled their obligations under "Related Agreements" that contained arbitration provisions. *NBR* 207 F. App'x at 168. The District Court declined to compel arbitration, because it found that ParaTec's claim for indemnification arose under the LLC agreement and, therefore, was not subject to an arbitration mandate.

13

The Third Circuit reversed, finding that the "question is whether a claim must be arbitrated when it arises under an agreement that does not contain an arbitration clause but a *necessary element of that claim* is breach of covenants under contracts that do require arbitration." *Id*. The court reasoned as follows:

> Even when a claim arises under a contract which contains no arbitration clause, that claim still may be arbitrated when the allegations underlying it "touch matters" covered by an arbitration clause. There can be no doubt—and the parties do not dispute—that a claim for indemnification which is premised on breach of the Related Agreements "touches matters" covered by the Related Agreements. *Even though this claim technically "arises under" the LLC Agreement, a court cannot consider it without making a determination as to whether [the codefendants] breached the Related Agreements—a determination which the parties agreed would be made in arbitration.... Given the impossibility of reaching the merits of ParaTec's claim without resolving arbitrable questions*, and in light of our responsibility to address questions of arbitrability with a healthy regard for the federal policy favoring arbitration, we hold that the claim for indemnification is arbitrable under the terms of the Related Agreements.

*Id*. (citations, alterations, and quotation marks omitted).

Here, the Payment Direction Counterclaims present the same circumstances that the Third Circuit addressed in *NBR*. Although the Payment Direction Agreement lacks an arbitration clause, it incorporates the Employment Agreement, which includes the Binding Arbitration Agreement. Moreover, pursuant to the terms of the Payment Direction Agreement—and as Javice herself pleads—she cannot prevail on her Payment Direction Counterclaims unless she establishes a breach of the Employment Agreement or its implied covenant. Specifically, Javice must demonstrate that JPMC terminated her either without "Cause" or based on pretextual "Cause," "as defined in" the "Employment Agreement." PDA § D; *see* Counterclaims ¶¶ 123, 141. The Payment Direction Counterclaims therefore must be arbitrated because a "necessary element" of those claims requires Javice to succeed on claims subject to mandatory arbitration under the Binding Arbitration Agreement of the Employment Agreement. *NBR* 207 F. App'x at 168; *see Brayman Const. Corp.*, 319 F.3d at 62 (compelling arbitration of claims arising under agreement

14

without arbitration clause that nevertheless "relat[ed] sufficiently" to claims covered by arbitration clause in a different contract); *PNY Techs., Inc. v. Samsung Elecs. Co.*, No. CIV.A. 10-4587 SRC, 2011 WL 900154, at *3 (D.N.J. Mar. 14, 2011) (same, citing *Brayman*). This provides a separate and independent basis for compelling arbitration of Counts III and V of the Counterclaims.

### 3. Compelling Arbitration Of The Payment Direction Counterclaims Gives Effect To All Relevant Terms Of The Parties' Agreements—And, In Any Case, The Court Must Resolve Any Ambiguity In Favor Of Arbitration

Finally, compelling arbitration of the Payment Direction Counterclaims also fulfills the parties' contractual intent as reflected in the various agreements between them. Specifically, although the Payment Direction Agreement includes a provision generally incorporating Article 9 of the Merger Agreement (PDA § F), which includes an exclusive forum clause selecting courts in Delaware (*see* MA § 9.10), basic principles of contract construction further confirm that the parties agreed to arbitrate the particular Payment Direction Counterclaims asserted by Javice here.

Under Delaware law, "multiple agreements must be viewed together and in their entirety when determining the scope and nature of the parties' obligations." *CA, Inc. v. Ingres Corp.*, No. CIV. A. 4300-VCS, 2009 WL 4575009, at *47 n. 297 (Del. Ch. Dec. 7, 2009), *aff'd*, 8 A.3d 1143 (Del. 2010) (citation omitted). Relatedly, courts "must interpret contractual provisions in a way that gives effect to every term of the instrument, and that, if possible, reconciles all of the provisions of the instrument when read as a whole." *Council of Dorset Condo. Apartments v. Gordon*, 801 A.2d 1, 7 (Del. 2002). In addition, where an agreement includes both general and specific provisions, "the specific provision should be given effect over or qualify the general provision." *See Ganz v. SM Kids, LLC*, 2019 WL 4013970, at *3 (D. Del. Aug. 26, 2019).

Here, Sections D and F of the Payment Direction Agreement are easily reconciled. Section F generally incorporates the Merger Agreement, which, in turn, contains a forum selection clause.

By this general reference, the parties agreed that any disputes unrelated to Javice's employment would be brought in courts in Delaware. This might include, for example, a claim by Javice for failure to pay the Retained Amount on schedule in September 2023, assuming she remained employed by JPMC, and the parties had no disputes related to her employment. However, Section D incorporates not only the Employment Agreement, but also a specifically defined right under the Employment Agreement—JPMC's ability to terminate Javice for "Cause"—any dispute over which would fall within the heart of the Binding Arbitration Agreement. *See supra, II*. Section D's citation to the defined term "Cause" in the Employment Agreement thus "qualif[ies]" the general language in Section F. *Ganz*, 2019 WL 4013970, at *3. Specifically, it reveals the parties' understanding that any dispute over whether "Cause" existed for Javice's termination—which, if it did, would make Javice ineligible to receive the Retained Amount—would be arbitrated per the terms of the Employment Agreement and its Binding Arbitration Agreement.

In sum, read together, Sections D and F of the Payment Direction Agreement demonstrate that any disputes touching matters relating to Javice's employment are arbitrable, whereas disputes that are unrelated to Javice's employment would be resolved in Delaware courts. Importantly, this interpretation gives effect not only to all sections of the Payment Direction Agreement, but to the Binding Arbitration Agreement, which by its terms encompasses Javice's claim to recover the Retained Amount. *See supra*, Argument, III.A.1. It thus "reconciles all of the provisions" to which the parties agreed. *Council of Dorset*, 801 A.2d at 7.

In contrast, if Section F of the Payment Direction Agreement required *all* claims arising under the PDA to be litigated in Delaware courts—including those premised on an improper termination for "Cause"—that interpretation would create an irreconcilable conflict between Section F, on the one hand, and both Section D and the Binding Arbitration Agreement, on the

other hand.  In that case, the Court would need to choose which forum clause to enforce and which to disregard.[6]  This would fail to "give[] effect to every term" of the parties' agreements, contrary to Delaware law.  *See Council of Dorset*, 801 A.2d at 7.

In any case, to the extent there is any doubt about how to construe these provisions, controlling law under the FAA requires that any ambiguities arising from "the construction of the contract language" must be "resolved in favor of arbitration."  *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25; *see Reading Health Sys.*, 900 F.3d at 103 (same); *see also Ross Dress for Less, Inc. v. VIWY, L.P.*, 570 F. App'x 123, 126 (3d Cir. 2014) (applying a "presumption of arbitrability" where two provisions of a contract produce conflicting results as to arbitration).  This principle requires arbitration of the Payment Direction Counterclaims even if the Court finds the Payment Direction Agreement to be somehow ambiguous on its face.

### B.    The Declaratory Judgment Counterclaim Must Be Arbitrated

Javice's Declaratory Judgment Counterclaim in Count I is subject to binding arbitration because it arises from or relates to her former employment by or separation from JPMC.

### 1.    The Declaratory Judgment Counterclaim Seeks A Declaration That Javice "Was Improperly Terminated Under The Employment Agreement" And Related Declarations—And Therefore Is Subject To The Employment Agreement's Binding Arbitration Agreement

All of the relief that Javice demands in paragraphs 110.a–e, 110.g, and 110.h of Count I expressly or implicitly invokes the Employment Agreement.  Specifically, Javice seeks declarations that (i) she "was improperly terminated under the Employment Agreement" (¶ 110.a);

---

[6] In addition, permitting the Payment Direction Counterclaims to proceed in this Court while the parties arbitrate the validity of Javice's termination for "Cause" pursuant to the Employment Agreement would create the "potential for inconsistent rulings."  *Allstate Ins. Co. v. Toll Bros., Inc.*, 171 F. Supp. 3d 417, 436 (E.D. Pa. 2016) (staying court claims pending arbitration).  Courts within the Third Circuit disfavor such risks.  *See id.*

(ii) the Termination Letter pursuant to her Employment Agreement "is null and void" (¶ 110.b); (iii) JPMC "has no basis to terminate Ms. Javice for Cause" pursuant to the Employment Agreement (¶ 110.c); (iv) JPMC "terminated Ms. Javice's employment without Cause" (¶ 110.d); (v) Javice "is entitled to the full value of the Retention Award" under the Employment Agreement, because she was "terminated involuntarily, and the Retention Award's vesting schedule remains intact" (¶ 110.e); (vi) Javice "did not engage in any activity that warrants or warranted" the exercise of the "Clawback Provision" in the Employment Agreement (¶ 110.g); and (vii) "[b]ecause [JPMC] terminated Ms. Javice's employment without Cause and none of the conditions of the Clawback Provision were met, Ms. Javice is not obligated to return $162,500" to JPMC (¶ 110.h).

These claims plainly "arise out of or relate to [Javice's] employment or separation from employment" (BAA § 2). Subparagraphs 110.e, g, and h also constitute "employment-related" claims for "failure to pay wages, bonuses or other compensation" within the Binding Arbitration Agreement. *Id.* These portions of Count I therefore must be arbitrated. *See, e.g.*, *Penn Outdoor Servs. LLC v. JK Consultants*, No. CV 17-2791, 2018 WL 3831398, at *3 (E.D. Pa. Aug. 10, 2018) (compelling arbitration of declaratory judgment claim within arbitration agreement).

### 2. The Payment Direction And Restricted Stock Unit Components Of Javice's Declaratory Judgment Counterclaims Are Subject To Binding Arbitration

The two remaining subparagraphs of Count I also fall within the Binding Arbitration Agreement. First, Javice seeks a declaration that she "is entitled to the full value" of her equity holdout "because JPMC terminated her employment without Cause." ¶ 110.f. In other words, Javice seeks a declaration that she is entitled to the relief sought in her Payment Direction Counterclaims. For the same reasons applicable to those claims, Javice's claim in subparagraph 110.f must be arbitrated because it (i) "arise[s] out of or relate[s] to [Javice's] ... separation from

employment," and (ii) constitutes an "employment-related" claim both for "failure to pay . . . compensation," and for "breach of an express ... contract."  BAA § 2; *see supra* Section III.A.2.

Second, Javice seeks a declaration that she "retains her restricted stock units and any other equity interest in [JPMC], and [JPMC's] cancellation of such shares was invalid."  ¶ 110.i.  This claim arises from the fact that, before uncovering Javice's misconduct, JPMC provided her with an "incentive award[]," in the form of restricted stock units, "in line with [JPMC's] incentive plan practices."  EA at 1.  Javice's claim in paragraph 110.i thus qualifies as an "employment-related" claim for "failure to pay ... compensation" as well as for "breach of [] express ... contract[s]" (BAA § 2), namely (i) the Employment Agreement, and (ii) the JPMorgan Chase & Co. Long Term Incentive Plan, referenced by the Employment Agreement as the "incentive plan" (the "Incentive Plan," Ex. E).[7]  These portions of Count I also must be arbitrated.

## V.   IF JAVICE CONTESTS JPMC'S CONSTRUCTION OF THE BINDING ARBITRATION AGREEMENT, THIS COURT SHOULD DEFER TO AN ARBITRATOR ON THRESHOLD QUESTIONS OF ARBITRABILITY

The Supreme Court has held that "parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence."  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) (citations

---

[7] Notably, the Incentive Plan itself also states in relevant part as follows:

> By accepting this award under the Plan, you agree (and have agreed) that to the extent not otherwise subject to arbitration under an arbitration agreement between you and the Firm [*i.e.*, JPMC], any dispute arising directly or indirectly in connection with this award or the Plan shall be submitted to arbitration in accordance with the rules of the American Arbitration Association.

Incentive Plan at 8.  Thus, the Incentive Plan affirms all applicable arbitration provisions that may exist in contracts with individual employees, such as the Binding Arbitration Agreement.  And even in the absence of such a separate arbitration agreement, the Incentive Plan in any case requires submitting any disputes over restricted stock awards to AAA arbitration.  Javice's claim for the declaration in paragraph 110.i therefore must be arbitrated regardless of whether it arises principally under the Employment Agreement or the Incentive Plan.

omitted).  Here, by the terms of the Binding Arbitration Agreement, Javice clearly and unmistakably agreed that "[a]ny dispute as to the arbitrability of a particular issue pursuant to this Agreement is to be resolved in arbitration."  BAA § 8.  Consequently, to the extent Javice disputes the scope of the Binding Arbitration Agreement, and contends that it does not encompass some or all of her Counterclaims, this Court should permit an arbitrator to resolve the resulting arbitrability dispute.  *See Nidec Corp. v. Seagate Tech. LLC*, No. 21-52-RGA, 2021 WL 3048456, at *2 (D. Del. July 20, 2021) (compelling arbitration where the parties disputed "whether the claims asserted in this case can be arbitrated" because "that is not an issue that I am permitted to resolve per the clear language of the contract").  Of course, if the Court harbors any doubt about whether the delegation clause in the Agreement "clear[ly] and unmistakabl[y]" encompasses all arbitrability questions arising from the Counterclaims, it should simply address those questions directly and resolve them in JPMC's favor, for the reasons explained above.  *Henry Schein*, 139 S. Ct. at 530.

## CONCLUSION

For the reasons set forth above, JPMC respectfully requests an order dismissing all Counterclaims in favor of arbitration, while retaining JPMC's affirmative claims.  *See, e.g., E. Hedinger AG*, 363 F. Supp. 3d at 499–503 (dismissing claims compelled to arbitration pursuant to Rule 12(b)(6)); *Smash v. Dover Downs, Inc.*, 2022 WL 2966431, at *1 (D. Del. July 27, 2022) (same); *see also Deering v. Graham*, 2015 WL 424534, at *4 (D.N.J. Jan. 30, 2015) (compelling arbitration of commercial claims while retaining civil battery and assault claims).  In the alternative, JPMC respectfully requests an order staying the Counterclaims pending arbitration of the causes of action they seek to advance.  *See, e.g., Woodruff v. Dollar Gen. Corp.*, 2022 WL 17752359, at *5 (D. Del. Dec. 19, 2022) (staying proceedings pending arbitration).

Respectfully Submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Tibor L. Nagy, Jr.
Tracy O. Appleton
Jason A. Kolbe
DONTZIN NAGY & FLEISSIG LLP
980 Madison Avenue
New York, NY 10075
(212) 717-2900

William M. Regan
Allison M. Wuertz
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
(212) 918-3000

Dated March 20, 2023

By:  */s/  Jonathan A. Choa*
    Peter J. Walsh, Jr. (#2437)
    Michael A. Pittenger (#3212)
    Jonathan A. Choa (#5319)
    Carla M. Jones (#6046)
    Hercules Plaza
    P.O. Box 951
    Wilmington, DE 19899
    (302) 984-6000
    mpittenger@potteranderson.com
    pwalsh@potteranderson.com
    jchoa@potteranderson.com
    cjones@potteranderson.com

*Attorneys for JPMorgan Chase Bank, N.A.*

21