# Exhibit A

August 1, 2021

Dear Charlie Javice:

We at JPMorgan Chase* (hereinafter, "JPMorgan Chase" or the "Firm") see you as an individual whose continued employment, knowledge and skills are critical to both the successful integration of and on-going growth of TAPD, Inc. d/b/a Frank (the "Merger" or "the Business"). As such, we are pleased to offer you the following offer and retention of employment. This Offer and Retention Agreement ("Agreement") shall be effective as of and is contingent upon, the closing of the Merger and will be subject to the terms and conditions detailed herein and in the attached Appendix I.

## Role within the Firm and Duties

You will be joining the Firm on the closing of the Merger. Your job title will be Managing Director – Head of Student Solutions. You will report directly to Sonali Divilek (the "Reporting Person"), who is currently Head of Digital Channels and Products. Your primary work location will be the Firm's Miami office; however, you will be expected to work from the Firm's New York offices for up to ten business days per month.

You will have the duties, and perform services for the Business and the Firm, as are customarily associated with your current position and as otherwise may be assigned to you (consistent with your position) by the Reporting Person from time to time.

## Compensation

Salary: Your annual base salary will be $300,000.00 (less applicable taxes and deductions). It will cover all the hours you work, keeping in mind that your hours may vary based on business needs. We'll pay you consistent with Chase practices, and your position isn't eligible for overtime.

Incentive Compensation: You will be eligible for annual incentive awards under the JPMorgan Chase Performance-Based Incentive Compensation Plan. We award incentives based on a number of factors, including your individual achievement, the results of your business unit and the overall performance of JPMorgan Chase. Chase has complete discretion over these awards, which will be subject to applicable taxes and the JPMorgan Chase Bonus Recoupment Policy. For the performance year 2021 ("Initial Period"), your target total annual incentive will be $250,000.00.

If you receive an award, you will be paid either in cash or in a combination of cash and forfeitable equity, in line with our incentive plan practices. Any equity portion will be subject to the terms and conditions of the Award Agreement, which will include recovery provisions, non-solicitation and similar covenants. Any cash portion of the award will be paid consistent with Chase practices and will be paid less applicable taxes and withholdings.

If your employment ends or you give us notice of your resignation before the payment date for Incentive Plan awards, you won't be eligible for any payments.

During your employment any commitment as to an amount or timing of an incentive award must be in writing signed by a Managing Director or equivalent of the firm and a human resources officer at the level of Vice-President or above.

In order to receive your Annual Incentive Compensation, the Firm expects you to devote all of your working time and undivided efforts to the success of the Business and meeting certain Key Performance Metrics ("KPIs"). At the end of performance years 2021, 2022, 2023 and 2024, your performance will be evaluated with regard to your progress in meeting the below stated KPIs. Such progression will be determined in the reasonable discretion of the Reporting Person and the Firm. Such KPIs include:

- Deliver on The Frank's growth plans to materially expand its engaged customer user base of 4.25 MM households to 10MM+ households over the next 3 years by delivering innovative solutions and a superior customer experience.

- Expand The Frank's core capabilities by successfully launching the financial wellness content and employee education portals in the first 12 months.

- Build trust in the market and develop Financial Education: College Planning with Chase.

- Partner with JPMorgan Chase to evolve and expand the firm's student focused strategies leveraging the Frank platform – with a particular focus on the Consumer Bank and Card Business synergies inclusive of developing new products for the student segment to support customer acquisition such as a credit builder offering and core bank account offerings.

- Successfully scale new offerings through exclusive growth channels while maintaining customer service levels.

- Partner with JPMorgan Chase's Merger Integration office to develop and deliver against an appropriate integration plan.

- Adhere to the Firm's legal, regulatory and control standards and adhere to the Firm's Code of Conduct.

- Participate in the inspiring, hiring and retention of key talent to support the growth of the business, with a commitment to supporting JPMorgan Chase's broader diversity and inclusion culture and people initiatives.

Nothing herein shall prohibit you from (i) serving on civic or charitable boards or committees so long as you adhere to the Firm's Outside Business Activities and applicable Antitrust policies and procedures; (ii) managing personal investments, so long as such activities: (a) do not interfere with the performance of your responsibilities hereunder and (b) you adhere to the Firm's Personal Account Dealing policies and procedures; and (iii) serving on for profit boards with the consent of the Firm which consent shall not be unreasonably withheld.

## **Retention Award**

In recognition of your value to the Business and to JPMorgan Chase, you will be eligible to receive a special one-time cash retention bonus (the "Retention Award") in an aggregate amount of $20,000,000.00 (less applicable withholdings) subject to (i) you devoting your full business time and attention to the performance of your duties and services hereunder, (ii) your continued employment through each applicable vesting date (as set forth below) and (iii) your continuous compliance with the Firm's Code of Conduct (other than immaterial and inadvertent violations) through each applicable vesting date (as set forth below):

- 1/4 of the Retention Award (equal to $5,000,000.00) will vest one calendar year from the date of closing of the Merger and be paid no later than 30 calendar days thereafter (whether or not you are employed by the Firm on such payment date); and

- an additional 1/4 of the Retention Award (equal to $5,000,000.00) will vest two calendar years from the date of closing of the Merger and be paid no later 30 calendar days thereafter (whether or not you are employed by the Firm on such payment date); and

- the remaining 1/2 of the Retention Award (equal to $10,000,000.00) will vest three calendar years from the date of closing of the Merger and be paid no later than 30 calendar days thereafter (whether or not you are employed by the Firm on such payment date).

The Merger date through three calendar years from the date of closing of the Merger will be referred to herein as the "Retention Award Period".

If your employment is terminated by JPMorgan Chase without Cause, by you as a Good Reason Separation, or due to your Disability, you will receive the full remaining amount of the Retention Award as if all requirements for receiving the payment had been met, provided you have timely executed a general release of claims in a form provided by JPMorgan Chase to similarly situated executives, with such unpaid installments of the Retention Award to be payable on the vesting dates set forth above (or if later, the release effective date), subject to compliance with the covenants set forth herein.

If you resign your employment (other than a Good Reason Separation) or your employment is terminated by JPMorgan Chase with Cause, any remaining amount of the Retention Award that has not yet vested will be forfeited by you, for failing to have met the conditions precedent for such payments.

With respect to any termination of employment during the Retention Award Period, the vesting and payment of the Retention Award will be in lieu of any other applicable severance. As further specified in Appendix I, attached hereto, after the Retention Award Period, you will be eligible to receive severance upon a qualifying termination of employment in accordance with the terms of the JPMC Severance Pay Plan (or any successor plan in effect at the relevant time). "Good Reason Separation", "Cause" and "Disability" are defined in Appendix I, attached hereto.

Additional terms and conditions of this Agreement are detailed in Appendix I (attached hereto) and are incorporated by reference into this letter.

With the formalities covered, let us say again that we look forward to having you join us!  Should you need any further information, please contact Denise McKelvey at denise.h.mckelvey@chase.com.

Sincerely,

*Denise H. McKelvey*

Denise H.  McKelvey
Human Resources Executive, JPMorgan Chase

Acknowledged and Agreed on this **4** day August 2021

Charlie Javice

*Your formal legal employer will be JPMorgan Chase Bank, National Association*

### Appendix I

The following are additional terms and conditions of your Offer and Retention Agreement dated August 1, 2021. The terms and conditions of the Agreement and any definitions used therein are incorporated herein by reference.

### Definitions

"Cause" means (i) an act of fraud or dishonesty or malfeasance in the course of your service to the Firm, (ii) your continued failure to devote your full business time to the good faith performance of your duties and services of your position as set forth above or failure to follow reasonable directives of the Reporting Person (iii) your indictment for, conviction of or plea of guilty or *nolo contendere* to a criminal offense that constitutes a felony, act of dishonesty or other crime of moral turpitude, (iv) violation of any law, rule or regulation (including rules of self-regulatory bodies) related to the Firm's business, (v) a violation of JPMorgan Chase's material policies applicable to you  or JPMorgan Chase's Code of Conduct (other than immaterial and inadvertent violations), (vi) your failure to cooperate with any material investigation authorized by the Firm's Board of Directors, or (vii) any grossly negligent or willful act or failure to act that is materially  injurious to the interests of the Firm or its relationship with a customer, client or an employee. Prior to terminating your employment for Cause pursuant to (i) above, the Firm will provide you notice detailing the basis for the alleged performance deficiencies and providing you a reasonable opportunity to cure such deficiencies.

"Good Reason Separation" means your voluntary separation from service due to, without your consent, (i) a material diminution of your annual base salary, (ii) a material adverse change in your reporting relationship (it being expressly agreed and understood that a change in your reporting relationship to an executive with a corporate title of Managing Director or above shall not constitute a basis for a Good Reason Separation), title or duties as set forth herein, (iii) any action or inaction that constitutes a material breach by the Firm of any of the material terms hereof, or (iv) the relocation of your place of work by more than 50 miles from your present location. You must give notice to JPMorgan Chase of the existence of any of the conditions described in this paragraph within 30 days of the initial existence of the condition, upon the notice of which JPMorgan Chase has 30 days during which it may remedy the condition and not be required to pay the remaining portions of the Retention Award if you terminate your employment within such 30 day period.

"Disability" means you are unable to engage in or perform your normal duties by reason of any medically determinable physical or mental impairment that can be expected to result in death or can be expected to last for a continuous period of not less than six months, and you have been determined to be disabled by the Social Security Administration.

If you die during the Retention Award Period while employed by JPMorgan Chase, the portion of the Retention Award (if any) that would have vested during the 12 months immediately following the date of your death will vest as if all requirements for receiving such portion of the Retention Award had been met and be paid to your estate, less applicable withholding and subject to your estate's timely execution of a general release of all claims in a form provided by JPMorgan Chase to similarly situated executives.  Any vested portion of the Retention Award will be paid in a lump sum as soon as reasonably practicable after the effective date of the release.  Any other unvested portions (if any) of the Retention Award will be forfeited.

### Severance

During the Retention Award Period, in the event that your employment is terminated for any reason, you will not be entitled to severance under any plan, policy or practice of the Firm.  Commencing on August 1, 2024, you will be eligible to receive severance upon a qualifying termination in accordance with the terms of the JPMC Severance Pay Plan (or other plan in effect at the relevant time).

### Clawback; Recapture

Notwithstanding any terms of this Agreement to the contrary, JPMorgan Chase reserves the right in its sole discretion to cancel up to 100% of your Retention Award or any Target Bonus paid to you and to recover from you up to an amount equal to the portion of the Retention Award or any Target Bonus paid to you (including amounts withheld for tax purposes) if the Firm in its sole discretion determines that:

- you engaged in conduct detrimental to the Firm insofar as it causes material financial or reputational harm to the Firm or its business activities, or
- the payments made to you were based on materially inaccurate performance metrics, whether or not you were responsible for the inaccuracy, provided that this bullet point does not apply to the Retention Award, or
- this award was based on a material misrepresentation by you, or
- your employment was terminated for Cause (as defined above) or, in the case of a determination after the termination of your employment, that your employment could have been terminated for Cause, or
- you committed a fraudulent act, or engaged in knowing and willful misconduct related to your employment that is materially  injurious to the interests of the Firm or its relationship with a customer, client or an employee, or
- you violated any of the Confidentiality, Non-Compete or Non-Solicit provisions set forth below, other than an immaterial and inadvertent failure to comply which is promptly remedied if subject to cure (as determined by JPM) and is not repeated.

You agree that any repayment will be a lawful recovery under the terms and conditions of this letter and is not to be construed in any manner as a penalty. JPMorgan Chase will exercise its right to recover from you any portion of the Retention Award by seeking enforcement of such rights in accordance with the Binding Arbitration Agreement attached hereto as Appendix IV, provided that you may exercise your right to dispute JPMorgan Chase's determination under this section in any such arbitration.

**Section 409A Compliance**

To the extent that Section 409A of the Internal Revenue Code is applicable to any payment described in this letter, the payment is intended to comply with Section 409A, and this letter shall be interpreted in a manner consistent with that intent.

**Next Steps**

Following the closing of the Merger, within 14 days after the Merger date, you agree to complete and cooperate with the Firm's typical pre-employment screening processes. They include various background checks, fingerprint processing, as well as several onboarding forms. Your continued employment is based on you successfully completing all pre-employment processes. If you fail to successfully or satisfactorily complete these pre-employment processes, this letter and your employment will terminate automatically, and you will not be entitled to any portion of the Retention Award.

**Prior Employment**

By accepting this offer, you represent that you are not subject to any written or oral agreement, prohibiting or restricting you from competing with a prior employer or from soliciting any of a prior employer's customers or employees or from otherwise functioning in the position you have been offered. You further understand and agree that you may not disclose to the Firm or use in connection with your employment at the Firm any protected trade secrets or protected confidential or proprietary materials of another entity.

**Other benefits**

We offer a comprehensive benefits program to our U.S. benefits-eligible employees, including health care and insurance plans, a cash balance pension plan, a 401(k) plan, and discounted JPMorgan Chase products. In addition, you will be eligible for paid time off, including vacation, based on your role and time working for us.

We provide some of our benefits materials electronically - by e-mail or on the company Intranet, which is accessible from work or from home. When you accept this offer, you agree to receive documents for the JPMorgan Chase Benefits  Program electronically. This includes the summary plan descriptions, plan prospectuses and other documents. You may request a paper copy for a benefit plan at any time. The contact information you will need for each benefits plan is available in the Highlights of the JPMorgan Chase U.S. Benefits Program under a section called Benefits at a Glance. After completion of the Onboarding process, we will make this information available to you on our My Welcome site which is covered in more detail in the Next Steps section of this offer letter.

**Confidentiality**

You will not, either during your employment with the Firm or thereafter, directly or indirectly (i) use or disclose to anyone any confidential information related to the Firm's business, or (ii) communicate with the press or other media about matters related to the Firm, its customers or employees, including matters and activities relating to your employment, or the employment of others, by the Firm, in the case of either (i) or (ii), except as explicitly permitted by the JPMorgan Chase Code of Conduct and applicable policies or law or legal process. In addition, following your termination of employment, you will not, without prior written authorization, access the Firm's private and internal information through telephonic, intranet or internet means. "Confidential information" shall have the same meaning for this letter as it has in the JPMorgan Chase Code of Conduct.

Nothing in this letter precludes you from reporting to the Firm's management or directors, the government, a regulator, a self-regulatory agency, your attorneys or a court, conduct you believe to be in violation of the law or concerns of any known or suspected Code of Conduct violation. It is also not intended to prevent you from responding truthfully to questions or requests from the government, a regulator or in a court of law.

**Non-Competition**

During your employment by the Firm and for a two year period following the termination of your employment (the "Non-Competition Period"), you will not, directly or indirectly, engage in any business related to student financial services, including but not limited to such businesses that that markets, provides, administers or makes available student financial services, student financial lending, student financial aid, student financial aid processes, or the same or similar products or services you are directly or indirectly responsible for at the Firm (whether as of the date hereof or during the Non-Competition Period), anywhere in the world that the Business is doing business. For purposes of this section, the phrase "directly or indirectly, engage in" shall include any direct or indirect ownership or profit participation interest in such enterprise, whether as an owner, stockholder, partner, joint venture or otherwise, and shall include any direct or indirect participation in such enterprise as an employee, consultant, licensor of technology or otherwise; provided, however, that nothing in this letter shall prohibit you from being a passive owner of not more than 5% of the outstanding stock of any class of a corporation which is publicly traded, so long as you have no active participation in the business of such corporation.

**Non-Solicitation**

During your employment by the Firm and for a three year period following the termination of your employment, you will not directly or indirectly, whether on your own behalf or on behalf of any other party, without the prior written consent of the Director of Human Resources: (i) solicit, induce or encourage any of the Firm's then current employees to leave the Firm or to apply for employment elsewhere, unless such current employee has received official, written notice that his or her employment will be terminated due to job elimination, (ii) hire any employee or former employee who was employed by the Firm at the date your employment terminated, unless the individual's employment terminated because his or her job was eliminated, or the individual's employment with the Firm has been terminated for more than six months, (iii) to the fullest extent enforceable under applicable law, solicit or induce or attempt to induce to leave the Firm, or divert or attempt to divert from doing business with the Firm, any then current customers, suppliers or other persons or entities that were serviced by you or whose names became known to you by virtue of your employment with the Firm, or otherwise interfere with the relationship between the Firm and such customers, suppliers or other persons or entities. This does not apply to publicly known institutional customers that you service after your employment with the Firm without the use of the Firm's confidential or proprietary information.

These restrictions do not apply to authorized actions you take in the normal course of your employment with the Firm, such as employment decisions with respect to employees you supervise or business referrals in accordance with the Firm's policies.

**Non-Disparagement**

You will not, either during your employment with the Firm or thereafter, make or encourage others to make any public statement or release any information in verbal, written, electronic or any other form, that is intended to, or reasonably could be foreseen to, disparage, embarrass or criticize the Firm or its employees, officers, directors or shareholders as a group. This shall not preclude you from reporting to the Firm's management or directors or to the government or a regulator conduct you believe to be in violation of the law or the Firm's Code of Conduct or

responding truthfully to questions or requests for information to the government, a regulator or in a court of law in connection with a legal or regulatory investigation or proceeding.

**Firm Policies and Procedures**

This offer of employment is subject to all the terms, conditions and attachments included in this document, the Binding Arbitration Agreement and all Firm policies and procedures, including but not limited to the JPMorgan Chase Code of Conduct, and the Intellectual Property Policy.

**Employment Relationship**

Your employment is at-will, which means that either you or the Firm may terminate your employment at any time, for any or no reason. Your employment is subject to the Firm's policies and procedures, including the JPMorgan Chase Code of Conduct as in effect from time to time during your employment. It is your responsibility to read and understand these policies and, if you have any questions now or in the future it is your responsibility to make the appropriate inquiries.

This letter contains the entire understanding between us and replaces and supersedes any prior verbal or written communication, including any prior employment agreement, offer letter and/or severance agreement (including, for the avoidance of doubt, your employment agreement with the Business which was not assumed by the Firm in the Merger), related to terms and conditions of your employment or termination thereof. This offer can only be modified in writing signed by the parties referring specifically to this letter. In the event the closing of the Merger does not occur, the Merger agreement is otherwise terminated or your employment with the Business is terminated prior to the closing of the Merger, this letter shall be null and void and of no further force or effect.

I hereby agree to this Appendix I:

Date: _____ 08/04/2021 _____

Signature: _____

Name: _____ charlie javice _____

**Appendix II: Systems Monitoring Activities and Cross-Border Transfers**

The following provides a summary of how JPMorgan Chase & Co., its affiliates and its subsidiaries and the entity that employs you, or for which you provide services (collectively, "JPMC"), conducts Systems monitoring.  JPMC may conduct monitoring to the extent permitted by applicable law.

JPMC conducts monitoring of JPMC's physical facilities and its equipment and systems (collectively, the "Systems").  System monitoring applies to your JPMC equipment, your personal equipment when accessing the Systems, and the communications, information, and materials conveyed or accessed using the Systems.  Monitoring activities may include the monitoring and logging of traffic and usage data of all .electronic communications; monitoring of telephone calls to or from JPMC work telephones as permitted by applicable laws and subject to any required notices; monitoring of the contents of electronic communications, files, databases, applications, and internet usage; and logging hours worked and physical presence at JPMC's facilities if applicable.  JPMC may at all times monitor, access, retrieve, record and review information obtained from the monitoring activities for various purposes, such as preventing and investigating activities that may violate JPMC's policies and ensuring compliance with legal or regulatory obligations. While conducting monitoring activities, JPMC may obtain and process personal information about you and others that may reside on the Systems.

The monitoring activities (including JPMC's collection and processing of personal or other information) are required for purposes of your employment or work assignment to promote adherence to applicable policies and regulations.  Subject to applicable laws and regulations, if you object to this processing, JPMC may prohibit you from using the Systems; terminate offers of employment or work assignment; and, for employees, take disciplinary action against you, up to and including termination of your employment with JPMC.

JPMC may disclose the information it obtains in connection with monitoring activities to JPMC affiliates and to third parties, service providers, regulators, supervisory bodies, law enforcement and other government agencies. Information obtained from the monitoring activities may be used as the basis to take disciplinary actions, up to and including termination or other legal action, for violations of JPMC's policies or applicable laws.

In addition to the monitoring activities discussed above, JPMC may obtain and store other information related to your employment or other working relationship, such as your compensation information, performance information, benefits information and other workplace-related data.  JPMC may transfer such information, and the information it obtains in connection with monitoring activities, to countries other than the country in which the information originally was collected, including to the United States.

**Appendix III**

**Acceptance and Code Affirmation:**

Upon signing this letter, I accept the terms described above. I also affirm that I have read and understand the JPMorgan Chase Code of Conduct and agree as a condition of employment to comply with the Code as amended and revised from time to time.

- I understand that I can access the Code via the Internet at http:// www. jpmorganchase .com >About Us>Governance>Code of Conduct prior to joining the firm, and through the firm's intranet once I begin employment.
- I acknowledge that the Code requires that certain outside activities are approved in writing after I begin employment, and I agree that, if any such required approval is denied, I will cease the relevant activity immediately.
- As a JPMorgan Chase employee I understand that the Code requires me to report any known or suspected violation of the Code, of internal firm policies, or of laws or regulations applicable to the firm's business. I understand that failure to do so can result in disciplinary action up to and including termination of employment.
- I understand that all employees have post-employment responsibilities regarding confidential information.
- I acknowledge that the Code also requires that I safeguard confidential information, including anything that I created while working for my previous employer(s). I understand that I am not allowed to bring any of this with me to use at JPMorgan Chase or disclose any confidential information from a prior employer unless it has already been made public through no action of my own.
- I understand my offer of employment is contingent upon a determination by JPMorgan Chase that neither the offer nor my employment would violate, or create the appearance of violating, the firm's Code of Conduct, Anti- Corruption Policy, or Human Resources policies and practices, or any applicable laws or regulations
- I understand further if I am a Senior-Level Employee*, that Senior-Level Employees have certain additional responsibilities that continue after their employment with the firm terminates, including restrictions on solicitation and hiring of the firm's employees and solicitation of certain customers. I understand that I am responsible for knowing which post-employment responsibilities apply to me and I agree to comply with all applicable requirements.

*The term "Senior-Level Employee" is currently defined as any employee whose (a) annual base salary rate is US$150,000 (or the local currency equivalent) or higher, OR (b) annual total cash compensation is US$250,000 (or the local currency equivalent) or higher.*

**Independent Auditor Tax Services to Employees of JPMorgan Chase and its Affiliates:**

To be in compliance with the Public Company Accounting Oversight Board (PCAOB) Rule 3523, it is JPMorgan Chase's (JPMC) policy that PricewaterhouseCoopers (PwC) cannot provide any tax services to employees of JPMC or any of its controlled entities (hereafter referred to as JPMC employee). This restriction is regardless of whether the individual is in a financial reporting oversight role or not, and whether PwC is engaged by the individual or by JPMC. PwC is also prohibited from providing any tax services to a spouse of a JPMC employee if the work is related to a joint tax return. Exceptions to this policy will be reviewed on a case-by-case basis and will require the approval of the JPMC Controller.

I understand my employment is subject to my and JPMorgan Chase's agreement to submit employment-related disputes that cannot be resolved internally to binding arbitration, as set forth in the Binding Arbitration Agreement detailed below. By signing below, I acknowledge and agree that I have read and understand the Binding Arbitration Agreement, have accepted its terms and understand that it is a condition of my employment with JPMorgan Chase.

_____        08/04/2021
                                       _____
Charlie Javice                         Date

**Appendix IV**

**BINDING ARBITRATION AGREEMENT:**
JPMorgan Chase believes that if a dispute related to an employee's or former employee's employment arises, it is in the best interests of both the individual and JPMorgan Chase to resolve the dispute without litigation. Most such disputes are resolved internally through the Firm's Open Communication Policy. When such disputes are not resolved internally, JPMorgan Chase provides for their resolution by binding arbitration as described in this Binding Arbitration Agreement ("Agreement"). "JPMorgan Chase" and the "Firm" as used in this Agreement mean JPMorgan Chase & Co. and all of its direct and indirect subsidiaries.

This Agreement will be governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq.

As a condition of and in consideration of my employment with JPMorgan Chase & Co. or any of its direct or indirect subsidiaries, I agree with JPMorgan Chase as follows:

**1.   SCOPE:** Any and all "Covered Claims" (as defined below) between me and JPMorgan Chase (collectively "Covered Parties" or "Parties", individually each a "Covered Party" or "Party") shall be submitted to and resolved by final and binding arbitration in accordance with this Agreement.

**2.   COVERED CLAIMS:** "Covered Claims" include all legally protected employment-related claims, excluding those set forth below in Paragraphs 3 and 4 of this Agreement, that I now have or in the future may have against JPMorgan Chase or its officers, directors, shareholders, employees or agents which arise out of or relate to my employment or separation from employment with JPMorgan Chase and all legally protected employment-related claims that JPMorgan Chase has or in the future may have against me, including, but not limited to, claims of employment discrimination or harassment if protected by applicable federal, state or local law, and retaliation for raising discrimination or harassment claims, failure to pay wages, bonuses or other compensation, tortious acts, wrongful, retaliatory and/or constructive discharge, breach of an express or implied contract, promissory estoppel, unjust enrichment, and violations of any other common law, federal, state, or local statute, ordinance, regulation or public policy, including, but not limited to Title VII of the Civil Rights Act of 1964, the Civil Rights Acts of 1866 and 1991, the Age Discrimination in Employment Act of 1967, the Older Workers Benefit Protection Act of 1990, the Rehabilitation Act of 1973, the Americans with Disabilities Act of 1990, the Family and Medical Leave Act of 1993, the Fair Labor Standards Act of 1938, the Equal Pay Act of 1963, Section 1981 of the Civil Rights Act, and the Worker Adjustment and Retraining Notification Act.

**3.   EXCLUDED CLAIMS:** This Agreement does not cover, and the following claims are not subject to arbitration under this Agreement: (a) any criminal complaint or proceeding, (b) any claims covered by state unemployment insurance, state or federal disability insurance, and/or state workers' compensation benefit laws, except that claims for retaliation pursuant to these laws shall be subject to arbitration under this Agreement, (c) any claim under the National Labor Relations Act and (d) claims for benefits under a plan that is governed by Employee Retirement Income Security Act of 1974 ("ERISA").

Further, this Agreement also does not cover any action seeking only declaratory and/or emergency, temporary or preliminary injunctive relief (including a temporary restraining order) in a court of competent jurisdiction in accordance with applicable law, so long as that action is brought on an individual basis and not on a consolidated basis or as part of a collective or class action, and subject to the following:

- In the event such relief is sought by a Covered Party, who is not otherwise subject to the arbitration requirements of the Financial Industry Regulatory Authority ("FINRA"), after the court issues a ruling concerning emergency, temporary or preliminary injunctive relief, the parties must submit such claim if otherwise considered a Covered Claim to arbitration pursuant to this Agreement, and
- In connection with any such action related to post-employment restrictions (e.g., actions to enforce rights to trade secrets, or agreements not to compete or solicit customers or employees) on a Covered Party who is otherwise subject to the arbitration requirements of FINRA (absent this Agreement), in order for the Covered Parties to have available to them the expedited arbitration procedures provided by FINRA, after the court issues a ruling concerning emergency, temporary or preliminary injunctive relief, the parties must submit such claim if otherwise considered a

Covered Claim to arbitration before FINRA in accordance with its expedited arbitration procedures under FINRA Rule 13804.

**4.   CLASS ACTION/COLLECTIVE ACTION WAIVER:** All Covered Claims under this Agreement must be submitted on an individual basis. No claims may be arbitrated on a class or collective basis unless required by applicable law. Covered Parties expressly waive any right with respect to any Covered Claims to submit, initiate, or participate in a representative capacity or as a plaintiff, claimant or member in a class action, collective action, or other representative or joint action, regardless of whether  the action is filed in arbitration or in court  . Furthermore, if a court orders that a class, collective, or other representative or joint action should proceed, in no event will such action proceed in the arbitration forum, subject to applicable law. Claims may not be joined or consolidated in arbitration with disputes brought by other individual{s), unless agreed to in writing by all parties or required by applicable law. To the extent there is a question of enforceability of class or collective arbitration, it shall be decided only by a court, not an arbitrator.

The arbitrator's authority to resolve disputes and make awards under this Agreement is limited to disputes between: (i)   an individual and JPMorgan Chase; and (ii) the individual and any current or former officers, directors, employees and agents, if such individual is sued for conduct within the scope  of his or her employment.  No arbitration award or decision will have any preclusive effect as to issues or claims in any dispute with anyone who is not a named party to the arbitration.

I retain the right to challenge the validity of this Agreement upon grounds that may exist at law or equity and will not be subject to any form of retaliation for asserting such rights.

**5.   ADMINISTRATIVE AGENCIES:** I understand that this Agreement does not preclude me from filing an administrative claim or charge with the Equal Employment Opportunity Commission ("EEOC") and/or state and local human rights agencies to investigate alleged violations of laws enforced by the EEOC or those agencies. However, I understand that I am not required to initiate an administrative proceeding before pursuing a Covered Claim under this Agreement. In the event I file such an administrative proceeding, I understand that I cannot pursue Covered Claims under this Agreement without first exhausting all required administrative remedies, such as obtaining a right to sue notice from the EEOC in order to arbitrate federal discrimination claims that require such a notice. By responding to administrative agencies, JPMorgan Chase does not waive its right to enforce this Agreement and the arbitrator shall treat a decision of an administrative agency in the same manner as it would be treated by a court of law.

**6.   INITIATING ARBITRATION:** Arbitration under this Agreement shall be conducted before a single neutral arbitrator of the American Arbitration Association ("AAA")(unless the Parties agree upon another mutually acceptable arbitrator, in which case the arbitration  will be conducted before such mutually acceptable  arbitrator) in accordance  with and selected pursuant to the rules and procedures of the Employment Arbitration Rules of the AAA ("AAA Rules") to the extent the AAA Rules do not conflict with the terms of this Agreement or applicable law. The AAA Rules will govern issues not explicitly addressed by this Agreement. Where there is a conflict between this Agreement and the AAA Rules, this Agreement will govern. Where there is a conflict between applicable law and the AAA rules and/or this Agreement, the applicable law will govern. I understand that arbitration under this Agreement will occur in the state where I am currently or was most recently employed by the Firm, unless otherwise agreed by the Parties. Information about AAA is available from its website www.ad r.org. A Covered Party may contact them directly at 1-800-778-7879. A Covered Party who is otherwise subject to the arbitration requirements of FINRA who wishes to pursue arbitration of a Covered Claim, must file such Covered Claim with AAA (or other mutually acceptable arbitrator), except as otherwise provided in Paragraph 3 of this Agreement.

To initiate arbitration:

- A Covered Party must send a written demand for arbitration to any office of the AAA (or if another mutually acceptable arbitrator has been agreed to by the Parties, to the offices of such other arbitrator). The Covered Party submitting the demand for arbitration must also simultaneously send a copy of the written demand for arbitration to the other Party  (if  being sent to JPMorgan Chase, the copy should be sent to  the following address: JPMorgan Chase & Co. Legal Department, c/o Legal Papers Served, 4 Chase Metrotech Center, Floor 18, Brooklyn, NY 11245).
- Both of the following must be included in the demand for arbitration:

(a)     A statement of the nature of the dispute, including the alleged act or omission at issue, the names of the parties involved in the dispute, the amount in controversy, if any, the remedy sought to resolve the issue (including the dollar amount, if any), the mailing address for future correspondence and the legal counsel, if any, and

(b)     Any required filing fee. If a Covered Claim is filed by me, the filing fee is $100 payable by check, money order or any other method of payment permitted by the AAA (or another mutually acceptable arbitrator agreed to by the parties). In the event the filing fee required by the state or federal court in which the Covered Claim could have been brought is less than $100, JPMorgan Chase agrees to refund to me the difference between $100 and such state or federal court filing fee within 30 days of receiving notice of payment. Any demand received by the AAA (or another mutually acceptable arbitrator agreed to by the Parties) that is not accompanied by the required filing fee will be returned.

Nothing in this Agreement releases a Covered Party from any obligation to comply with timely filing requirements and statutes of limitations under applicable law, statutes, or regulations. Thus, whether or not a Covered Party chooses to file with administrative agencies, his/her arbitration must still be initiated as an arbitration within the applicable administrative, statutory or judicial filing time frame, as required by law, and the demand for arbitration must be received at the address above within the time period allowed pursuant to the statute, regulation or other law applicable to the alleged act or omission giving rise to the dispute.  Nothing in this Agreement is intended or should be construed to shorten or extend the statute(s) of limitations and/or filing periods that exist under applicable law.

The submission and timing of any response to an arbitration demand shall be in accordance with AAA's Rules, which currently provides that a response be filed within 15 days after the date of the letter from the AAA (or other mutually agreed upon arbitrator) acknowledging receipt of the demand for arbitration.

**7.   ARBITRATION PROCEEDINGS:** The arbitrator will conduct the hearing as expeditiously as possible, while ensuring that all Parties have the opportunity to present evidence and arguments and ensuring that the Agreement is followed. The arbitrator will set the date, time, and place of the hearing, and AAA (or other arbitration provider mutually agreed to by the parties) will notify the Parties at least 30 calendar days in advance, unless the Parties otherwise agree. In the event the hearing cannot reasonably be completed in one day, the arbitrator will schedule the hearing to be continued on a date or dates that is/are convenient to both Parties. The arbitrator will make every effort to select a reasonably convenient location for the continued arbitration, without incurring additional expense,  if possible.

**(a) Fees:** All ordinary and reasonable administrative expenses of the arbitration, including fees for a single arbitrator, hearing room expenses, travel expenses of the arbitrator, the AAA representatives (if applicable), and any witnesses produced at the arbitrator's specific request and not otherwise called by a party, will be paid completely by JPMorgan Chase. The fees and expenses of any witness, expert, consultant, interpreter and others retained or consulted by a party shall be paid by the party requiring the presence of such persons, subject to applicable law.   JPMorgan Chase will not pay for fees or costs incurred as a result of deliberate and inappropriate delay or absence caused by employees or their counsel, as determined by the arbitrator and permitted by applicable law. Except as otherwise provided by law, all attorney's fees shall be paid by the party that incurs them.  Nothing in this Agreement is intended or should be construed to require employees to bear any type of expense that they would not otherwise bear if the Parties were to litigate a Covered Claim in a court of law.

**(b) Legal Representation and Language Interpreter:** The Parties (if desired) may use the services of legal counsel and/or a language interpreter. The Parties utilizing such services are responsible for making and paying all fee and other arrangements directly with the legal counsel and/or interpreter, subject to applicable law. Nothing in this Agreement is intended or should be construed to require employees to bear any type of expense that they would not otherwise  bear if the Parties were to litigate a Covered Claim in a court of law.

**(c) Attendance at and Confidentiality of Arbitration Hearing:** The Covered Party, a JPMorgan Chase corporate representative of its choosing, and the arbitrator must be present at the hearing. In addition, an official recorder and legal counsel (for any party) also may attend the hearing. Further, the Parties may call witnesses to testify at the arbitration. Unless the Parties agree otherwise, the arbitrator shall exclude witnesses (other than the

represented Parties) from the hearing during the testimony of any other witness. The arbitrator, the Parties and their representatives must maintain the confidentiality of the hearings unless the law provides otherwise.

**(d) Discovery:** Discovery requests and the provision of discovery must be consistent with this Agreement, general standards of due process, the Rules of AAA and the expedited nature of arbitration. The guidelines below are only guidelines, do not establish a minimum or maximum of discovery, and will be applied subject to these principles. Thus, there may be cases which warrant more or less discovery than that outlined below.

- At least 20 days before the arbitration hearing, the Parties must submit the names and addresses of the witnesses each Party intends to produce and any documents each party intends to present. The Parties may add to such information up to 10 days before the hearing. All such submissions are final after that point absent a finding of good cause by the arbitrator.
- In general, the Parties may take the depositions of all expert witnesses and up to 3 other individuals. Any individual who certifies he/she has no direct knowledge of the facts should not be deposed as a fact witness. At least 10 days' prior notice should be given by the Party requesting a deposition and advance efforts should be made to mutually agree on deposition dates, including the time and place for any depositions to be taken. The Party requesting the deposition is responsible for all related costs for that deposition. Discovery must be completed at least 20 days before the hearing. The arbitrator may alter the timing and scope of discovery as necessary or upon request of the Parties.
- The arbitrator will resolve discovery disputes and may expand or restrict the scope of discovery within his or her reasonable discretion, and the rules of AAA consistent with the expedited nature of arbitration.

**(e) Pre-hearing Motions:** The arbitrator is authorized to consider and rule on pre-hearing motions, including discovery motions, motions to dismiss and summary judgment on the claims, provided that the other Party has reasonable notice and time to respond to any such prehearing motions. Any dispute which fails to state a claim upon which relief may be granted under applicable law (including, but not limited to claims that are barred by the applicable statute of limitations or mandated timeframe for filing such claim, or that are barred by an enforceable release, or involve a claim against someone who was not associated with the conduct at issue) is subject to dismissal without an evidentiary hearing. Any ruling regarding such motion shall be made consistent with the Form of Decision and Scope of Relief sections in this Agreement.

**(f) Time of Decision:** The arbitrator will make the decision within 30 days of the close of the hearing or as soon as possible thereafter, unless otherwise agreed to by the Parties or otherwise specified by law.

**(g) Form of Decision:** The decision will be in writing and signed by the arbitrator. Unless otherwise agreed to by the Parties, the decision will include a summary of claims arbitrated and decided, a reasoned opinion setting forth any findings of fact or conclusions of law, and damages and other relief (if any) granted. All decisions shall be executed in the manner required by law. The decision will be final and binding upon the Parties, and appeal of the decision to a court shall be limited as provided by the FAA.

**(h) Scope of Relief:** The arbitrator may grant any remedy or relief that would have been available to the Parties had the matter been heard in court, including the award of monetary damages and the imposition of requirements on the Parties (including injunctive relief), as permitted by applicable law. The arbitrator may award only such relief as may be granted for a Covered Claim brought in court on an individual basis under applicable law. The arbitrator may award punitive or exemplary damages or attorneys' fees as provided or limited by applicable law. Nothing in this Agreement is intended or should be construed to limit the remedies that otherwise would be available to the Parties in a court of law.

**(i) Enforcement of Arbitration Decision/Judicial Procedure:** The decision of the arbitrator may be enforced under the terms of the FAA to the maximum extent possible. Either Party may have an arbitration decision enforced in a court of law in accordance with applicable the FAA. If this occurs, neither the arbitrator nor AAA will be involved in the court proceedings.

If a court determines that the decision is not completely enforceable, it will be enforced and binding on both parties to the maximum extent permitted by law.

**8.   SEVERABILITY:** If any part of this Agreement is held to be void or unenforceable, the remainder of the Agreement will be enforceable and any part may be severed from the remainder as appropriate, to the extent permitted by law. For example, if a court determines that a particular provision of this Agreement is in conflict with a mandatory provision of applicable law in that jurisdiction, such provision(s) will not be enforced in that jurisdiction, but the exclusivity of the Agreement and its use of arbitration as the sole and exclusive forum for all Covered Claims within its scope shall not be affected. Any dispute as to the arbitrability of a particular issue or claim pursuant to this Agreement is to be resolved in arbitration. Notwithstanding the foregoing, any issue concerning the validity of the class, collective, or representative or joint action waiver provided in Paragraph 4 of this Agreement must be decided by a court with jurisdiction over the Parties, and an arbitrator does not have authority to consider the issue of the validity of the waiver. If for any reason the class, collective, or representative or joint action waiver is found to be unenforceable, the class, collective, or representative or joint action may only be heard in court and may not be arbitrated under this Agreement

**9.   AMENDMENT OR TERMINATION OF AGREEMENT:** JPMorgan Chase reserves the right to amend, modify or discontinue this Agreement at any time in its sole discretion to the extent permitted by applicable law. Such amendments may be made by publishing them on the JPMorgan Chase Intranet or by separate notification to me and shall be effective 30 calendar days after such amendments are provided to me and will apply on a going-forward basis only. Amendment, modification or discontinuation of the Agreement will not affect pending arbitration proceedings. Continuation of my employment after receiving such amendments or modifications will be considered my acceptance of the amended terms.

This Agreement does not alter the voluntary ("at will") nature of my employment relationship with the Firm, nor does it afford any rights or remedies not otherwise available under applicable law. Of course, this Agreement does not require that JPMorgan Chase initiate arbitration before taking corrective action of any kind, including termination of employment.

_____
Charlie Javice

Date:  08/04/2021

# Exhibit B

**AMENDED AND RESTATED**

**PAYMENT DIRECTION AGREEMENT**

September 14, 2021

Charlie Javice 2021 Irrevocable Trust #3
400 Alton road #2010
Miami Beach, FL 33139

Charlie Javice
400 Alton road #2010
Miami Beach, FL 33139

To Whom It May Concern:

This Amended and Restated Payment Direction Agreement (this "***Agreement***") amends and restates that certain Payment Direction Agreement (the "***Prior Agreement***") dated as of August 8, 2021, by and among Charlie Javice ("***Service Provider***"), TAPD, Inc. d/b/a Frank (the "***Company***"), and JPMorgan Chase Bank, National Association ("***Parent***"). Concurrently with the execution of the Prior Agreement, the Company has entered into an Agreement and Plan of Merger (the "***Merger Agreement***") with Parent and Finland Merger Sub, Inc. ("***Merger Sub***"), a wholly-owned subsidiary of Parent, whereby the Company will merge with Merger Sub and become a subsidiary of Parent (the "***Merger***"). Capitalized terms not defined herein shall have the meaning ascribed to them in the Merger Agreement.

This Agreement sets forth the instruction of Charlie Javice 2021 Irrevocable Trust #3 ("***Trust***") to Parent to allow Parent to withhold from the final payment mechanics a portion of Trust's consideration in respect of In-the-Money Vested Options as set forth in **Appendix A** to this Agreement (the "***Retained Amount***") that is contingent upon the closing of the Merger (the "***Effective Time***").

This Agreement will immediately and automatically terminate, be withdrawn and be of no further force or effect upon the earlier of (a) the termination of the Merger Agreement in accordance with its terms, and (b) the mutual written consent of the parties hereto.

In order to induce Parent to consummate the Merger, Service Provider and Trust hereby agree that:

A.     At the Effective Time, notwithstanding the terms of the Merger Agreement, Trust hereby authorizes, agrees and confirms that the Retained Amount shall be retained by Parent and not paid out pursuant to the terms of the Merger Agreement.

B.     Trust hereby acknowledges and affirms that, notwithstanding its instructions in Section A and the other provisions of this Agreement, that all of the consideration payable to Trust

1

pursuant to the Merger Agreement will be deemed to have been received by Trust at the Closing, and that the Company shall treat all consideration in respect of Trust's In-the-Money Vested Options as being received by Trust at the Closing. Accordingly, Trust hereby authorizes the Company to, as of the Closing, (i) treat as taxable compensatory income to Trust reportable on Form W-2 for the calendar year of the Closing the full amount of the Retained Amount and (ii) satisfy all tax deductions and withholdings therefrom as are reasonably determined by the Company to be required at such time under applicable law (all such amounts, the "***Applicable Tax Withholding***"). Trust's right to receive the Retained Amount on the Retained Amount Release Date (as defined below) or such earlier date as provided in Section D below, if applicable, shall only consist of the right to receive the excess of (i) the Retained Amount, <u>less</u> (ii) the Applicable Tax Withholding and, for the avoidance of doubt, such amounts shall not be treated as taxable compensatory income to Trust or Service Provider reportable on a Form W-2, Form 1099 or otherwise, for the calendar year of the Retained Amount Release Date.

C.     Subject to the terms of this Agreement, the Retained Amount shall only become due and payable by Parent to Trust if Service Provider remains employed with the Parent or any affiliate of Parent through the second anniversary of the date of the Effective Time (the "***Retained Amount Release Date***"). The Retained Amount, if earned, shall be paid by, or on behalf of, Parent to Trust by wire instructions provided by Trust to Parent within fifteen days of the Earn Date. Trust hereby acknowledges and agrees to the foregoing and authorizes the Purchaser to withhold the Retained Amount until it is required to be paid pursuant to this Section C and the other provisions of this Agreement.

D.     If Service Provider's employment with Parent or an affiliate of Parent terminates after the Effective Time but at any time prior to when the Retained Amount is earned and paid in accordance with <u>Section B</u> (i) by Parent or an affiliate of Parent without "Cause" (as defined in the Offer and Retention Agreement by and between Service Provider and the Parent dated as of August 7, 2021 (the "***Employment Agreement***")) or (ii) by Service Provider for "Good Reason" (as defined in the Employment Agreement), then Trust will remain eligible for and will be entitled to receive the Retained Amount. If the Retained Amount is earned pursuant to this <u>Section D</u>, then it shall be paid by, or on behalf of, Parent to Trust by wire instructions provided by Trust to Parent within fifteen days following Service Provider's termination of employment.

E.     Other than as explicitly provided in this Agreement, nothing in this Agreement shall be deemed to amend, waive or modify any of the provisions of the Merger Agreement.

F.     Article 9 of the Merger Agreement is hereby incorporated by reference, *mutatis mutandis*.

G.     The Prior Agreement is hereby terminated, and of no further force or effect.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

Please acknowledge your agreement to the terms and conditions of this Agreement by signing below.

Sincerely,

**Company:**

**TAPD, INC.**

By: _____

Name:

Title:

Please acknowledge your agreement to the terms and conditions of this Agreement by signing below.

Sincerely,

**Company:**

**TAPD, INC.**

By: _____
      Name:
      Title:

**Parent:**

**JPMORGAN CHASE BANK, NATIONAL ASSOCIATION**

By: _____
      Name: Leslie Wims Morris
      Title: Managing Director

<u>**ACCEPTANCE/ACKNOWLEDGMENT**</u>

By signing below, I verify my acceptance of the above Agreement.

**Service Provider:**

By: _____     _____
    Name: Charlie Javice               Date

**Trust:**

**CHARLIE JAVICE 2021 IRREVOCABLE TRUST #3**

By: _____     _____
    Charlie Javice                  Date
    Trustee

## <u>ACCEPTANCE/ACKNOWLEDGMENT</u>

By signing below, I verify my acceptance of the above Agreement.

**Service Provider:**

By: _____     9/13/2021     _____

Name: Charlie Javice                                              Date

*SIGNATURE PAGE TO PAYMENT DIRECTION AGREEMENT*

DocuSign Envelope ID: 9C11FA72-0306-42F6-B2CB-F651ECCA39F0

## <u>ACCEPTANCE/ACKNOWLEDGMENT</u>

By signing below, I verify my acceptance of the above Agreement.

**Trust:**

### CHARLIE JAVICE 2021 IRREVOCABLE TRUST #3

By: _____           9/13/2021
    Charlie Javice                            _____
    Trustee                                   Date

## APPENDIX A

### Retained Amount:

| Retained Amount | $7,133,805.83 |
| --- | --- |

# Exhibit C

# JPMORGAN CHASE & CO.

**Reid R. Broda**
Associate General Counsel
Legal Department

## By Email

November 4, 2022

Charlie Javice
c/o Andrew J. Bernstein
Mintz, Levin, Cohn, Ferris, Glovsky, and Popeo, P.C.
Chrysler Center
666 Third Avenue
New York, New York 10017
ABernstein@mintz.com

Charlie Javice
c/o Alex Spiro
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
alexspiro@quinnemanuel.com

Dear Ms. Javice,

This letter notifies you that your employment with JPMorgan Chase Bank, National Association (hereinafter, "Chase" or the "Firm") is terminated, effective immediately. As set forth below, this termination is for Cause pursuant to the terms and conditions of your Offer and Retention Agreement executed on August 4, 2021 (the "Contract"), a copy of which is enclosed for your reference.

Chase's review of your conduct to date has confirmed numerous actions by you compelling termination of your employment, including pursuant to sections (i), (ii), (v), (vi), and (vii) of the definition of "Cause" in Appendix I to your Contract. These actions include, without limitation, each of the following, which you performed directly and/or in concert with others:

1. You concealed and failed to disclose to Chase during your employment that, prior to Chase's acquisition of Frank, you (a) misrepresented the number of Frank's customer base, and (b) fabricated a list of purported Frank customers to be used to corroborate that misrepresentation.

2. You hired outside vendors or consultants using Chase assets to assist you in creating falsified data to misrepresent your customer base, including using synthetic data, while concealing the reason these outside vendors or consultants were hired and failing to report their, and your, misconduct.

3. You continued to misrepresent Frank's customer base during your employment, including without limitation by using a list of non-Frank student data clandestinely purchased with Chase assets to falsify additional customer data provided to Chase to use as part of its marketing campaign for Frank.

4.    You misrepresented Frank's historical and current customer accounts to Chase's senior management as part of Frank's reporting to Chase for Business Unit Reviews ("BUR") and failed to disclose accurate business metrics to Chase.

5.    You engaged in other forms of misconduct, including without limitation: (a) failing to identify, report, and correct legal and regulatory compliance issues, including ADA compliance issues; (b) failing to identify, report and correct material problems concerning the FAFSA submitter technology Frank utilized; (c) instructing Frank employees to withhold information from Chase; and (d) discussing the matters referenced in this letter with former Frank investors to the Firm's detriment and in violation of your contractual obligations.

6.    You obstructed, failed to cooperate with, and failed to provide truthful and complete information in connection with Chase's investigation of your conduct, including without limitation by failing to disclose your previous misrepresentations and data falsification and by refusing to appear for an interview that you were contractually obligated to attend.

For the avoidance of doubt, your misconduct (including without limitation the misconduct outlined above) resulted in the suspension of Frank's business operations and caused material injury to the Firm or its relationship with its customers, clients, or employees.

The foregoing list of actions supporting termination for Cause is not exhaustive, and the Firm may discover and/or rely upon additional facts that further support your termination for Cause.

Chase further notes that your actions violated Chase's Code of Conduct, including but not limited to the following provisions: Sections 1.2, 1.3, 1.4, 2.1, 2.1.1, and 2.2.2. This list of Code provisions supporting your termination for Cause is not exhaustive, and the Firm may discover and/or rely upon additional facts which may implicate other Code provisions that further support your termination for Cause.

Please immediately return any and all Firm property to Jennifer Valladares (including intangibles like passwords and proprietary Firm information) and make arrangements with her to immediately remove and cease all use of any administrative rights you may have to systems, databases, communications channels, or anything else owned or controlled by JPMC. Please note that you will receive additional information in the coming days in connection with your termination.

Finally, we remind you that your obligations under the Contract continue after your termination. You may not use or disclose to anyone any confidential information related to the Firm's business or communicate with the press or other media about matters related to the Firm.

You are also required to refrain from competition, solicitation, and disparagement, as described in the Contract.

This letter is without prejudice to any of Chase's rights, powers, privileges, remedies, and defenses, all of which are hereby expressly reserved.

Sincerely,

Reid R. Broda

Attachment

Exhibit D

# JPMORGAN CHASE & CO.

**Reid R. Broda**
Associate General Counsel
Legal Department

<u>**By Email**</u>                                                                       November 22, 2022

Charlie Javice                                              Charlie Javice
c/o Andrew J. Bernstein                                     c/o Alex Spiro
Mintz, Levin, Cohn, Ferris, Glovsky, and Popeo, P.C.        Quinn Emanuel Urquhart & Sullivan, LLP
Chrysler Center                                             51 Madison Avenue, 22nd Floor
666 Third Avenue                                            New York, New York 10010
New York, New York 10017                                    alexspiro@quinnemanuel.com
ABernstein@mintz.com

Re:      Notice of Cancellation and Demand of Repayment

Dear Ms. Javice:

As you know, you were the subject of an internal review of your conduct during your employment
with JPMorgan Chase Bank, National Association (hereinafter, "Chase" or the "Firm"), and as a
result of that internal review, on November 4, 2022, you were terminated for Cause pursuant to
the terms and conditions of your Offer and Retention Agreement executed on August 4, 2021 (the
"Contract").

Pursuant to the **Clawback; Recapture** Section of the Terms & Conditions of your Contract, Chase
hereby demands return of the $162,500 awarded to you as cash incentive compensation in 2021.
Separately, in light of your termination (as well as the considerations set forth in this letter), Chase
has cancelled the 572 shares of restricted stock units previously awarded to you.

The Firm has determined in its discretion that you engaged in activity warranting cancellation,
recapture and recovery of your incentive compensation payments under the **Clawback; Recapture**
Section of the Terms & Conditions of your Contract because of any of the following:

- you engaged in conduct detrimental to the Firm insofar as it caused material financial
  or reputational harm to the Firm or its business activities;
- the payments made to you were based on materially inaccurate performance metrics;
- the payments were based on a material misrepresentation by you;
- your employment was terminated for Cause; or
- you committed a fraudulent act, or engaged in knowing and willful misconduct related
  to your employment that is materially injurious to the interests of the Firm or its
  relationship with a customer, client or an employee.

The Firm notes that the Retention Award payments referenced in your Contract failed to vest,
including without limitation due to (i) your failure to devote your full business time and attention
to the performance of your duties and services under the Contract, (ii) the fact that you were not

*Page 2*                                                              *November 22, 2022*

continually employed through each applicable vesting date, (iii) your failure to continually comply with the Firm's Code of Conduct (other than immaterial and inadvertent violations) through each such vesting date, and (iv) the fact that your employment was terminated by the Firm for Cause. To the extent that you take the position that any of the Retention Award payments did vest, the Firm has determined in its discretion that you engaged in activity warranting cancellation, recapture and recovery of any such Retention Award payments under the **Clawback; Recapture** Section of the Terms & Conditions of your Contract, because of any of the reasons set forth above.

The Firm hereby demands the immediate repayment of the $162,500 in cash you received in incentive compensation in 2021. These actions are without waiver of such other rights and remedies as we may have.

Please direct any inquiries with respect to this letter to Reid Broda, Associate General Counsel, at (312) 732-4511.

Yours sincerely,

For and on behalf of
JPMorgan Chase & Co.

# Exhibit E

**JPMORGAN CHASE & CO. LONG-TERM INCENTIVE PLAN**
**TERMS AND CONDITIONS OF JANUARY 19, 2021**
**RESTRICTED STOCK UNIT AWARD**

# Award Agreement

These terms and conditions are made part of the Award Agreement dated as of January 19, 2021 ("Grant Date") awarding Restricted Stock Units ("RSUs") pursuant to the terms of the JPMorgan Chase & Co. Long-Term Incentive Plan ("Plan"). To the extent the terms of the Award Agreement (all references to which will include these terms and conditions) conflict with the Plan, the Plan will govern.  The Award Agreement, the Plan and Prospectus supersede any other agreement, whether written or oral, that may have been entered into by the Firm and you relating to this award.

This award was granted on the Grant Date subject to the Award Agreement.  **Unless you decline by the deadline and in the manner specified in the Award Agreement, you will have agreed to be bound by these terms and conditions, effective as of the Grant Date.**  If you decline the award, it will be cancelled as of the Grant Date.

Capitalized terms that are not defined in "Definitions" below or elsewhere in the Award Agreement will have the same meaning as set forth in the Plan.

JPMorgan Chase & Co. will be referred to throughout the Award Agreement as "JPMorgan Chase" and together with its subsidiaries as the "Firm".

# Form and Purpose of Award

Each RSU represents a non-transferable right to receive one share of Common Stock as of the applicable vesting date as set forth in your Award Agreement.

The purpose of this award is to motivate your future performance for services to be provided during the vesting period and to align your interests with those of the Firm and its shareholders.

# Dividend Equivalents

If dividends are paid on Common Stock while RSUs under this award are outstanding, you will be paid an amount equal to the dividend paid on one share of Common Stock, multiplied by the number of RSUs outstanding under this award as of the dividend record date.

# Vesting

This award is intended and expected to vest on the vesting date(s), provided that you are continuously employed by the Firm through such vesting date, or you meet the requirements for continued vesting described under the subsections "--Job Elimination", "--Full Career Eligibility", "--Government Office" or "--Disability".  However, vesting and the number of RSUs in which you vest are subject to these terms and conditions (including, but not limited to, sections captioned "Recapture Provisions" and "Remedies".

# Vesting Period

The period from the Grant Date to the last vesting date is the "vesting period" (see subsections captioned "--Amendment" pursuant to which the Firm may extend the vesting period and "--No Ownership Rights/Other Limitations" pursuant to which the Firm may place restrictions on delivered shares of Common Stock following a vesting date).

# Bonus Recoupment

In consideration of the grant of this award, you agree that you are subject to the JPMorgan Chase Bonus Recoupment Policy (or successor policy) as in effect from time to time as it applies both to the cash incentive compensation awarded to you for performance year 2020 and to this award.  You can access this policy as currently in effect through the following link:

https://about.jpmorganchase.com/about/governance/corporate-governance-principles

For the avoidance of doubt, nothing in these terms and conditions in any way limits the rights of the Firm under the JPMorgan Chase Bonus Recoupment Policy (or successor policy).

## Recapture Provisions (Detrimental Conduct and Other Recapture Provisions)

Notwithstanding any terms of this Award Agreement to the contrary, JPMorgan Chase reserves the right in its sole discretion to cancel up to 100% of your outstanding RSUs under this award and, to the extent set forth in "Remedies" below, to recover from you up to an amount equal to the Fair Market Value (determined as of the applicable vesting date) of the gross number of shares of Common Stock previously distributed (including shares withheld for tax purposes) under this award if the Firm in its sole discretion determines that:

- you engaged in conduct detrimental to the Firm insofar as it causes material financial or reputational harm to the Firm or its business activities, or
- this award was based on materially inaccurate performance metrics, whether or not you were responsible for the inaccuracy, or
- this award was based on a material misrepresentation by you, or
- your employment was terminated for Cause (see section captioned "Definitions" below) or, in the case of a determination after the termination of your employment, that your employment could have been terminated for Cause.

See section captioned "Remedies" for additional information.

## Termination of Employment

Except as explicitly set forth below under the subsections captioned "--Job Elimination", "--Full Career Eligibility", "--Government Office" or "--Disability" or under the section captioned "Death", any RSUs outstanding under this award will be cancelled effective on the date your employment with the Firm terminates for any reason.

Subject to these terms and conditions (including, but not limited to, sections captioned "Bonus Recoupment", "Recapture Provisions", "Your Obligations" and "Remedies"), you will be eligible to continue to vest (as you otherwise would vest if you were still employed by JPMorgan Chase) with respect to your award in accordance with its terms and conditions following the termination of your employment if one of the following circumstances applies to you:

### ➢ Job Elimination

In the event that the Director of Human Resources or nominee in his or her sole discretion determines that

- the Firm terminated your employment because your job was eliminated, and
- after you are notified that your job will be eliminated, you provided such services as requested by the Firm in a cooperative and professional manner, and
- you satisfied the Release/Certification Requirements set forth below.

### ➢ Full Career Eligibility

In the event that the Director of Human Resources or nominee in his or her sole discretion determines that

- you voluntarily terminated your employment with the Firm, had completed at least five years of continuous service with the Firm immediately preceding your termination date, and
- the sum of your age and Recognized Service (as defined below) on your date of termination equaled or exceeded 60 and
- you provided at least 90 days advance written notice to the Firm of your intention to voluntarily terminate your employment under this provision, during which notice period you provided such services as requested by the Firm in a cooperative and professional manner and you did not perform any services for any other employer, and
- continued vesting shall be appropriate, which determination shall be made prior to your termination and will be based on your performance and conduct (before and after providing notice), and
- for 36 months from the date of grant of this award you do not either perform services in any capacity (including self-employment) for a Financial Services Company (as defined below) or work in your profession (whether or not for a Financial Services Company); provided that you may work for a government, education or Not-for-Profit Organization (as defined below), and
- you satisfied the Release/Certification Requirements set forth below.

After receipt of such advance written notice, the Firm may choose to have you continue to provide services during such 90-day period as a condition to continued vesting or shorten the length of the 90-day period at the Firm's sole discretion, but to a date no earlier than the date you would otherwise meet the age and service requirements.

Additional advance notice requirements may apply for employees subject to notice period policies (see "Notice Period" below).

## ➢ Government Office

In the event that you voluntarily terminate your employment with the Firm to accept a Government Office or become a candidate for an elective Government Office, as described at the end of these terms and conditions under the section captioned "Government Office Requirements". See also definition of Government Office in the section captioned "Definitions".

## ➢ Disability

In the event that

- your employment with the Firm terminates because (i) you are unable to return to work while you are receiving benefits under the JPMorgan Chase Long Term Disability Plan, or for non-U.S. employees, under the equivalent JPMorgan Chase sponsored local country plan (in either case, "LTD Plan"), or (ii) if you are not covered by a LTD Plan, you are unable to return to work due to a long-term disability that would qualify for benefits under the applicable LTD Plan, as determined by the Firm or a third-party designated by the Firm; provided that you (x) request in writing continued vesting due to such disability within 30 days of the date your employment terminates, and (y) provide any requested supporting documentation and (z) receive the Firm's written consent to such treatment, and
- you satisfied the Release/Certification Requirements set forth below.

# Release/Certification

To qualify for continued vesting after termination of your employment under any of the foregoing circumstances:

- you must timely execute and deliver a release of claims in favor of the Firm, having such form and terms as the Firm shall specify,
- with respect to "Full Career Eligibility", prior to the termination of your employment, you must confirm with management that you meet the eligibility criteria (including providing at least 90 days advance written notification), advise that you are seeking to be treated as an individual eligible for "Full Career Eligibility", and receive written consent to such continued vesting,
- with respect to "Disability", you must satisfy the notice and documentation described above and receive written consent to such continued vesting,
- with respect to "Full Career Eligibility" and "Government Office", it is your responsibility to take the appropriate steps to certify to the Firm prior to each vesting date while the employment restrictions are outstanding, on the authorized form of the Firm, that you have complied with the employment restrictions applicable to you (as described herein) from your date of termination of employment through the applicable vesting date, and
- in all cases, complied with all other terms of the Award Agreement.  (See section captioned "Your Obligations".)

# Death

If you die while you are eligible to vest in RSUs under this award, the RSUs will immediately vest and will be distributed in shares of Common Stock (after applicable tax withholding) to your designated beneficiary on file with the Firm's Stock Administration Department, or if no beneficiary has been designated or survives you or if beneficiary designation is not recognized by local legislation, then to your estate.  Any shares will be distributed no later than the end of the calendar year immediately following the calendar year which contains your date of death; however, our administrative practice is to register such shares in the name of your beneficiary or estate within 60 days of the Firm's receipt of any required documentation.

# Your Obligations

In consideration of the grant of this award, you agree to comply with and be bound by the obligations set forth below next to the subsections captioned "--Non-Solicitation of Employees and Customers", "--Confidential Information", "--Non-Disparagement", "--Cooperation", "--Compliance with Award Agreement" and "--Notice Period."

## ➢ Non-Solicitation of Employees and Customers

During your employment by the Firm and for the longer of the (i) one year period following the termination of your employment or, (ii) if your award is not cancelled as of your termination date, the three year period from Grant Date, you will not directly or indirectly, whether on your own behalf or on behalf of any other party, without the prior written consent of the Director of Human Resources: (i) solicit, induce or encourage any of the Firm's then current employees to leave the Firm or to apply for employment elsewhere, unless such current employee has received official, written notice that his or her employment will be terminated due to job elimination, (ii) hire any employee or former employee who was employed by the Firm at the date your employment terminated, unless the individual's employment terminated because his or her job was eliminated, or the individual's employment with the Firm has been terminated for more than six months, (iii) to the fullest extent enforceable under applicable law, solicit or induce or attempt to induce to leave the Firm, or divert or attempt to divert from doing business with the Firm, any then current customers, suppliers or other persons or entities that were serviced by you or whose names became known to you by virtue of your employment with the Firm, or otherwise interfere with the relationship between the Firm and such customers, suppliers or other persons

or entities. This does not apply to publicly known institutional customers that you service after your employment with the Firm without the use of the Firm's confidential or proprietary information.

These restrictions do not apply to authorized actions you take in the normal course of your employment with the Firm, such as employment decisions with respect to employees you supervise or business referrals in accordance with the Firm's policies.

## ➢ Confidential Information

You will not, either during your employment with the Firm or thereafter, directly or indirectly (i) use or disclose to anyone any confidential information related to the Firm's business, or (ii) communicate with the press or other media about matters related to the Firm, its customers or employees, including matters and activities relating to your employment, or the employment of others, by the Firm, in the case of either (i) or (ii), except as explicitly permitted by the JPMorgan Chase Code of Conduct and applicable policies or law or legal process. In addition, following your termination of employment, you will not, without prior written authorization, access the Firm's private and internal information through telephonic, intranet or internet means. "Confidential information" shall have the same meaning for the Award Agreement as it has in the JPMorgan Chase Code of Conduct.

Nothing in this award precludes you from reporting to the Firm's management or directors, the government, a regulator, a self-regulatory agency, your attorneys or a court, conduct you believe to be in violation of the law or concerns of any known or suspected Code of Conduct violation. It is also not intended to prevent you from responding truthfully to questions or requests from the government, a regulator or in a court of law.

## ➢ Non-Disparagement

You will not, either during your employment with the Firm or thereafter, make or encourage others to make any public statement or release any information in verbal, written, electronic or any other form, that is intended to, or reasonably could be foreseen to, disparage, embarrass or criticize the Firm or its employees, officers, directors or shareholders as a group. This shall not preclude you from reporting to the Firm's management or directors or to the government or a regulator conduct you believe to be in violation of the law or the Firm's Code of Conduct or responding truthfully to questions or requests for information to the government, a regulator or in a court of law in connection with a legal or regulatory investigation or proceeding.

## ➢ Cooperation

You will cooperate fully with and provide full and accurate information to the Firm and its counsel with respect to any matter (including any audit, tax proceeding, litigation, investigation or governmental proceeding) with respect to which you may have knowledge or information, subject to reimbursement for actual, appropriate and reasonable out-of-pocket expenses incurred by you.

## ➢ Compliance with Award Agreement

You will provide the Firm with any information reasonably requested to determine compliance with the Award Agreement, and you authorize the Firm to disclose the terms of the Award Agreement to any third party who might be affected thereby, including your prospective employer.

## ➢ Notice Period

If you are subject to a notice period or become subject to a notice period after the Grant Date, whether by contract or by policy, that requires you to provide advance written notice of your intention to terminate your employment ("Notice Period"), then as consideration for this award and continued employment, you will provide the Firm with the necessary advance written notice that applies to you, as specified by such contract or policy.

After receipt of your notice, the Firm may choose to have you continue to provide services during the applicable Notice Period or may place you on a paid leave for all or part of the applicable Notice Period. During the Notice Period, you shall continue to devote your full time and loyalty to the Firm by providing services in a cooperative and professional manner and not perform any services for any other employer and shall receive your base salary and certain benefits until your employment terminates. You and the Firm may mutually agree to waive or modify the length of the Notice Period.

Regardless of whether a Notice Period applies to you, you must comply with the 90-day advance notice period described under the subsection captioned "--Full Career Eligibility" in the event you wish to terminate employment under that same subsection.

## Remedies

### ➤ Cancellation

In addition to the cancellation provisions described under the sections captioned "Bonus Recoupment", "Recapture Provisions" and "Termination of Employment", your outstanding RSUs under this award may be cancelled if the Firm in its sole discretion determines that:

- you have failed to comply with any of the advance notice/cooperation requirements or employment restrictions applicable to your termination of employment, or
- you have failed to return the required forms specified under the section captioned "Release/Certification" by the specified deadline, or
- you have violated any of the provisions as set forth above in the section captioned "Your Obligations".

To the extent provided under the subsection captioned "--Amendment" below, JPMorgan Chase reserves the right to suspend vesting of this award and/or distribution of shares under this award, including, without limitation, during any period that JPMorgan Chase is evaluating whether this award is subject to cancellation and/or recovery and/or whether the conditions for distributions of shares under this award are satisfied. JPMorgan Chase is not responsible for any price fluctuations during any period of suspension and, if applicable, suspended units will be reinstated consistent with Plan administration procedures. See also subsection captioned "--No Ownership Rights/Other Limitations".

### ➤ Recovery

In addition, you may be required to pay the Firm up to an amount equal to the Fair Market Value (determined as of the applicable vesting date) of the gross number of shares of Common Stock previously distributed under this award as follows:

- Payment may be required with respect to any shares of Common Stock distributed within the three year period prior to a notice-of-recovery under this section, if the Firm in its sole discretion determines that:
  - you committed a fraudulent act, or engaged in knowing and willful misconduct related to your employment, or
  - you violated any of the provisions as set forth above in the section captioned "Your Obligations", or
  - you violated the employment restrictions set forth in the subsection "--Full Career Eligibility" or "--Government Office" following the termination of your employment.
- In addition, payment may be required with respect to any shares distributed within the one year period prior to notice-of-recovery under this section, if the Firm in its sole discretion determines appropriate pursuant to the provisions in the section captioned "Recapture Provisions".

Notice-of-recovery under this subsection is a written (including electronic) notice from the Firm to you either requiring payment under this subsection or stating that JPMorgan Chase is evaluating requiring payment under this subsection. Without limiting the foregoing, notice-of-recovery will be deemed provided if the Firm makes a good faith attempt to provide written (including electronic) notice at your last known address maintained in the Firm's employment records. For the avoidance of doubt, a notice-of-recovery that the Firm is evaluating requiring payment under this subsection shall preserve JPMorgan Chase's rights to require payment as set forth above in all respects and the Firm shall be under no obligation to complete its evaluation other than as the Firm may determine in its sole discretion.

For purposes of this subsection, shares distributed under this award include shares withheld for tax purposes. However, it is the Firm's intention that you only be required to pay the amounts under this subsection with respect to shares that are or may be retained by you following a determination of tax liability and that you will not be required to pay amounts with respect to shares representing irrevocable tax withholdings or tax payments previously made (whether by you or the Firm) that you will not be able to recover, recapture or reclaim (including as a tax credit, refund or other benefit). Accordingly, JPMorgan Chase will not require you to pay any amount that the Firm or its nominee in his or her sole discretion determines is represented by such withholdings or tax payments.

Payment may be made in shares of Common Stock or in cash. You agree that any repayment will be a lawful recovery under the terms and conditions of your Award Agreement and is not to be construed in any manner as a penalty.

Nothing in the section in any way limits your obligations under "Bonus Recoupment".

### ➤ Right to an Injunction

You acknowledge that a violation or attempted violation of the obligations set forth herein will cause immediate and irreparable damage to the Firm, and therefore agree that the Firm shall be entitled as a matter of right to an injunction, from any court of competent jurisdiction, restraining any violation or further violation of such obligations; such right to an injunction, however, shall be cumulative and in addition to whatever other remedies the Firm may have under law or equity.

## Administrative Provisions

**Withholding Taxes**:  As a result of legal and/or tax obligations the Firm, in its sole discretion, may (i) retain from each distribution the number of shares of Common Stock required to satisfy applicable tax obligations or (ii) implement any other desirable or necessary procedures, so that appropriate withholding and other taxes are paid to the competent authorities with respect to the vested shares, dividend equivalents and the award. This may include but is not limited to (i) a market sale of a number of such shares on your behalf substantially equal to the withholding or other taxes, (ii) to the extent required by law, withhold from cash compensation, an amount equal to any withholding obligation with respect to the award, shares that vest under this award, and/or dividend equivalents, and (iii) retaining shares that vest under this award or dividend equivalents until you pay any taxes associated with the award, vested shares and/or the dividend equivalents directly to the competent authorities.

**Right to Set Off:** Although the Firm expects to settle this award in share(s) of Common Stock as of the applicable vesting date, as set forth in your Award Agreement, the Firm may, to the maximum extent permitted by applicable law (including Section 409A of the Code to the extent it is applicable to you), retain for itself funds or the Common Stock resulting from any vesting of this award to satisfy any obligation or debt that you owe to the Firm.  Notwithstanding any account agreement with the Firm to the contrary, the Firm will not recoup or recover any amount owed from any funds or unrestricted securities held in your name and maintained at the Firm pursuant to such account agreement to satisfy any obligation or debt owed by you under this award without your consent.  This restriction on the Firm does not apply to accounts described and authorized in "No Ownership Rights/Other Limitations" described below.

**No Ownership Rights/Other Limitations:**  RSUs do not convey the rights of ownership of Common Stock and do not carry voting rights.  No shares of Common Stock will be issued to you until after the RSUs have vested.  Shares will be issued in accordance with JPMorgan Chase's procedures for issuing stock.  By accepting this award, you authorize the Firm, in its sole discretion, to establish on your behalf a brokerage account in your name with the Firm or book-entry account with our stock plan administrator and/or transfer agent and deliver to that account any vested shares derived from the award.  You also acknowledge that should there be a determination that the cancellation provisions of this award apply during the period when the vesting of any outstanding RSUs has been suspended, then you agree that such RSUs may be cancelled in whole or part. (See Sections captioned "Bonus Recoupment", "Recapture Provisions", "Termination of Employment" and "Remedies", as well as the subsection captioned "-- Amendment" permitting suspension of vesting.)

With respect to any applicable vesting date, JPMorgan Chase may impose for any reason, as of such vesting date for such period as it may specify in its sole discretion, such restrictions on the Common Stock to be issued to you as it may deem appropriate, including, but not limited to, restricting the sale, transfer, pledging, assignment, hedging or encumbrance of such shares of Common Stock. Such restrictions described in the last sentence shall not impact your right to vote or receive dividends with respect to the Common Stock.  By accepting this award, you acknowledge that during such specified period should there be a determination that the recovery provisions of this award apply, then you agree that you may be required to pay the Firm up to an amount equal to the Fair Market Value (determined as of the applicable vesting date) of the gross number of shares subject to such restrictions (notwithstanding the limitation set forth in the "Right to Set Off" subsection above).  (See Sections captioned "Bonus Recoupment" and "Remedies".)

**Binding Agreement:** The Award Agreement will be binding upon any successor in interest to JPMorgan Chase, by merger or otherwise.

**Not a Contract of Employment**: Nothing contained in the Award Agreement constitutes a contract of employment or continued employment. Employment is "at-will" and may be terminated by either you or JPMorgan Chase for any reason at any time.  This award does not confer any right or entitlement to, nor does the award impose any obligation on the Firm to provide, the same or any similar award in the future and its value is not compensation for purposes of determining severance.

**Section 409A Compliance**:  To the extent that Section 409A of the Code is applicable to this award, distributions of shares and cash hereunder are intended to comply with Section 409A of the Code, and the Award Agreement, including these terms and conditions, shall be interpreted in a manner consistent with such intent.

Notwithstanding anything herein to the contrary, if you (i) are subject to taxation under the Code, (ii) are a specified employee as defined in the JPMorgan Chase 2005 Deferred Compensation Plan and (iii) have incurred a  separation from service (as defined in that Plan with the exception of death) and if any units/shares under this award represent deferred compensation as defined in Section 409A and such shares are distributable (under the terms of this award) within six months following, and as a result of your separation from service, then those shares will be delivered to you during the first calendar month after the expiration of six full months from date of your separation from service.  Further, if your award is not subject to a substantial risk of forfeiture as defined by regulations issued under Section 409A of the Code, then the remainder of each calendar year immediately following (i) each applicable vesting date set forth in your Award Agreement shall be a payment date for purposes of distributing the vested portion of the award and (ii) each date that JPMorgan Chase specifies for payment of dividends declared on its Common Stock, shall be the payment date(s) for purposes of distributing dividend equivalent payments.

**Change in Outstanding Shares**:  In the event of any change in the outstanding shares of Common Stock by reason of any stock dividend or split, recapitalization, issuance of a new class of common stock, merger, consolidation, spin-off, combination or exchange of shares or other similar corporate change, or any distributions to stockholders of Common Stock other than regular cash dividends, the Committee will make an equitable substitution or proportionate adjustment, in the number or kind of shares of Common Stock or other securities issued or reserved for issuance pursuant to the Plan and to any RSUs outstanding under this award for such corporate events.

**Interpretation/Administration**:  The Committee has sole and complete authority to interpret and administer this Award Agreement, including, without limitation, the power to (i) interpret the Plan and the terms of this Award Agreement; (ii) determine the reason for termination of employment; (iii) determine application of the post-employment obligations and cancellation and recovery provisions; (iv) decide all claims arising with respect to this award; and (v) delegate such authority as it deems appropriate.  Any determination contemplated hereunder by the Committee, the Firm, the Director of Human Resources or their respective delegates or nominees shall be binding on all parties.

Notwithstanding anything herein to the contrary, the determinations of the Director of Human Resources, the Firm, the Committee and their respective delegates and nominees under the Plan and the Award Agreements are not required to be uniform.  By way of clarification, the Committee, the Firm, the Director of Human Resources and their respective delegates and nominees shall be entitled to make non-uniform and selective determinations and modifications under Award Agreements and the Plan.

**Amendment**:  The Committee or its nominee reserves the right to amend this Award Agreement in any manner, at any time and for any reason; provided, however, that no such amendment shall materially adversely affect your rights under this Award Agreement without your consent except to the extent that the Committee or its delegate considers advisable to (x) comply with applicable laws or changes in or interpretation of applicable laws, regulatory requirements and accounting rules or standards and/or (y)  make a change in a scheduled vesting date or impose the restrictions described above under "No Ownership Rights/Other Limitations", in either case, to the extent permitted by Section 409A of the Code if it is applicable to you.  This Award Agreement may not be amended except in writing signed by the Director of Human Resources of JPMorgan Chase.

**Severability**: If any portion of the Award Agreement is determined by the Firm to be unenforceable in any jurisdiction, any court or arbitrator of competent jurisdiction or the Director of Human Resources may reform the relevant provisions (e.g., as to length of service, time, geographical area or scope) to the extent the Firm (or court/arbitrator) considers necessary to make the provision enforceable under applicable law.

**Accelerated Distribution for Ethics or Conflict Reasons Resulting From Employment by a Government Entity**:  Upon receipt of satisfactory evidence that applicable United States federal, state, local, foreign or supranational ethics or conflict of interest laws or regulations require you to divest your interest in JPMorgan Chase RSUs, the Firm may accelerate the distribution of all or part of your outstanding award effective on or before the required divestiture date; provided that no accelerated distribution shall occur if the Firm determines that such acceleration will violate Section 409A of the Code.  Accelerated distribution under this paragraph does not impact the dates as set forth in the "Recovery" section above.  The time period for recovery shall be determined by the originally scheduled vesting date or distribution date prior to any acceleration event.

If you have voluntarily terminated your employment and have satisfied the requirements of the section captioned "Government Office Requirements", acceleration shall apply (to extent required) to the percentage of your outstanding award that would continue to vest under that section.  In the case of a termination of employment where the award is outstanding as a result of the subsections entitled "--Job Elimination" or "--Full Career Eligibility", then acceleration shall apply, to the extent required, to the full outstanding award.

Notwithstanding accelerated distribution pursuant to the foregoing, you will remain subject to the applicable terms of your Award Agreement as if your award had remained outstanding for the duration of the original vesting period and shares had been distributed as scheduled as of each applicable vesting date, including, but not limited to, repayment obligations set forth in the section captioned "Remedies" and the employment restrictions in the section captioned "Government Office Requirements" and the subsection "--Full Career Eligibility".

**Use of Personal Data**:  By accepting this award, you have acknowledged that the Firm may process your personal data (including sensitive personal data) for purposes, including but not limited to (i) determining your compensation, (ii) payroll activities, including, but not limited to, tax withholding and regulatory reporting, which tax and regulatory reporting and withholding may include, but is not limited to, the United States, your work country (including countries to which you travel on Firm business) and country of residence, (iii) registration of shares and units, (iv) establishing a brokerage account on your behalf, and (v) all other lawful purposes related to your employment and this award and that the Firm may provide such data to third party vendors with whom it has contracted to provide such services and/or other bodies, including regulators, supervisory bodies, law enforcement and other government agencies. You are acknowledging and agreeing that your personal data will be transferred to, and processed in, countries and locations that do not have the same data privacy laws and statutory protection for personal data as your work country, country of residence, or country of nationality.  If your personal data is subject to data privacy laws or statutory protection for personal data and they so provide for termination of the foregoing authorization, you may terminate the authorization at any time except with respect to tax and regulatory reporting and subject always to the Firm's legal and regulatory obligations.  In the event you terminate this authorization, your award will be cancelled.

**Governing Law**: This award shall be governed by and construed in accordance with the laws of the State of New York, without regard to conflicts of law principles.

**Choice of Forum:** By accepting this award under the Plan, you agree (and have agreed) that to the extent not otherwise subject to arbitration under an arbitration agreement between you and the Firm, any dispute arising directly or indirectly in connection with this award or the Plan shall be submitted to arbitration in accordance with the rules of the American Arbitration Association if so elected by the Firm in its sole discretion.  In the event such a dispute is not subject to arbitration for any reason, you agree to accept the exclusive jurisdiction and venue of the United States District Court for the Southern District of New York with respect to any judicial proceeding in connection with this award or the Plan.  You waive, to the fullest extent permitted by law, any objection to personal jurisdiction or to the laying of venue of such dispute and further agree not to commence any action arising out of or relating to this award or the Plan in any other forum.

**Waiver of Jury Trial/Class Claims:** By accepting this award, you agree, with respect to any claim brought in connection with your employment with the Firm in any forum (i) to waive the right to a jury trial and (ii) that any judicial proceeding or arbitration claim will be brought on an individual basis, and you hereby waive any right to submit, initiate, or participate in a representative capacity or as a plaintiff, claimant or member in a class action, collective action, or other representative or joint action.

**Litigation:** By accepting any award under the Plan, you agree (and have agreed) that in any action or proceeding by the Firm (other than a derivative suit in the right of the Firm) to enforce the terms and conditions of this Award Agreement or any other Award Agreement where the Firm is the prevailing party, the Firm shall be entitled to recover from you its reasonable attorney fees and expenses incurred in such action or proceeding. In addition, you agree that you are not entitled to, and agree not to seek, advancement of attorney fees and indemnification under the Firm's By-Laws in the event of such a suit by the Firm.

**Non-transferability:** Neither this award or any other outstanding awards of RSUs, nor your interests or rights in any such awards, shall be assigned, pledged, transferred, hedged, hypothecated or subject to any lien.  An award may be transferred following your death by will, the laws of descent or by a beneficiary designation on file with the Firm.

**Outstanding Awards:** The Administrative provisions set forth above shall apply to any award of RSUs outstanding as of the date hereof, and such awards are hereby amended.

# Definitions

"**Cause**" means a determination by the Firm that your employment terminated as a result of your (i) violation of any law, rule or regulation (including rules of self-regulatory bodies) related to the Firm's business, (ii) indictment or conviction of a felony, (iii) commission of a fraudulent act, (iv) violation of the JPMorgan Chase Code of Conduct or other Firm policies or misconduct related to your duties to the Firm (other than immaterial and inadvertent violations or misconduct), (v) grossly inadequate performance of the duties associated with your position or job function or failure to follow reasonable directives of your manager, or (vi) any act or failure to act that is injurious to the interests of the Firm or its relationship with a customer, client or an employee.

"**Financial Services Company**" means a business enterprise that employs you in any capacity (such as an employee, contractor, consultant, advisor, or self-employed individual, whether paid or unpaid) and engages in:
- commercial or retail banking, including, but not limited to, commercial, institutional and personal trust, custody and/or lending and processing services, originating and servicing mortgages, issuing and servicing credit cards, payment servicing or processing or merchant services,
- insurance, including but not limited to, guaranteeing against loss, harm, damage, illness, disability or death, providing and issuing annuities, acting as principal, agent or broker for purpose of the forgoing,
- financial, investment or economic advisory services, including but not limited to, investment banking services (such as advising on mergers or dispositions, underwriting, dealing in, or making a market in securities or other similar activities), brokerage services, investment management services, asset management services, and hedge funds,
- issuing, trading or selling instruments representing interests in pools of assets or in derivatives instruments,
- advising on, or investing in, private equity or real estate, or
- any similar activities that the Director of Human Resources or nominee determines in his or her sole discretion constitute financial services.

"**Government Office**" means (i) a full-time position in an elected or appointed office in local, state, or federal government (including equivalent positions outside the U.S. or in a supranational organization), not reasonably anticipated to be a full-career position, or (ii) conducting a bona fide full-time campaign for such an elective public office after formally filing for candidacy, where it is customary and reasonably necessary to campaign full-time for the office.

"**Not-for-Profit Organization**" means an entity exempt from tax under state law and under Section 501(c)(3) of the Code.  Section 501(c)(3) only includes entities organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary or educational purposes, or to foster national or international amateur sports competition or for the prevention of cruelty to children or animals. Not-for-Profit Organization shall also mean entities outside the United States exempt from local and national tax laws because they are organized and operated exclusively for

religious, charitable, scientific, testing for public safety, literary or educational purposes, or to foster national or international amateur sports competition or for the prevention of cruelty to children or animals.

**"Recognized Service"** means the period of service as an employee set forth in the Firm's applicable service-related policies.

## Government Office Requirements

You may be eligible to continue vesting in all or part of your award if you voluntarily resign to accept a Government Office (as defined above) or to become a candidate for an elective Government Office.

### Full Career Eligibility:

"Government Office Requirements" does not apply to you if you satisfy the subsection captioned "--Full Career Eligibility" as of the date that you voluntarily terminate your employment with the Firm.

### Eligibility:

Eligibility for continued vesting is conditioned on your providing the Firm:

- At least 60 days' advance written notice of your intention to resign to accept or pursue a Government Office (see section captioned "Definitions"), during which period you must perform in a cooperative and professional manner services requested by the Firm and not provide services for any other employer.  The Firm may elect to shorten this notice period at the Firm's sole discretion.
- Confirmation, in a form of satisfactory to the firm, that vesting in this award pursuant to this provision would not violate any applicable law, regulation or rule.
- Documentation in a form satisfactory to the Firm that your resignation is for the purpose of accepting a Government Office or becoming a candidate for a Government Office. (See Section captioned "Definitions".)

### Portion of Your Awards Subject to Continued Vesting:

Subject to the conditions below, the percentage of your outstanding awards that will continue to vest in accordance with this award's original schedule will be based on your years of continuous service completed with the Firm immediately preceding your termination date, as follows:

- 50% if you have at least 3 but less than 4 years of continuous service,
- 75% if you have at least 4 but less than 5 years of continuous service, or
- 100% if you have 5 or more years of continuous service.

The portion of each award subject to continued vesting above is referred to as the "CV Award" and the portion not subject to continued vesting will be cancelled on the date your employment terminates.

### Conditions for Continued Vesting of Awards:

- You must remain in a non-elective Government Office for two or more years after your employment with the Firm terminates to receive in full your CV Award; provided that if your non-elective Government Office is for a period less than two years, you will be entitled to retain any portion of the CV Award with a vesting date during your period of Government Service; or
- In the case of resignation from the Firm to campaign for an elective Government Office, your name must be on the primary or final public ballot for the election. (If you are not elected, see below for employment restrictions.)

### Satisfaction of Conditions:

If your service in a Government Office ends two years or more after your employment with the Firm terminates, or in the case of resignation from the Firm to campaign for a Government Office, your name is on the primary or final public ballot for the election and you are not elected, any CV Awards then outstanding and any such awards that would have then been outstanding but for an accelerated distribution of shares (as described in the subsection captioned "Accelerated Distribution for Ethics or Conflict Reasons Resulting From Employment by a Government Entity") will be subject for the remainder of the applicable vesting period to the same terms and conditions of this Award Agreement, including employment restrictions during the vesting period, as if you had resigned from the Firm having met the  requirements for Full Career Eligibility.

### Failure to Satisfy Conditions:

If you do not satisfy the above "Conditions for Continued Vesting of Awards", any outstanding RSUs under each CV Award will be cancelled. You also will be required to repay the Fair Market Value of the number of shares (before tax and other withholdings) of Common Stock distributed to you that would have been outstanding as RSUs on the date you failed to satisfy the "Condition for Continued Vesting of Awards" but for their accelerated distribution (as described in the subsection captioned "Accelerated Distribution for Ethics or Conflict Reasons Resulting From Employment by a Government Entity"). Fair Market Value for this purpose will be determined as the date that the shares were distributed.