# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JPMORGAN CHASE BANK, N.A., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CHARLIE JAVICE, OLIVIER AMAR, | ) |
| CHARLIE JAVICE, in her capacity as Trustee | ) |
| of CHARLIE JAVICE 2021 IRREVOCABLE | ) |
| TRUST #1, CHARLIE JAVICE, in her capacity | ) |
| as Trustee of CHARLIE JAVICE 2021 | ) |
| IRREVOCABLE TRUST #2, and CHARLIE | ) |
| JAVICE in her capacity as Trustee of CHARLIE | ) |
| JAVICE 2021 IRREVOCABLE TRUST #3, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

C.A. No. 22-01621-MN

**PUBLIC VERSION**

## PLAINTIFF'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR AN ORDER PARTIALLY LIFTING THE PRIVATE SECURITIES LITIGATION REFORM ACT DISCOVERY STAY

OF COUNSEL:

William M. Regan
Allison M. Wuertz
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
(212) 918-3000

POTTER ANDERSON & CORROON LLP
Peter J. Walsh, Jr. (#2437)
Michael A. Pittenger (#3212)
Jonathan A. Choa (#5319)
Carla M. Jones (#6046)
Hercules Plaza
P.O. Box 951
Wilmington, DE  19899
(302) 984-6000
mpittenger@potteranderson.com
pwalsh@potteranderson.com
jchoa@potteranderson.com
cjones@potteranderson.com

*Attorneys for JPMorgan Chase Bank, N.A.*

Dated:  April 7, 2023
Public version dated: April 10, 2023

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................... II

PRELIMINARY STATEMENT............................................................... 1

STATEMENT OF FACTS...................................................................... 4

I.      THE COURT SHOULD PARTIALLY LIFT THE REFORM ACT'S DISCOVERY STAY TO ENSURE
        THAT RELEVANT EVIDENCE IS PRESERVED. .................................... 10

        A.      Limited Discovery Is Necessary to Preserve Evidence. ...................................... 11

                1.      Javice's Transfer of Merger Proceeds to a Shell Corporation Creates
                        Preservation Issues That Should Be Addressed Now. ............................. 11

                2.      Javice's Failure to Return JPMC Property Threatens Proper Preservation
                        of Evidence. ........................................................................ 13

                3.      Javice's Past Actions Demonstrate That a Risk of the Loss of Evidence
                        Exists.................................................................................. 13

                4.      Third-Party Subpoenas Will Ensure the Preservation of Evidence. ......... 14

        B.      JPMC's Request for Limited Discovery Is Narrowly Tailored and Sufficiently
                Particularized. .................................................................... 14

II.     LIFTING THE DISCOVERY STAY HERE IS CONSISTENT WITH THE PURPOSE OF THE REFORM
        ACT'S DISCOVERY STAY. ............................................................. 16

CONCLUSION..................................................................................... 17

## **TABLE OF AUTHORITIES**

**Cases**

*Dipple v. Odell*,
    870 F. Supp. 2d 386 (E.D. Pa. 2012) ...............................................................15

*Friedman v. Quest Energy Partners LP*,
    No. CIV-08-936-M, 2009 WL 5065690 (W.D. Okla. Dec. 15, 2009) .............................10

*Greebel v. FTP Software, Inc.*,
    194 F.3d 185 (1st Cir. 1999) ...........................................................................16

*In re Heckmann Corp. Sec. Litig.*,
    No. 10-378-LPS-MPT, 2011 WL 10636718 (D. Del. Feb. 28, 2011) ............................10

*In re Lernout & Hauspie Sec. Litig.*,
    214 F. Supp. 2d 100 (D. Mass. 2002) .....................................................10, 16, 17

*Nichting v. DPL Inc.*,
    No. 3:11-CV-141, 2011 WL 2892945 (S.D. Ohio July 15, 2011)....................................15

*In re Royal Ahold N.V. Sec. & Erisa Litig.*,
    220 F.R.D. 246 (D. Md. 2004)....................................................................11, 15

*Tobias Holdings, Inc. v. Bank United Corp.*,
    177 F. Supp. 2d 162 (S.D.N.Y. 2001).................................................................17

*Vacold LLC v. Cerami*,
    No. 00 CIV. 4024 (AGS), 2001 WL 167704 (S.D.N.Y. Feb. 16, 2001) ..........................17

*Winer Fam. Tr. v. Queen*,
    No. CIV.A. 03-4318, 2004 WL 350181 (E.D. Pa. Feb. 6, 2004) .................................10

*In re WorldCom, Inc. Sec. Litig.*,
    234 F. Supp. 2d 301 (S.D.N.Y. 2002).......................................................15, 16, 17

**Statute**

15 U.S.C. § 78u–4(b)(3)(B) ............................................................................9, 10, 15, 16

**Other Authorities**

J. Weston Phippen, *Nevada, a Tax Haven for Only $174*, THE ATLANTIC (Apr. 6, 2016),
    https://www.theatlantic.com/national/archive
    /2016/04/panama-papers-nevada/476994 .........................................................12

Steve Reilly, *Dozens of firms creating foreign-based shell companies in two U.S. states*, USA
    TODAY (May 27, 2016), https://www.usatoday.com/story/news

/2016/05/26/dozens-firms-creating-foreign-based-shell-companies-two-us-
states/84222480/. ...........................................................................................................12

*The Nevada Advantage*, NEVADA SECRETARY OF STATE,
https://www.nvsos.gov/sos/businesses/the-nevada-advantage ..........................................12

## PRELIMINARY STATEMENT

As a result of events still unfolding, JPMC seeks to take early and targeted discovery from defendant Charlie Javice as an exception to the general discovery stay under the Private Securities Litigation Reform Act of 1995 (the "Reform Act") to preserve evidence relevant to the case and prevent undue prejudice to JPMC.[1]

In connection with its acquisition of TAPD, Inc. (d/b/a Frank) ("Frank"), JPMorgan Chase Bank N.A. ("JPMC") paid more than $21 million of the $175 million purchase price to Javice, Frank's founder and CEO, and certain trusts under her control (the "Merger Proceeds").[2] Approximately one year later, on September 13, 2022, JPMC placed Javice on administrative leave and specifically requested that she not dissipate Merger Proceeds. At the time she was placed on leave, Javice maintained personal bank accounts at JPMC that held millions of dollars in Merger Proceeds, and Javice's lawyers have recently suggested that Javice made transfers divesting herself of personal assets because of anticipated litigation. Eight days after being placed on leave, Javice created a shell company in Nevada called Chariot Holdings X LLC ("Chariot X") and, two days after that, she divested herself of several million dollars in Merger Proceeds and transferred those personal assets to a Chariot X bank account that Javice or her accountants established at a different bank.

---

[1]     Defendant Olivier Amar filed a motion to dismiss on March 2, 2023, but Javice answered JPMC's complaint on February 26, 2023. Given that Javice filed an answer and that JPMC's cause of action under Section 10(b) is just one of seven causes of action, if this Court concludes that Javice and JPMC should begin to conduct discovery in this matter, JPMC is prepared to commence discovery promptly.

[2]     The three trusts, also defendants in this action, are Charlie Javice 2021 Irrevocable Trust #1, Charlie Javice 2021 Irrevocable Trust #2, and Charlie Javice 2021 Irrevocable Trust #3 (collectively, the "Trusts").

Later, in December 2022 and just weeks after JPMC terminated Javice's employment, Javice deposited approximately several million dollars into her JPMC account, which funds appear to consist of a tax refund that Javice received related to Merger Proceeds, and again quickly conveyed those new funds to Chariot X.  At that point, Javice had conveyed a significant portion of the Merger Proceeds out of her named accounts and into Chariot X, along with additional personal funds.

Several weeks ago, the financial institution where Chariot X maintained its account was placed under the control of the FDIC, raising concerns about whether Chariot X will move those funds once again.  Javice has rejected JPMC's reasonable request that Chariot X commit itself to preserving evidence (indeed, Javice's counsel already is suggesting that Chariot X is not subject to "any" discovery even after the stay is lifted) and to provide documents supporting the consideration that Chariot X provided in exchange for millions of dollars in Merger Proceeds. Javice's meet-and-confer position is unreasonable and raises legitimate concerns about the spoliation of evidence and undue prejudice to JPMC.  JPMC should be permitted to take targeted discovery regarding the Chariot X transfers or, at a minimum, receive permission to issue preservation subpoenas to third parties.

Javice also has refused to turn over JPMC's property, namely passwords to systems and applications that JPMC acquired as a result of the merger transaction.  By refusing to provide passwords, Javice can access JPMC's property despite no longer being a JPMC employee, which creates a risk that Javice has or will access records outside the discovery process and potentially spoliate metadata or other evidence.  That is an unacceptable risk, and Javice's meet-and-confer position on this issue is unreasonable and represents undue prejudice.  Specifically, rather than identifying the passwords that she has (which would allow JPMC to take protective measures

regarding any such applications), she asks JPMC to provide a list of applications for which it would like such passwords.  JPMC has ownership rights for *all* of the passwords, and thus Javice's gamesmanship relating to JPMC's property rights is not well-taken.  JPMC respectfully requests that this Court grant limited discovery for the production of all passwords that Javice has in her possession and to allow JPMC to determine if Javice or her representatives have accessed JPMC's property.

In light of the foregoing, JPMC respectfully requests that the following discovery be permitted immediately:

(1)     five special interrogatories directed at Javice and the Trusts concerning the transfer of Merger Proceeds as well as JPMC property that Javice continues to possess and any access that has occurred with regard to JPMC's property;

(2)     five requests for production directed at Javice and the Trusts for documents and information related to the transfer of Merger Proceeds as well as JPMC property that Javice continues to possess and any access that has occurred with regard to JPMC's property;

(3)     the issuance of preservation subpoenas to all third-parties that are likely to have relevant information concerning the transfer of Merger Proceeds as well as JPMC property that Javice continues to possess and any access that has occurred with regard to JPMC's property;

(4)     a third-party subpoena for documents and a deposition to the accountants or advisors who assisted Javice with the preparation and filing of her 2021 tax returns and the creation of Chariot X; and

(5)     a four-hour deposition of Javice concerning the transfer of Merger Proceeds as well as JPMC property that Javice continues to possess and any access that has occurred with regard to JPMC's property.

## STATEMENT OF FACTS[3]

*JPMC's Lawsuit Against Javice*

In the summer of 2021, JPMC began to explore a potential acquisition of Frank, Javice's for-profit start-up that aimed to help students complete the Free Application for Federal Student Aid form ("FAFSA").  Compl., ¶¶ 2-3, 37-40.  Javice represented that Frank had 4.25 million users, which she expressly defined to mean individuals who created Frank accounts.  *Id.* at ¶¶ 3, 49.  During due diligence, JPMC sought to confirm the accuracy of Javice's representations.  *Id.* at ¶¶ 5-6, 63-72.  In response to JPMC's request, Javice produced a spreadsheet to JPMC which purported to show detailed information in Frank's records for 4.265 million unique user accounts (*e.g.*, name, school, email address, etc.).  *Id.* at ¶¶ 3, 4, 6.  JPMC later discovered that all of the accounts on that spreadsheet were fake and that the spreadsheet was created by Javice and a Data Science Professor, who generated synthetic data to populate the list (the "Fake Customer List").  *Id.* at ¶ 7-12, 54, 75-115.  In reality, Frank had fewer than 300,000 users.  *Id.* at ¶ 8.

Relying on the Fake Customer List and Frank's representations in the Merger Agreement, JPMC proceeded with the acquisition.  *Id.* at ¶ 15.  JPMC paid $175 million to Frank's shareholders, including approximately $21 million to Javice (the "Merger Proceeds").  *Id.* at ¶¶ 15, 28-29.  Prior to closing, Javice created three trusts (the "Trusts") and transferred certain of her shares in Frank to those Trusts.  As a result, a portion of the merger consideration due to Javice was paid to the Trusts.  Javice directly received approximately $9.7 million, Trust #1

---

[3]   The facts in this section are drawn from JPMC's Complaint, dated December 22, 2022, in this matter (the "Complaint").  ECF No. 1.

received approximately $4.7 million, and Trust #2 received approximately $7 million.[4]  *Id.* at ¶¶ 28-29.

In mid-2022, JPMC initiated an investigation into its acquisition of Frank.  *Id.* at ¶¶ 178-80.  The facts uncovered during that investigation revealed Javice's creation and use of the Fake Customer List that, among other things, led JPMC to place Javice on administrative leave, and ultimately terminate Javice, and to bring this lawsuit.  *Id.* at ¶¶ 180-81.

*Javice's Steps to Conceal Her Fraudulent Conduct*

Javice is specifically alleged to have a track record for concealing misconduct, which is probative for purposes of this motion.  As described in the Complaint, contemporaneous emails show that Javice took steps to prevent JPMC from discovering the Fake Customer List.  During due diligence, JPMC used a third party vendor in an attempt to verify the contents of what JPMC believed was Frank's actual customer list.  *Id.* at ¶¶ 13, 70-71.  Javice provided this vendor with the Fake Customer List that she and the Data Science Professor had generated.  *Id.* at ¶¶ 105-06.  The vendor validated that the source data fields were populated in the spreadsheet and provided Javice with a "data validation report."  *Id.* at ¶ 110, 112.  Just four minutes after Javice received the analysis from the vendor, Javice directed the vendor to destroy the Fake Customer List and to share the report, but no "additional background," with JPMC.  *Id.* at  ¶ 13.

Emails also show that Javice also instructed the Data Science Professor to amend his invoice to omit details about his work.  *Id.* at ¶ 101-02.  The Data Science Professor's original invoice stated that he "generat[ed] all features except for financials" and created "first names,

---

[4]      Trust #3 was due to receive an additional payment of approximately $7.13 million, subject to the terms and conditions of an Amended and Restated Payment Agreement, including a requirement that Javice be employed by JPMC at the time of the payment.  Because the terms of that agreement were not met, JPMC did not make any payment to Trust #3.

last names, emails, phone numbers." *Id.* at ¶ 101.  In response, Javice instructed the Data Science Professor to send a new invoice removing all details of how the Fake Customer List was created, listing only the single task of "data science services," and adding a $4,700 bonus for the Data Science Professor's efforts.  *Id.* at ¶ 102-03.

After JPMC acquired Frank, Javice continued to cover up her fraud.  When JPMC asked Javice for Frank's customer list to conduct a test marketing campaign, Javice did not provide Frank's **actual** customer list.  *Id.* at ¶ 170.  Instead, after delaying and obfuscating for nearly three weeks, Javice provided a list containing data that defendant Olivier Amar had previously obtained from ASL Marketing for $105,000.  *Id.* at ¶¶ 164-172.  After several additional weeks during which JPMC repeatedly requested Frank's real user list, Javice and Amar provided JPMC with yet another list – but still one that contained **no** actual Frank customers and **only** data obtained from third-party vendors.  *Id.* at ¶ 177.  Javice and Amar took these steps to conceal that Frank's true user base was approximately 300,000 individuals, not 4.265 million.[5]

*Javice Creates a Shell Corporation and Transfers the Merger Proceeds*

On September 13, 2022, Javice withdrew several million dollars from her Chase account and placed those funds in a Certificate of Deposit ("CD") that, after 30 days, would earn thousands of dollars in profit.  On the evening of September 13, 2022, JPMC sent Javice a notice that it was placing her on administrative leave while it conducted an investigation into her

---

[5]     On April 4, 2023, the United States Attorney for the Southern District of New York ("SDNY") unsealed a four-count criminal complaint against Ms. Javice in connection with JPMC's acquisition of Frank, which includes counts of Wire Fraud, Bank Fraud, Securities Fraud, and Conspiracy to Commit Wire and Bank Fraud.  *See United States v. Javice*, 23 Mag. 2638 (S.D.N.Y. Mar. 31, 2023).  Federal officers arrested Ms. Javice in connection with the SDNY complaint on April 3, 2023.  At the same time, the United States Securities and Exchange Commission filed a complaint against Ms. Javice for violations of Section 10(b) of the Securities Exchange Act of 1934 and Section 17(a) of the Securities Act of 1933.  *See SEC v. Javice*, No. 23 Civ. 2795 (S.D.N.Y. Apr. 4, 2023).

actions.  In that notice, JPMC specifically instructed Javice to "take no action with regard to the [Merger Proceeds]."  Javice, however, chose to do exactly the opposite.

On September 21, 2022, one week later, Javice caused her accounting firm to create Chariot X, a shell company incorporated in Nevada.  Ex. 1 (Feb. 14, 2023 Letter) at 1.  *Id.* Javice is listed as the manager and sole officer for Chariot X.  *Id.*  The address listed for Chariot X is that of Javice's accountants, S. Adelsberg & Co.  *See* Ex 2 (Nevada Entity Information). Based on a search of available public resources, it does not appear that Chariot X has any business operations, employees, or assets other than the assets Javice has transferred to Chariot X.

Two days later, on September 23, 2022, Javice transferred several million dollars to Chariot X.  Specifically, Javice redeemed the CD, forgoing the thousands of dollars in interest, and transferred those funds, plus additional funds from her Chase account, to Chariot X.  Regan Decl., Ex. 1 (Feb. 14, 2023 Letter) at 1.

In December 2022, Javice transferred several million more dollars to Chariot X shortly after she deposited that amount in her Chase account.  *Id.* at 2.

*Even After Pre-Motion Letters and a Meet and Confer, Javice Fails to Acknowledge and Fulfill Her Preservation Obligations*

On September 13, 2022, JPMC sent Javice a letter demanding that she preserve documents and communications related to JPMC's investigation, including documents and communications related to Frank and the merger with JPMC.  Ex. 3 (Sept. 13, 2022 Letter).

On February 14, 2023, following the commencement of this litigation, JPMC sent another letter to Javice regarding her duty to preserve relevant evidence.  The February 14 letter raised two key issues relevant to this motion.

First, the February 14 letter requested that Javice confirm that her Twitter account, which she made private and then deactivated shortly after this case gained media attention in early January 2023, had been preserved prior to deletion and that all other social media accounts were properly preserved.  Ex. 1 (Feb. 14, 2023 letter) at 3.  Javice's Twitter account contained, among other things, posts in which Javice touted the number of students and customers Frank served, the growth of Frank, and JPMC's acquisition, all facts at the center of this case.  *Id*.

Second, the February 14 letter demanded that Javice return all JPMC property in her possession, custody, or control.  Specifically, JPMC's termination letter stated that Javice needed to "immediately return any and all firm property . . . including intangibles like passwords."  *Id.*; *see also* Ex. 4 (Nov. 4, 2022 Termination Letter).  As long as Javice has this information, she can access JPMC property (which would amount to a violation of the Computer Fraud and Abuse Act).

*Javice's Dilatory Response to JPMC's Concerns Is Incomplete and Unsatisfactory*

On March 13, 2023, JPMC received a brief response to its letter.  The March 13 Letter:

- provided no information whatsoever regarding Javice's transfer of assets in September and December 2022.  Instead, the letter made the false assertion that JPMC forced Javice to move her assets by terminating its banking relationship with Javice;

- made only the conclusory statement that "Ms. Javice is aware of, has complied with, and will continue to comply with the ongoing duty to preserve, including with respect to the data from her Twitter account;" and

- stated that Javice does not have "the credentials sought" in JPMC's February 14 letter because she is not an "administrative or system owner."

Regan Decl., Ex. 5 (Mar. 13, 2023 Letter).

JPMC responded promptly to Javice's letter on March 16, 2023, noting that her response was not satisfactory on any of the three issues and informing Javice that JPMC intended to seek a partial lifting of the Reform Act stay to ensure that all relevant evidence is preserved.

8

In a response letter on March 20, 2023, Javice continued to refuse to provide any information concerning Chariot X or Javice's transfer to Chariot X, or even a representation that Chariot X is preserving relevant information.  Regan Decl., Ex. 6 (Mar. 20, 2023 Letter).  Javice did, however, clarify that she "preserved and archived all data from her Twitter account."  *Id.*  In light of that representation, JPMC is no longer seeking a lifting of the stay to conduct discovery on the preservation of Javice's Twitter account.  Javice also offered to assist JPMC in facilitating the recovery of passwords where two-factor authentication is tied to Javice's email or telephone number but did not state that Javice would return any passwords in her possession.

Following this letter, the parties met and conferred on March 21, 2023.  During that meet and confer, JPMC asked Javice to provide limited discovery in order to avoid motion practice.  Javice declined.  During that meet and confer, two notable issues arose:

- Javice refused to provide a list of passwords, but asked for a list of applications for which JPMC required a password, thereby indicating that Javice does, in fact, have at least some passwords;

- Javice's counsel stated that information about Chariot X went only to judgment discovery and that JPMC was not entitled to that discovery.  It is unclear if Chariot X is preserving all relevant evidence in its possession, custody, or control, or that come to be in its possession, custody, or control, which could include documents regarding the creation of Chariot X, the transfers between Javice and Chariot X, or other records that reflect any actions that Chariot X has taken or still might take.

Given Javice's insufficient responses on the asset transfer and password issues, this motion is necessary to ensure the proper preservation of all relevant evidence.

## **ARGUMENT**

The Reform Act stays discovery in a securities action while a motion to dismiss is pending.  *See* 15 U.S.C. § 78u–4(b)(3)(B).  There is an important exception to this general rule – a court may lift the stay if the "court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party."  *Id.*  A

moving party must "'specify the target of the requested discovery and the types of information needed . . . .'" *Winer Fam. Tr. v. Queen*, No. CIV.A. 03-4318, 2004 WL 350181 (E.D. Pa. Feb. 6, 2004) (quoting *In re Lernout & Hauspie Sec. Litig.*, 214 F. Supp. 2d 100, 108 (D. Mass. 2002)). The moving party must also show "'circumstances specific to his case,' amassing to more than 'conclusory allegations about being disadvantaged in relation to other parties' or 'contingent possibilities of future prejudice[s].'" *In re Heckmann Corp. Sec. Litig.*, No. 10-378-LPS-MPT, 2011 WL 10636718, at *3 (D. Del. Feb. 28, 2011) (quoting *Friedman v. Quest Energy Partners LP*, No. CIV-08-936-M, 2009 WL 5065690, at *3 (W.D. Okla. Dec. 15, 2009)). Here, JPMC has made the required showing and should be permitted to conduct limited discovery of Javice as described below, while defendant Amar's motion to dismiss is briefed and decided.

I. **THE COURT SHOULD PARTIALLY LIFT THE REFORM ACT'S DISCOVERY STAY TO ENSURE THAT RELEVANT EVIDENCE IS PRESERVED.**

JPMC's request for limited discovery is necessary to preserve evidence and prevent undue prejudice. *See* 15 U.S.C. § 78u–4(b)(3)(B). To date, Javice has moved a substantial portion of her Merger Proceeds from a JPMC deposit account in her name to a recently created shell corporation, failed to commit to causing that shell company to preserve relevant evidence, and refused to identify passwords in her possession, custody or control to access JPMC property. Unless JPMC is permitted to conduct limited discovery of these issues, there is a substantial risk that relevant evidence may fail to be preserved before JPMC is permitted to conduct full merits discovery, which is certain to occur because, unlike Amar,  Javice answered the Complaint. As a result, this Court should partially lift the stay and permit JPMC to conduct the narrowly tailored discovery requested in this motion.

### A.      Limited Discovery Is Necessary to Preserve Evidence.

JPMC's request for discovery is necessary to preserve information related to (1)  Javice's

dissipation of Merger Proceeds and the actions of Chariot Holdings X; and (2)  JPMC property,

including passwords, that Javice continues to keep in her possession, custody, or control.

A partial lifting of the discovery stay is warranted when a party's concerns about

destruction of evidence are not hypothetical or speculative.  *See Heckman*, 2011 WL 10636718,

at *4 ("A moving party must demonstrate 'circumstances specific to his case' . . . .").  Concerns

about destruction are not speculative when a defendant appears to be engaged in activities that

may deprive a plaintiff of evidence relevant to the case.  *Cf. In re Royal Ahold N.V. Sec. & Erisa

Litig*., 220 F.R.D. 246, 251 (D. Md. 2004) (finding "plaintiffs' showing of necessity to preserve

evidence" to be "substantial" when defendant "appears to be undertaking a wide-ranging

corporate reorganization," including "divest[ing] itself of key subsidiaries").

Here, JPMC's concerns regarding preservation of data are not hypothetical or

speculative.  Javice has transferred Merger Proceeds away from her personal accounts at JPMC

despite instructions not to take action on those funds, has made inconsistent statements regarding

her possession of JPMC property, and has refused to even return that property to JPMC.  As a

result, a partial lifting of the Reform Act's discovery stay is warranted.

### 1.      Javice's Transfer of Merger Proceeds to a Shell Corporation Creates Preservation Issues That Should Be Addressed Now.

Javice moved Merger Proceeds out of her JPMC personal bank account, out of her name,

and into an out-of-state shell company, and has provided no representation that the shell

company is preserving any relevant information that it has, or may come to have, in its

possession, custody, or control.  Critically, Javice created the shell company just **one week** after

JPMC placed her on administrative leave and instructed her to "take no action with regard to the

sale proceeds [*i.e.*, the Merger Proceeds]."  Further, just **two days** after creating the shell company, Javice transferred several million dollars to that entity.  To fund that transfer, Javice liquidated a CD that she had purchased just days earlier, forgoing a significant amount of interest.  Javice's willingness to sacrifice that interest in order to quickly move assets into a shell company following an instruction not to move assets raises significant concerns as to what additional transfer Javice may make, especially in light of the FDIC's seizure of Chariot X's current financial institution (which may prompt Javice and/or Chariot X to make further transfers, as the FDIC made funds from that bank available to customers on March 13, 2023).  Javice's additional transfer of a significant amount of money (potentially connected to a tax refund involving Merger Proceeds) to Chariot X, only four days after it was deposited in her JPMC account, further bolsters that JPMC needs discovery to ensure all information related to Javice's assets is preserved.

Javice's use of a Nevada shell corporation is a particular concern.  For many years now, Nevada has been a popular jurisdiction for individuals who are seeking to hide ownership information and evade tax obligations.  *See, e.g.*, J. Weston Phippen, *Nevada, a Tax Haven for Only $174*, THE ATLANTIC (Apr. 6, 2016), https://www.theatlantic.com/national/archive/2016/04/panama-papers-nevada/476994/; Steve Reilly, *Dozens of firms creating foreign-based shell companies in two U.S. states*, USA TODAY (May 27, 2016), https://www.usatoday.com/story/news/2016/05/26/dozens-firms-creating-foreign-based-shell-companies-two-us-states/84222480/.  Indeed, Nevada advertises its beneficial tax and corporate law as "The Nevada Advantage."  *See The Nevada Advantage*, NEVADA SECRETARY OF STATE, https://www.nvsos.gov/sos/businesses/the-nevada-advantage.

Equally concerning, Javice has made clear that she does not view Chariot X as having relevant information and, therefore, has not provided any representation that Chariot X is preserving relevant information that it has, or may have in the future, in its possession, custody, or control.  Javice's movement of the Merger Proceeds to Chariot X is relevant evidence because terminating a CD early, forgoing thousands of dollars in interest, and transferring those funds to a third party further evince her fraudulent intent.  This Court can put an end to these legitimate concerns by allowing narrow discovery to ensure preservation of relevant evidence.

> ## 2.    Javice's Failure to Return JPMC Property Threatens Proper Preservation of Evidence.

Despite JPMC's requests, Javice has failed to return JPMC property in the form of passwords to Frank applications, indicating at different times that she does not have "credentials" because she was not a "system owner or administrator," but subsequently asking JPMC for a list of passwords it needs, indicating that Javice does, in fact, have some passwords.  Javice's continued possession of passwords to Frank applications threatens the integrity of the information stored in and on those applications.  Considering Javice's conduct to date (discussed below and all of which is supported by citations to her contemporaneous email communications), it is imperative to engage in limited discovery to determine if Javice has accessed JPMC's property in a way that alters evidence, and to cause Javice to identify all passwords that she maintains so that JPMC can take protective measures for the property it owns.

> ## 3.    Javice's Past Actions Demonstrate That a Risk of the Loss of Evidence Exists.

Javice has already tried to hide her fraudulent activity.  *See, e.g.*, Compl. At ¶¶ 13, 113 (detailing how Javice directed the third-party vendor to delete the data from the Fake Customer List and not to share the information with JPMC), ¶¶ 101-03 (showing how Javice instructed the Data Science Professor to redo his invoice in order to obscure the work he did creating the Fake

Customer List).  Without discovery relating to Javice's transfer of Merger Proceeds and fulfillment of her other preservation obligations, a substantial risk exists that this information will not be preserved.  As described in more detail below, the discovery JPMC seeks now is discovery that will be conducted now or later and  is unique to Javice.  A partial lifting of the stay in no way prejudices Javice, who answered the Complaint and is relying on Amar's motion to dismiss to further stay discovery.

### 4.    Third-Party Subpoenas Will Ensure the Preservation of Evidence.

JPMC requests that, as a part of the partial lifting of the stay, JPMC be permitted to issue certain third-party discovery requests, specifically:  (1) preservation subpoenas to any third party likely to have information concerning the transfer of Merger Proceeds, the preservation of Frank applications, and the return of JPMC property related to those applications; and (2) third-party document and deposition subpoenas to the accountants and/or advisors who assisted Javice with the preparation and filing of her 2021 tax returns and the creation of the Nevada shell company for Chariot X.  As noted previously, Javice answered the Complaint, and the only reason full merits discovery is not proceeding is due to Amar's pending motion to dismiss.  Discovery on the Complaint will proceed with respect to Javice, but unless this Court grants a partial lifting of the stay, JPMC cannot seek documents from third parties that may have relevant information but may not be preserving that information.  Permitting limited preservation subpoenas and subpoenas for documents and testimony directed specifically at the third parties involved in Javice's asset transfers ensures preservation, while placing a negligible burden on Javice.

### B.    JPMC's Request for Limited Discovery Is Narrowly Tailored and Sufficiently Particularized.

JPMC's request is targeted and particularized to address its concrete concerns regarding the preservation of potentially relevant evidence and Merger Proceeds.  "[A] discovery request is

particularized within the meaning of 15 U.S.C. § 78u–4(b)(3)(B) if the party seeking discovery under the exception . . . adequately specif[ies] the target of the requested discovery." *Dipple v. Odell*, 870 F. Supp. 2d 386, 391 (E.D. Pa. 2012) (quoting *Nichting v. DPL Inc.*, No. 3:11-CV-141, 2011 WL 2892945, at *2 (S.D. Ohio July 15, 2011)). Therefore, "whether discovery requests are 'particularized' depends upon 'the nature of the underlying litigation.'" *Id.* (quoting *Royal Ahold*, 220 F.R.D. at 250). When a plaintiff is not "engaged in a fishing expedition or an abusive strike suit," but rather asks for specific discovery in order to address concrete needs, the "ambiguous notion of 'particularized' discovery" should not be used to prevent the plaintiff from accessing necessary discovery. *See In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301, 306 (S.D.N.Y. 2002).

Here, JPMC requests discovery into three discrete topics: (1) Javice's creation of Chariot X and any other corporations to which she has transferred her assets; (2) the movement and location of the Merger Proceeds following Javice's transfers in September and December 2022; and (3) the preservation of Frank applications and password information sufficient to give JPMC control over those applications. These requests seek to address the narrow and concrete concerns about Javice's dissipation of the Merger Proceeds and spoliation of potentially relevant evidence. *See Royal Ahold*, 220 F.R.D. at 252 (lifting the PSRLA discovery stay when the request was "adequately particularized in light of the scale and nature of the underlying litigation").

Moreover, through pre-motion letter writing and a meet and confer between the parties, JPMC has sought to narrow the relief it seeks in this motion. For example, through this pre-motion process, JPMC has secured a representation that Javice has fully preserved her Twitter account following her deactivation of that account. As such, JPMC will rely on that representation and wait until merits discovery to seek that information. Unfortunately, Javice

15

has not been equally forthcoming in agreeing to preserve information concerning her asset transfers or Chariot X or in agreeing to return JPMC property.  The narrowly tailored discovery in this motion is necessary to address those issues now.

## II.   LIFTING THE DISCOVERY STAY HERE IS CONSISTENT WITH THE PURPOSE OF THE REFORM ACT'S DISCOVERY STAY.

The Reform Act was enacted in 1995 as a "bipartisan effort to curb abuse in private securities lawsuits, particularly the filing of strike suits."  *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 191 (1st Cir. 1999).  As part of this effort, the Reform Act stays discovery during the "pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party." 15 U.S.C. § 78u–4(b)(3)(B).  The Reform Act's discovery stay was designed to stop two types of abuse that had become prevalent in securities class actions.  First, the discovery stay stops plaintiffs from filing frivolous lawsuits in the hopes that defendant companies would settle rather than pay expensive discovery costs.  *In re Lernout & Hauspie Sec. Litig.*, 214 F. Supp. 2d 100, 105-06 (D. Mass. 2002); *see also WorldCom,*, 234 F. Supp. 2d  at 305.  Second, the discovery stay prevents plaintiffs from filing baseless lawsuits in the hopes of uncovering actionable misconduct during the court of discovery.  *Lernout*, 214 F. Supp. at 106.

Neither of these reasons apply.  This is not a public company strike suit brought following a stock price drop.  And this is not a plaintiff filing suit in the hopes of uncovering wrongdoing during the course of litigation.  JPMC brought this lawsuit after spending months investigating the Frank merger.  Compl. at ¶ 180.  JPMC has alleged – in great detail – the actions Javice took to fraudulently induce JPMC into acquiring Frank.  *See id.* at ¶¶ 73-116.  JPMC's attempts to engage with Javice over the preservation of evidence have been insufficient to ensure preservation of all necessary evidence.  In situations like these, courts permit a partial

lifting of the discovery stay in order to ensure that evidence is preserved as required.  *See Lernout*, 214 F. Supp. 2d at 106 (permitting limited discovery when neither purpose of the Reform Act's stay was implicated); *Worldcom*, 234 F. Supp. 2d at 305 (same); *Tobias Holdings, Inc. v. Bank United Corp.*, 177 F. Supp. 2d 162, 169 (S.D.N.Y. 2001) (same); *Vacold LLC v. Cerami*, No. 00 CIV. 4024 (AGS), 2001 WL 167704, at *7 (S.D.N.Y. Feb. 16, 2001*)* (same).

Moreover, Javice opted to answer the Complaint, rather than file her own motion to dismiss.  While the Reform Act's discovery stay may still generally remain in place pending the resolution of Amar's motion to dismiss, there is no question that Javice soon will be subject to full merits discovery.  In other words, Javice eventually will have to produce the requested information – this is not a situation where a plaintiff seeks discovery from a defendant who itself has filed and may prevail on a motion to dismiss and thereby avoid discovery entirely.

As a result, a partial lifting of the Reform Act's discovery stay here does not undermine the purpose of the Reform Act's discovery stay in any way.

## CONCLUSION

For the foregoing reasons, this Court should grant JPMC's motion to partially lift the Reform Act's discovery stay and order the following discovery:

1. five special interrogatories directed at Javice and the Trusts concerning the transfer of Merger Proceeds, as well as JPMC property that Javice continues to possess and any access that has occurred with regard to JPMC's property;

2. five requests for production directed at Javice and the Trusts for documents and information related to the transfer of Merger Proceeds, as well as JPMC property that Javice continues to possess and any access that has occurred with regard to JPMC's property;

3. the issuance of preservation subpoenas to all third parties that are likely to have relevant information concerning the transfer of Merger Proceeds as well as JPMC property that Javice continues to possess and any access that has occurred with regard to JPMC's property;

4.      a third-party subpoena for documents and a deposition to the accountants or advisors who assisted Javice with the preparation and filing of her 2021 tax returns and the creation of the Nevada shell company for Chariot X; and

5.      a four-hour deposition of Javice concerning the transfer of Merger Proceeds, as well as JPMC property that Javice continues to possess and any access that has occurred with regard to JPMC's property.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

By: */s/ Jonathan A. Choa*

William M. Regan
Allison M. Wuertz
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
(212) 918-3000

Peter J. Walsh, Jr. (#2437)
Michael A. Pittenger (#3212)
Jonathan A. Choa (#5319)
Carla M. Jones (#6046)
Hercules Plaza
P.O. Box 951
Wilmington, DE  19899
(302) 984-6000
mpittenger@potteranderson.com
pwalsh@potteranderson.com
jchoa@potteranderson.com
cjones@potteranderson.com

Dated:  April 7, 2023
Public version dated: April 10, 2023
10734140

*Attorneys for JPMorgan Chase Bank, N.A.*

18