# EXHIBIT 1

# DONTZIN NAGY & FLEISSIG LLP

Tibor L. Nagy, Jr.
tibor@dnfllp.com

980 Madison Avenue | New York, New York 10075 | (212) 717 - 2900

**BY EMAIL**                                                          February 14, 2023

Alex Spiro, Esq.
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue
New York, New York 10010
alexspiro@quinnemanuel.com

      **Re:  Charlie Javice**

Alex,

      We write on behalf of JPMorgan Chase Bank, N.A. ("Chase") further to (1) the September 13, 2022 letter from James McGovern to your client, Charlie Javice, informing her of her obligation to preserve relevant evidence (the "Preservation Letter"), (2) the September 13, 2022 email from Reid Broda to Ms. Javice informing her that Chase was suspending her employment pending its investigation into her conduct (the "Suspension Notice"), and (3) the November 4, 2022 letter from Mr. Broda to Ms. Javice terminating her employment with Chase for cause (the "Termination Letter").  We write to raise four issues.

## I.    MS. JAVICE MUST CEASE ANY TRANSFER OF MERGER PROCEEDS AND PRESERVE ALL DOCUMENTS RELATED TO THOSE PROCEEDS

      First, we write concerning Ms. Javice's transfers of the substantial consideration paid to her, and to trusts created for her benefit, for the purchase of Frank (the "Merger Proceeds"). In the Suspension Notice, which Mr. Broda transmitted to Ms. Javice on the evening of September 13, 2022, Mr. Broda reminded Ms. Javice that, in light of the parties' dispute, she should "take no action with regard to the sale proceeds [*i.e.*, the Merger Proceeds]." Notwithstanding her duty to avoid fraudulently transferring the Merger Proceeds, the record suggests misconduct.  Among other things, the record demonstrates that:

- On September 21, 2022 (*i.e.*, one week after she received the Suspension Notice), Ms. Javice apparently caused her accounting firm to incorporate a shell company in Nevada called Chariot Holdings X LLC ("Chariot"), for which Ms. Javice is listed as the "manager."

- Two days later, on September 23, 2022, Ms. Javice transferred ███ million of the Merger Proceeds from her personal Chase account to Chariot.  This transfer was notable for at least two reasons.  First, within ten days of receiving a notice that advised her of the impropriety of dissipating assets, Ms. Javice conveyed sizeable portions of Merger Proceeds to a third-party corporate entity.  Second, to fund this conveyance, Ms. Javice liquidated a ███ million certificate of deposit ("CD") that was set to mature on October 14, 2022.  By liquidating the CD prior to maturity, Ms. Javice consciously forfeited interest she personally would have earned on it—demonstrating a sense of haste in her transferring these personal assets to a corporate entity.

- On December 5, 2022, Ms. Javice transferred another ██ million from her personal account to Chariot, for a total of ██ million in transfers since she received the Suspension Notice. She deposited these funds on December 1, 2022, from a federal tax refund that appears to relate to a portion of her Merger Proceeds—and which she then quickly transferred from her personal Chase account to Chariot four days later.

These transactions strongly suggest that Ms. Javice is improperly seeking to shield the Merger Proceeds from recovery by Chase, including by transferring personal assets to shell companies that are not parties to the federal litigation. In light of Ms. Javice's conduct and her transfers of the Merger Proceeds, we make the following requests:

1. Please provide written confirmation that Ms. Javice has preserved, and will continue to preserve, all Merger Proceeds, including without limitation all funds transferred to Chariot, all funds that remain in accounts in her personal name, and any other funds she has transferred to other third parties.

2. Please identify the nature of Chariot's business, Ms. Javice's relationship to it, and any consideration provided by Chariot to Ms. Javice in exchange for the ██ million she transferred to it. We also ask that you confirm that Ms. Javice does not and will not take the position that she lacks possession or control of the funds she transferred to Chariot.

3. Please confirm that, apart from the transfers to Chariot identified above, Ms. Javice has not taken and will not take any actions that would remove the Merger Proceeds from Ms. Javice's personal, U.S.-domiciled accounts or the trust accounts she established to receive Merger Proceeds, or that otherwise would compromise Chase's ability to recover the Merger Proceeds (the "Transfer Actions"). Such actions include but are not limited to (i) transfers to foreign accounts; (ii) transfers to accounts held by businesses or other third parties; and (iii) conversions of the Merger Proceeds into any non-personal or difficult-to-trace asset, including without limitation cryptocurrency.

4. If Ms. Javice has taken any Transfer Actions apart from the transfers to Chariot, we ask that you immediately identify each of them. For all Transfer Actions to date, if Ms. Javice contends that any transferred funds (*e.g.*, the Merger Proceeds transferred to Chariot) were not fraudulently conveyed, please explain the basis for her position. We reserve our right to seek additional information or make additional requests after Ms. Javice identifies any further Transfer Actions.

5. Please confirm that Ms. Javice has preserved, and will continue to preserve, all documents concerning any and all Transfer Actions, including but not limited to transfer records, seed phrases, account statements, and all communications of any kind (*e.g.*, text messages, Signal messages, Whatsapp messages, phone records, voicemails, etc.).

## II. MS. JAVICE MUST PRESERVE ALL RELEVANT SOCIAL MEDIA CONTENT— INCLUDING THE TWITTER ACCOUNT THAT SHE DELETED SHORTLY AFTER RECEIVING THE PRESERVATION LETTER

Second, after receiving a Preservation Letter, Ms. Javice deleted her Twitter account (the "Twitter Account"). The Twitter Account contains relevant evidence, including but not limited to posts made by Ms. Javice concerning Frank, the purported growth of Frank and the number of students and customers it served, and Chase's acquisition of Frank. In light of Ms. Javice's conduct, and given the importance of the preservation of the Twitter Account, we make the following requests (numbered sequentially continuing from our list above):

6. Please confirm that Ms. Javice has preserved all content of the Twitter Account, including all public posts, comments to posts, and direct messages. If she has not done so, please let us know so that we can discuss what steps can and should be taken to attempt to recover them.

7. Please confirm that Ms. Javice has preserved all potentially relevant content from any of her other social media accounts. If she has not done so, please let us know so that we can discuss what steps can and should be taken to attempt to recover them.

## III. MS. JAVICE MUST IMMEDIATELY TURN OVER CONTROL OF ALL SYSTEMS, APPLICATIONS, AND PROPERTY BELONGING TO CHASE

Third, we note that Ms. Javice also failed to comply with her duty to return Chase's property following her termination. As you know, the Termination Letter specifically instructed Ms. Javice to "immediately return any and all Firm property . . . including intangibles like passwords." Termination Letter at 2. Despite receiving the Termination Letter, Ms. Javice has failed to return all passwords and other user credentials for Frank's systems, applications, or repositories of electronically-stored information (collectively, "Applications"), including those requiring two-factor authentication to obtain access. The Applications, and all content stored using the Applications, are Chase property. In light of Ms. Javice's conduct, and given the importance of securing the Applications, we make the following requests (numbered sequentially continuing from our list above):

8. Please immediately provide all relevant credentials within Ms. Javice's possession or control for accessing any Applications (including, *e.g.*, Google Analytics, Dropbox, Mixpanel, and any other Applications Ms. Javice used).

9. If Ms. Javice has enabled two-factor authentication for any Applications, please specify the email address or phone number to which the authentication code is transmitted for each Application. If the code for any Application is sent to any of Ms. Javice's personal devices, please arrange for Ms. Javice to cooperate as needed to supply the code to Chase when prompted so that Chase can log on.

10. Please confirm that Ms. Javice has not deleted or attempted to alter or otherwise spoliate any records, documents, or data, including any metadata, contained in and/or associated with any Applications.

*Alex Spiro, Esq.*                                                                      *February 14, 2023*

## IV.   MS. JAVICE MUST PRESERVE ALL COMMUNICATIONS THAT HAVE AUTO-DELETE CAPABILITIES, INCLUDING WHATSAPP, TEXT AND SIGNAL MESSAGES

Finally, we note that Ms. Javice created relevant communications using applications that have auto-delete capabilities.  For example, emails between Ms. Javice and Mr. Amar demonstrate that they communicated over WhatsApp and text messages in late July 2021, when Chase and Frank were engaged in merger negotiations.  These communications, along with messages on any other application that offers an auto-delete setting, face an imminent risk of destruction.[1]  In light of Ms. Javice's conduct (including her deletion of her Twitter Account), and given the importance of the preservation of these communications, we make the following requests (numbered sequentially continuing from our list above):

11. Please confirm that Ms. Javice has preserved, and will continue to preserve, all of her potentially relevant Whatsapp and text messages, including by disabling any and all auto-delete features.  If she has not done so, please let us know so that we can discuss what steps can and should be taken to attempt to recover them.

12. Please confirm that Ms. Javice has preserved, and will continue to preserve, all other potentially relevant communications created using applications that have auto-delete capabilities, including but not limited to Signal.  Please in particular confirm that Ms. Javice has disabled the auto-delete feature of her Signal and other similar applications. If she has not done so, please let us know so that we can discuss what steps can and should be taken to attempt to recover relevant communications that have not been preserved.

                                          * * *

We look forward to your prompt response.

                                                      Sincerely,

                                                      _____

                                                      Tibor L. Nagy, Jr.

cc (via email): JP Kernisan, Esq.
                Courtney Kasuboski, Esq.
                James G. McGovern, Esq.
                William M. Regan, Esq.
                Allison M. Wuertz, Esq.

---

[1] *See, e.g., Lieberman v. Unum Grp.*, 2021 WL 8154889, at *5 (C.D. Cal. Oct. 14, 2021) ("[D]efendant is right to be concerned about potential spoliation of evidence given plaintiff's admission that he has communicated with his caregivers via at least text and WhatsApp messages.").

# EXHIBIT 2

## ENTITY INFORMATION

### ENTITY INFORMATION

**Entity Name:**

CHARIOT HOLDINGS X LLC

**Entity Number:**

E26295602022-2

**Entity Type:**

Domestic Limited-Liability Company (86)

**Entity Status:**

Active

**Formation Date:**

09/21/2022

**NV Business ID:**

NV20222575618

**Termination Date:**

Perpetual

**Annual Report Due Date:**

9/30/2023

**Series LLC:**

☐

**Restricted LLC:**

☐

### REGISTERED AGENT INFORMATION

**Name of Individual or Legal Entity:**

VCORP SERVICES, LLC

**Status:**

Active

**CRA Agent Entity Type:**

**Registered Agent Type:**

Commercial Registered Agent

**NV Business ID:**

**Office or Position:**

**Jurisdiction:**

NEW YORK

**Street Address:**

701 S. CARSON STREET, SUITE 200, Carson City, NV, 89701, USA

**Mailing Address:**

**Individual with Authority to Act:**

Miriam Katz, Assistant Secretary

**Fictitious Website or Domain Name:**

## OFFICER INFORMATION

☐ **VIEW HISTORICAL DATA**

| Title | Name | Address | Last Updated | Status |
|-------|------|---------|--------------|--------|
| Manager | Charlie Javice | 280 Northern Blvd, Great Neck, NY, 11021, USA | 09/21/2022 | Active |

Page 1 of 1, records 1 to 1 of 1

Filing History        Name History        Mergers/Conversions

Return to Search        Return to Results

# EXHIBIT 3



Hogan Lovells US LLP
390 Madison Avenue
New York, NY 10017
T +1 212 918 3000
F +1 212 918 3100
www.hoganlovells.com

September 13, 2022

**Via E-mail**

Charlie Javice
c/o David Siegal
Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
Chrysler Center
666 Third Avenue
New York, NY 10017
DMSiegal@mintz.com

Re:     **Demand for Preservation of Documents**

Dear Ms. Javice:

        We represent JPMorgan Chase Bank, N.A. ("JPMC"), and are currently investigating events surrounding JPMC's acquisition of TAPD, LLC, d/b/a "Frank" to determine whether JPMC has legal claims against any individuals or entities.  You have documents relevant to our investigation, including, but not limited to, documents related to Frank's purported or actual customer accounts; documents and information provided by Frank to JPMC during the due diligence process; documents and information related to Frank or your retention, dealings and communications with Professor ▮▮▮▮▮▮▮▮▮▮ at any time (including any data science services rendered by Professor ▮▮▮▮▮▮); documents and information related to Frank's reporting of historical or current customer accounts or sessions figures or calculations (including reporting of customer figures in Business Update Reports); and the activities of Frank both pre- and post-acquisition (collectively, the "Potentially Relevant Information").

        JPMC hereby demands that you take all reasonable steps to preserve all Potentially Relevant Information that is in or may come into your custody and control, including personal files, handwritten notes, calendars, electronic files, electronic messages, text messages, instant messages, drafts, memoranda, notes, data, correspondence, analyses, charts, reports, plans, and e-mails, whether maintained in hard copy or electronic form and whether stored on your work computer or other electronic devices, your personal/home computer, telephone or other electronic devices, work or personal e-mail, and work or personal file storage services.  Further, normal records destruction practices, including those triggered automatically by date or age of documents or electronic files, should be suspended for all Potentially Relevant Information, including any auto-delete or similar setting on any mobile device.  This demand also pertains to documents that have been shipped to off-site storage.

        If you are in doubt about whether a document falls within the scope of this demand, you should retain it.  In addition, please continue to save any emails or documents that you send or

September 13, 2022
Charlie Javice
Page 2

receive in the future in their original form.  For example, you must save all emails in electronic
form.

      Finally, please refer to the hold notice that JPMC delivered via email to you earlier today
for additional information.

      We request that you take no action to convey the sale proceeds from JPMC's purchase of
Frank.

      Please contact me if you have any questions or concerns regarding this matter.

                         Sincerely,

                         James McGovern

# EXHIBIT 4

# JPMORGAN CHASE & CO.

**Reid R. Broda**
Associate General Counsel
Legal Department

## By Email

November 4, 2022

Charlie Javice
c/o Andrew J. Bernstein
Mintz, Levin, Cohn, Ferris, Glovsky, and Popeo, P.C.
Chrysler Center
666 Third Avenue
New York, New York 10017
ABernstein@mintz.com

Charlie Javice
c/o Alex Spiro
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
alexspiro@quinnemanuel.com

Dear Ms. Javice,

This letter notifies you that your employment with JPMorgan Chase Bank, National Association (hereinafter, "Chase" or the "Firm") is terminated, effective immediately. As set forth below, this termination is for Cause pursuant to the terms and conditions of your Offer and Retention Agreement executed on August 4, 2021 (the "Contract"), a copy of which is enclosed for your reference.

Chase's review of your conduct to date has confirmed numerous actions by you compelling termination of your employment, including pursuant to sections (i), (ii), (v), (vi), and (vii) of the definition of "Cause" in Appendix I to your Contract.  These actions include, without limitation, each of the following, which you performed directly and/or in concert with others:

1.  You concealed and failed to disclose to Chase during your employment that, prior to Chase's acquisition of Frank, you (a) misrepresented the number of Frank's customer base, and (b) fabricated a list of purported Frank customers to be used to corroborate that misrepresentation.

2.  You hired outside vendors or consultants using Chase assets to assist you in creating falsified data to misrepresent your customer base, including using synthetic data, while concealing the reason these outside vendors or consultants were hired and failing to report their, and your, misconduct.

3.  You continued to misrepresent Frank's customer base during your employment, including without limitation by using a list of non-Frank student data clandestinely purchased with Chase assets to falsify additional customer data provided to Chase to use as part of its marketing campaign for Frank.

4.      You misrepresented Frank's historical and current customer accounts to Chase's senior management as part of Frank's reporting to Chase for Business Unit Reviews ("BUR") and failed to disclose accurate business metrics to Chase.

5.      You engaged in other forms of misconduct, including without limitation: (a) failing to identify, report, and correct legal and regulatory compliance issues, including ADA compliance issues; (b) failing to identify, report and correct material problems concerning the FAFSA submitter technology Frank utilized; (c) instructing Frank employees to withhold information from Chase; and (d) discussing the matters referenced in this letter with former Frank investors to the Firm's detriment and in violation of your contractual obligations.

6.      You obstructed, failed to cooperate with, and failed to provide truthful and complete information in connection with Chase's investigation of your conduct, including without limitation by failing to disclose your previous misrepresentations and data falsification and by refusing to appear for an interview that you were contractually obligated to attend.

For the avoidance of doubt, your misconduct (including without limitation the misconduct outlined above) resulted in the suspension of Frank's business operations and caused material injury to the Firm or its relationship with its customers, clients, or employees.

The foregoing list of actions supporting termination for Cause is not exhaustive, and the Firm may discover and/or rely upon additional facts that further support your termination for Cause.

Chase further notes that your actions violated Chase's Code of Conduct, including but not limited to the following provisions: Sections 1.2, 1.3, 1.4, 2.1, 2.1.1, and 2.2.2. This list of Code provisions supporting your termination for Cause is not exhaustive, and the Firm may discover and/or rely upon additional facts which may implicate other Code provisions that further support your termination for Cause.

Please immediately return any and all Firm property to Jennifer Valladares (including intangibles like passwords and proprietary Firm information) and make arrangements with her to immediately remove and cease all use of any administrative rights you may have to systems, databases, communications channels, or anything else owned or controlled by JPMC. Please note that you will receive additional information in the coming days in connection with your termination.

Finally, we remind you that your obligations under the Contract continue after your termination. You may not use or disclose to anyone any confidential information related to the Firm's business or communicate with the press or other media about matters related to the Firm.

You are also required to refrain from competition, solicitation, and disparagement, as described in the Contract.

This letter is without prejudice to any of Chase's rights, powers, privileges, remedies, and defenses, all of which are hereby expressly reserved.

Sincerely,

Reid R. Broda

Attachment

# EXHIBIT 5

**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
(212) 849-7364

WRITER'S EMAIL ADDRESS
alexspiro@quinnemanuel.com

March 13, 2023

**PRIVILEGED & CONFIDENTIAL**
**VIA E-MAIL**

Tibor L. Nagy, Jr.
tibor@dnfllp.com
Dontzin Nagy & Fleissig LLP
980 Madison Avenue
New York, NY 10075

Re:     Charlie Javice

Dear Mr. Nagy:

         We write on behalf of our client Charlie Javice in response to your February 14, 2023, letter.

**I.      Transfer of Funds from Chase Accounts**

         First, it seems highly incongruous and frankly disingenuous that fewer than two weeks after your letter demanding that Ms. Javice "cease any transfer of merger proceeds" out of her accounts with JPMorgan Chase Bank or affiliates ("Chase"), your client abruptly and unilaterally decided to close those accounts and terminate its banking relationship with Ms. Javice.  As you must understand, this unilateral action by your client leaves Ms. Javice with no choice but to arrange the transfer of all her remaining assets out of Chase immediately—which is the very same conduct that you purport to complain about in your letter.  Indeed, the fact that your client, while engaged in active litigation with Ms. Javice, has without notice or authorization accessed Ms. Javice's personal bank accounts to gain information as to how she is using her assets and to levy additional meritless and speculative accusations against her, proves precisely why she felt the need to diversify her assets away from Chase's exclusive custody and control in the first place.

         Your client has improperly abused its banking relationship with Ms. Javice to spy on her banking activities and try to use that information against her to create a false record of alleged "misconduct."  There is nothing about her transfer of certain funds out of her Chase accounts that "suggests misconduct" or any effort to shield her assets from litigation recovery.  Ms. Javice's

**quinn emanuel urquhart & sullivan, llp**
ATLANTA | AUSTIN | BERLIN | BOSTON | BRUSSELS | CHICAGO | DOHA | HAMBURG | HONG KONG | HOUSTON | LONDON | LOS ANGELES |
MANNHEIM | MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | RIYADH | SALT LAKE CITY | SAN FRANCISCO | SEATTLE |
SHANGHAI | SILICON VALLEY | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | ZURICH

transfer of funds from her Chase accounts was not an attempt to shield assets from potential recovery by Chase, and Ms. Javice's conduct was entirely appropriate and aimed at preventing predictable harassing behavior from Chase that has since occurred.  Your client's improper actions towards Ms. Javice underscore her legitimate need to move funds out of your client's bank.  There is no court order preventing Ms. Javice from transferring funds or dictating their use, and Chase has no basis to impose restrictions on Ms. Javice by manufacturing a justification for self-help.

## II.    Preservation Obligations

Since September 13, Ms. Javice has taken affirmative steps to prevent the deletion of documents, including from applications like WhatsApp and other text message applications that may have auto-delete functions, and including by having all data from her phone and computer collected and stored.  Ms. Javice is aware of, has complied with, and will continue to comply with the ongoing duty to preserve, including with respect to data from her Twitter account.  We expect that Chase has done and will do the same, as it has in its possession almost all relevant documentary evidence and has an obligation to retain all electronically stored information ("ESI"), including emails, text messages, chats, messenger app communications (e.g., WhatsApp, Signal), related to Frank and/or Ms. Javice.  We trust that you have already advised Chase employees with relevant ESI to retain this information and to disable auto-delete functions on all their personal and business devices.  Please confirm to us immediately that you have so advised and preserved all relevant communications on the business or personal devices or applications of, among others, ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

## III.    Systems and Applications Access

Finally, you are incorrect that Ms. Javice failed to comply with her duty to return Chase's property following her termination.  Ms. Javice was neither the administrative nor system owner of the Applications and Systems for which Chase has requested access and as such does not have the credentials sought.  To the extent such a confirmation can be made in light of the foregoing, we confirm that Ms. Javice has not deleted or attempted to alter or otherwise spoliate any records, documents, or data, including any metadata, contained in and/or associated with any Applications.

Regards,

Alex Spiro

cc: James G. McGovern, Hogan Lovells (via email)
    William M. Regan, Hogan Lovells (via email)
    Allison M. Wuertz, Hogan Lovells (via email)

# EXHIBIT 6

**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
(212) 849-7364

WRITER'S EMAIL ADDRESS
alexspiro@quinnemanuel.com

March 20, 2023

<u>VIA E-MAIL</u>

William Regan
Hogan Lovells US LLP
390 Madison Avenue
New York, NY 10017
william.regan@hoganlovells.com

Re:     <u>Charlie Javice</u>

Dear Mr. Regan:

        We write on behalf of Charlie Javice in response to your March 16 letter.  Your letter all but ignores the responses we provided to you, entirely ignores the questions we asked of you, and threatens to seek discovery to which you are not entitled and has no relation to your claims.  It appears that you are more interested in manufacturing a record to justify your continued harassment of Ms. Javice than in meaningfully addressing and resolving the issues you raised. Nonetheless, we respond once again to the specific issues you have raised below.

        To the extent that you are nonetheless intent on running to court with unnecessary motion practice to engage in needless discovery, we think that position is baseless and will fail.   As you are aware, "[m]odifying the mandatory stay requires a showing of exceptional circumstances, that is, where it is necessary either to save evidence from imminent destruction or to prevent undue prejudice." *In re Heckmann Corp. Sec. Litig.*, No. 10-378-LPS-MPT, 2011 WL 10636718, at *3 (D. Del. Feb. 28, 2011).  Your letter presents no facts to support a finding of fraudulent activity or exceptional circumstances that would justify your premature discovery request, and we are confident that the district court will agree.

I.      **Assets**

         You have mistaken the point of our prior letter.  We in no way asserted that "Ms. Javice transferred her assets because JPMC terminated its banking relationship with Ms. Javice." Obviously not, as she transferred certain of her assets before JPMC unilaterally closed her accounts.  However, we do think you are hard pressed to complain about Ms. Javice transferring

**quinn emanuel urquhart & sullivan, llp**
ATLANTA | AUSTIN | BERLIN | BOSTON | BRUSSELS | CHICAGO | DOHA | HAMBURG | HONG KONG | HOUSTON | LONDON | LOS ANGELES | MANNHEIM | MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | RIYADH | SALT LAKE CITY | SAN FRANCISCO | SEATTLE | SHANGHAI | SILICON VALLEY | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | ZURICH

assets out of the bank that is suing her, given that mere weeks later you unilaterally terminated her accounts. This has required her, necessarily, to do exactly what you are complaining about: transfer her money elsewhere. JPMC can't have it both ways—you either want her to keep her money in your bank, or you don't.

There is nothing about Ms. Javice's transfer of certain assets to Chariot X Holdings, LLC, that is indicative of any wrongdoing. And you have identified none. Using pejorative labels like "shell company," without factual basis, doesn't get you there. Incredibly, your letter now seems to imply that Ms. Javice is somehow responsible for or foresaw the collapse of Signature Bank—an absurd suggestion that only weakens your illogical position.[1] There is a perfectly rational explanation for why Ms. Javice would want to diversify her assets away from your bank: you are suing her, and you have indeed predictably used your custody of her accounts and banking relationship with her to further harass and accuse her. There is no court order restricting Ms. Javice's transfer or use of her assets, and your letter sets forth no reason why you are entitled to further information about how she manages her assets. Ms. Javice's transfer of assets to Chariot X Holdings is also entirely unrelated to the underlying factual allegations in this dispute. You are not entitled to any further discovery on this, and no court will give it to you under these circumstances.

## II.    Duty to Preserve

You cannot show why discovery would be necessary to preserve evidence. You are incorrect that "[t]he March 13 Letter does not represent that no data was lost in the process of deactivating and restoring the Twitter account." Our March 13 letter states clearly that Ms. Javice has complied with the duty to preserve, including with respect to her Twitter account.

Your entire argument on the alleged necessity to preserve evidence is that Ms. Javice deactivated her Twitter account. But Ms. Javice did not deactivate the account to destroy evidence, and she has not exhibited any inclination or intent to destroy evidence. She has only exhibited a desire to protect her safety and privacy. She deactivated the account when she became the target of considerable unwanted negative attention from the public—in large part as a result from JPMC's lawsuit and the resulting media storm against her; a quick search on Twitter for references to her name will reveal thousands of derogatory comments, including sexist and antisemitic remarks and highly personal attacks. Once you raised an issue with the deactivation of her Twitter account, she reactivated it. It is hard to imagine what else you believe is necessary here.

---

[1] The FDIC announced that it "transferred all the deposits and substantially all of the assets" of Signature Bank to Signature Bank, N.A. "No advance notice is given to the public when a financial institution is closed." In its FAQ, the FDIC writes: "IS MY MONEY SAFE? Yes! No one lost any money on deposit as a result of the closure of this bank. All deposits, regardless of dollar amount, were transferred to Signature Bridge Bank, N.A." FDIC, Failed Bank Information for Signature Bank, https://www.fdic.gov/resources/resolutions/bank-failures/failed-bank-list/signature-ny.html; Frequently Asked Questions, https://www.fdic.gov/resources/resolutions/bank-failures/failed-bank-list/signature-ny-faq.html

In any event, and for the avoidance of doubt, Ms. Javice has preserved and archived all data from her Twitter account.

As we noted in our prior letter, JPMC has also deactivated Frank's Twitter account. If the mere deactivation of an account signals document destruction, then it is unclear why that same logic would not apply to the Frank Twitter account—or, for that matter, to the Frank website, which JPMC took offline on or about January 11 (the same day that press regarding JPMC's accusations against Ms. Javice proliferated). Our letter requested confirmation from JPMC that all ESI is preserved from these two sources, as well as from all potentially relevant custodians, including, among others, ███████████████████████████████████████████████████████ ██████████████████.

Please immediately confirm in writing that such material is preserved, in addition to the other specific requests in our March 13 letter to which you failed to respond.

## III.    JPMC Property

Ms. Javice is not aware of any way that she can help JPMC access the Frank Dropbox account, but she is willing to assist JPMC in doing so, as appropriate. Her understanding is that JPMC possesses the administrator and master account credentials. If JPMC has lost or misplaced a password, Ms. Javice does not have access to the @withfrank email account to reset it. She does not believe that any two-factor authentication was set up that included her, but if it has been, she would assist with that authentication if requested.

If you believe that Ms. Javice's assistance is necessary for access to certain JPMC property, please explain this need with specificity, and propose the steps that JPMC would like her to take. For the avoidance of doubt, we are happy to help facilitate this to your satisfaction.

Regards,

Alex Spiro

cc:  James G. McGovern, Hogan Lovells
     Allison M. Wuertz, Hogan Lovells
     Tracy O. Appleton, Dontzin Nagy & Fleissig
     Jason Kolbe, Dontzin Nagy & Fleissig
     Tibor Nagy, Dontzin Nagy & Fleissig

3