**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| JPMORGAN CHASE BANK, N.A.,<br><br>   Plaintiff,<br><br>   v.<br><br>CHARLIE JAVICE, OLIVIER AMAR, CHARLIE JAVICE, in her capacity as Trustee of CHARLIE JAVICE 2021 IRREVOCABLE TRUST #1, CHARLIE JAVICE, in her capacity as trustee of CHARLIE JAVICE 2021 IRREVOCABLE TRUST #2, and CHARLIE JAVICE in her capacity as trustee of CHARLIE JAVICE 2021 IRREVOCABLE TRUST #3,<br><br>   Defendants. | C.A. No. 1:22-cv-01621-MN |

**DEFENDANT OLIVIER AMAR'S REPLY BRIEF IN SUPPORT OF HIS**
**<u>MOTION TO DISMISS</u>**

**KOBRE & KIM LLP**
Jacob R. Kirkham (# 5768)
600 North King Street, Suite 501
Wilmington, Delaware 19801
Telephone: (302) 518-6460
Facsimile: (302) 518-6461
Jacob.Kirkham@kobrekim.com

Steven G. Kobre (appearance *pro hac vice*)
Sean S. Buckley (appearance *pro hac vice*)
800 Third Avenue
New York, New York 10022
Telephone: (212) 488-1200
Facsimile: (212) 488-1220
Steven.Kobre@kobrekim.com
Sean.Buckley@kobrekim.com

*Attorneys for Defendant Olivier Amar*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................................ 1

ARGUMENT .............................................................................................................................. 1

   I.    JPMC'S FACTUAL ALLEGATIONS FAIL TO SATISFY THE HEIGHTENED
PLEADING REQUIREMENTS FOR FRAUD CLAIMS ........................................................ 1

      A.   Mr. Amar's Alleged Attendance at the Zoom Meeting Does Not Provide the Requisite
Particularity Under Rule 9(b) or the PSLRA ......................................................................... 2

      B.   Mr. Amar's Acquisition of the ASL List Does Not Provide the Requisite Particularity
Under Rule 9(b) or the PSLRA. ............................................................................................. 3

      C.   The Totality of the Complaint's Allegations Fails to Provide the Requisite Particularity
Under Rule 9(b) and the PSLRA. .......................................................................................... 6

   II.   THE MERGER AGREEMENT'S DEFINITION OF "KNOWLEDGE" PERSON DOES
NOT SADDLE MR. AMAR WITH THE MERGER AGREEMENT'S REPRESENTATIONS
AND WARRANTIES. .................................................................................................................. 7

   III.    MR. AMAR MOVES TO DISMISS THE COMPLAINT IN ITS ENTIRETY ............. 9

CONCLUSION .......................................................................................................................... 10

## <u>TABLE OF AUTHORITIES</u>

Page(s)

Cases

*ABRY Partners V, L.P. v. F & W Acquisition LLC*,
    891 A.2d 1032 (Del. Ch. 2006) ................................................................................. 8, 9

*Morse v. Lower Merion Sch. Dist.*,
    132 F.3d 902 (3d Cir. 1997) .......................................................................................... 3

*Retzlaff v. Horace Mann Ins.*,
    738 F. Supp. 2d 564 (D. Del. 2010) .............................................................................. 3

*Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*,
    113 F.3d 405 (3d Cir. 1997) .......................................................................................... 6

*St. James Recreation, LLC v. Rieger Opportunity Partners, LLC*,
    2003 WL 22659875 (Del. Ch. Nov. 5, 2003) ................................................................ 9

Rules

Federal Rule of Civil Procedure 12(b)(6) ....................................................................... 1

Defendant Olivier Amar ("Mr. Amar") respectfully submits this Reply Brief in support of his Motion to Dismiss the Complaint filed by Plaintiff JPMorgan Chase Bank, N.A. ("JPMC") on December 22, 2022, under Federal Rule of Civil Procedure 12(b)(6).

## INTRODUCTION

Because JPMC cannot point to one misstatement made or known by Mr. Amar, or any participation by Mr. Amar in the Merger Agreement or negotiations of the Merger, the Complaint fails to plead with particularity that Mr. Amar was involved in any representations and warranties to JPMC. JPMC boasts of "dozens" of supporting documents and "more than 120 references" to Mr. Amar in an effort to avoid dismissal of its Complaint. But JPMC is constrained by the facts it alleges in its Complaint and the legal standards that require pleading with particularity to support claims based on fraud. JPMC's Opposition hinges on: (1) a handful of factual allegations that, individually or taken together, are legally insufficient to support its claims; (2) a legally improper contention that Mr. Amar is liable under the Merger Agreement when (i) JPMC and its counsel affirmatively take the position that Mr. Amar is not entitled to a review of the Merger Agreement because he was not party to it and (ii) the Complaint does not allege that Mr. Amar participated in the negotiations or drafting of the Merger Agreement and thus does not have actual knowledge of any purported misrepresentations contained therein; and (3) a baseless argument that wrongly claims Mr. Amar concedes or fails to challenge the sufficiency of the Complaint in its entirety. The Court should grant Mr. Amar's Motion and dismiss the Complaint against him with prejudice.

## ARGUMENT

### I.  JPMC'S FACTUAL ALLEGATIONS FAIL TO SATISFY THE HEIGHTENED PLEADING REQUIREMENTS FOR FRAUD CLAIMS.

Mr. Amar engaged in no fraudulent conduct and made no misrepresentations to JPMC in connection with the Merger. In view of that, it is no surprise that the Complaint does not plead—

let alone with the level of particularity required—that Mr. Amar engaged in any fraudulent conduct or made any misrepresentations to JPMC.  The trivial reference to "more than 120 references" to Mr. Amar in the Complaint cited by JPMC—which has no more substance than a basic word count—boils down to a handful of factual allegations that Mr. Amar:  (1) attended the so-called "orange jumpsuit" meeting (the "Zoom Meeting"); (2) led the efforts to acquire the ASL List; (3) "falsely represented" in the Merger Agreement that he had no prior knowledge of the alleged fraud regarding the "Fake Customer List" and dealings with the Data Science Professor; (4) used the ASL List after the Merger to cover up the alleged fraud; and (5) received $5 million in proceeds from the Merger.  D.I. 27 at 10, 12, 17–19.  Notwithstanding JPMC's hollow arguments, the Complaint does not allege that Mr. Amar played *any* role with the Data Science Professor or the creation or transmission of the "Fake Customer List."  Nor does the Complaint allege that Mr. Amar:  (i) played a role in the Zoom Meeting beyond his mere attendance; (ii) took any action with the ASL List beyond acquiring the list; or (iii) participated in any post-Merger conduct beyond the "not sure we'll make Monday's deadline" email.  These factual allegations, individually or collectively, fail to satisfy Rule 9(b) and the PSLRA.

### A.    Mr. Amar's Alleged Attendance at the Zoom Meeting Does Not Provide the Requisite Particularity Under Rule 9(b) or the PSLRA.

JPMC attaches great significance to Mr. Amar's attendance at the Zoom Meeting and seeks to mischaracterize his attendance as evidence of fraud.  *See* D.I. 27 at 12, 15, 17, 20.  But the specific allegations in the Complaint, which control, make clear that Mr. Amar played barely any, let alone a material, role before, during, and after that meeting.  *See* D.I. 1 at ¶¶ 74–75, 77.  The Complaint pleads no facts—and certainly no specific facts, as required under Rule 9(b) and the PSLRA—about Mr. Amar saying or doing anything during the Zoom Meeting, other than merely attending it.

The absence of specific facts alleged about Mr. Amar supports only one reasonable inference: Mr. Amar played no material role in the Zoom Meeting. *See Retzlaff v. Horace Mann Ins.*, 738 F. Supp. 2d 564, 567 (D. Del. 2010) ("While the court draws all reasonable factual inferences in the light most favorable to a plaintiff, it rejects unsupported allegations, 'bald assertions,' and 'legal conclusions.'" (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Far from alleging that the Zoom Meeting was the "inception" of Mr. Amar's "hatched . . . plan," *see* D.I. 27 at 1, 17, the Complaint alleges that Ms. Javice initiated the Zoom Meeting, that the meeting was her "internal effort," and that Mr. Amar did nothing more than attend, *see* D.I. 1 ¶¶ 74–77.[1] Mr. Amar's brief and remote attendance at the Zoom Meeting, without more, is insufficient to carry JPMC's burden to plead fraud with particularity.

### B. Mr. Amar's Acquisition of the ASL List Does Not Provide the Requisite Particularity Under Rule 9(b) or the PSLRA.

JPMC's Opposition attempts to conflate the Complaint's allegations regarding three main, separate lists—the purported "Fake Customer List," the "ASL List," and "Frank's user list"—in an effort to misleadingly expand Mr. Amar's role in the alleged misconduct. Although JPMC's Opposition consistently argues that "[Mr.] Amar is fully responsible for the Fake Customer List" and Frank's user list, the actual allegations of the Complaint attribute only the negotiations related to the ASL List to Mr. Amar. *Compare* D.I. 1 ¶¶ 77–115, *with* D.I. 27 at 1–2, 11–12, 14–15, 17–19.

The Complaint defines the "Fake Customer List" as "a list of 4.265 million fake customer accounts" that was allegedly created by the Data Science Professor—notably not at Mr. Amar's

---

[1] To be clear, by noting for purposes of his Motion to Dismiss that JPMC pleaded certain facts about Ms. Javice, but not Mr. Amar, Mr. Amar is not endorsing JPMC's allegations against Ms. Javice, nor is he conceding that they are true. To the contrary, Mr. Amar is, as he must, adopting those allegations as true for the purpose of this Motion and reserves all rights if this litigation proceeds beyond his Motion to Dismiss.

request nor with Mr. Amar's knowledge—and provided "to a third-party vendor"—again, not by Mr. Amar nor with his knowledge—during the Merger negotiations.  D.I. 1 ¶ 11.  The Complaint pleads absolutely no involvement by Mr. Amar in the dealings with the Data Science Professor or the alleged creation and use of the "Fake Customer List."  *See* D.I. 1 ¶¶ 77–115, 143–63.  The absence of any specific details with respect to Mr. Amar highlights what the Complaint makes clear:  Mr. Amar had no role during the Merger negotiations with the Data Science Professor or the "Fake Customer List."  JPMC does not plead these facts because it cannot, and no amount of verbal gymnastics in JPMC's Opposition to associate Mr. Amar with these allegations can escape this fundamental flaw in its own Complaint.

According to the Complaint, the ASL List is distinct from and unrelated to the "Fake Customer List."  The Complaint defines the ASL List as "a list of 4.5 million students" that was allegedly acquired by Frank through Mr. Amar from ASL for $105,000 and "arrived too late" to be used during the Merger negotiations.  D.I. 1 ¶ 12.  The Complaint alleges that Mr. Amar acquired the ASL List but crucially *does not allege* that he took any further action with the ASL List or that the ASL List is in any way related to the "Fake Customer List."  D.I. 1 ¶¶ 133–42.

In its Opposition, JPMC argues that Mr. Amar participated in a "cover-up" after the Merger closed by way of Frank's user list, which JPMC argues was nothing more than the ASL List repurposed.  *See* D.I. 27 at 12, 14.  According to the Complaint, Frank's user list was allegedly "transferred to JPMC for its marketing campaign on January 21, 2022" and "every entry on the list . . . was included on and taken from the ASL List."  D.I. 1 ¶¶ 164, 172.  But the Complaint does not allege that:  (i) Mr. Amar had any role in creating or producing Frank's user list, (ii) he provided Frank's user list to JPMC, or (iii) he made any representations about Frank's user list to JPMC.  Instead, the Complaint pleads only that "Frank eventually transferred a user list on January

21, 2021" and makes no mention of Mr. Amar, which is a far cry from the necessary "who, what, when, where, and how" required by Rule 9(b) and the PSLRA.  D.I. 1 ¶ 169–77.

Despite the lack of any specific allegations that Mr. Amar was involved with the alleged "Fake Customer List" or any alleged dealings with the Data Science Professor, JPMC's Opposition retreats to vitriol not found in the allegations of the Complaint.  For example, JPMC's Opposition argues—without any support from its own Complaint—that, in a "critical email" to ASL, Mr. Amar "admitted to knowing about the work being performed by the Data Science Professor, admitted that he was working with [Ms.] Javice on the same project, and pressured ASL to provide the data in time to respond to JPMC's diligence request."  *See* D.I. 27 at 4, 9.  That baseless claim is moored to no alleged fact in the Complaint.  Rather, according to JPMC's Complaint, the alleged email merely states:  "[C]an we make sure to close this today?  We're rushed on this, so if you can prepare the lists of 4.5m (2.8m with emails and 1.7m without) as well as confirm pricing . . . that would be great.  If we can't close this today, we will have to move forward with another vendor as we have limited time with this data scientist and time is ticking[.]"  D.I. 1 ¶ 138.

Contrary to JPMC's assertions in its Opposition, and as JPMC well knows, the alleged email contains no reference to Mr. Amar's personal involvement with the Data Science Professor or the "Fake Customer List" that JPMC alleges Ms. Javice worked on.  The email purportedly was sent to ASL—not to JPMC.  It contains no representation to JPMC, no references to any representation to JPMC, and no indication that Mr. Amar knew about or in any way participated in the creation of the purported "Fake Customer List."  To infer from the email that Mr. Amar "admitted to knowing about the work being performed by the Data Science Professor" or "admitted that he was working with [Ms.] Javice on the same project" distorts the plain language of the email and seeks to stretch that plain language far beyond any reasonable inference from the facts alleged

in the Complaint. *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997) (under Rule 12(b)(6) the court is not "required to accept as true unsupported conclusions and unwarranted inferences").

### C.    The Totality of the Complaint's Allegations Fails to Provide the Requisite Particularity Under Rule 9(b) and the PSLRA.

JPMC fails to plead its allegations against Mr. Amar with particularity, and its belated effort to "summarize" the allegations in its Opposition does not cure the Complaint's defects.  In fact, JPMC's Opposition only underscores the Complaint's deficiencies with respect to Mr. Amar. JPMC argues that the Complaint should not be dismissed because it alleges the following, immaterial facts:  Mr. Amar was an officer at Frank; Mr. Amar was a "Knowledge" person in the Merger Agreement; the Merger Agreement made misrepresentations; Mr. Amar was an "active participant in the effort to create and then conceal the use of a list of more than 4 million fake customers"; and Mr. Amar received "more than $5 million in merger proceeds." *See* D.I. 27 at 18–19.  JPMC argues that Mr. Amar's culpable intent is "based on" his "knowledge of Frank's actual customer account numbers, his participation in the 'orange jumpsuit' meeting, the work that he and [Ms.] Javice did with the Data Science Professor, his procurement of the ASL List, and his use of the ASL List in the cover-up."  D.I. 27 at 12.

But as discussed in Mr. Amar's Motion, the Complaint fails to provide "what, when, where, why, and how" Mr. Amar engaged in any alleged fraudulent conduct before the Merger, during the negotiations of the Merger, in the Merger Agreement, or after the Merger closed.  The Complaint does not allege that Mr. Amar himself ever made any misrepresentations to JPMC.  The Complaint does not allege that Mr. Amar ever saw, read, or signed the Merger Agreement; that Mr. Amar knew anything about the Merger Agreement's provisions; or that Mr. Amar participated in negotiations of the Merger Agreement or even spoke to anyone at JPMC.  Notably, the

6

Complaint does not—because it cannot—allege that Mr. Amar had any involvement with the purported "Fake Customer List" or the alleged role of the Data Science Professor; that Mr. Amar had any role in the Zoom Meeting that would have been material to the Merger; or that Mr. Amar took any action with the ASL List beyond acquiring it. Perhaps most devastatingly, the Complaint makes no allegation as to Mr. Amar's role or knowledge of any post-Merger conduct, save the "not sure we'll make Monday's deadline" email.

At base, the Complaint merely alleges that Mr. Amar: (1) was an officer of Frank who (2) attended one meeting with JPMC before the Merger, (3) attended one virtual conversation between his boss and an engineer, (4) legitimately acquired a data set, (5) was listed as a "Knowledge" person without his consent in an agreement that he never saw, read, or signed, (6) never actually spoke to anyone at JPMC, (7) became a dutiful employee of JPMC after the Merger, and (8) wrote a post-Merger email about "Monday's deadline." *See generally* D.I. 1. These allegations, when shed of the misleading gloss that JPMC injects into its Opposition, plead no wrongdoing or fraudulent intent on Mr. Amar's behalf whatsoever, let alone to the level of particularity required by Rule 9(b) and the PSLRA. These allegations describe nothing more than completely legal and banal activities employed by an individual in Mr. Amar's position. Mr. Amar respectfully requests that the Court reject JPMC's effort to conflate and distract from the paucity of its own Complaint's allegations against Mr. Amar and dismiss the Complaint against him in full.

## II.   THE MERGER AGREEMENT'S DEFINITION OF "KNOWLEDGE" PERSON DOES NOT SADDLE MR. AMAR WITH THE MERGER AGREEMENT'S REPRESENTATIONS AND WARRANTIES.

Mr. Amar cannot be liable for the Merger Agreement's representations and warranties merely because the contracting parties listed him as a "Knowledge" person. In reality, he was a non-party to the Merger Agreement (as conceded by JPMC) and JPMC pleads no allegations that

7

Mr. Amar had any knowledge of the Merger Agreement's provisions.  JPMC does not—and cannot—allege that Mr. Amar was party to the Merger Agreement, participated in the negotiations of the Merger Agreement, knew anything about the contents of the Merger Agreement, or even saw the Merger Agreement before it was signed.  The Complaint thus supports no reasonable inference that Mr. Amar knew anything about the contents of the Merger Agreement, much less that he agreed to the representations and warranties in it or knew they were false.  JPMC essentially admits as much in its Opposition by arguing that the law firm that represented Frank in the Merger *likely* would have shown the representations and warranties in the Merger Agreement to each "Knowledge" person, including Mr. Amar, and *likely* would have required each "Knowledge" person to "affirmatively confirm" that the representations and warranties "were in fact 100% true and correct."  *See* D.I. 27 at 5–6.  JPMC makes these assertions in its Opposition to compensate for the obvious fact that *the Complaint contains no such allegations*, and its assertions go far beyond any reasonable inference derived from the facts pled.

JPMC relies on one case to support its argument that a non-party with no knowledge of a contract's provisions could be liable for the contract's alleged fraudulent representations, but that case supports the opposite conclusion.  *See* D.I. 27 at 13 (citing *ABRY Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1064 (Del. Ch. 2006)).  In *ABRY*, the court determined that a party to a contract could not contractually limit its liability "for its *own conscious participation in the communications of lies*."  *See ABRY*, 891 A.2d at 1064.  The court concluded that *a contracting party* could be liable, despite provisions seeking to limit liability for false representations and warranties, if the party (1) knew that the representations and warranties were false, or (2) lied about a representation and warranty.  *Id.*

The *ABRY* court required "conscious participation" in the misrepresentations—knowledge of the misrepresentations or personal communication of the misrepresentations, neither of which JPMC alleges against Mr. Amar.  *See id.*  The Complaint does not allege that Mr. Amar knew any of the representations and warranties contained in the Merger Agreement, much less that he knew they were false.  The Complaint also does not allege that Mr. Amar *made any statement* to JPMC before the Merger.  To require Mr. Amar to face allegations of fraud under the PSLRA and Rule 9(b) based on representations in the Merger Agreement, JPMC had to allege actionable wrongdoing—not just that Mr. Amar was named in a contract in which he played no part.  JPMC failed to do so here.  Specifically, the Complaint fails to plead with particularity that Mr. Amar "knew or should have known that the [Merger Agreement] contained such misrepresentations" or that Mr. Amar "was responsible for the delivery of the [Merger Agreement]" to JPMC.  *See St. James Recreation, LLC v. Rieger Opportunity Partners, LLC*, 2003 WL 22659875, at *8 (Del. Ch. Nov. 5, 2003); *see also* D.I. 15 at 8–9 (citing cases).  JPMC does not allege a single statement that Mr. Amar made about anything to JPMC during the negotiations of the Merger or in the Merger Agreement, which is a fatal flaw to its claims against Mr. Amar.

Being designated as a "Knowledge" person under the terms of the Merger Agreement, without more, does not give rise to liability.  JPMC's reliance on the Merger Agreement to bootstrap its claims against Mr. Amar fails, like the rest of its case, because of the lack of any legally sufficient, specific factual allegations that Mr. Amar actually participated in or knew about the alleged fraud.

## III.    MR. AMAR MOVES TO DISMISS THE COMPLAINT IN ITS ENTIRETY.

Mr. Amar moves to dismiss the entire Complaint:  "Because JPMC does not plead its claims against Mr. Amar with any particularity, *all seven counts fail*, and the Complaint against

Mr. Amar should be dismissed *in full*." D.I. 15 at 1 (emphasis added). JPMC erroneously argues that Mr. Amar does not "oppos[e]" its claims under Rule 10b-5(a) and (c), which prohibit (a) using any device, scheme, or artifice to defraud and (c) engaging in any act, practice, or course of business of fraud or deceit. D.I. 27 at 16. According to JPMC, Mr. Amar "concedes" those claims are "well pled." *See* D.I. 27 at 16. But in his Motion, Mr. Amar explicitly argues that JPMC's Rule 10b-5 claim for securities fraud fails "because JPMC does not allege that Mr. Amar engaged in any actual fraudulent conduct." *See* D.I. 15 at 6.

Throughout his Motion, Mr. Amar emphasizes that JPMC fails to plead with particularity that he engaged in any fraudulent conduct. *See, e.g.*, D.I. 15 at 12 (JPMC "throw[s] in Mr. Amar's name when convenient despite knowing that Mr. Amar was not involved in . . . the alleged misconduct [with the Data Science Professor]."); D.I. 15 at 16 ("JPMC fails to allege a single act taken by Mr. Amar before the Merger that contributed to the negotiations of the Merger Agreement, much less an act constituting fraud."); D.I. 15 at 19 ("JPMC does not plead with particularity any fraudulent conduct against Mr. Amar before the Merger . . . [and] JPMC fails to plead with particularity any fraudulent conduct against Mr. Amar after the Merger closed.").

Because JPMC does not plead with particularity that Mr. Amar engaged in any fraudulent conduct, its securities fraud and common law fraud claims against Mr. Amar all fail, including any claim under Rule 10b-5(a) or (c) for employing a scheme to defraud or engaging in fraudulent conduct.

## **CONCLUSION**

Because JPMC does not plead with particularity any claims against Mr. Amar, all seven counts fail, and the Complaint against Mr. Amar should be dismissed with prejudice.

Respectfully submitted,

**KOBRE & KIM LLP**

Dated:  April 12, 2023

/s/ Jacob R. Kirkham
Jacob R. Kirkham (# 5768)
600 North King Street, Suite 501
Wilmington, Delaware 19801
Telephone: (302) 518-6460
Facsimile: (302) 518-6461
Jacob.Kirkham@kobrekim.com

Steven G. Kobre (appearance *pro hac vice*)
Sean S. Buckley (appearance *pro hac vice*)
800 Third Avenue
New York, New York 10022
Telephone: (212) 488-1200
Facsimile: (212) 488-1220
Steven.Kobre@kobrekim.com
Sean.Buckley@kobrekim.com

*Attorneys for Defendant Olivier Amar*