## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

JPMORGAN CHASE BANK, N.A.,      )
        )
      Plaintiff,      )
        )
      v.      )    Case No. 1:22-cv-01621-MN
        )
CHARLIE JAVICE, OLIVIER AMAR,      )
CHARLIE JAVICE, in her capacity as Trustee      )
of CHARLIE JAVICE 2021 IRREVOCABLE      )
TRUST #1, CHARLIE JAVICE, in her capacity as      )
Trustee of CHARLIE JAVICE 2021      )
IRREVOCABLE TRUST #2, and CHARLIE      )
JAVICE in her capacity as Trustee of CHARLIE      )
JAVICE 2021 IRREVOCABLE TRUST #3,      )
        )
      Defendants.      )

## COUNTERCLAIM-PLAINTIFF CHARLIE JAVICE'S
## ANSWERING BRIEF IN OPPOSITION TO COUNTERCLAIM
## DEFENDANT JPMORGAN CHASE BANK, N.A.'S MOTION TO DISMISS AND
## COMPEL ARBITRATION OR, ALTERNATIVELY TO STAY COUNTERCLAIMS

OF COUNSEL:

Alex Spiro
Maaren A. Shah
JP Kernisan
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000
alexspiro@quinnemanuel.com
maarenshah@quinnemanuel.com
jpkernisan@quinnemanuel.com


DATED:  April 17, 2023

Michael A. Barlow (#3928)
Samuel D. Cordle (#6717)
ABRAMS & BAYLISS LLP
20 Montchanin Drive, Suite 200
Wilmington, Delaware 19807
(302) 778-1000
barlow@abramsbayliss.com
cordle@abramsbayliss.com

*Attorneys for Defendant / Counterclaim
Plaintiff Charlie Javice*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ....................................................................................1

RELEVANT BACKGROUND ....................................................................................3

LEGAL STANDARDS ................................................................................................7

ARGUMENT ...............................................................................................................8

I.    THE COUNTERCLAIMS FOR BREACH OF THE PAYMENT DIRECTION
AGREEMENT CANNOT BE ARBITRATED AND MUST BE HEARD IN
THIS COURT .....................................................................................................9

    A.    The PDA Expressly Requires Disputes To Be Litigated in Delaware
Courts ....................................................................................................9

    B.    The PDA Does Not Incorporate the Entire Employment Agreement...................12

        1.    There is no supposed "conflict" within the PDA's terms, and the
PDA does not incorporate the Employment Agreement...........................12

        2.    Ms. Javice never agreed to arbitrate non-employment claims.................15

II.    THIS COURT CANNOT COMPEL ARBITRATION THAT WOULD OCCUR
OUTSIDE OF THE CONFINES OF THE DISTRICT OF DELAWARE.......................17

CONCLUSION.............................................................................................................19

## TABLE OF AUTHORITIES

Page

### Cases

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013)....................................................................................... 18

*Ansari v. Qwest Commc'ns Corp.*,
414 F.3d 1214 (10th Cir. 2005) ..................................................................... 18

*Arthur Andersen LLP v. Carlisle*,
556 U.S. 624 (2009)......................................................................................... 8

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*,
571 U.S. 49 (2013) ........................................................................................ 10

*ATT Tech. v. Comm. Workers of Am.*,
475 U.S. 643 (1986).......................................................................................... 7

*Brayman Const. Corp. v. Home Ins. Co.*,
319 F.3d 62 (3d Cir. 2003)............................................................................ 11

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006)......................................................................................... 7

*CardioNet, Inc. v. Cigna Health Corp.*,
751 F.3d 165 (3d Cir. 2014).................................................................... 15, 16

*Council of Dorset Condo. Apartments v. Gordon*,
801 A.2d 1 (Del. 2002) ................................................................................. 13

*DCV Holdings, Inc. v. ConAgra, Inc.*,
889 A.2d 954 (Del. 2005) ............................................................................. 13

*Econo-Car Int'l, Inc. v. Antilles Car Rentals, Inc.*,
499 F.2d 1391 (3d Cir. 1974)........................................................................ 18

*Exelon Generation Acquisitions, LLC v. Deere & Company*,
176 A.3d 1262 (Del. 2017) ........................................................................... 14

*Jaludi v. Citigroup*,
933 F.3d 246 (3d Cir. 2019).......................................................................... 15

*John Hancock Mut. Life Ins. Co. v. Olick*,
151 F.3d 132 (3d Cir. 1998)................................................................. 7, 8, 12

*Kroblin Refrigerated Xpress, Inc. v. Pitterich*,
805 F.2d 96 (3d Cir. 1986)............................................................................ 10

*Lamps Plus, Inc. v. Varela*,
139 S. Ct. 1407 (2019).................................................................................... 7

*M/S Bremen v. Zapata Off-Shore Co.*,
407 U.S. 1 (1972).......................................................................................... 11

*Majkowski v. Am. Imaging Mgmt. Servs., LLC*,
   913 A.2d 572 (Del. Ch. 2006) ............................................................................... 17

*In re McGraw-Hill Glob. Educ. Holdings LLC*,
   909 F.3d 48 (3d Cir. 2018) ...................................................................................... 8

*NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*,
   118 A.3d 175 (Del. 2015) ...................................................................................... 15

*Nemec v. Shrader*,
   991 A.2d 1120 (Del. 2010) .................................................................................... 15

*Parfi Holding AB v. Mirror Image Internet, Inc.*,
   817 A.2d 149 (Del. 2002) ................................................................................. 16, 17

*In re Remicade (Direct Purchaser) Antitrust Litig.*,
   938 F.3d 515 (3d Cir. 2019) ................................................................................ 7, 8

*Stewart Org., Inc. v. Ricoh Corp.*,
   487 U.S. 22 (1988) .......................................................................................... 10, 11

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
   559 U.S. 662 (2010) ............................................................................................... 8

*Sunline Com. Carriers, Inc. v. CITGO Petroleum Corp.*,
   206 A.3d 836 (Del. 2019) ...................................................................................... 13

*Town of Cheswold v. Cent. Delaware Bus. Park*,
   188 A.3d 810 (Del. 2018) ...................................................................................... 14

*Walgreen Co. v. Theranos, Inc.*,
   No. CV 16-1040-RGA-MPT, 2017 WL 3189006 (D. Del. July 27, 2017) ............ 10

*Whirlpool Corp. v. Cabri*,
   No. 21-CV-00979EJW, 2022 WL 1421126 (D. Del. May 5, 2022) ....................... 11

*Woodruff v. Dollar Gen. Corp.*,
   No. CV 21-1705-GBW, 2022 WL 17752359 (D. Del. Dec. 19, 2022) ................... 17

*Zirpoli v. Midland Funding, LLC*,
   48 F.4th 136 (3d Cir. 2022) ....................................................................... 8, 12, 15

## Rules / Statutes

9 U.S.C. § 3 ............................................................................................................. 17

9 U.S.C. § 4 ....................................................................................................... 17, 18

## Other Authorities

Restatement (First) of Contracts § 236(c) ........................................................... 13, 14

11 Richard. A. Lord, *Williston on Contracts* § 30:25 (4th ed. 1999) ......................... 14

Counterclaim Plaintiff Charlie Javice respectfully submits this answering brief in opposition to Plaintiff and Counterclaim-Defendant JPMorgan Chase Bank, N.A. ("JPMC")'s motion to dismiss and compel arbitration of Ms. Javice's counterclaims (D.I. 23).[1]

## PRELIMINARY STATEMENT

On December 22, 2022, JPMC hailed Ms. Javice into this Court. Earlier that year, JPMC accused Ms. Javice of misconduct during the course of and pertaining to her employment at JPMC. After a lengthy internal investigation into Ms. Javice's supposed employee misconduct, JPMC declined to pursue those claims further. But JPMC remained focused on finding a way to shift blame for its poor management of its investment to Ms. Javice and away from the JPMC executives who fumbled the handoff of pre- and post-acquisition strategy for Frank. In its effort to scapegoat Ms. Javice as loudly, painfully, and boldly as possible, JPMC filed the complaint in this action alleging that Ms. Javice defrauded JPMC and is liable to Frank's buyer for the Frank purchase price ($175 million) under federal securities laws, common law fraud, and equitable theories.

Ms. Javice responded. She set forth the true version of the events at issue in JPMC's complaint. She brought counterclaims alleging that JPMC's "fraud" story arose from its broader scheme to shift the blame for its mismanagement of Frank and deny Ms. Javice her contractual rights as a means of recouping the consideration that JPMC paid to Frank stockholders. Ms. Javice's counterclaims explain why JPMC alleges what it does, seeks the extreme relief that it does, and has consistently sought to malign Ms. Javice and retaliate against her for both its own

---

[1] Citations to "Javice Claims" refer to Ms. Javice's counterclaims, and citations to "Javice Ans." refer to her answer to JPMC's Complaint. (D.I. 10.) Citations to "JPMC Compl." refer to JPMC's Complaint. (D.I. 1.) "Op. Br." refers to JPMC's Opening Brief in Support of Its Motion to Dismiss and Compel Arbitration of Charlie Javice's Counterclaims. (D.I. 23_1.) "EA" refers to the Employment Agreement, as defined herein. (D.I. 23_2, Nagy Decl. Ex. A.) "PDA" refers to the Payment Direction Agreement, as defined herein. (D.I. 23_2, Nagy Decl. Ex. B.) "MA" refers to the Merger Agreement, also defined herein. (D.I. 1, Ex. A.)

operational confusion and her refusal to be silent in the face of what she viewed as JPMC's potentially unlawful business strategy for Frank.

Concurrent with the Merger Agreement, Ms. Javice, as a *stockholder* of Frank and not as an *employee* of JPMC, entered into a side agreement with JPMC relating to JPMC's payment of the merger proceeds owed for her shares of Frank.  Specifically, JPMC and Ms. Javice agreed to a Payment Direction Agreement, by which JPMC retained a portion of the merger consideration due her as a Frank stockholder and promised to pay it to Ms. Javice later as an incentive payment during her employment at JPMC.  The Payment Direction Agreement, which dealt with the merger consideration owed to Ms. Javice from the merger, accordingly expressly incorporated the choice of law and forum selection clauses contained in the Merger Agreement between JPMC and Frank. Among other things, the Payment Direction Agreement provided that if a dispute were to arise under that contract, then JPMC **irrevocably consented** to the jurisdiction of the courts in Delaware, and **irrevocably and unconditionally waived** any right to challenge this exclusive jurisdiction for any disputes relating to that contract.

JPMC has now breached this Payment Direction Agreement—twice.  First, JPMC breached the express terms of the contract when it failed to pay out the money owed to her following what was, in truth, an involuntary rather than a "Cause" termination, and it breached the implied covenant in that contract when it schemed to terminate her in order to avoid paying her money that it was obligated to pay her under the agreement.  Second, JPMC has now breached the forum selection clause in the Payment Direction Agreement, in which it irrevocably consented to this Court's jurisdiction and further irrevocably and unconditionally waived and agreed not to challenge any such jurisdiction.  (Op. Br. at 1.)   By moving to compel Ms. Javice to arbitrate Counts III and V of her counterclaims for breaches of the Payment Direction Agreement, JPMC

is seeking to re-trade its express agreement to litigate those claims in public in the Delaware courts—where it has likewise chosen to bring its claims against Ms. Javice.  It is also ignoring the clear law and policy that holds that no party can be forced to arbitrate a claim that they did not expressly agree to arbitrate.  There is no question here that Ms. Javice did not agree to arbitrate her claims arising under the Payment Direction Agreement, and that JPMC's argument of "agreement by implication" violates both Delaware law and policy.  The forum selection clause contained in the Payment Direction Agreement must be enforced on its terms, and JPMC must not succeed with its unlawful attempt to ensure that Ms. Javice's side of the story never sees the light of day while JPMC litigates its unfounded allegations against her in public court.

## **RELEVANT BACKGROUND**

An affiliate of JPMorgan Chase & Company sent Ms. Javice a formal offer for employment dated August 1, 2021.  (EA at 1.)  Ms. Javice entered into the "Employment Agreement" on August 4, 2021, pursuant to which JPMC would be her "formal legal employer."  (EA at 3.)  In the Employment Agreement, Ms. Javice (as "I" in the provision below) agreed to arbitrate the following claims:

> all legally protected employment-related claims . . . that I now have or in the future may have against JPMorgan Chase or its officers, directors, shareholders, employees or agents which arise out of or relate to my employment or separation from employment with JPMorgan Chase and all legally protected employment-related claims that JPMorgan Chase has or in the future may have against me, including, but not limited to, claims of employment discrimination or harassment if protected by applicable federal, state or local law, and retaliation for raising discrimination or harassment claims, failure to pay wages, bonuses or other compensation, tortious acts, wrongful, retaliatory and/or constructive discharge, breach of an express or implied contract, promissory estoppel, unjust enrichment, and violations of any other common law, federal, state, or local statute, ordinance, regulation or public policy[.]

(EA, App'x IV § 2.)

On August 8, 2021, JPMC, TAPD, Inc., d/b/a Frank ("Frank"), Finland Merger Sub, Inc. ("Merger Sub"), and Shareholder Representative Services LLC (solely in its capacity as the Stockholders' Representative) entered into an Agreement and Plan of Merger (the "Merger Agreement" or "MA," D.I. 16).  (Javice Claims ¶ 16; Javice Ans. ¶ 15.)  Pursuant to the Merger Agreement, Frank merged with Merger Sub, and the surviving entity became a wholly owned subsidiary of JPMC.  (MA § 2.5.)  JPMC agreed to a $175 million purchase price to acquire Frank. (Javice Ans. ¶ 15.)  The merger closed on September 14, 2021.  (*Id.*; Javice Claims ¶ 76.)

Also on August 8, 2021, the day JPMC and Frank executed the Merger Agreement, JPMC, Ms. Javice, Frank, and Charlie Javice 2021 Irrevocable Trust #3 entered into a certain Payment Direction Agreement, which was then amended and restated upon closing on September 14. ("PDA").   Ms. Javice held equity interests in Frank, for which she would receive cash consideration upon closing of the merger.  (Javice Claims ¶ 68.)  In the PDA, Ms. Javice agreed that JPMC would retain an amount of Ms. Javice's merger consideration for a later payment, subject to certain terms and conditions.  (*Id.* ¶ 68.)

The PDA provides that payment is due on the second anniversary of the merger: "Subject to the terms of this Agreement [the PDA], the Retained Amount shall only become due and payable" if Ms. Javice "remains employed with the [JPMC] or any affiliate of [JPMC] through the second anniversary of the date of the Effective Time (the 'Retained Amount Release Date')." (PDA ¶ C.)  "Effective Time" refers to the closing of the merger.  (PDA at 1.)  Paragraph D then clarifies what happens when Ms. Javice is not employed at the time of the Retained Amount Release Date, borrowing definitions from the Employment Agreement for "Cause" and "Good Reason."   Under the PDA, Ms. Javice forfeits the Retained Amount if she is terminated for

"Cause." However, the Retained Amount should be due and payable within fifteen days following termination if she is terminated without "Cause." (PDA ¶ D.)

The Merger Agreement features prominently in the PDA, which has effect only upon the closing of the merger, and which would terminate if the Merger Agreement were terminated. JPMC represented that terms of the PDA induced JPMC into the Merger Agreement. Additionally, the PDA's capitalized terms largely are defined in the Merger Agreement. (PDA at 1.)

In this vein, Paragraph F, the PDA incorporates all of Article 9 ("General Provisions") of the Merger Agreement, "*mutatis mutandis*." The PDA therefore incorporates Section 9.10, wherein the parties to the Merger Agreement consent to the "exclusive jurisdiction" of courts in the State of Delaware.

> [T]he parties hereto hereby ***irrevocably*** submit to the exclusive jurisdiction of the Court of Chancery of the State of Delaware (or, if the Court of Chancery of the State of Delaware declines to accept jurisdiction over a particular matter, any federal court within the State of Delaware, or, if no federal court in the State of Delaware accepts jurisdiction, any state court within the State of Delaware) over all Related Claims, and each party hereby ***irrevocably*** agrees that all Related Claims may be heard and determined in such courts.

MA § 9.10 (emphases added). The parties also waive and agree not to assert, including in any "motion," any objection to the venue provided in Section 9.10.

> The parties hereby (a) ***irrevocably and unconditionally*** waive, to the fullest extent permitted by applicable Law, and ***agrees not to assert***, by way of motion, as a defense or otherwise, in any such Related Claim, any objection which they may now or hereafter have to the laying of venue of any such Related Claim brought in such court or any defense of inconvenient forum for the maintenance of such dispute, any claim that they are not subject personally to the jurisdiction of the above-named court, that venue in such court is improper, that their property is exempt or immune from attachment or execution, that such Related Claim should be transferred or removed to any court other than the above-named court, that such Related Claim should be stayed by reason of the pendency of some other Related Claim in any other court other than the above-named court or that this Agreement or the subject matter hereof may not be enforced in or by such court, and (b)

> > hereby agrees not to commence or prosecute any such Related Claim other than before the above-named court.

MA § 9.10 (emphases added).  JPMC and Ms. Javice consented in the PDA to the jurisdiction of the courts of Delaware, and they also agreed not to file any motions contending otherwise.

The Merger Agreement defines "Related Claims" as:

> > all claims or causes of action (whether in contract or tort, in law or in equity, or granted by statute or otherwise) that may be based upon, arise out of or relate to this Agreement, the Related Documents and any other document or instrument delivered pursuant to this Agreement or the Related Documents, or the negotiation, execution, termination, validity, interpretation, construction, enforcement, performance or nonperformance of this Agreement or the Related Documents or otherwise arising from the Transactions or the relationship between the parties (including any claim or cause of action based upon, arising out of or related to any representation or warranty made in or in connection with, or as an inducement to enter into, this Agreement or the Related Documents).

MA at § 1.1.  "Related Documents" means "the Escrow Agreement and any other document, agreement, certificate or instrument entered into in connection with this Agreement[.]"  (*Id.*)  In the definition of "Related Documents," the Merger Agreement expressly excepts the Escrow Agreement for the purposes of Article 9.  "[T]he Escrow Agreement shall not be a Related Document solely for purposes of applying the provisions in Article 9 to the extent, and only to the extent, that the Escrow Agreement expressly conflicts with Article 9."  (*Id.*) That is, with one exception, the parties to the Merger Agreement contemplated that side letters and other ancillary agreements (e.g., the Payment Direction Agreement), would be covered by the provisions in Article 9, thus permitting *mutatis mutandis* incorporation of Article 9 into said Related Documents.

On November 4, 2022, JPMC terminated Ms. Javice's employment.  (Javice Claims ¶ 98.) It has withheld payment to Ms. Javice of the retained amount of merger consideration due to her within fifteen days of November 4, 2022.  (*Id*. ¶ 125.)

JPMC sued Ms. Javice in this Court on December 22, 2022.  (D.I. 1.)  As JPMC explains, it seeks to "recover proceeds paid to [Ms. Javice] in the merger."  (Op. Br. at 7.)  JPMC stated in its complaint that venue in the United States District Court of the District of Delaware was proper "pursuant to Section 9.10(a) of the Merger Agreement, which provides for exclusive jurisdiction in the courts of the State of Delaware."  (JPMC Compl. ¶ 25; *see* Op. Br. at 7.)  Ms. Javice answered JPMC's Complaint and filed counterclaims for, *inter alia*, breach of the PDA.  *See generally* Javice Counterclaims; Javice Ans.  The Complaint involves the same transactions and occurrences at issue in JPMC's Complaint.

JPMC responded to Ms. Javice's counterclaims by breaching the PDA and moving to dismiss and compel arbitration of the counterclaims.  (D.I. 23.)

## LEGAL STANDARDS

"[T]he underlying principle of all arbitration decisions is that 'arbitration is strictly a matter of consent.'"  *In re Remicade (Direct Purchaser) Antitrust Litig.*, 938 F.3d 515, 519 (3d Cir. 2019) (quoting *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1415 (2019)).  Consent is a "foundational," bedrock principle of both the Federal Arbitration Act (the "FAA") and Supreme Court caselaw regarding arbitration, as the Supreme Court has emphasized repeatedly.  *Lamps Plus*, 139 S. Ct. at 1415 (collecting cases).  Because arbitration is a "creature of contract," "courts have long since drawn the conclusion that, as a matter of contract, no party can be forced to arbitrate an issue unless that party has entered into an agreement to do so."  *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 137 (3d Cir. 1998) (citing *ATT Tech. v. Comm. Workers of Am.*, 475 U.S. 643, 648 (1986)).

The FAA protects and codifies parties' rights to contract freely for arbitration, and reflects the "national policy favoring arbitration," by placing "arbitration agreements on equal footing with all other contracts."  *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006).  But

"[t]he policy favoring arbitration is not intended to force arbitration where the parties to a contract did not agree to it." *Zirpoli v. Midland Funding, LLC*, 48 F.4th 136, 142 (3d Cir. 2022). The "threshold" questions in resolving a motion to compel arbitration are "(1) Did the parties seeking or resisting arbitration enter into a valid arbitration agreement? (2) Does the dispute between those parties fall within the language of the arbitration agreement?" *John Hancock*, 151 F.3d at 137.

The interpretation of an arbitration agreement is a matter of state contract law, colored by the FAA's precept that arbitration is a matter of consent. *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010); *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009); *In re Remicade (Direct Purchaser) Antitrust Litig.*, 938 F.3d 515, 520–22 (3d Cir. 2019). The parties to the PDA agreed that the PDA shall be governed by the internal laws of the State of Delaware. (PDA ¶ F; MA § 9.9.) Similarly, the scope of a forum selection clause is a matter of contract interpretation, which is governed by state law. *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 58 (3d Cir. 2018).[2]

## **ARGUMENT**

There can be no reasonable dispute that Ms. Javice and JPMC did ***not*** agree to arbitrate claims under the PDA. Instead, the PDA, expressly incorporating *mutatis mutandis* the relevant provisions of the Merger Agreement to which it is inextricably related, clearly provides for all disputes to be litigated in a court in the State of Delaware. While the PDA refers to discrete terms in the Employment Agreement, the PDA did not incorporate the Employment Agreement wholesale. Compelling Ms. Javice to arbitrate these claims would be tantamount to forcing her to

---

[2] JPMC does not challenge the enforceability of the forum-selection clause, which is a procedural question that would be governed by federal law. *See In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 58 (3d Cir. 2018).

arbitrate an issue that she has not agreed to arbitrate, which would violate principles of freedom of contract and longstanding precedent interpreting the FAA.

Moreover, this Court lacks authority to compel arbitration that will occur outside the District of Delaware, as any arbitration of the Employment Agreement would.  JPMC's motion must therefore be denied.

**I.     The Counterclaims for Breach of the Payment Direction Agreement Cannot Be Arbitrated and Must Be Heard in This Court**

**A.     The PDA Expressly Requires Disputes To Be Litigated in Delaware Courts**

The PDA expressly incorporates Article 9 of the Merger Agreement, which, in turn, mandates the proper forum for litigating related disputes.  Paragraph F of the PDA is unambiguous: "Article 9 of the Merger Agreement is hereby incorporated by reference, *mutatis mutandis*." Included in Article 9 is the forum-selection clause of Section 9.10, wherein JPMC agreed to "***irrevocably*** submit to the exclusive jurisdiction" of  Delaware courts "over all Related Claims." (MA § 9.10 (emphasis added).)   Counts III and V of Ms. Javice's counterclaims satisfy the definition of Related Claims—they  are "claims or causes of action . . . in contract . . . that [are] based upon, arise out of or relate to" both the Merger Agreement and "the Related Documents," or (even if, *arguendo*, the PDA is not a Related Document) "any other document or instrument delivered pursuant to this [Merger] Agreement." (MA § 1.1.)  Related Claims include those claims regarding "interpretation, construction, enforcement, performance or nonperformance of this Agreement or the Related Documents or otherwise arising from the Transactions," and they include a "claim or cause of action based upon, arising out of or related to any . . . warranty made in . . . as an inducement to enter into, this Agreement or the Related Documents." (*Id.*)  Counts III and V involve the non-performance and enforcement of a Related Document, and they relate to warranties made as an "inducement" to the Merger Agreement and Related Documents.  Moreover,

in that same Section 9.10, JPMC also agreed irrevocably and unconditionally to waive any challenge to venue, and agreed not to seek to challenge the proper venue through motion or otherwise—a clause JPMC is plainly now breaching by this very motion.

Even apart from the express incorporation by reference of the Merger Agreement's forum selection clause—which is dispositive and ends the issue—the interrelatedness of the PDA and the Merger Agreement further supports this result. *E.g.*, *Walgreen Co. v. Theranos, Inc.*, No. CV 16-1040-RGA-MPT, 2017 WL 3189006, at *6 (D. Del. July 27, 2017) (quoting *Kroblin Refrigerated Xpress, Inc. v. Pitterich*, 805 F.2d 96, 107 (3d Cir. 1986)). Indeed, unlike the Employment Agreement, the PDA was executed "[c]oncurrently" with the signing of the Merger Agreement. (PDA at 1; *see* Javice Claims ¶ 18.)[3] It expressly modifies the "payment mechanics" for payment of merger consideration to one of Frank's stockholders—Ms. Javice—pursuant to the Merger Agreement. (PDA at 1.) This is recognized in the recital that Ms. Javice has agreed to have a portion of her merger consideration withheld "[i]n order to induce [JPMC] to consummate the Merger[.]" (*Id.* at 1.) And because the PDA was "entered into in connection with" the Merger Agreement, it satisfies the Merger Agreement's definition of a "Related Document." (MA § 1.1.) It therefore makes sense that the PDA would incorporate the same Delaware forum selection clause as contained in the Merger Agreement, as the PDA modifies and addresses issues concerning JPMC's willingness to enter into the merger and payment of stockholder consideration from the consummated merger.

Nevertheless, JPMC largely ignores that the PDA contains "a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum.'" *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 63 (2013) (quoting *Stewart Org., Inc. v. Ricoh*

---

[3]   The parties restated the PDA on the date the Merger Agreement closed.  (PDA at 1.)

*Corp.*, 487 U.S. 22, 31 (1988)).  But this Court should not ignore Paragraph F.  "[E]nforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system."  *Id.*  Accordingly, such clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10–12 (1972) (concluding that lower court should have specifically enforced the freely negotiated forum clause).  The party seeking to challenge the enforceability of the clause must "clearly show that enforcement would be unreasonable and unjust," "the clause was invalid for such reasons as fraud or overreaching," or that enforcement would "contravene a strong public policy of the forum in which suit is brought." *Whirlpool Corp. v. Cabri,* No. 21-CV-00979EJW, 2022 WL 1421126, at *8 (D. Del. May 5, 2022) (quoting *Bremen*, 407 U.S. at 15).

JPMC has not even attempted to meet its burden.  JPMC agrees that Section 9.10 of the Merger Agreement is valid and enforceable, (JPMC Compl. ¶¶ 25, 26), and it does not argue that Paragraph F is somehow invalid or that its enforcement would be unjust.  Tellingly, its opening brief does not cite a single case that involves a valid forum-selection clause that is an express avowal of an intent not to arbitrate.[4]

---

[4]  For example, JPMC relies heavily on *Brayman Const. Corp. v. Home Ins. Co.*, 319 F.3d 62 (3d Cir. 2003), wherein the Third Circuit rejected the plaintiff's assertion that claims arose under one agreement, "the Policy," concluding that they arose under a second agreement that had a broad arbitration clause. There, the court expressly clarified that, regardless, the parties to the Policy did not express any intent not to arbitrate: "Finally, we note that there is no language in the Policy that is incompatible with this cause of action being resolved in an arbitral forum.  The Policy does not provide that it is to be enforced in court or specify a choice of forum." *Id.* at 626.  In contrast to *Brayman*, the PDA contains language that is incompatible with the resolution of those claims in an arbitral forum.

### B.     The PDA Does Not Incorporate the Entire Employment Agreement

In asking this Court to ignore the PDA's valid and enforceable forum-selection clause, JPMC argues that Counts III and V of Ms. Javice's counterclaims depend upon showing a breach of the Employment Agreement, which is incorporated into the PDA by way of a definition.  (Op. Br. at 12.)   JPMC argues, essentially, that because the PDA incorporates a single definition contained in Ms. Javice's Employment Agreement—dealing with the concept of a termination for "Cause"—that this somehow effectuates a wholesale implicit incorporation of the Employment Agreement's arbitration provision, and thereby negates the express inclusion of the Merger Agreement's Delaware forum provision.   Yet the definition of "Cause" contained in the Employment Agreement has absolutely nothing to do with jurisdiction or arbitrability.  It certainly does not evidence or constitute an express agreement to arbitrate, nor could it possibly eviscerate the PDA's express agreement **not** to arbitrate, but instead to agree to the venue of the Delaware courts.  JPMC's arguments are wholly unavailing and are contrary to clear law.  *See Zirpoli*, 48 F.4th at 142 ("The policy favoring arbitration is not intended to force arbitration where the parties to a contract did not agree to it.").

1.     There is no supposed "conflict" within the PDA's terms, and the PDA does not incorporate the Employment Agreement.

JPMC insists that Paragraphs D and F of the PDA pose an irreconcilable conflict, and thus the Employment Agreement's arbitration clause must win.  (Op. Br. at 15–17.)  This proposition finds absolutely no support in law, nor does JPMC cite any authority that would counsel this result.  Further, contrary to JPMC's argument, Paragraph F does not pose any conflict with other terms in the PDA.  The parties to the PDA intended that the PDA incorporate Section 9.10 (which, in turn, covers all "Related Claims"); there is no evidence that they also intended that the PDA incorporate the binding arbitration agreement—much less the clear and unambiguous agreement that would

be necessary to enforce arbitration.  *See John Hancock*, 151 F.3d at 137 ("[A]s a matter of contract, no party can be forced to arbitrate an issue unless that party has entered into an agreement to do so.").  Indeed, the express inclusion of a non-arbitral forum selection clause granting Delaware courts exclusive jurisdiction conclusively rebuts this absurd premise.

JPMC relies upon *Council of Dorset Condo. Apartments v. Gordon* for the proposition that this Court must "reconcile" the provisions of Articles D and F.  (Op. Br. at 15.)  There, the Delaware Supreme Court was faced with one contractual term that would require ignoring the plain language of another, within the same contract.  *Council of Dorset Condo.*, 801 A.2d 1, 7 (Del. 2002).  The court explained that, while it "must interpret contractual provisions in a way that gives effect to every term of the instrument, and that, if possible, reconciles all of the provisions of the instrument when read as a whole," there is no conflict to be reconciled when contractual provisions "discuss two wholly independent responsibilities [and] their terms are not redundant on their face."  *Id.*  Here, JPMC imagines an "irreconcilable conflict" that does not exist— incorporating a reference to a term does not create such a conflict.

Moreover, the PDA does not present any conflict between the "general" and "specific."  The pertinent provision in the PDA is the express incorporation of Article 9.  Under Delaware law, when construing a contract, the court must start with the text of the contract to determine the parties' meaning.  *See Sunline Com. Carriers, Inc. v. CITGO Petroleum Corp.*, 206 A.3d 836, 846 (Del. 2019).  The "specific over general" canon aids in the interpretation of the conflict, but only when needed to give effect to the plain meaning—that is, when two terms appear to conflict or "there is an inconsistency."  *Id.* ("[G]eneral terms of the contract must yield to more specific terms.");  *DCV Holdings, Inc. v. ConAgra, Inc.*, 889 A.2d 954, 961 (Del. 2005) ("Specific language in a contract controls over general language, and where specific and general provisions conflict,

13

the specific provision ordinarily qualifies the meaning of the general one."); *see* Restatement (First) of Contracts § 236(c) ("Where there is an inconsistency between general provisions and specific provisions, the specific provisions ordinarily qualify the meaning of the general provisions.").  Here there is no conflict to trigger that rule.  Paragraph D creates a condition to payout under the PDA; it modifies terms of the PDA, but not the general provisions that the parties incorporated in Paragraph F.  Paragraphs D and F are not redundant.  There is nothing for this Court to reconcile—it must only enforce the terms of the PDA as the parties intended.

JPMC does not cite a single case to support its argument that, under Delaware law, a contract that incorporates a single definition in another agreement essentially incorporates the entire referenced agreement, including its forum selection provision, and requires a finding under the referenced agreement.  Nor could it.  The Delaware Supreme Court explained in *Exelon Generation Acquisitions, LLC v. Deere & Company* that a contract that defines terms by reference to another agreement does not import the entire referenced agreement, and expressly disagreed with the Superior Court's finding that "incorporation of a discrete term or two from another contract necessarily means that the entire contract has been incorporated."  176 A.3d 1262, 1272 n.33 (Del. 2017).  Indeed, the Delaware Supreme Court quoted, "[I]t is important to note that when incorporated matter is referred to for a specific purpose only, it becomes a part of the contract for that purpose only, and should be treated as irrelevant for all other purposes."  *Id.* (citing 11 Richard. A. Lord, *Williston on Contracts* § 30:25, at 234, 238 (4th ed. 1999).  This is consistent with other holdings by the Delaware Supreme Court that "a mere reference in one agreement to another agreement, without more, does not incorporate the latter agreement into the former by reference," and instead, "to incorporate one document into another, an explicit manifestation of intent is

required." *Town of Cheswold v. Cent. Delaware Bus. Park*, 188 A.3d 810, 819 (Del. 2018) (internal citations omitted).

2.       Ms. Javice never agreed to arbitrate non-employment claims.

This Court can compel arbitration only if the "the merits-based dispute in question falls within the scope of th[e] valid [arbitration] agreement." *Zirpoli*, 48 F.4th at 142. At most, the Employment Agreement's arbitration clause covers: "all legally protected employment-related claims . . . which arise out of or relate to [Ms. Javice's] employment or separation from employment." Yet it is plainly apparent that Counts III and V of Ms. Javice's counterclaims do not seek any relief arising out of or relating to Ms. Javice's employment. Instead, Counts III and V seek damages under the PDA—i.e., payment of the Merger Consideration owed to Ms. Javice as a *stockholder* of Frank, not an *employee* of JPMC. In Counts III and V, Ms. Javice avers that under the PDA and the Merger Agreement, she is owed "a portion of Ms. Javice's merger consideration, known as the 'Retained Amount.'" (Javice Claims ¶¶ 119–128, 138–45.) The PDA is the source of Ms. Javice's legal right to recover damages, *see id.*, and she has alleged that JPMC breached specific provisions of the PDA. (Javice Claims. ¶¶ 121, 139). *Cf. Nemec v. Shrader*, 991 A.2d 1120, 1129 (Del. 2010) ("It is a well-settled principle that where a dispute arises from obligations that are expressly addressed by contract, that dispute will be treated as a breach of contract claim."). Ms. Javice suffered harm because of JPMC's breaches of the PDA, which confers upon her the rights to enforce the PDA. *See NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*, 118 A.3d 175, 180–81 (Del. 2015) ("It is a fundamental principle of contract law that the parties to a contract are bound by its terms, and have a corresponding right to enforce them.").

Further, the scope of an arbitration agreement plainly does not expand to cover *all* disputes among the parties to the arbitration agreement; it is limited only to those disputes within the scope that the parties have agreed to arbitrate. "Simply because 'the parties have agreed to arbitrate some

disputes does not necessarily manifest an intent to arbitrate every dispute that might arise between the parties.'" *Jaludi v. Citigroup*, 933 F.3d 246, 251 (3d Cir. 2019) (quoting *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 172 (3d Cir. 2014)).  The issues in Counts III and V depend on the contract rights in the PDA; they do not depend on or arise out of Ms. Javice's employment at JPMC.[5]  JPMC's argument would remove any scope limitations from agreements to arbitrate, and result in the slippery slope that whenever two parties agree to arbitrate a specific dispute, they are bound to arbitrate all other disputes whatsoever and forever.  This is not the law.  "[C]ontracting parties who provide for the arbitration of disputes in their agreements need submit to arbitration only those claims that touch on the legal rights created by their contract."  *Parfi Holding AB v. Mirror Image Internet, Inc.*, 817 A.2d 149, 151 (Del. 2002).

In *Parfi*, minority stockholders filed an action alleging that an investor in the corporation breached fiduciary duties owed to the corporation's stockholders.  *Id.* at 151–52.  The investor was party to an underwriting agreement with the corporation, which contained an arbitration agreement.  *Id.*  The underwriting agreement had a binding arbitration clause that the parties conceded was broad in scope.  *Id.* at 155.  Regardless of the breadth, the court determined that the stockholders "can maintain an action based on the alleged breaches of the independent set of fiduciary duties that [the investor] owes . . . even though the claims arise from some or all of the same facts that relate to the transactions that provided the basis for its contract claims."  *Id.* at 156–57.  As there, here when Ms. Javice "agreed to the arbitration provision in the [Employment] Agreement, [she] did not commit to bring into arbitration every possible breach of duty that could

---

[5]  Regardless, the PDA is a side letter to the *Merger Agreement* that modifies its payment mechanic terms.  In this proceeding, JPMC has alleged that the Merger Agreement is a product of fraud and challenged rights of Ms. Javice to receive consideration owed to her under the Merger Agreement. (*E.g.*, JPMC Compl. ¶¶ 231, 208.)  The PDA claims are more relevant to the Merger Agreement than they are to the Employment Agreement.

occur between the parties." *Id.* at 156. That was not the parties' intent, which the Court must effectuate. *Id.* "[E]ven claims that arise out of the same nucleus of operative facts as an arbitrable contract claim do not have to be arbitrated," or are "*identical* in all material factual and legal respects" as to an arbitrable claim, should not be arbitrated if the claim asserts an "independent" set of rights. *Majkowski v. Am. Imaging Mgmt. Servs.*, *LLC*, 913 A.2d 572, 583 (Del. Ch. 2006) (discussing *Parfi*) (emphasis added).

Compellingly, *unlike* in *Parfi*, here there is an express manifestation of the parties' intent with respect to the PDA: they intended to litigate performance and obligations thereunder in court, and this Court would have to contravene that intent if it granted JPMC's motion to compel arbitration of Counts III and V.

## II.    This Court Cannot Compel Arbitration That Would Occur Outside of the Confines of the District of Delaware

JPMC seeks relief from this Court that it cannot grant. (*See* Op. Br. at 3.) The Court cannot dismiss *any* of the counterclaims. *See Woodruff v. Dollar Gen. Corp.*, No. CV 21-1705-GBW, 2022 WL 17752359, at *5 (D. Del. Dec. 19, 2022) ("Because the FAA requires district courts to stay proceedings pending arbitration, rather than dismiss claims outright, this action will be stayed pending arbitration."). At most it has authority to stay the claims under Section 3 of the FAA. *See* 9 U.S.C. § 3.

While Section 4 of the FAA authorizes parties to seek that a district court compel arbitration, it provides that a court, "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, . . . shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

The Employment Agreement does not set a "locale" for arbitration, but it is not *silent* as to the locale. Rather, the parties agreed that:

> The arbitrator will set the date, time, and place of the hearing, and AAA (or other arbitration provider mutually agreed to by the parties) will notify the Parties at least 30 calendar days in advance, unless the Parties otherwise agree. In the event the hearing cannot reasonably be completed in one day, the arbitrator will schedule the hearing to be continued on a date or dates that is/are convenient to both Parties. The arbitrator will make every effort to select a reasonably convenient location for the continued arbitration, without incurring additional expense, if possible.

(EA, App'x IV, ¶ 7.)  With respect to locale, the terms of the agreement provide that the parties will have the opportunity to submit arguments as to the convenience of location, and the arbitrator has the right to determine location.  Under Section 4 of the FAA, this Court can only compel arbitration to occur in accordance with these terms of the agreement.  *See* 9 U.S.C. § 4; *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) ("[C]ourts must rigorously enforce arbitration agreements according to their terms.") (internal quotation marks and citation omitted).

Section 4 of the FAA also explains that, "The hearing and proceedings, under such agreement, *shall be within the district in which the petition for an order directing such arbitration is filed*." 9 U.S.C. § 4.  "While any directive in Section 4 that arbitration be conducted according to the terms of the agreement is implicit at best, the requirement that arbitration take place in the district court where the petition is filed is clear and unequivocal."  *Econo-Car Int'l, Inc. v. Antilles Car Rentals, Inc.*, 499 F.2d 1391, 1394 (3d Cir. 1974); *see Ansari v. Qwest Commc'ns Corp.*, 414 F.3d 1214, 1219–20 (10th Cir. 2005) (explaining that the "majority view holds that where parties agreed to arbitrate in a  particular forum only a district court in that forum has authority to compel arbitration under § 4") (collecting cases).  In this case, there is no basis to believe that the Employment Agreement provides or allows for the parties to arbitrate within the District of Delaware.  Delaware would not be the proper place or "situs" of arbitration.  Ms. Javice is not a resident of Delaware, she did not work in Delaware, and the relevant events underlying her employment claims did not occur in Delaware. (Javice Claims ¶¶ 22, 147-151.)  The parties did

not consent to Delaware as the location; they consented to have the arbitrator determine the location.  Under the FAA and Third Circuit precedent, this Court cannot compel arbitration.

## **CONCLUSION**

For the foregoing reasons, JPMC's motion should be denied.


OF COUNSEL:

Alex Spiro
Maaren A. Shah
JP Kernisan
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000
alexspiro@quinnemanuel.com
maarenshah@quinnemanuel.com
jpkernisan@quinnemanuel.com

DATED:  April 17, 2023

   /s/ Michael A. Barlow
Michael A. Barlow (#3928)
Samuel D. Cordle (#6717)
ABRAMS & BAYLISS LLP
20 Montchanin Drive, Suite 200
Wilmington, Delaware 19807
(302) 778-1000
barlow@abramsbayliss.com
cordle@abramsbayliss.com

*Attorneys for Defendant / Counterclaim Plaintiff Charlie Javice*