**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| JPMORGAN CHASE BANK, N.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:22-cv-01621-MN |
| | ) | |
| CHARLIE JAVICE, OLIVIER AMAR, | ) | |
| CHARLIE JAVICE, in her capacity as Trustee | ) | |
| of CHARLIE JAVICE 2021 IRREVOCABLE | ) | |
| TRUST #1, CHARLIE JAVICE, in her capacity as | ) | |
| Trustee of CHARLIE JAVICE 2021 | ) | |
| IRREVOCABLE TRUST #2, and CHARLIE | ) | |
| JAVICE in her capacity as Trustee of CHARLIE | ) | |
| JAVICE 2021 IRREVOCABLE TRUST #3, | ) | |
| | ) | |
| Defendants. | ) | |

**COUNTERCLAIM PLAINTIFF CHARLIE JAVICE'S
ANSWERING BRIEF IN OPPOSITION TO
COUNTERCLAIM DEFENDANT JPMORGAN CHASE BANK, N.A.'S
MOTION FOR AN ORDER PARTIALLY LIFTING THE
PRIVATE SECURITIES LITIGATION REFORM ACT DISCOVERY STAY**

OF COUNSEL:

Alex Spiro
Maaren A. Shah
JP Kernisan
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000
alexspiro@quinnemanuel.com
maarenshah@quinnemanuel.com
jpkernisan@quinnemanuel.com

DATED:  April 21, 2023

Michael A. Barlow (#3928)
Samuel D. Cordle (#6717)
ABRAMS & BAYLISS LLP
20 Montchanin Drive, Suite 200
Wilmington, Delaware 19807
(302) 778-1000
barlow@abramsbayliss.com
cordle@abramsbayliss.com

*Attorneys for Defendant / Counterclaim
Plaintiff Charlie Javice*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ........................................................................................1

RELEVANT FACTS & BACKGROUND.......................................................................2

LEGAL STANDARDS ...................................................................................................6

ARGUMENT ..................................................................................................................7

I.     There Are No "Exceptional Circumstances" That Justify Lifting The Discovery Stay ..............................................................................................................................7

        A.     JPMC Fails To Argue, Let Alone Demonstrate, Undue Prejudice If The Discovery Stay Is Not Lifted ..................................................................7

        B.     JPMC Fails To Demonstrate It Is Necessary To Lift The Discovery Stay To Preserve Evidence ............................................................................9

        C.     JPMC's Requests Are Not Reasonably Particularized .........................................16

II.    Even If a Lift of the Discovery Stay were Warranted, JPMC Seeks Improper Discovery ........................................................................................................................17

CONCLUSION.................................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                        **Page(s)**

*In re Am. Funds Secs. Litig.*,
    493 F. Supp. 2d 1103 (C.D. Cal. 2007) ..........................................................................10, 11

*In re CFS-Related Sec. Fraud Litig.*,
    179 F. Supp. 2d 1260 (N.D. Okla. 2001) ..........................................................................8, 12

*Davis v. Duncan Energy P'rs*,
    801 F. Supp. 2d 589 (S.D. Tex. 2011) .............................................................................16, 17

*Desmarais v. First Niagra Fin. Grp., Inc.*,
    2016 WL 768257 (D. Del. Feb. 26, 2016) ...................................................................... *passim*

*Dipple v. Odell*,
    870 F. Supp. 2d 386 (E.D. Pa. 2012) .....................................................................................8

*In re Fannie Mae Secs. Litig.*,
    362 F. Supp. 2d 37 (D.D.C. 2005) .........................................................................................7

*Faulkner v. Verizon Commc'ns, Inc.*,
    156 F. Supp. 2d 384 (S.D.N.Y. 2001) ...................................................................................7

*In re Gas Nat., Inc.*,
    2014 WL 12591691 (N.D. Ohio Apr. 3, 2014) ....................................................................13

*In re Heckmann Corp. Secs. Litig.*,
    2011 WL 10636718 (D. Del. Feb. 28, 2011) ..............................................................9, 16, 17

*Herrley v. Frozen Food Exp. Indus., Inc.*,
    2013 WL 4417699 (N.D. Tex. Aug. 19, 2013) ....................................................................17

*In re Lernout & Hauspie Secs. Litig.*,
    214 F.Supp.2d 100 (D. Mass. July 26, 2002) ......................................................................11

*Lindner v. Am. Exp. Co.*,
    2010 WL 4537819 (S.D.N.Y. Nov. 9, 2010) .........................................................................9

*Magnetar Techs. Corp. v. Six Flags Theme Park Inc.*,
    886 F. Supp. 2d 466 (D. Del. 2012) .......................................................................................9

*McCarthy v. Johnson*,
    2022 WL 3038862 (D.D.C. Aug. 2, 2022) ...........................................................................18

*Mori v. Saito*,
    802 F. Supp. 2d 520, 523 (S.D.N.Y. 2011)...........................................................................15

*Mwani v. Al Qaeda*,
    2021 WL 5800737 (D.D.C. Dec. 7, 2021) ............................................................................19

*Novak v. Sally Frame Kasaks*,
    1996 WL 467534 (S.D.N.Y. Aug. 16, 1996) .......................................................................14

*Parallel Iron LLC v. NetApp, Inc.*,
    84 F. Supp. 3d 352, 355 (D. Del. 2015) ............................................................................18

*In re Pattern Energy Grp. Inc. Secs. Litig.*,
    2021 WL 312752 (D. Del. Jan. 28, 2021) .............................................................................8

*Podany v. Robertson Stephens, Inc.*,
    350 F.Supp.2d 375 (S.D.N.Y. 2004) ..................................................................................12

*In re Royal Ahold N.V. Sec. & Erisa Litig.*,
    220 F.R.D. 246 (D. Md. 2004) .....................................................................................10, 12

*Sarantakis v. Gruttaduaria*,
    2002 WL 1803750 (N.D. Ill. Aug. 5, 2002) ................................................................. *passim*

*SG Cowen Secs. Corp. v. U.S. Dist. Ct. for N. Dist. of Cal.*,
    189 F.3d 909 (9th Cir. 1999) ..............................................................................................7

*In re Smith Barney Transfer Agent Litig.*,
    2006 WL 1738078 (S.D.N.Y. June 26, 2006) .......................................................................8

*In re Sunrise Senior Living, Inc.*,
    584 F. Supp. 2d at 17 ...........................................................................................13, 14, 15

*Tobias Holdings, Inc. v. Bank United Corp.*,
    177 F. Supp. 2d 162 (S.D.N.Y. 2001) ................................................................................13

*Union Cent. Life Ins. Co. v. Ally Fin., Inc.*,
    2012 WL 3553052 (S.D.N.Y. Aug. 17, 2012) ....................................................................13

*United States v. Chazen*,
    2019 WL 113722 (D.N.J. Jan. 4, 2019) .........................................................................18, 19

*Vacold LLC v. Cerami*,
    2001 WL 167704 (S.D.N.Y. Feb. 16, 2001) .......................................................................12

*In re Vivendi Universal*,
    381 F. Supp. 2d at 130 ...................................................................................................10, 13

*In re WorldCom, Inc. Secs. Litig.*,
    234 F. Supp. 2d 301 (S.D.N.Y. 2002) ...........................................................................10, 11

**Rules & Statutes**

Fed. R. Civ. P. 37(e) ..................................................................................................9

Fed. R. Civ. P. 69(a)(2)................................................................................17, 18, 19

Fed. R. Civ. P. 69 .......................................................................................17, 18, 19

15 U.S.C. § 78u-4(b)(3)(B)..............................................................................6, 7, 16

15 U.S.C. § 78u-4(b)(3)(C)(i) ......................................................................................9

**Legislative Materials**

S. Rep. No. 104-98(1995) ...........................................................................................7

**Other Authorities**

12 Charles A. Wright & Arthur R. Miller, *Federal Practice and
Procedure* § 3014....................................................................................................18

Defendant and Counterclaim Plaintiff Charlie Javice respectfully submits this brief in opposition to Plaintiff and Counterclaim Defendant JPMorgan Chase Bank, N.A. ("JPMC")'s motion for an order partially lifting the Private Securities Litigation Reform Act discovery stay (D.I. 28, the "Motion," supported by the opening brief, D.I. 29 ("Op. Br.")).

## PRELIMINARY STATEMENT

In December 2022, JPMC brought claims against Ms. Javice for federal securities fraud and common law contractual fraud.  D.I. 1.  The gravamen of JPMC's Complaint is that in the summer of 2021, Ms. Javice knowingly and intentionally misrepresented metrics associated with the Frank business to induce JPMC to acquire Frank for an all-cash purchase price of $175 million. JPMC further alleges that Ms. Javice, after submitting a data file for a diligence request prior to signing, concealed those misrepresentations.  D.I. ¶¶ 13, 70–71.  JPMC has not won its litigation, nor will it.  These allegations are false, as Ms. Javice will show in due course.  But these allegations also are not at issue in JPMC's Motion.

Rather, JPMC seeks discovery that is entirely disconnected from the underlying allegations in the claims at bar.  Treating Ms. Javice's money as its own, JPMC skips a step and claims a right to trace and interrogate Ms. Javice about lawful transactions that were neither intended to evade, nor have evaded, the reach of any current or future creditors.  These interrogations continue JPMC's campaign of harassment through which JPMC seeks to baselessly discredit Ms. Javice. But discovery rights do not depend on how vociferously one party can cast aspersions at the other. Particularly not when a statutory stay remains in effect.

In its Motion and Opening Brief, JPMC demands discovery to which it is not entitled and disregards the overwhelming majority of authorities that reject lifting the discovery stay.  Further, JPMC's Motion is premised on speculative theories that ignore the doctrinal barriers that support staying discovery.  JPMC cannot, and has not tried to, show prejudice from the discovery stay, and

the discovery it seeks is unnecessary now and overly generalized.  In addition, whatever argument JPMC might have had for discovery to prevent asset dissipation is now moot.  Shortly after the motion was filed the United States seized or froze Ms. Javice's assets, mooting all concerns JPMC raised in its Motion.

<u>**RELEVANT FACTS & BACKGROUND**</u>

Ms. Javice opposes the attempt for improper discovery, but she also cannot permit JPMC to spin the facts, which are as follows.

Ms. Javice founded and grew TAPD, Inc., doing business as "Frank," into a growing business that helped students access financial aid.  JPMC agreed to purchase Frank for $175 million after undertaking substantial due diligence.  Pursuant to the Merger Agreement, Ms. Javice was entitled to receive approximately $28 million cash for her interests in Frank.[1]  *See* Counterclaims, D.I. 10, ¶ 14.  Prior to the September 14, 2021 closing, Ms. Javice established two irrevocable trusts, Charlie Javice Irrevocable Trust 1 & 2 (collectively, the "Trusts").  Javice Ans., D.I. 10, ¶ 232; *see* Op. Br. at 4.  Each of Ms. Javice and the Trusts opened checking and savings accounts at JPMC.  *See* Op. Br. at 6.  Upon closing, Ms. Javice deposited approximately $21.4 million into these three accounts.  A third trust, Charlie Javice Irrevocable Trust 3, was set up to receive approximately $7.3 million of merger consideration, which JPMC retained pursuant to the conditions in the Payment Direction Agreement, dated September 14, 2022.  *See* Payment Direction Agreement, D.I. 23_3 Ex. B.

After the merger, Ms. Javice went to work for JPMC, which then subjected Ms. Javice to unlawful workplace treatment and repeat, invasive investigations.  Counterclaims, D.I. 10, ¶¶ 77–

---

[1]   Capitalized terms not otherwise defined herein have the meaning ascribed to them in Ms. Javice's counterclaims, D.I. 10.

88.  On September 13, 2022, JPMC placed Ms. Javice on administrative leave, purportedly pending the results of an internal investigation.  *Id.* ¶ 97.  On that same day, JPMC's outside counsel Hogan Lovells US LLP delivered to Ms. Javice a letter informing her that alongside the employment investigation, JPMC had also undertaken an investigation to explore and prepare for litigation against Ms. Javice.  Op. Br. Ex. 3 ("We . . . are currently investigating events surrounding JPMC's acquisition of TAPD, LLC, d/b/a 'Frank' to determine whether JPMC has legal claims against any individuals or entities.").  Hogan Lovells included a preservation demand, signaling, again, that litigation was imminent or reasonably expected.  *See id.*

JPMC was not just Ms. Javice's employer.  It also was her banker.  Op. Br. at 1.  And now it was threatening legal action against her.

Eight days after Ms. Javice received notice of the suspension, she decided to move the majority of the money that was in the JPMC accounts to another New York bank.  *See* Op. Br. at 1.  Three entities—Chariot Holdings X, LLC ("Chariot X"), Chariot Holdings I, LLC ("Chariot I"), and Chariot Holdings II, LLC ("Chariot II"), each a Nevada limited liability company, and, collectively, the "Chariot Entities"—were created on or about September 21, 2022, to facilitate the transfer of the funds to Signature Bank, which was then a commercial, FDIC-insured bank in New York, New York.[2]  Just as Ms. Javice had three accounts—one in her personal name and two in the Trusts' names at JPMC, with JPMC's full knowledge—she created parallel accounts at Signature Bank.  Ms. Javice did not close the JPMC accounts entirely, but rather left a balance in each.

---

[2] *See* Nev. Entity Information for each of the Chariot Entities, Nev.'s Silver Flume Records Search, https://esos.nv.gov/EntitySearch/OnlineEntitySearch (last accessed April 21, 2023), "Exhibit A"; Op. Br. Ex. 2 (listing date of formation of the Chariot Entities).

The public records list Charlie Javice as manager for each of the Chariot Entities, along with Ms. Javice's accountant and an attorney as manager for Chariot I and II, respectively. *See* Ex. A; Op. Br. at 7 ("Charlie Javice is listed as the manager and sole officer for Chariot X."). Entity information for the Chariot Entities is publicly available at no cost on the Nevada business portal hosted by the Nevada Secretary of State, as JPMC's own briefing indicates.[3]  The Chariot Entities are lawfully organized under the laws of the State of Nevada.

Ms. Javice has explained to JPMC that she moved her money from JPMC because she no longer wanted to bank with an entity that was retaliating against her and baselessly accusing her of severe misdeeds.  She justifiably feared that this same, powerful entity would abuse the nature of its banking relationship with her, given JPMC's continued threats to her employment and her personal and professional reputation. *See* Op. Br. Ex. 5 ("Ms. Javice's transfer of funds from her Chase accounts was not an attempt to shield assets from potential recovery by Chase, and Ms. Javice's conduct was entirely appropriate and aimed at preventing predictable harassing behavior from Chase.").  Put differently, a suspended employee reasonably might feel vulnerable leaving her assets in the hands of the boss that is searching doggedly for  reasons to terminate her employment. *See id.*  And Ms. Javice's fears were warranted, as JPMC has used its access to her personal accounts as part of its baseless investigation into the alleged fraudulent behavior.

On November 4, 2022, JPMC terminated Ms. Javice's employment, purportedly for "Cause."  Op. Br. Ex. 4.  On December 22, 2022, JPMC publicly accused Ms. Javice of fraud, including securities fraud under the Exchange Act.  D.I. 1.  In its complaint, JPMC accuses Ms. Javice of falsifying data relating to the Frank business.  Op. Br. at 4; D.I. 1.  JPMC further alleges

---

[3] Op. Br. at 7; s*ee* Ex. A.; Nev.'s Silver Flume Records Search, https://esos.nv.gov/EntitySearch/OnlineEntitySearch (last accessed April 20, 2023) (providing free Nevada business entity search tool).

that Ms. Javice, after submitting data files for a diligence request, concealed those misrepresentations. Compl., D.I. 1 ¶¶ 13, 70–71. The purported "concealment" allegedly occurred both prior to the September 14, 2021 closing and then, after closing, when Ms. Javice was in JPMC's employ. *Id.* ¶¶ 164–77. According to JPMC, the purported "concealment" continued into January 2022. *Id.* Needless to say, although the claims contest Ms. Javice's **right** to have received the merger proceeds, the claims do not concern conduct pertaining to the use or movement of the proceeds.

On February 14, 2023, JPMC, exploiting its access to Ms. Javice's personal accounts, contacted Ms. Javice about the September transfers. JPMC accused her of violating its request as of September 13, 2022 not to convey the "Merger Proceeds." Op. Br. Ex. 1. The following week, JPMC notified Ms. Javice's accountant that he was under a duty to preserve all documents and information pertaining to each of the Chariot Entities and any transfers of "Merger Proceeds," among other things. Feb. 20, 2023, T. Nagy Ltr to J. Kirschner, "Exhibit B."

On February 27, JPMC reversed course and stopped insisting that Ms. Javice keep her money at JPMC. JPMC instead sent Ms. Javice a letter explaining that it "made a decision to end [Ms. Javice's] account relationship with J.P. Morgan Private Bank," and asking Ms. Javice to close her remaining accounts and "as soon as possible" facilitate the transfer of the holdings in the accounts to another institution. Feb. 27, 2023, J.P. Morgan Account Closure Notice, "Exhibit C."

Ms. Javice promptly complied. She moved the remainder of the money to the accounts in Signature Bank. *See* Mar. 16, 2023 W. Regan Ltr to A. Spiro, "Exhibit D" ("Further amplifying JPMC's concerns is that the transfers to Chariot X Holdings were to Signature Bank, which the FDIC has since seized."); Op. Br. Ex. 6.

As it happened, that timing was ill-fated.  To the surprise of even the most seasoned players in the banking industry, on or about March 10, depositors at Signature Bank began a "run" on the bank, thereby increasing the fear and likelihood of what did indeed result: the third largest bank failure in U.S. history.[4]  *See* Op. Br. Ex. 6.  Ms. Javice, like numerous other depositors, withdrew funds on the day that she feared a bank collapse; the funds were then deposited into major domestic institutions in accounts now seized by the U.S. Attorney's Office for the Southern District of New York.

On April 3, 2023, Ms. Javice was arrested and detained by federal authorities.  Late in the night on Good Friday, April 7, JPMC filed its Motion.  Around the same time, the United States seized Ms. Javice's assets and has blocked her from access to her accounts—the same assets that JPMC now suggests are at risk of dissipation.  The seizure warrants for accounts and assets under Ms. Javice's control are currently under seal.

## **LEGAL STANDARDS**

The Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u–4 *et seq*. ("PSLRA"), requires that where, as here, a motion to dismiss the complaint is pending, "all discovery and other proceedings shall be stayed."  15 U.S.C. § 78u-4(b)(3)(B).  A court may lift the stay under the extraordinary circumstance where "particularized discovery is necessary to

---

[4]  "Signature Bank's collapse came stunningly fast, leaving behind the question of whether there was a fundamental flaw in the way it did business — or if it was just a victim of the panic that spread after the failure of Silicon Valley Bank.  There were few outward signs that Signature Bank was crumbling before the New York Department of Financial Services on Sunday seized the bank's assets and asked the Federal Deposit Insurance Corp. take over its operations." Geoff Mulvihill, *Signature Bank's Demise: Contagion or a Problem with the Business?*, AP News (March 15, 2023), https://apnews.com/article/signature-bank-fdic-new-york-svb-40c361918e2bc9c20d7b19b683b01f65; s*ee also* Jen Wiezner, *Barney Frank Talks More About the Surprise Shuttering of Signature Bank*, New York Magazine (March 15, 2023), available at https://nymag.com/intelligencer/2023/03/barney-frank-says-more-shuttering-signature-bank.html.

preserve evidence or prevent undue prejudice to a party." *Id.* Congress intended that the stay be lifted only in rare circumstances—its only example was the preservation of a dying witness' testimony through deposition. *See Faulkner v. Verizon Commc'ns, Inc.*, 156 F. Supp. 2d 384, 402 (S.D.N.Y. 2001) ("The sole example proffered by Congress as to what justifies lifting the stay is 'the terminal illness of an important witness,' which might 'necessitate the deposition of the witness prior to ruling on the motion to dismiss.'") (quoting S. Rep. No. 104-98, at 14 (1995)).

"The purposes of the automatic stay provision are (1) to prevent the imposition of any unreasonable burden on a defendant before disposition of a motion to dismiss the complaint; and (2) to avoid the situation in which a plaintiff sues without possessing the requisite information to satisfy the PSLRA's heightened pleading requirements, then uses discovery to acquire that information and resuscitate a complaint that would otherwise be dismissed." *Sarantakis v. Gruttaduaria*, 2002 WL 1803750, at *1 (N.D. Ill. Aug. 5, 2002). "[E]xceptional circumstances" must exist to lift the stay. *SG Cowen Secs. Corp. v. U.S. Dist. Ct. for N. Dist. of Cal.*, 189 F.3d 909, 911–12 (9th Cir. 1999). "The burden of establishing the need for a partial lifting of the discovery stay, not surprisingly, is a heavy one." *In re Fannie Mae Secs. Litig.*, 362 F. Supp. 2d 37, 38 (D.D.C. 2005).

## ARGUMENT

## I. There Are No "Exceptional Circumstances" That Justify Lifting The Discovery Stay

### A. JPMC Fails To Argue, Let Alone Demonstrate, Undue Prejudice If The Discovery Stay Is Not Lifted

JPMC's Motion does not offer any argument that it will suffer undue prejudice if a partial lift of the discovery stay is not granted. As such, this Court need not address this element of the PSLRA stay exception. *See, e.g.*, *Desmarais v. First Niagra Fin. Grp., Inc.*, 2016 WL 768257 (D.

7

Del. Feb. 26, 2016), at *2 (addressing only the undue prejudice prong of the PSLRA stay exception because the movant failed to argue the preservation of evidence prong).

JPMC ignores its obligation to show undue prejudice because it cannot meet that standard. As its Opening Brief concedes, "[t]he moving party must also show 'circumstances specific to his case, amassing to more than conclusory allegations about being disadvantaged in relation to other parties or contingent possibilities of future prejudice[s].'"  Op. Br. at 10 (quoting *In re Heckmann Corp. Secs. Litig.*, 2011 WL 10636718, at *3 (D. Del. Feb. 28, 2011)) (internal quotations omitted).

Not once in its brief does JPMC offer more than a conclusory statement that it will be prejudiced if the stay of discovery is not lifted.  "'Undue prejudice' in the context of a discovery stay means improper or unfair treatment amounting to something less than irreparable harm."  *In re Smith Barney Transfer Agent Litig.*, 2006 WL 1738078, at *2 (S.D.N.Y. June 26, 2006). "Prejudice caused by the delay inherent in the PSLRA's discovery stay cannot 'be undue,'" because "[p]laintiffs chose to file their securities action in federal court before seeking" the information they now claim to require.  *In re Pattern Energy Grp. Inc. Secs. Litig.*, 2021 WL 312752, at *2 (D. Del. Jan. 28, 2021).  "It is generally the case that in a securities fraud case the evidence of fraud is primarily within the defendant's control," *In re CFS-Related Sec. Fraud Litig.*, 179 F. Supp. 2d 1260, 1265 (N.D. Okla. 2001), and an "informational disadvantage does not rise to the level of undue prejudice contemplated by the narrow statutory exception." *Dipple v. Odell*, 870 F. Supp. 2d 386, 394 (E.D. Pa. 2012) (collecting cases).  To show that it will be unduly prejudiced, the plaintiff must establish that "no *adequate* remedy exists absent the lifting of the stay." *Desmarais*, 2016 WL 768257, at *3 (emphasis in original).

JPMC  cannot seriously argue that it will suffer undue prejudice absent a lift of the PSLRA discovery stay, because any disadvantage JPMC suffers from the stay is at its own hand.  JPMC

chose to file its securities actions on December 22, 2022, D.I. 1, thereby knowingly subjecting itself to a potential stay before seeking information about the transfer of Ms. Javice's funds—an event that it admits it knew about since September 2022.  Op. Br. at 11–12 (identifying specific date of transfer as eight days following date of administrative leave, i.e., September 21, 2022).

Further, Ms. Javice, like JPMC, is under both statutory and common law obligations to preserve relevant evidence, and JPMC does not attempt to dispel why that obligation is not an adequate remedy to its concerns.  *See* 15 U.S.C. § 78u-4(b)(3)(C)(i) (imposing on parties duty to preserve during the pendency of any stay); *Magnetar Techs. Corp. v. Six Flags Theme Park Inc.*, 886 F. Supp. 2d 466, 480 (D. Del. 2012) ("A party has a duty to preserve evidence it knows or reasonably should know is relevant to the action," beginning "when litigation is pending or reasonably foreseeable."); *see also* Fed. R. Civ. P. 37(e) (addressing procedure for sanctions for failure to preserve electronically stored information).

## B.  JPMC Fails To Demonstrate It Is Necessary To Lift The Discovery Stay To Preserve Evidence

The automatic discovery stay required by the PSLRA can be lifted to preserve evidence only when the movant shows that the "loss or destruction of evidence [is] imminent, as opposed to being hypothetically possible or merely speculative."  *In re Heckmann Corp. Sec. Litig.*, 2011 WL 10636718, at *4 (D. Del. Feb. 28, 2011).  A mere assertion or conclusory statement that "the loss or destruction of evidence is *possible*" is not sufficient to lift the mandatory stay—the movant must instead offer case-specific evidence to demonstrate that destruction of evidence is imminent. *Id.* at *5 (rejecting the movant's argument, without evidence, that a lift of the PSLRA stay was necessary because routine corporate document destruction procedures made it possible that relevant documents would be destroyed) (emphasis added); *see also Lindner v. Am. Exp. Co.*, 2010 WL 4537819, at *2 (S.D.N.Y. Nov. 9, 2010) (finding that a "conclusory allegation," with no

"reasonable basis" to conclude the defendant was not complying with its statutory obligations to preserve relevant evidence, amounted to "mere speculation"). Similarly, "general concern about the 'risk' that evidence will be lost … is not an exceptional circumstance and does not demonstrate that discovery is necessary to preserve evidence." *Sarantakis*, 2002 WL 1803750, at *3.

For example, in *In re Vivendi Universal, S.A. Securities Litigatoin*, the plaintiffs contended "that the partial lift on the stay of discovery [was] necessary because defendants [were] liquidating certain subsidiaries or affiliates of the Vivendi corporation, and there [was] a risk that documents may be lost with the transfer of control over portions of defendants' business." 381 F. Supp. 2d 129, 130 (S.D.N.Y. 2003). The court determined that this was not an exceptional circumstance as required by the PSLRA to warrant a lift of the discovery stay because the plaintiffs made no specific showing that the loss of evidence was imminent as opposed to merely speculative "and the defendants represent[ed] in open court" that the documents would not be lost. *Id.* Similarly here, JPMC has failed to explain why there will be any loss of evidence to support its claims. The generalized speculation it offers, if accepted by the Court, is the kind of argument that would support lifting the PSLRA failure in almost any fraud case.

In the few cases offered by JPMC in which a lift of the PSLRA stay was granted, contrary to JPMC's assertion, the stay was not lifted on the basis that "neither purpose of the Reform Act's stay was implicated." Op. Br. at 16. Instead, "unique circumstances, such as ongoing settlement discussions or corporate bankruptcies, that would have led to the plaintiffs being unduly prejudiced if the PSLRA discovery stay had not been lifted," warranted lifting the stay. *In re Am. Funds Secs. Litig.*, 493 F. Supp. 2d 1103, 1106 (C.D. Cal. 2007) (denying motion to lift stay while distinguishing the grants in the cases JPMC cites, *In re WorldCom, Inc. Secs. Litig.*, 234 F. Supp. 2d 301 (S.D.N.Y. 2002), *In re Royal Ahold N.V. Sec. & Erisa Litig.*, 220 F.R.D. 246, 251–52 (D.

Md. 2004), and *In re Lernout & Hauspie Secs. Litig.*, 214 F.Supp.2d 100 (D. Mass. July 26, 2002), all of which involved "unique circumstances" not at issue here); *see also Desmarais*, 2016 WL 768257, at *3 (noting that "the PSLRA cases in which district courts have permitted expedited discovery have tended to involve unique circumstances," just as when the *In re WorldCom* court ordered global settlement and, absent discovery, plaintiff would have been the only interested party without access to core materials).

In three of the five cases JPMC cites in which the court lifted the discovery stay, it did so on undue prejudice grounds (grounds that JPMC has waived by failing to argue), and not for the preservation of evidence (which is the only ground for relief JPMC argues in its brief).  These cases are inapplicable here.

In *In re Lernout & Hauspie Securities Litigation*, the court lifted the PSLRA discovery stay for undue prejudice because the international nature of the case was likely to extend the stay for two years, given international discovery procedures which could have added several months to the discovery process and because many of the documents and witnesses were located in Europe and Asia where the court lacked authority to enforce its preservation orders.  214 F. Supp. 2d at 108–09.  There is no similar international component here.

The court in *In re Worldcom* lifted the discovery stay for undue prejudice because it had ordered global settlement negotiations of the various cases and plaintiffs were the "only major party in the criminal and civil proceedings without access to documents that [formed] the core of the proceedings."  234 F. Supp. 2d at 305.  There are no similar discussions here.  Several courts, like the one in *In re American Funds Securities Litigation*, have distinguished *In re Worldcom* where the facts before them do not involve court-mandated global settlement discussions.  *See e.g.,*

11

*Desmarais*, 2016 WL 768257, at *3 and *Podany v. Robertson Stephens, Inc.,* 350 F.Supp.2d 375, 378 (S.D.N.Y. 2004).

In *Vacold LLC v. Cerami*, the court allowed limited discovery only because the viability of the plaintiff's claims, and its ability to survive defendant's motion to dismiss, depended on the exact information plaintiffs sought in discovery and the defendant had refused to provide that information when asked to do so at oral argument for the motion to dismiss. 2001 WL 167704 (S.D.N.Y. Feb. 16, 2001). The court took the motion to dismiss "under advisement and lifted the PSLRA's discovery stay for the sole purpose of allowing plaintiff to discover" the specific information it requested. *In re CFS-Related Secs. Fraud Litig.*, 179 F. Supp. 2d 1260, 1267 (N.D. Okla. 2001) (describing the procedure used in *Vacold* as "questionable," stating it at most "stands for the proposition that when a plaintiff can allege all facts necessary to sustain a securities fraud claim, with the exception of facts peculiarly within the defendant's possession, the PSLRA's stay may be lifted to allow discovery of those facts," and distinguishing it from its own facts, where the defendant from whom plaintiff wanted discovery was not the defendant who filed the motion to dismiss triggering the PSLRA stay of discovery).

Lastly, in *In re Royal Ahold N.V. Securities & ERISA Litigation*, the **only** case cited by JPMC in which the court lifted the stay to preserve evidence, discovery was permitted only as to the corporate defendant because it was undergoing "wide-ranging corporate reorganization," had already "divested itself of key subsidiaries," and had "admit[ted] major missteps, if not actual fraud" in its SEC filings. 220 F.R.D. at 251. It had also already produced the requested documents to government investigators and would soon be producing them to other plaintiffs. *Id.* at 252. The court left the stay in place as to the co-defendant because "[t]hat defendant, unlike Royal Ahold, [was] not reorganizing its affairs, so there [was] little to suggest a risk of documentary loss." *Id.*

at 252-53.  In this case, Ms. Javice has not endangered any documents—as JPMC concedes in its Opening Brief, she merely transferred her personal funds from one institution to another—and certainly has not admitted major missteps or fraud.

Most importantly, JPMC does not provide evidence, or even allege, that the destruction of relevant evidence is imminent.[5]  JPMC's arguments to the contrary are baseless and unpersuasive. *First*, regarding the "Merger Proceeds," JPMC does not specify what evidence is at risk of destruction by Ms. Javice's transfer of funds from her personal bank account; nor does it make even a conclusory allegation that such evidence is at risk of imminent destruction.  Op. Br. at 11– 12.  This alone is fatal.  *In re Vivendi Universal*, 381 F. Supp. 2d at 130.  To the extent JPMC is concerned about tracking the location of Ms. Javice's funds, its argument is also illogical because at the same time JPMC implies that such evidence is at risk of destruction, it also explains that it possesses knowledge of the timing and destination of the transfers it is concerned about.[6]  As the court in *In re Sunrise Senior Living, Inc.* explained, "'[the plaintiffs'] evidence-preservation argument is illogical because the [evidence] that [the plaintiffs] are requesting [has] already been

---

[5] JPMC also cites *Tobias Holdings, Inc. v. Bank United Corp.*, 177 F. Supp. 2d 162, 169 (S.D.N.Y. 2001), for the premise that limited discovery is permitted when neither purpose of the Reform Act's stay was implicated, but that case instead dealt with the question of whether the PSLRA stay of discovery should apply to unrelated, common law claims in the same suit which were brought under diversity, rather than federal question, jurisdiction.  While it lifted the stay as to the "separate and distinct" common law claims, *id.* at 167, "*Tobias Holdings* is an outlier that other courts have generally declined to follow."  *In re Gas Nat., Inc.*, 2014 WL 12591691, at *3 (N.D. Ohio Apr. 3, 2014); *see also Union Cent. Life Ins. Co. v. Ally Fin., Inc.*, 2012 WL 3553052, *3 (S.D.N.Y. Aug. 17, 2012) ("Even according to *Tobias Holdings*, a plaintiff's state law claims must be 'separate and distinct' from its federal securities claims in order to escape the reach of the PSLRA.").

[6] JPMC similarly complains about the ability of Nevada corporations to hide ownership information while simultaneously telling the Court that Ms. Javice owns the Nevada holding company in question, Op. Br. at 12, after months of expressing knowledge of the existence of the Chariot Entities, *accord* Ex. B (asking Mr. Kirschner to preserve all information pertaining to each of Chariot X, Chariot I, and Chariot II).

produced," and "thus, by definition, [it has] not been and could not be destroyed.'" 584 F. Supp. 2d 14, 18 (D.D.C. 2008).

*Second*, JPMC argues that the statutorily mandated stay must be lifted because Ms. Javice will not turn over passwords that may or may not exist to applications in its control that it will not identify. This argument is factually and legally wrong. Factually, Ms. Javice explained repeatedly to JPMC that she does not, to her knowledge, possess any administrative passwords or any means of accessing JPMC property. Op. Br. Exs. 5, 6. She even offered to cooperate to resolve any dispute or discrepancy on this issue, requesting that JPMC identify how she could turn over passwords. See Op. Br. Ex. 6. JPMC refuses to provide that information and instead brought this Motion. JPMC's "password" argument is also legally baseless because, if Ms. Javice had any such information, she would be obligated to preserve it. "Lifting the stay is not 'necessary to preserve evidence,'" where the plaintiffs seek discovery from parties who are "are obligated under the PSLRA to preserve evidence during the stay as if it were the subject of a pending discovery request." *Sarantakis*, 2002 WL 1803750, at *3. Without evidence to bolster its "wholly speculative assertions as to the risk of lost evidence," JPMC cannot meet its "burden of showing that exceptional circumstances exist which would justify a departure from the Reform Act's mandatory stay of discovery." *Novak v. Sally Frame Kasaks*, 1996 WL 467534, at *1 (S.D.N.Y. Aug. 16, 1996). Finally, it is nonsensical to suggest that Ms. Javice's possession of passwords to applications under JPMC's ownership and control (which JPMC has yet to identify) would place the information within those applications—which JPMC also owns and controls—at risk of destruction. *See* Op. Br. Ex. 5 ("Ms. Javice was neither the administrative nor system owner of the Applications and Systems for which Chase has requested access and as such does not have the credentials sought," but she as complied her continuing duty to preserve); Op. Br. Ex. 6 (offering

Ms. Javice's assistance to help access any passwords, but reiterating that she is "not aware of any way that she can help JPMC access" any Frank or JPMC account).  JPMC's unsubstantiated worry that Ms. Javice might have passwords that might put unspecified evidence at risk is not enough to lift a statutorily mandated stay of discovery.

*Third*, JPMC cannot stake its claims for the preservation of evidence relating to the transfer of Ms. Javice's personal funds by connecting that evidence to other, unrelated conduct alleged in its complaint regarding the deletion of data and customer lists.  Op. Br. at 13–14;  *see In re Sunrise Senior Living, Inc.*, 584 F. Supp. 2d at 17 ("[Plaintiffs] contend that the defendants on a prior occasion violated a document retention policy.  The plaintiffs' argument fails because the concerns they raise do not coincide with the particular documents they are seeking.").  Putting aside that JPMC never identifies what evidence it specifically seeks—which makes it unclear whether the conduct alleged in the complaint relates at all—JPMC's "general concern about the 'risk' that evidence will be lost . . . is not an exceptional circumstance and does not demonstrate that discovery is necessary to preserve evidence."  *Sarantakis*, 2002 WL 1803750, at *3.

*Finally*, nor does JPMC have any present need to burden unidentified third parties with preservation, document, and deposition subpoenas.  In *Mori v. Saito*, the plaintiff requested a lift of the PSLRA stay of discovery so that it could retrieve the evidence it subpoenaed from third-party banks prior to the stay.  802 F. Supp. 2d 520, 523 (S.D.N.Y. 2011).  The court denied plaintiffs' request because "their only showing [that destruction of evidence was ongoing was] with respect to actions of the defendants, not the three banks that are the subject of the subpoenas.  Thus, plaintiffs [did] not me[et] their burden to show that the loss of evidence sought by the subpoenas [was] imminent."  *Id.* at 525.  Here, even the most charitable interpretation of JPMC's argument does not allow for a lift of the discovery stay to issue the third-party subpoenas it

requests.  JPMC cannot even tell the Court on whom it would like to serve the third-party subpoenas, nor does it substantiate why it would be entitled to subpoena these parties.  Op. Br. at 14.

Moreover, JPMC does not explain why the preservation notice it served on Ms. Javice's accountants and advisors is no longer sufficient and it requires production of documents.  *See, e.g.*, *In re Heckmann Corp. Secs. Litig.*, 2011 WL 10636718, at *5 (denying lift of stay to serve preservation subpoenas on third parties and concluding that "preservation letters should furnish sufficient notice" where plaintiffs alleged that the "loss or destruction of evidence [was] possible").  JPMC also fails to show that the loss of evidence held by these third parties is imminent, and in fact does not even describe what evidence these parties hold that it needs urgent discovery of.  *Sarantakis*, 2002 WL 1803750, at *2 ("A party alleging that discovery is 'necessary to preserve evidence must' ... make a specific showing that the 'loss of evidence is imminent as opposed to merely speculative.'").  Nor can JPMC ask this Court to lift the discovery stay so that it can learn what evidence they have—indeed, preventing such discovery is the very purpose of the stay.  *See id.* at *1.

### C.   JPMC's Requests Are Not Reasonably Particularized

To lift the PSLRA's stay, the requested discovery must be "particularized."  15 U.S.C. § 78u-4(b)(3)(B), meaning it is "directed at specific persons," "sufficiently limits the type of documents," and "identif[ies] the '*specific types* of evidence that fall within its scope.'" *In re Heckmann Corp.*, 2011 WL 10636718, at *4 (emphasis in original).  "Particularization requires a clearly defined universe of documents, and a string of requests, even a string of individually particularized requests-is not sufficiently particularized at the outset."  *Id.* (cleaned up).  A party seeking to lift a discovery stay must therefore "specif[y] the target of the requested discovery and the types of information needed."  *Davis v. Duncan Energy P'rs*, 801 F. Supp. 2d 589, 592 (S.D.

Tex. 2011).  "Preservation subpoenas are not particularized if they are overly broad or all-encompassing, or request parties to preserve 'virtually every piece of paper and every piece of information' regarding Defendants."  *In re Heckmann Corp. Secs. Litig.*, 2011 WL 10636718, at *4.

JPMC fails to identify a single document or category of documents for which it seeks discovery.  Instead of using narrow and targeted terms, JPMC asks for a blank check to serve Ms. Javice with whatever interrogatories and requests for production regarding her transfer of her personal funds that it sees fit, serve subpoenas on unidentified third-parties to preserve and produce unspecified evidence, and depose Ms. Javice for multiple hours.  These requests are not reasonably limited by type, author, or time.  They plainly fail to comply with the particularity requirement of the PSLRA and should be rejected.  *See Davis*, 801 F. Supp. 2d at 593-594 (rejecting discovery requests seeking "[a]ll materials" relating to certain aspects of transaction because such requests are "neither limited nor particularized"); *Herrley v. Frozen Food Exp. Indus., Inc.*, 2013 WL 4417699, at *3 (N.D. Tex. Aug. 19, 2013) (requests for "[a]ll documents and communications" relating to transaction at issue were "neither limited nor particularized").

## II.  Even If a Lift of the Discovery Stay were Warranted, JPMC Seeks Improper Discovery

Under Fed. R. Civ. P. 69(a)(2), ("[i]n aid of [a] judgment, the judgment creditor . . . may obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located."  The nature of the discovery JPMC seeks falls squarely within the scope of Rule 69 because the discovery would "aid" collection of a potential judgment against Javice.  *See* Op. Br. at 3 (describing five categories of discovery sought, including interrogatories and requests for production "concerning the [purported] transfer of

17

[Javice's] Merger Proceeds," a four-hour deposition of Javice on the same topic, and issuance of subpoenas to third-parties likely to have relevant information).

But federal courts do not allow Rule 69 discovery **before** judgment.  12 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3014 (Discovery in Aid of Execution (3d ed. 2023 Update) ("Inquiry under Rule 69 permitting the judgment creditor to examine either in accordance with the federal discovery rules or pursuant to state practice is available only after a judgment is rendered[.]"); *see also id.* at n. 4 ("There is no right to discovery of assets prior to recovery of judgment."); *McCarthy v. Johnson*, 2022 WL 3038862, at *3 (D.D.C. Aug. 2, 2022) (describing the scope of discovery under Rule 69(a)(2) as "constrained" in that it "must be calculated to assist in collecting on a judgment.").

Accordingly, the discovery JPMC seeks is procedurally improper because there has been no judgment against Javice.  JPMC is not a "judgment creditor" for purposes of Rule 69(a)(2). *United States v. Chazen*, 2019 WL 113722, at *2 (D.N.J. Jan. 4, 2019) ("[A] judgment creditor is defined as '[a] person having a legal right to enforce execution of a judgment for a specific sum of money.'  It is axiomatic, therefore, that a person [cannot] be a judgment creditor without their being a judgment.").

Contentions that a party opponent has dissipated, or will dissipate, assets that could satisfy a future judgment do not tip the scales.  *Parallel Iron LLC v. NetApp, Inc.* was a patent dispute where the Court awarded defendant NetApp fees-on-fees, following an earlier award of attorney's fees upon finding the plaintiff had litigated without a good faith basis for its claims.  84 F. Supp. 3d 352, 355 (D. Del. 2015).  In its motion, NetApp requested discovery regarding the plaintiff's financial condition, claiming it had reason to believe that (i) the plaintiff received ten million dollars in settlement payments after the initial fee award but before the instant fees-on-fees

decision, and (ii) there was an imminent risk the plaintiff would dissipate those assets before the court issued its final order. *Id.* at 361–62. The Court denied NetApp's request as premature, allowing NetApp to proceed with discovery into those issues *only* after it entered a final judgment. *Id.* at 362; *see also id.* ("ordering discovery before judgment has been entered would render [Rule 69(a)(2)] superfluous.").

*Parallel Iron* is instructive both factually and procedurally. The factual parallels with *Parallel Iron* are crystal clear. Here, JPMC alleges that "Javice's lawyers have recently suggested that Javice made transfers divesting herself of [$21 million in Merger Proceeds] because of anticipated litigation." Op. Br. at 1. *Parallel Iron* is explicit that such allegations are insufficient to warrant Rule 69 discovery. *Parallel Iron* also illustrates the bright-line procedural boundary that this discovery requires *no less than entry of a final judgment*—indeed, the *Parallel Iron* Court had already issued an *opinion* in favor of NetApp, yet refused to allow the discovery until the *final order* was entered. Here, the parties are in the early stages of litigation and no judgment has been entered. "Rule 69(a)(2) therefore does not permit [JPMC] to engage in "post-judgment" discovery." *Mwani v. Al Qaeda*, 2021 WL 5800737, at *12 (D.D.C. Dec. 7, 2021).

<u>**CONCLUSION**</u>

For the foregoing reasons, JPMC's motion should be denied.

19

/s/ Michael A. Barlow
Michael A. Barlow (#3928)
Samuel D. Cordle (#6717)
ABRAMS & BAYLISS LLP
20 Montchanin Drive, Suite 200
Wilmington, Delaware 19807
(302) 778-1000
barlow@abramsbayliss.com
cordle@abramsbayliss.com

OF COUNSEL:

Alex Spiro
Maaren A. Shah
JP Kernisan
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000
alexspiro@quinnemanuel.com
maarenshah@quinnemanuel.com
jpkernisan@quinnemanuel.com

DATED:  April 21, 2023

*Attorneys for Defendant / Counterclaim
Plaintiff Charlie Javice*