# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JPMORGAN CHASE BANK, N.A., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CHARLIE JAVICE, OLIVIER AMAR, | ) |
| CHARLIE JAVICE, in her capacity as Trustee | ) |
| of CHARLIE JAVICE 2021 IRREVOCABLE | ) C.A. No. 22-01621-MN |
| TRUST #1, CHARLIE JAVICE, in her capacity | ) |
| as Trustee of CHARLIE JAVICE 2021 | ) |
| IRREVOCABLE TRUST #2, and CHARLIE | ) |
| JAVICE in her capacity as Trustee of CHARLIE | ) |
| JAVICE 2021 IRREVOCABLE TRUST #3, | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S REPLY BRIEF IN FURTHER SUPPORT OF ITS
MOTION FOR AN ORDER PARTIALLY LIFTING THE
<u>PRIVATE SECURITIES LITIGATION REFORM ACT DISCOVERY STAY</u>**

OF COUNSEL:

William M. Regan
Allison M. Wuertz
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
(212) 918-3000

POTTER ANDERSON & CORROON LLP
Peter J. Walsh, Jr. (#2437)
Michael A. Pittenger (#3212)
Jonathan A. Choa (#5319)
Carla M. Jones (#6046)
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
mpittenger@potteranderson.com
pwalsh@potteranderson.com
jchoa@potteranderson.com
cjones@potteranderson.com

Dated: April 28, 2023

*Attorneys for JPMorgan Chase Bank, N.A.*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT............................................................................................... 1

I.   JAVICE'S ANSWERING BRIEF WILLFULLY IGNORES KEY FACTS AND FAILS TO COMMIT TO PRESERVE ALL RELEVANT EVIDENCE. ................................................................................. 3

    A.   Javice Fails to Explain Why She Has Moved Money Out of Her Name. ................ 3

    B.   Nowhere Has Javice Agreed to Preserve Evidence in Chariot X's Possession, Custody, or Control.................................................................................................. 3

    C.   The Government's Freezing of Javice's Assets Came Weeks After the Failure of Signature Bank and Does Not Moot This Motion. ................................................. 4

II.  JAVICE DOES NOT CONFIRM WHETHER SHE HAS JPMC PASSWORDS OR USED JPMC PASSWORDS TO ACCESS JPMC SYSTEMS. ................................................................................ 5

III. JPMC SEEKS PROPER DISCOVERY OF JAVICE. ....................................................................... 6

IV.  THE PURPOSE OF THE PSLRA IS AN IMPORTANT FACTOR IN LIFTING THE STAY. ................ 8

V.   JPMC'S DISCOVERY REQUESTS ARE SUFFICIENTLY PARTICULARIZED. ............................... 9

CONCLUSION............................................................................................................................ 10

## **TABLE OF AUTHORITIES**

**Cases**

*In re Heckmann Corp. Sec. Litig.*,
    2011 WL 10636718 (D. Del. Feb. 28, 2011) ................................................................. 9, 10

*In re Lernout & Hauspie Sec. Litig.*,
    214 F. Supp. 2d 100 (D. Mass. 2002) ......................................................................... 7-8, 8

*In re Royal Ahold N.V. Sec. & Erisa Litig.*,
    220 F.R.D. 246 (D. Md. 2004) ........................................................................................... 8

*Vacold LLC v. Cerami*,
    2001 WL 167704 (S.D.N.Y. Feb. 16, 2001) ...................................................................... 8

*In re WorldCom, Inc. Sec. Litig.*,
    234 F. Supp. 2d 301 (S.D.N.Y. 2002) ................................................................................ 8

**Rule**

Fed. R. Civ. P. 26(b) ................................................................................................................. 7

## PRELIMINARY STATEMENT

Discovery in this matter is a certainty because Javice answered the Complaint. Javice's actions, as detailed in JPMC's Opening Brief, warrant early limited discovery on two topics: (a) Javice's transfer of Merger Proceeds, including the transfer of Merger Proceeds from her name to the name of a Nevada shell company; and (b) Javice's retention of, and refusal to provide JPMC with, all passwords in her possession that provide access to JPMC-owned applications (or her unambiguous confirmation that she possesses no such passwords). JPMC tried to avoid burdening the Court with this motion, exchanging several letters and meeting and conferring to allow Javice the opportunity to allay JPMC's concerns, but Javice's statements and positions only continued to raise red flags. In particular, Javice declined to explain why she transferred money from her name to the name of Chariot X and refused to commit Chariot X to preserve relevant evidence. Similarly, Javice declined to return JPMC passwords or provide an unequivocal representation that she possessed no such passwords, instead arguing that she did not have undefined "administrative" passwords and asking JPMC which passwords it wanted.

Javice's Answering Brief is no different. The Answering Brief ignores key facts and mischaracterizes JPMC's motion, attempts to justify the propriety of transfers it simultaneously claims are irrelevant, and advances red-herring arguments, all while dodging the core of JPMC's request for limited discovery. Ultimately, Javice's opposition fails for four reasons.

First, Javice ignores the most critical facts that caused JPMC to bring the motion. Javice focuses on her transfer of Merger Proceeds from JPMC to a non-JPMC account, but ignores and wholly fails to explain why she transferred Merger Proceeds from her name to the name of Chariot X or why Chariot X should not preserve relevant evidence. Similarly, Javice seeks to use the Government's freezing of her assets as a reason to deny discovery, but glosses over the

passage of <u>months</u> between the creation of Chariot X and her arrest, and <u>weeks</u> between Javice's questionable transfers and the Government's seizure. Notably, Javice states that the Government seized <u>her</u> assets and blocked <u>her</u> access to <u>her</u> accounts, while saying nothing about Chariot X's assets or accounts in Chariot X's name. Moreover, Javice says she "withdrew funds on the day that she feared a bank collapse" and then placed those funds "into major domestic institutions," Ans. Br. at 6, thereby admitting that she transferred Merger Proceeds from Signature Bank to two or more financial institutions with two or more accounts held in unspecified names.

<u>Second</u>, in a single paragraph, Javice continues to make conflicting and carefully caveated statements regarding her retention of JPMC passwords. Javice claims she has no "administrative passwords," while failing to define that term or confirm whether she nevertheless has retained "non-administrative" passwords. Leaving more questions than answers, Javice's use of this undefined term is exactly the reason JPMC needs early discovery.

<u>Third</u>, Javice argues that the discovery JPMC seeks relates only to judgment collection and therefore is premature under Rule 69. Javice is wrong because the hiding of assets in a third-party shell company goes to merits issues such as scienter, while the password issues are relevant to the merits of JPMC's claims and Javice's answer and counterclaims.

<u>Fourth</u>, Javice wrongly claims that the requested discovery is not sufficiently particularized because JPMC did not identify an exact document it wants produced or a specific question JPMC wants Javice to answer in a deposition. The PSLRA requires only reasonably particularity, and JPMC has provided more than sufficient detail on two narrow topics.

## ARGUMENT

I. **JAVICE'S ANSWERING BRIEF WILLFULLY IGNORES KEY FACTS AND FAILS TO COMMIT TO PRESERVE ALL RELEVANT EVIDENCE.**

   A. **Javice Fails to Explain Why She Has Moved Money Out of Her Name.**

Javice spends a significant portion of the Answering Brief arguing that her transfer of funds from JPMC to another financial institution was routine or necessary. Ans. Br. at 3-6, 13. Those transfers, however, were neither of those things. Javice ignores the critical fact that prompted JPMC's pre-motion correspondence and ultimately this motion: Javice did not merely move funds from JPMC accounts in her name to accounts in her name at another institution. Instead, Javice removed the assets from her name and transferred those assets to Chariot X. The Answering Brief does not explain why she removed the assets from her name, nor why she needed to do so in such a hurry that she gave up thousands of dollars in interest. And nowhere in the Answering Brief does Javice offer any details about what type of entity Chariot X is or its ultimate purpose, including whether any consideration was even exchanged with Chariot X for the transaction. Discovery on these topics is critical.

   B. **Nowhere Has Javice Agreed to Preserve Evidence in Chariot X's Possession, Custody, or Control.**

Javice argues that JPMC fails to demonstrate imminent risk of the destruction of evidence and that JPMC's position is "illogical because at the same time JPMC implies that such evidence is at risk of destruction, it also explains that it possesses knowledge of the timing and destination of the transfers it is concerned about." Ans. Br. at 13. Both arguments miss the mark.

JPMC explained in its Opening Brief that Javice's haste in moving assets to Chariot X and the intervening events surrounding the FDIC's seizure of Signature Bank warranted immediate discovery. Indeed, Javice's Answering Brief confirms the validity of JPMC's concerns: Javice admits that she (or Chariot X, at her direction) "withdrew funds on the day that

3

she feared a bank collapse; the funds were then deposited into major domestic institutions . . . ." Ans. Br. at 6. In other words, Javice (or Chariot X, at her direction) effected additional transfers of the Merger Proceeds after the initial transfers to Signature Bank; those Merger Proceeds now sit not in a single bank, but in at least two different financial institutions in an unspecified number of accounts; and it is unknown whether those accounts are in the name of Javice, Chariot X, or yet another shell corporation.

These subsequent transfers also render meritless Javice's protestations that JPMC "possesses knowledge of the timing and destination of the transfers it is concerned about." *Id.* at 13. JPMC's basis for bringing this motion was not that it needed additional discovery regarding the transfer of funds from JPMC to Signature Bank. Instead, this motion seeks to (1) ensure relevant information concerning those transfers is properly preserved; and (2) preserve similar information about subsequent transfers (like the ones to the unknown financial institutions discussed above). Javice's suggestion that JPMC's knowledge about the initial transfers to Chariot X and Signature Bank negates the need for any discovery misses the point.

Critically, and at the heart of the motion, it remains uncertain whether Chariot X or the other Chariot entities are preserving evidence related to these transfer because Javice has <u>never confirmed that Chariot X or the other Chariot entities are preserving documents in their possession, custody, or control</u>. Javice's refusal to do so raises red flags that should be resolved now with the use of limited discovery.

    **C.**     **The Government's Freezing of Javice's Assets Came Weeks After the Failure of Signature Bank and Does Not Moot This Motion.**

Javice argues that JPMC's motion is moot because "the United States seized Ms. Javice's assets and has blocked her from access to her accounts." Ans. Br. at 6. Javice is wrong. She now admits that she moved assets away from Signature Bank "on the day that she feared a bank

4

collapse." *Id.* Signature Bank was shut down on March 12, meaning that Javice made the transfers <u>nearly a month</u> before she was arrested on April 3 and her assets were seized on or about April 7. *See id.* That her accounts are now frozen does not obviate the need for the preservation of information about the transfers from Signature Bank, any subsequent transfer Javice may have made, and Chariot X's role in continuing to move or hold Merger Proceeds. Moreover, Javice does not state whether Chariot X's assets or accounts are frozen, only that "the United States seized <u>Ms. Javice's assets</u> and has blocked her from access to <u>her accounts</u>." *Id.*

## II. JAVICE DOES NOT CONFIRM WHETHER SHE HAS JPMC PASSWORDS OR USED JPMC PASSWORDS TO ACCESS JPMC SYSTEMS.

In her Answering Brief, Javice dedicates just one paragraph to the issue of her refusal to confirm whether she has JPMC property in the form of passwords in her possession and, if she does, her obligation to return those passwords to JPMC. *Id.* at 14-15. That paragraph, however, is filled with conflicting statements and carefully crafted semantics that demonstrate why discovery is needed.

First, Javice paradoxically states that "she does not, to her knowledge, possess any administrative passwords," but then notes that Javice "offered to cooperate to resolve any dispute or discrepancy on this issue, requesting that JPMC identify <u>how she could turn over passwords</u>." *Id.* at 14 (emphasis added). Despite pre-motion correspondence, a pre-motion meet and confer, and her Answering Brief filed with the Court, it remains entirely unclear whether Javice possesses JPMC property in the form of passwords. As such, discovery into this topic is entirely appropriate.

Second, Javice repeated in the Answering Brief, as she did in pre-motion correspondence, that she does not have any "administrative passwords." *Id.* Javice has at no point explained what an "administrative password" is. More importantly, however, Javice's statement is

5

irrelevant: all passwords, "administrative" or otherwise, are JPMC property. Javice has an obligation to return <u>any password whatsoever</u> in her possession because those passwords are JPMC property that must be returned under the terms of Javice's termination.

Third, the fact that Javice has refused to confirm that she possesses JPMC passwords and/or return them to JPMC is not only an employment issue, it is a preservation issue. For the first time in her Answering Brief, Javice takes the position that she does not have "any means of accessing JPMC property." Contrary to the assertion in the Answering Brief, Javice previously stated through counsel only that she had not deleted or altered JPMC property. *See* Op. Br. Ex. 5 at 2. But Javice has yet to represent that she has not used passwords to access JPMC property at any time during her administrative leave or following her termination, and JPMC may only gain this information through its requested discovery.

Finally, contrary to the Answering Brief, there is nothing "nonsensical" about the suggestion that "Ms. Javice's possession of passwords to applications under JPMC's ownership and control . . . would place the information within those applications . . . at risk of destruction." Ans. Br. at 14. Javice's accessing of JPMC applications would have a number of consequences for the information in those applications, ranging from the loss of data through intentional deletion to the inadvertent modification of metadata that could add, delete, or change important information.

If Javice has JPMC passwords, they must be turned over to JPMC, and given Javice's refusal to confirm her possession of such passwords, discovery is necessary.

**III.    JPMC SEEKS PROPER DISCOVERY OF JAVICE.**

In its Opening Brief, JPMC laid out specific, tailored topics that warranted a lifting of the PSLRA discovery stay. Op. Br. at 11-13. In opposition, Javice argues that JPMC is seeking improper judgment collection discovery under Federal Rule of Civil Procedure 69. Ans. Br. at

6

17-19.[1] But JPMC's request for discovery surrounding Javice's transfer of her Merger Proceeds is proper and is not sought to aid in JPMC's execution of a future judgment against Javice. To the contrary, such information is essential to JPMC's prosecution of its claims and its defense against Javice counterclaims. *See* Fed. R. Civ. P. 26(b). For example, evidence regarding Javice's transfer of Merger Proceeds to an entity that was not party to the Frank acquisition is relevant to Javice's scienter as well as the broader scheme to defraud that Javice orchestrated, both for the purposes of JPMC's Section 10(b) claim and as evidence of general intent for JPMC's common-law fraud causes of action.

With respect to JPMC's defenses to the counterclaims, JPMC will argue, among other things, that Javice was properly terminated for "Cause," as defined in her employment agreement. Javice's actions between the time she was placed on administrative leave on September 13, 2022, and terminated for cause on November 4, 2022 are relevant. *See* Op. Br. Exs. 3-4. It was precisely during that time that Javice created Chariot X, liquidated her CD, and transferred funds to Chariot X and Signature Bank – despite JPMC's request on September 13 that Javice take no action with respect to the Merger Proceeds. *See* Op. Br. Ex. 3. Similarly, Javice alleges that she "did not engage in any activity that warrants or warranted the cancellation, recapture and recovery of her incentive compensation payments," and JPMC is entitled to understand Javice's actions with regard to the Merger Proceeds in order to defend itself against that allegation.

---

[1] At no point does Javice argue that discovery into her retention of JPMC passwords is improper under Rule 69, and thereby concedes that such discovery is proper if this Court grants JPMC's motion to lift the PSLRA discovery stay.

**IV.     THE PURPOSE OF THE PSLRA IS AN IMPORTANT FACTOR IN LIFTING THE STAY.**

Contrary to Javice's contention, whether the Reform Act's underlying purposes are implicated is a significant factor in determining whether to lift the stay. *See In re Lernout & Hauspie Sec. Litig.*, 214 F. Supp. 2d 100, 106 (D. Mass. 2002) (permitting "limited discovery to proceed against the four senior officers" because it was "consistent with the intent of the stay" and "[n]either of the perceived abuses addressed by Congress is present" (quoting *In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301, 305 (S.D.N.Y. 2002))); *see also In re Royal Ahold N.V. Sec. & Erisa Litig.*, 220 F.R.D. 246 (D. Md. 2004) (noting that the complaint "appears to have substantial support based on the defendants' own statements" and thus "implicates [n]either rationale underlying the PSLRA's discovery stay provision." (internal quotation marks omitted); *In re WorldCom*, 234 F. Supp. 2d at 305 (noting that plaintiffs were not "engaged in a fishing expedition or an abusive strike suit" and thus not acting contrary to the "fundamental rationales underlying the PSLRA discovery stay").

As set forth in JPMC's Opening Brief, JPMC's suit against Javice is not a frivolous strike suit nor is the request to lift the stay an attempt to gain discovery to strengthen a weak complaint. Op. Br. at 16-17. Javice already has answered the Complaint, making no effort to dismiss it on any basis, and discovery will proceed. The purpose of this motion is to ensure that nothing is irretrievably lost before discovery can even begin.[2]

---

[2]     Javice's attempts to distinguish JPMC's cases on this point fail. For example, Javice mischaracterizes *In re Lernout*, stating "the Court lifted the PSLRA discovery stay for undue prejudice," Ans. Br. at 11, when in fact the court found that the purpose of the PSLRA stay was not implicated. *In re Lernout* 214 F. Supp. 2d at 106 (noting in the alternative that the plaintiffs would have met the undue prejudice burden). Similarly, Javice's distinguishing of *Vacold* is ineffective because the court there permitted a lifting of the discovery stay expressly because "the failure to allow discovery on the limited issue" requested "may unfairly insulate defendants from liability." 2001 WL 167704 at *7 (S.D.N.Y. Feb. 16, 2001). Similarly here, JPMC seeks

8

V.  **JPMC'S DISCOVERY REQUESTS ARE SUFFICIENTLY PARTICULARIZED.**

Javice's last argument is that JPMC's requests are not "reasonably particularized." Ans. Br. at 16.  As Javice admits, the PSLRA requires only that a party's requests must be "'directed at specific persons,'" and should both "'sufficiently limit[] the type of documents' and "identif[y] the 'specific types of evidence that fall within its scope.'" *Id.* (quoting *In re Heckmann Corp. Sec. Litig.*, 2011 WL 10636718, at *4 (D. Del. Feb. 28, 2011)).  JPMC's requested discovery meets this standard.  Specifically:

- The target of the discovery is clear:  Javice.
- JPMC has limited its requested discovery to narrow categories:  the transfer of Merger Proceeds and JPMC property that Javice continues to possess and/or access.
- JPMC has identified specific types of evidence, namely documents and information related to the transfers to Chariot X and Javice's access to JPMC passwords.

Against these facts, Javice's counterarguments fall flat.  For example, Javice complains that JPMC has not used "narrow and targeted terms," Ans. Br. at 17, but JPMC specifically requests discovery about the defined term "Merger Proceeds," Op. Br. at 17-18, not a broader universe, such as "all of Javice's assets."  Likewise, JPMC seeks information about JPMC's property, in the context of Javice's obligations under her termination, *id.*, not for "all of Javice's passwords to digital accounts."

Similarly, Javice's accusation that JPMC "asks for a blank check to serve Ms. Javice with whatever interrogatories and requests for production regarding her transfer of her personal

---

targeted discovery concerning potential spoliation of evidence and questionable transfers of Merger Proceeds, actions likewise designed to "insulate defendant[] from liability." *Id.*  Finally, Javice tries to distance the facts in this case from those in *Royal Ahold*, but Javice's actions are analogous; for example, creating Chariot X and transferring funds out of her name is similar to Royal Ahold's moving of assets by divesting subsidiaries. And, while Javice has not admitted fraud, both the Department of Justice and the SEC have filed complaints against her for fraudulent activity.

funds," Ans. Br. at 17, is without merit. JPMC asks for information concerning the transfer of Merger Proceeds, not every "transfer of her personal funds." And at no point does JPMC ask for "all documents," which renders the case law cited by Javice inapposite. *See id.* (citing cases). JPMC's requests satisfy the reasonable particularity requirement.

JPMC also requests (1) the issuance of preservation subpoenas; and (2) a third-party subpoena for documents and testimony from Javice's accountants or advisors who assisted her in filing her 2021 tax returns and creating Chariot X. Op. Br. at 17-18. Javice argues that this requested discovery also is overbroad and insufficiently particularized. Ans. Br. at 17. Javice is wrong again. The requested preservation subpoenas are only to third parties likely to have relevant information (*i.e.*, the transfer of Merger Proceeds and Javice's continued possession of JPMC property). JPMC is not (as Javice suggests) seeking to force a third party to "preserve 'virtually every piece of paper and every piece of information.'" *See id.* (quoting *In re Heckmann*, 2011 WL 10636718, at *4). The targets of the preservation subpoenas are not identified by name only because that is information Javice solely possesses; if Javice provides a full and complete list of such third parties, JPMC will promptly amend its request to seek preservation subpoenas to those parties.

Lastly, Javice asserts that the preservation notice JPMC served on Javice's accountants is sufficient. *Id.* at 16. Neither Javice nor her accountants, however, have responded to confirm that they will preserve documents in compliance with JPMC's request. In addition, Javice has never confirmed that Chariot X itself will preserve relevant evidence.

## CONCLUSION

For the foregoing reasons, this Court should grant JPMC's motion to partially lift the Reform Act discovery stay and order the discovery set forth in JPMC's opening brief.

| | |
|---|---|
| OF COUNSEL:<br><br>William M. Regan<br>Allison M. Wuertz<br>HOGAN LOVELLS US LLP<br>390 Madison Avenue<br>New York, NY 10017<br>(212) 918-3000<br><br><br><br>Dated:  April 28, 2023<br>10782313 | POTTER ANDERSON & CORROON LLP<br><br>By: */s/ Jonathan A. Choa*<br>  Peter J. Walsh, Jr. (#2437)<br>  Michael A. Pittenger (#3212)<br>  Jonathan A. Choa (#5319)<br>  Carla M. Jones (#6046)<br>  Hercules Plaza<br>  P.O. Box 951<br>  Wilmington, DE  19899<br>  (302) 984-6000<br>  mpittenger@potteranderson.com<br>  pwalsh@potteranderson.com<br>  jchoa@potteranderson.com<br>  cjones@potteranderson.com<br><br>*Attorneys for JPMorgan Chase Bank, N.A.* |