# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JPMORGAN CHASE BANK, N.A., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CHARLIE JAVICE, OLIVIER AMAR, CHARLIE JAVICE, in her capacity as Trustee of CHARLIE JAVICE 2021 IRREVOCABLE TRUST #1, CHARLIE JAVICE, in her capacity as Trustee of CHARLIE JAVICE 2021 IRREVOCABLE TRUST #2, and CHARLIE JAVICE in her capacity as Trustee of CHARLIE JAVICE 2021 IRREVOCABLE TRUST #3, | ) ) ) ) ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |

C.A. No. 22-01621-MN

## JPMORGAN CHASE BANK, N.A.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS CHARLIE JAVICE'S COUNTERCLAIMS

OF COUNSEL:

Tibor L. Nagy, Jr.
Tracy O. Appleton
Jason A. Kolbe
DONTZIN NAGY & FLEISSIG LLP
980 Madison Avenue
New York, NY 10075
(212) 717-2900

William M. Regan
Allison M. Wuertz
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
(212) 918-3000

Dated: April, 28, 2023

POTTER ANDERSON & CORROON LLP
Peter J. Walsh, Jr. (#2437)
Michael A. Pittenger (#3212)
Jonathan A. Choa (#5319)
Carla M. Jones (#6046)
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
mpittenger@potteranderson.com
pwalsh@potteranderson.com
jchoa@potteranderson.com
cjones@potteranderson.com

*Attorneys for JPMorgan Chase Bank, N.A.*

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ................................................................................................ 1

I.  THIRD CIRCUIT PRECEDENT AND DELAWARE CONTRACT LAW COMPEL DISMISSAL OF THE PAYMENT DIRECTION AGREEMENT CLAIMS IN FAVOR OF ARBITRATION .................... 3

    A.  *Brayman* Compels Enforcement Of The Arbitration Agreement, Which Directly Governs The PDA Claims .......................................................................... 3

    B.  Because A "Necessary Element" Of The PDA Claims Is An Issue Javice Admits She Agreed To Arbitrate, *Brayman* And *NBR* Prevent Javice From Using The Forum Clause To Circumvent The Arbitration Agreement .................. 5

    C.  Javice's Construction Of The Forum Clause Also Is Contrary To Delaware Law ................................................................................................................................ 7

    D.  Javice Concedes That Her Four Other Counterclaims Should Be Arbitrated— And Therefore The "For Cause" Issue Necessarily Will Be Resolved By The Arbitrator ........................................................................................................................ 8

II.  THIS COURT CAN AND SHOULD DISMISS THE COUNTERCLAIMS NOTWITHSTANDING THE FACT THAT THE ARBITRATION WILL PROCEED OUTSIDE DELAWARE—AS IT HAS DONE IN MULTIPLE OTHER CASES ............................................................................... 9

    A.  The Federal Arbitration Act Does Not Bar Dismissal Of Claims Subject To Arbitration—And This Court Repeatedly Has Dismissed Such Claims Before..... 9

    B.  Alternatively, The Court Should Stay Javice's PDA Claims Pending The Arbitrator's Resolution Of The "For Cause" Issue .............................................. 10

**CONCLUSION** ............................................................................................................................ 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bayless v. Davox Corp.*,
  2000 WL 268310 (Del. Ch. Mar. 1, 2000) ................................................................................8

*BAYPO Ltd. P'ship v. Tech. JV, LP*,
  940 A.2d 20 (Del. Ch. 2007) ...................................................................................................7

*Brayman Const. Corp. v. Home Ins. Co.*,
  319 F.3d 622 (3d Cir. 2003) ............................................................................................ passim

*CA, Inc. v. Ingres Corp.*,
  2009 WL 4575009 (Del. Ch. Dec. 7, 2009), *aff'd*, 8 A.3d 1143 (Del. 2010) .......................7, 8

*Dizon v. J.P. Morgan Chase*,
  No. CV 22-716 (MN), 2023 WL 2456063 (D. Del. Mar. 10, 2023) ......................................10

*Feinberg v. Ass'n of Trial Laws. Assur.*,
  No. CIV.A. 01-6966, 2002 WL 31478866 (E.D. Pa. Nov. 4, 2002) ......................................10

*Henry on behalf of BSC Ventures Holdings, Inc. Emp. Stock Ownership Plan v.
  Wilmington Tr., N.A.*,
  No. CV 19-1925 (MN), 2021 WL 4133622 (D. Del. Sept. 10, 2021) ....................................10

*Majkowski v. Am. Imaging Mgmt. Servs., LLC*,
  913 A.2d 572 (Del. Ch. 2006) (*see* Opp. ) ...............................................................................7

*In re NBR Antitrust Litig.*,
  207 F. App'x 166 (3d Cir. 2006) ...............................................................................2, 4, 5, 6

*In re NBR ANTITRUST LITIGATION, et al.*,
  2006 WL 5103672 (C.A.3) (Appellate Brief) ..........................................................................4

*New Jersey Physicians United Reciprocal Exch. v. Ace Underwriting Agencies
  Ltd.*,
  2013 WL 1558716 (D.N.J. Apr. 11, 2013) ..............................................................................6

*Parfi Holding AB v. Mirror Image Internet, Inc.*,
  817 A.2d 149 (Del. 2002) .....................................................................................................6, 7

*SEC v. Javice*,
  No. 23 Civ. 2795 (S.D.N.Y. Apr. 4, 2023) ..............................................................................3

*Shaw v. New Castle Cnty.*,
  2021 WL 4125648 (D. Del. Sept. 9, 2021) ..............................................................................8

*United States v. Javice*,
 23 Mag. 2638 (S.D.N.Y. Mar. 31, 2023) ................................................................................3

**Statutes**

9 U.S.C. § 2 ....................................................................................................................................8

Federal Arbitration Act ........................................................................................................3, 6, 9

**PRELIMINARY STATEMENT**

Javice's opposition (the "Opposition" or "Opp.") concedes that most of her Counterclaims (Counts I, II, IV and VI) are subject to the parties' Binding Arbitration Agreement ("Arbitration Agreement") in Javice's Employment Agreement.[1]  Opp. at 1–19.  While Javice contends that her remaining Payment Direction Agreement ("PDA") Counterclaims (Counts III and V, hereafter the "PDA Claims") must remain before the Court, her arguments fail to overcome binding Third Circuit precedent.  Under *Brayman Const. Corp. v. Home Ins. Co.*, 319 F.3d 622 (3d Cir. 2003), the PDA Claims must be dismissed in favor of arbitration both because they fit within the broad terms of the Arbitration Agreement and because, in any case, they "relate sufficiently" to issues that Javice admits the parties agreed to arbitrate.  *Brayman*, 319 F.3d at 625–26.  The Opposition, which relegates *Brayman* to a five-line footnote, does not and cannot refute this conclusion.

Following the *Brayman* line of cases, the PDA Claims must be arbitrated for two principal reasons.  First, they fit squarely within the Arbitration Agreement.  The Arbitration Agreement covers (a) "all legally-protected employment-related claims … which arise out of or relate to [Javice's] employment or separation from employment," and (b) claims for "failure to pay … bonuses or other compensation," or for "breach of an express or implied contract."  Arbitration Agreement § 2.  The PDA Claims "arise out of" Javice's "separation from employment" because they expressly assert that JPMC "terminated Ms. Javice's employment without valid Cause" (¶ 123), and "manufacture[d] a bad-faith, sham, pretextual termination for Cause" (¶ 141).  The PDA Claims also allege that JPMC breached a "contract" by failing to pay "compensation," because they assert that JPMC failed to pay the Retained Amount and thereby "breach[ed]" the PDA.  ¶

---

[1] Unless otherwise noted, all capitalized terms and abbreviations are defined as in JPMC's opening brief; all internal citations and quotation marks have been omitted; and all emphasis in quotations has been added.  Citations to "¶" refer to paragraphs of the Counterclaims.

127. Javice therefore cannot provide "positive assurance" that the broad terms of the Arbitration Agreement are "*not susceptible of an interpretation* that covers" the PDA Claims. *Brayman*, 319 F.3d at 625. Consequently, the Court cannot retain the PDA Claims in this action. *See id.*

Second, the PDA Claims are premised on and directly relate to an arbitrable dispute, which accordingly must be arbitrated under Third Circuit case law. Javice now concedes that the Arbitration Agreement governs her Employment Agreement Counterclaims, which allege that she "was not validly terminated for Cause." ¶ 115. The PDA Claims make the exact same allegation: that JPMC lacked "valid Cause" to terminate Javice's employment (¶ 123), and that Javice was terminated "without 'Cause,'" as defined in her Employment Agreement (*see* ¶ 121). Thus, the only question is whether an *issue* that the parties agreed to arbitrate—namely, whether Javice was terminated "for Cause"—is subject to arbitration when it is raised as part of a *claim* for breach of a contract that does not itself contain an arbitration clause—here, the PDA. Under Third Circuit precedent, the answer is yes: because there is an "impossibility of reaching the merits of [the PDA Claims] without resolving *arbitrable questions*,"—*i.e.*, the "for Cause" question—and that same "arbitrable question" is dispositive of Javice's PDA Claims, that question must be arbitrated. *In re NBR Antitrust Litig.*, 207 F. App'x 166, 168 (3d Cir. 2006) (citing *Brayman*).

This outcome does not, as Javice contends, "eviscerate" the forum clause set forth in the Merger Agreement (the "Forum Clause"). Opp. at 12. If the arbitrator finds JPMC terminated Javice "for Cause," then Javice has no claim under the PDA. If the arbitrator finds JPMC lacked "Cause" for her termination (and JPMC fails to pay the Retained Amount), then Javice could pursue the PDA Claims and the Forum Clause would apply, as the arbitrable questions within the PDA Claims will have been resolved. In contrast, Javice's position would nonsensically require simultaneous, duplicative litigation of the same "for Cause" issue in arbitration and in this Court.

Javice's PDA Claims, like her other Counterclaims, should be dismissed or stayed in favor of arbitration.[2]

## I. THIRD CIRCUIT PRECEDENT AND DELAWARE CONTRACT LAW COMPEL DISMISSAL OF THE PAYMENT DIRECTION AGREEMENT CLAIMS IN FAVOR OF ARBITRATION

Javice argues that the PDA Claims must remain in this Court because the PDA incorporates the Forum Clause. Javice's arguments fail because (i) she cannot use the Forum Clause to avoid the Arbitration Agreement, which must be enforced under the Federal Arbitration Act ("FAA") and controlling precedent; (ii) Javice admits she agreed to arbitrate the issue of whether JPMC terminated her for "Cause," on which Javice expressly premises her PDA Claims; and (iii) Javice construes the Forum Clause to conflict with the Arbitration Agreement, contrary to Delaware law.

### A. *Brayman* Compels Enforcement Of The Arbitration Agreement, Which Directly Governs The PDA Claims

The Third Circuit applies a "strong federal policy favoring arbitration," which requires resolving "*any* doubts concerning the scope of arbitrable issues . . . in favor of arbitration." *Brayman*, 319 F.3d at 623, 625. Here, the Arbitration Agreement covers the PDA Claims because it governs "*all* . . . claims … which arise out of or relate to [Javice's] . . . separation from employment," including claims for "bonuses or other compensation,"[3] like the Retained Amount of the PDA, and "breach of an express or implied contract," like the PDA. Arbitration Agreement

---

[2] In her preliminary statement, Javice claims that JPMC is "malign[ing]" her and "retaliat[ing] against her." Opp. at 1. JPMC will not respond to Javice's false claims here, other than to note that, since JPMC filed its opening brief, the United States Attorney for the Southern District of New York filed a criminal complaint against Javice for wire fraud and securities fraud, among other charges, and the SEC filed suit against Javice for securities fraud. *See United States v. Javice*, 23 Mag. 2638 (S.D.N.Y. Mar. 31, 2023); *SEC v. Javice*, No. 23 Civ. 2795 (S.D.N.Y. Apr. 4, 2023).

[3] Contrary to the Opposition, these broad terms encompass the payment of merger proceeds. This is especially true given that the PDA itself conditions payment on Javice's compliance with the terms of her Employment Agreement, providing that Javice only is eligible for the Retained Amount if she is terminated "without 'Cause.'" PDA ¶ D; ¶ 121.

3

§ 2; *see* Op. Br. at 12–13.  Considering these terms and Javice's allegations, Javice cannot supply "positive assurance that the [Arbitration Agreement] is *not* susceptible of an interpretation that covers" the PDA Claims, as she must, to defeat JPMC's motion under *Brayman*.  319 F.3d at 625.

In fact, Javice does not even try to meet this standard.  Instead, Javice attempts to sidestep the Arbitration Agreement by mischaracterizing her own PDA Claims.  The Opposition contends that "Counts III and V of Ms. Javice's counterclaims do not seek any relief arising out of or relating to Ms. Javice's employment."  Opp. at 15; *see id.* at 16.  But Javice's own pleading refutes this false assertion because it affirmatively alleges, as a core element of the PDA Claims, that JPMC terminated Javice without "Cause" as "defined in" the Employment Agreement:

> 121. Under the Payment Direction Agreement, a portion of Ms. Javice's merger consideration, known as the "Retained Amount," is either to be paid within fifteen days of the second anniversary of the closing of the merger, or is to be paid within fifteen days following termination of employment "[i]f your employment with Parent or an affiliate of Parent terminates after the Effective Time but at any time prior to when the Retained Amount is earned and paid in accordance with Section B (i) by Parent or an affiliate of Parent *without 'Cause'* . . . or (ii) by you for 'Good Reason' (*as defined in the Employment Agreement*)." . . . .
>
> 123. *JPMC terminated Ms. Javice's employment without valid Cause* on November 4, 2022 . . . .

¶¶ 121, 123 (Count III); *see also* ¶¶ 141–42 (Count V).  There is thus no "doubt" that the PDA Claims fall within the employment-related disputes that Javice agreed to arbitrate in the Arbitration Agreement.  *Brayman*, 319 F.3d at 625.  This alone compels dismissal of the PDA Claims.[4]

---

[4] Javice also argues that the PDA does not specifically "incorporate" the Arbitration Agreement, apparently because it does not expressly quote the Arbitration Agreement portion of the Employment Agreement, only the defined term "Cause."  Opp. at 12.  But in *NBR*, the Third Circuit rejected the very same argument that Javice makes here: the appellee argued that the contract giving rise to the claim before the court "does not mention or incorporate by reference the arbitration provisions" of related agreements.  *NBR*, Brief for Appellee, 2006 WL 5103672 (C.A.3), at *20.  This was irrelevant because, as the Third Circuit explained, the claims were "*premised on* the breach of an agreement containing an arbitration clause."  *NBR*, 207 F. App'x at 171.  The same is true here, and the PDA Claims must be arbitrated for the same reason.

4

> **B.     Because A "Necessary Element" Of The PDA Claims Is An Issue Javice Admits She Agreed To Arbitrate, *Brayman* And *NBR* Prevent Javice From Using The Forum Clause To Circumvent The Arbitration Agreement**

Javice accuses JPMC of "challeng[ing] the enforceability" of the Forum Clause by seeking dismissal of the PDA Claims. Opp. at 11. Not so: JPMC agrees the Forum Clause is enforceable for claims unrelated to Javice's employment. *See* Op. Br. at 15–17. But in this case, the Arbitration Agreement governs the PDA Claims because they incorporate an indisputably arbitrable question: whether Javice was terminated for "Cause." And binding Third Circuit precedent prevents Javice from using the Forum Clause to escape the Arbitration Agreement.

Specifically, *Brayman* held that threshold issues that the parties agreed to arbitrate must be arbitrated, even when they are pled as part of a claim for breach of a contract that does not itself contain an arbitration clause. *See Brayman*, 319 F.3d at 626 (holding that claims before the court which "relate sufficiently" to arbitrable issues must be arbitrated). Here, because the PDA conditions payment of the Retained Amount on termination "without 'Cause' . . . as defined in the Employment Agreement," Javice's PDA Claims necessarily hinge on the threshold issue of whether JPMC had valid "Cause" to terminate her employment. ¶ 121. Javice could not and does not dispute that she agreed to arbitrate the "for Cause" issue. *See* Opp. at 15. In fact, Javice concedes that her four other Counterclaims—including her claim for a declaratory judgment that she was terminated "without Cause" (¶ 110.d)—are subject to arbitration (*see* Opp. at 15). Consequently, because the "for Cause" issue forms a "necessary element" of the PDA Claims, and Javice now concedes that "element" is subject to arbitration, the PDA Claims likewise should be arbitrated. *NBR*, 207 F. App'x at 168 (citing *Brayman*).

Javice ignores *NBR*. She also addresses *Brayman* only in a footnote, asserting that, "[i]n contrast to *Brayman*, the PDA contains language that is incompatible with" resolving the PDA Claims in arbitration. Opp. at 11 n.4. This attempt to distinguish *Brayman* fails, because *Brayman*

applies with equal force to claims arising under agreements with forum clauses providing for litigation in court where those claims "intertwine[] with" arbitrable issues. *See, e.g., New Jersey Physicians United Reciprocal Exch. v. Ace Underwriting Agencies Ltd.*, 2013 WL 1558716 at *4 (D.N.J. Apr. 11, 2013) (finding that even if a claim was "subject to litigation pursuant to" a forum clause calling for litigation in court, the claim was "inextricably intertwined with" a dispute that was "plainly subject to arbitration") (citing *Brayman*).

As illustrated by *New Jersey Physicians*, the Forum Clause here is not "incompatible" with arbitration. Opp. at 11 n.4. To the contrary, the Forum Clause and Arbitration Agreement are readily compatible: the threshold *issue* of whether Javice was terminated "for Cause" as defined in the Employment Agreement should be resolved in arbitration, while the PDA *claims*—if any—that remain after the arbitrator resolves that threshold issue can be litigated in a Delaware court, as there would be no arbitrable issues left to decide. The Opposition does not mention, much less address, the possibility of having the arbitrator decide employment-related threshold issues and a Delaware court resolving any remaining non-arbitrable PDA-related claims. Instead, Javice mischaracterizes her own PDA Claims as "not depend[ing] on or aris[ing] out of Ms. Javice's employment at JPMC." *Id.* at 16. As demonstrated above, this is false: Javice's PDA Claims hinge on whether JPMC properly terminated her for "Cause." *See* ¶¶ 121, 123. And that creates an "impossibility of reaching the merits of [the PDA Claims] without resolving *arbitrable questions*." *NBR*, 207 F. App'x at 168. Under *Brayman* and *NBR*, the PDA Claims therefore must be arbitrated—or, at the very least, stayed while the "question" of whether JPMC had valid "Cause" to terminate Javice is arbitrated.[5]

---

[5] The state court decisions cited by Javice do not apply the FAA or Third Circuit precedent, and in any case do not support her argument. In *Parfi Holding AB v. Mirror Image Internet, Inc.*, 817 A.2d 149, 157 (Del. 2002) (*see* Opp. at 16), the claims at issue did not incorporate a plainly-

6

### C. Javice's Construction Of The Forum Clause Also Is Contrary To Delaware Law

Javice's reliance on the Forum Clause also fails because she construes it to conflict with the Arbitration Agreement. Under Delaware law, "multiple agreements must be viewed together and in their entirety," and courts should "harmonize their terms and reconcile any differences." *See CA, Inc. v. Ingres Corp.*, 2009 WL 4575009, at *47 n. 297 (Del. Ch. Dec. 7, 2009), *aff'd*, 8 A.3d 1143 (Del. 2010). Disregarding this principle, Javice suggests that the Court can ignore the Arbitration Agreement because, "*unlike the Employment Agreement*, the PDA was executed concurrently with the Merger Agreement." Opp. at 10. To the contrary, the PDA, the Merger Agreement, and the Employment Agreement with its Arbitration Agreement all were executed concurrently.[6] But more importantly, the rule requiring courts to "harmonize" multiple agreements is not limited to "concurrent" agreements. *CA, Inc.*, 2009 WL 4575009, at *47.

Here, JPMC's construction avoids any conflict between the PDA's Forum Clause and the Employment Agreement's Arbitration Agreement: employment-related issues, including disputes

---

arbitrable dispute, unlike the PDA Claims here, which hinge on whether Javice was terminated for "Cause." Instead, the claims in *Parfi* simply arose from "some or all of the same facts" at issue in a parallel arbitration. *Parfi*, 817 A.2d at 157. *Majkowski v. Am. Imaging Mgmt. Servs., LLC*, 913 A.2d 572, 584 (Del. Ch. 2006) (*see* Opp. at 17) involved a claim for advancement pursuant to an LLC agreement that did "not depend upon a [separate] contract" with an arbitration clause (913 A.2d at 584)—unlike the PDA Claims, which "depend upon" the assertion that JPMC lacked "valid Cause" (¶ 123) under the Employment Agreement to terminate Javice (*see* Op. Br. 13–15).

[6] The Employment Agreement was executed on August 4, 2021 (*see* Employment Agreement at 3), and the Merger Agreement and PDA were each executed on August 8, 2021 (*see* PDA at 1, referencing original agreement; MA at 1). The Employment Agreement became effective on the "closing of the Merger" required by the Merger Agreement. Employment Agreement at 1; *see* MA § 2.2–2.3. The PDA references the Employment Agreement, including its "for Cause" termination provision (PDA ¶ D), and the Merger Agreement contemplates the Employment Agreement by referencing "Continuing Employees" from Frank who stay on to work for JPMC (MA § 6.3(a)). Thus, the three agreements were drafted and signed concurrently as part of the Frank merger. *See BAYPO Ltd. P'ship v. Tech. JV, LP*, 940 A.2d 20, 27 & n.33 (Del. Ch. 2007) (construing multiple agreements as part of the same bargain where one contract was signed weeks before others but had the same closing date).

related to termination for "Cause" that the parties agreed to arbitrate, are sent to arbitration; while claims under the PDA that do not turn on employment-related issues are litigated in Delaware courts. Op. Br. at 15–17; *see Bayless v. Davox Corp.*, 2000 WL 268310, at *5 (Del. Ch. Mar. 1, 2000) (adopting a "reading of the two agreements that best harmonizes them" by narrowly construing a forum clause and broadly construing an arbitration provision).

In contrast, under Javice's construction, employment-related issues in a PDA claim—including the central issue of whether Javice was terminated "for Cause" as defined in the Employment Agreement—must be litigated in court. Javice's interpretation thus creates an irreconcilable conflict between the PDA and the Arbitration Agreement within the Employment Agreement—indeed, it eviscerates the Arbitration Agreement by forcing the parties to litigate the core "for Cause" dispute that they agreed to arbitrate. *See supra* I.A; *see* Op. Br. at 12–13. Because of the Delaware principle of "harmoniz[ing]" related agreements, it is not surprising that Javice fails to cite any authority that supports her construction. *CA, Inc.*, 2009 WL 4575009, at *47.

But ultimately, if the Court harbors any "doubts" about how to construe the Arbitration Agreement together with the PDA, it must resolve those doubts "in favor of arbitration." *Brayman*, 319 F.3d at 625; *see* 9 U.S.C. § 2 (federal policy that arbitration agreements are "enforceable").[7]

### D. Javice Concedes That Her Four Other Counterclaims Should Be Arbitrated—And Therefore The "For Cause" Issue Necessarily Will Be Resolved By The Arbitrator

The Opposition studiously fails to mention Javice's Counts I, II, IV and VI, and it therefore concedes that those four claims are subject to the Arbitration Agreement. *See Shaw v. New Castle Cnty.*, 2021 WL 4125648, at *2 (D. Del. Sept. 9, 2021) ("[F]ailure to address … arguments for dismissal of [particular] claims constitutes abandonment of those claims."). Javice's pointed

---

[7] Notably, Javice also agreed that an arbitrator would resolve "any dispute as to the arbitrability of a particular issue." Arbitration Agreement § 8. This too compels dismissal in favor of arbitration.

8

silence on these claims is no accident: these four Counterclaims directly parallel Javice's PDA Claims, all of them hinging on Javice's central claim that Javice "was not validly terminated for Cause" (¶ 115; *see* ¶¶ 110(c), 123, 154), and instead that Javice's termination for Cause was a "sham" and "pretextual" (¶ 130; *see* ¶ 141). Even in her Opposition, Javice could not avoid describing her PDA Claims in substantively the same way, claiming that JPMC "breached" the PDA (Count III) because Javice's termination "was, in truth, an involuntary rather than a 'Cause' termination," and "breached" the implied covenant of GFFD in the PDA (Count V) because "it schemed to terminate her in order to avoid paying her money." Opp. at 2.

Because it is now undisputed that Counts I, II, IV and VI are all subject to binding arbitration, the arbitrator will resolve the pivotal issue of whether Javice's termination was "for Cause." Javice's contention that the parties simultaneously should litigate the same issue in this Court—and burden it with duplicating the arbitrator's factfinding on that issue—is nonsensical, inefficient, and contrary to the plain terms of the Arbitration Agreement.

## II. THIS COURT CAN AND SHOULD DISMISS THE COUNTERCLAIMS NOTWITHSTANDING THE FACT THAT THE ARBITRATION WILL PROCEED OUTSIDE DELAWARE—AS IT HAS DONE IN MULTIPLE OTHER CASES

As a last-ditch argument, Javice contends that this Court lacks the authority to dismiss claims in favor of arbitration where, as here, the arbitration is to take place outside of Delaware. Javice is wrong—and her argument rests on a distinction without a difference.

### A. The Federal Arbitration Act Does Not Bar Dismissal Of Claims Subject To Arbitration—And This Court Repeatedly Has Dismissed Such Claims Before

Javice's argument fails because Section 4 of the FAA speaks only to the filing of a "petition" for an "order directing that . . . arbitration proceed." 9 U.S.C. § 4. JPMC does not seek an order "directing" Javice to file an arbitration. Instead, the principal relief JPMC seeks is dismissal of Javice's Counterclaims because they are subject to the Arbitration Agreement. *See*

9

Op. Br. at 20. If Javice wishes to pursue the Counterclaims, she can file an arbitration in accordance with the Arbitration Agreement—or JPMC can initiate an arbitration itself if it so chooses. Either way, this Court need not order the parties to arbitrate, whether inside or outside Delaware. And, for that reason, this Court repeatedly has dismissed claims in the past under similar circumstances. *See Dizon v. J.P. Morgan Chase*, No. CV 22-716 (MN), 2023 WL 2456063, at *2 (D. Del. Mar. 10, 2023) ("[D]istrict courts *may dismiss* actions that are subject to arbitration elsewhere."); *Henry on behalf of BSC Ventures Holdings, Inc. Emp. Stock Ownership Plan v. Wilmington Tr., N.A.*, No. CV 19-1925 (MN), 2021 WL 4133622, at *4 (D. Del. Sept. 10, 2021) (same).

### B. Alternatively, The Court Should Stay Javice's PDA Claims Pending The Arbitrator's Resolution Of The "For Cause" Issue

Alternatively, if the Court is not inclined to dismiss the PDA Claims, the Court should stay them pending the resolution of the parties' dispute over Javice's Employment Counterclaims in arbitration. This will avoid duplicative litigation over the same exact issue—namely, the validity of Javice's termination for "Cause"—between the same parties in two separate, simultaneous proceedings. The Court has discretion to avert that result even if it declines to dismiss the PDA Claims. *See, e.g., Feinberg v. Ass'n of Trial Laws. Assur.*, No. CIV.A. 01-6966, 2002 WL 31478866, at *2 (E.D. Pa. Nov. 4, 2002) (staying claims subject to arbitration in Illinois).

### CONCLUSION

JPMC respectfully requests that the Court dismiss Counts I, II, IV and VI of the Counterclaims because, as Javice concedes, they are subject to arbitration. For the reasons set forth above and in JPMC's opening brief, JPMC also respectfully requests that the Court either dismiss the PDA Claims in Counts III and V or stay them pending arbitration of the parties' dispute over Javice's termination for "Cause."

OF COUNSEL:

Tibor L. Nagy, Jr.
Tracy O. Appleton
Jason A. Kolbe
DONTZIN NAGY & FLEISSIG LLP
980 Madison Avenue
New York, NY 10075
(212) 717-2900

William M. Regan
Allison M. Wuertz
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
(212) 918-3000

Dated: April 28, 2023

POTTER ANDERSON & CORROON LLP

By: */s/ Jonathan A. Choa*
Peter J. Walsh, Jr. (#2437)
Michael A. Pittenger (#3212)
Jonathan A. Choa (#5319)
Carla M. Jones (#6046)
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
mpittenger@potteranderson.com
pwalsh@potteranderson.com
jchoa@potteranderson.com
cjones@potteranderson.com

*Attorneys for JPMorgan Chase Bank, N.A.*