## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JPMORGAN CHASE BANK, N.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:22-cv-01621-MN |
| | ) | |
| CHARLIE JAVICE, OLIVIER AMAR, | ) | |
| CHARLIE JAVICE, in her capacity as Trustee | ) | |
| of CHARLIE JAVICE 2021 IRREVOCABLE | ) | |
| TRUST #1, CHARLIE JAVICE, in her capacity as | ) | |
| Trustee of CHARLIE JAVICE 2021 | ) | |
| IRREVOCABLE TRUST #2, and CHARLIE | ) | |
| JAVICE in her capacity as Trustee of CHARLIE | ) | |
| JAVICE 2021 IRREVOCABLE TRUST #3, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANT CHARLIE JAVICE'S OPENING BRIEF IN SUPPORT OF HER MOTION TO PARTIALLY LIFT THE PSLRA DISCOVERY STAY TO PERMIT DOCUMENT DISCOVERY

OF COUNSEL:
Alex Spiro
Maaren A. Shah
JP Kernisan
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000
alexspiro@quinnemanuel.com
maarenshah@quinnemanuel.com
jpkernisan@quinnemanuel.com

Michael A. Barlow (#3928)
Samuel D. Cordle (#6717)
ABRAMS & BAYLISS LLP
20 Montchanin Drive, Suite 200
Wilmington, Delaware 19807
(302) 778-1000
barlow@abramsbayliss.com
cordle@abramsbayliss.com

*Attorneys for Defendant / Counterclaim Plaintiff Charlie Javice*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ..................................................................................................... 4

ARGUMENT ................................................................................................................. 8

    I.      Lifting the Stay Aligns with the PSLRA's Underlying Policy and Purpose .......... 8

    II.     The Statutory Test For Partial Lifting of the Stay, to the Extent Implicated
          Here, Amply Supports The Requested Relief ....................................................... 12

          A.     "Extraordinary Circumstances" Require a Partial Lift of the Stay ............ 13

          B.     Ms. Javice Will Suffer Undue Prejudice If This Court Does Not
                 Lift The Stay Of Document Discovery ....................................................... 16

          C.     The Requested Party and Third-Party Document Discovery Is
                 Sufficiently Particularized Under The Circumstances Presented
                 Here ............................................................................................................ 18

CONCLUSION ............................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Bobka v. Toyota Motor Credit Corp.*,
    968 F.3d 946 (9th Cir. 2020) ........................................................................... 11

*Brooklyn Savings Bank v. O'Neil*,
    324 U.S. 697 (1945) ......................................................................................... 12

*City of Birmingham Retirement and Relief Sys. v. Armstrong*,
    2016 WL 880503 (D. Del. Mar. 1, 2016) ....................................................... 13

*CytoDyn Inc. v. Rosenbaum*,
    2021 WL 4935888 (D. Del. Aug. 24, 2021) ...................................................... 9

*Desmarais v. First Niagra Fin. Grp., Inc.*,
    2016 WL 768257 (D. Del. Feb. 26, 2016) ......................................................... 9

*Dipple v. Odell*,
    870 F. Supp. 2d 386 (E.D. Pa. 2012) ................................................... 12, 14, 18

*Dow Chem. Canada Inc. v. HRD Corp.*,
    287 F.R.D. 268 (D. Del. 2012) .......................................................................... 9

*Evcco Leasing Corp. v. Ace Trucking Co.*,
    828 F.2d 188 (3d Cir. 1987) ............................................................................ 12

*In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*,
    2009 WL 4796169 (S.D.N.Y. Nov. 16, 2009) ................................................ 16

*In re CFS-Related Sec. Fraud Litig.*,
    179 F. Supp. 2d 1260 (N.D. Okla. 2001) ................................................... 14, 17

*In re CFS-Related Sec. Fraud Litig.*,
    213 F.R.D. 435 (N.D. Okla. 2003) ............................................................ 11, 17

*In re Colonial Bancgroup, Inc. Sec. Litig.*,
    2009 WL 4585928 (M.D. Ala. Dec. 2, 2009) ................................................. 10

*In re Delphi Corp.*,
    2007 WL 518626 (E.D. Mich. Feb. 15, 2007) ................................................ 15

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
    2002 WL 31845114 (S.D. Tex. Aug. 16, 2002) .............................................. 15

*In re Fine Paper Antitrust Litig.*,
    685 F.2d 810 (3d Cir. 1982 ............................................................................... 9

*In re Firstenergy Corp. Sec. Litig.*,
      229 F.R.D. 541 (N.D. Ohio 2004) ................................................................ 20

*In re Heckmann Corp. Sec. Litig.*,
      2011 WL 10636718 (D. Del. Feb. 28, 2011) ................................................ 18

*In re LaBranche Sec. Litig.*,
      333 F. Supp. 2d 178 (S.D.N.Y. 2004) .......................................................... 20

*In re Lernout & Hauspie Sec. Litig.*,
      214 F. Supp. 2d 100 (D. Mass. 2002) ...................................................... 10, 11

*In re Pattern Energy Grp. Inc. Sec. Litig.*,
      2021 WL 312752 (D. Del. Jan. 28, 2021) .................................................... 13

*In re Refco, Inc. Sec. Litig.*,
      2006 WL 2337212 (S.D.N.Y. Aug. 8, 2006 ................................................ 17

*In re Reserve Fund Sec. & Derivative Litig.*,
      2009 WL 10467937 (S.D.N.Y. Aug. 26, 2009) .......................................... 10

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
      220 F.R.D. 246 (D. Md. 2004) ....................................................................... 18

*In re Salomon Analyst Litig.*,
      373 F. Supp. 2d 252 (S.D.N.Y. 2005) .......................................................... 11

*In re Smith Barney Transfer Agent Litig.*,
      2006 WL 1738078 (S.D.N.Y. June 26, 2006) ............................................. 16

*In re Smith Barney Transfer Agent Litig.*,
      2006 WL 1738078 (S.D.N.Y. June 26, 2006) ......................................... 13, 16

*In re WorldCom, Inc. Sec. Litig.*,
      234 F. Supp. 2d 301 (S.D.N.Y. 2002) ............................................ 10, 15, 19, 20

*Latham v. Stein*,
      2010 WL 3294722 (D.S.C. Aug. 20, 2010) ............................................ 10, 11

*Mishkin v. Ageloff*,
      220 B.R. 784 (S.D.N.Y. 1998) ...................................................................... 20

*Petrie v. Electronic Game Card, Inc.*,
      761 F.3d 959 (9th Cir. 2014) ............................................................................ 8

*Podany v. Robertson Stephens, Inc.*,
      350 F. Supp. 2d 375 (S.D.N.Y. 2004) ............................................................. 8

*Ramadan v. Chase Manhattan Corp.*,
  229 F.3d 194 (3d Cir. 2000) ........................................................................................... 12

*Scott v. Vantage Corp.*,
  64 F.4th 462 (3d Cir. 2023) ............................................................................................. 8

*Sec'y, U.S. Dep't of Lab. v. Preston*,
  873 F.3d 877 (11th Cir. 2017) ....................................................................................... 12

*Sempier v. Johnson & Higgins*,
  45 F.3d 724 (3d Cir. 1995) .............................................................................................. 9

*United States v. Mezzanatto*,
  513 U.S. 196 (1995) ....................................................................................................... 11

*Westchester Putnam Heavy & Highway Laborers Local 60 Benefit Funds v. Sadia S.A.*,
  2009 WL 1285845 (S.D.N.Y. May 8, 2009) ................................................................. 15

*Williams v. Ocwen Loan Servicing, LLC*,
  2015 WL 184024 (D. Del. Jan. 13, 2015) ...................................................................... 9

**Statutes**

15 U.S.C. § 78u-4(b)(3)(B) ........................................................................................... passim

**Legislative Materials**

H.R. Conf. Rep. No. 104-369 (1995) .................................................................................. 9

S. Rep. 104-98 (1995) ........................................................................................................ 8

**Rules**

Feb. R. Civ. P. 34 ...................................................................................................... 1, 20

Fed. R. Civ. P. 26 ...................................................................................................... 1, 20

Fed. R. Civ. P. 45 ...................................................................................................... 1, 20

Defendant and Counterclaim Plaintiff Charlie Javice respectfully requests that this Court partially lift the Private Securities Litigation Reform Act of 1995 ("PSLRA") discovery stay to permit the parties to engage in discovery solely for the production of documents and tangible things, pursuant to Federal Rules of Civil Procedure 26 and 34 and, as applied to nonparties, pursuant to Federal Rule of Civil Procedure 45.  Defendant Olivier Amar (collectively with Ms. Javice, "Defendants") consents to the relief requested in this Motion and reserves the right to submit a separate submission addressing his rights and interests.

## PRELIMINARY STATEMENT

On December 22, 2022, two days after Ms. Javice sued Plaintiff and Counterclaim Defendant JPMorgan Chase Bank, N.A. ("JPMC") in the Delaware Court of Chancery to enforce her contractual and statutory rights to advancement (on which she has since prevailed), JPMC filed this retaliatory lawsuit against Ms. Javice and Mr. Amar, alleging two counts of securities fraud under the Securities Exchange Act, four common law claims under Delaware law, and an equitable claim of unjust enrichment.  In response, Ms. Javice answered the Complaint and asserted counterclaims against JPMC, while Mr. Amar moved to dismiss the Complaint, thereby extending the automatic stay of discovery pursuant to the PSLRA.

Since JPMC filed this Complaint, government and regulatory authorities have investigated Ms. Javice's conduct, she has been criminally indicted and subject to an enforcement action by the Securities and Exchange Commission ("SEC"), her bank accounts have been frozen, and she has been subjected to vicious media and public scrutiny.  All the while, Defendants have been without the evidence they need to defend themselves and that they believe will exonerate them as against these claims—because that evidence is almost entirely in JPMC's hands and in the files of third parties who assisted, advised, or were involved in the events surrounding JPMC's purchase of Frank.  JPMC and some of these third parties already have provided documents and evidence to

the Government to assist in that investigation, but because of the automatic imposition of the PSLRA stay in this case, Ms. Javice and Mr. Amar have had no access to discovery of that evidence.  Nor do they have access to the many more documents and emails that they know exist in JPMC's files confirming their side of the story, and that have not yet seen the light of day.

This is the rare—and perhaps unprecedented—case where the PSLRA stay, meant to protect defendants accused of securities fraud who are presumed to possess most of the evidence that may ultimately be used against them, is gravely prejudicing those defendants instead.  The animating purpose of the PSLRA stay is to deter frivolous and vexatious lawsuits and to prevent would-be securities plaintiffs from filing first and fishing for evidence later.  Although this lawsuit is precisely the kind of vexatious, coercive, and meritless litigation that the PSLRA was designed to discourage, the policy objectives of the PSLRA cannot be furthered by a stay of document discovery here.  A stay of document discovery does not protect Ms. Javice or Mr. Amar under the unique circumstances of this case, where the *plaintiff* has sole control of the majority of the documentary evidence necessary to lay bare the flaws in its allegations of fraud, and a *defendant* (with the express consent of her co-defendant) is requesting a reprieve from the stay so that she can gain swift and immediate access to the evidence she needs to exonerate herself.  Importantly, because both defendants consent to the requested relief from the stay, there is no reason to blindly apply a stay that would be imposed in other circumstances.  Further, JPMC has no legitimate basis to delay prosecuting the case that it filed against these two individuals, and indeed has admitted as much in public filings and

private correspondence with Ms. Javice.  Consistent with this position, JPMC has advised Ms. Javice that it will take no position on this motion.[1]

The continued imposition of a stay in these circumstances, over the objections of defendants, would turn the ordinary purpose of the PSLRA stay on its head.  And while Ms. Javice understands that this action ultimately will proceed to discovery after Mr. Amar's motion to dismiss is decided, there is no principled reason to wait—particularly here, where Ms. Javice's funds have been seized, she is facing indictment and investigation, and she continues to suffer extreme reputational and financial pressures every day that this case remains ongoing.  JPMC has made highly-damaging, highly-publicized allegations against Ms. Javice, based on a supposed abundance of documentary evidence collected in internal investigations preceding its Complaint, and JPMC's selective snippets of a handful of cherry-picked documents have been roundly repeated in the press and in the governmental and regulatory complaints against Ms. Javice.  Under these circumstances, Ms. Javice has an overwhelming interest in obtaining the documentary evidence that JPMC and others have related to these claims—and her defenses—as swiftly as possible.  Now that JPMC has leveled these allegations against Defendants, every week and month of delay before they can adequately defend themselves prejudices Defendants even further.  Defendants should not be put in a position of fighting the weighty allegations against them with their hands tied behind their backs, while the plaintiff and the press and the public freely

---

[1]    On April 7, 2023, JPMC moved for a partial lift of the PSLRA stay to take discovery into, among other things, Ms. Javice's use of her personal funds.  D.I. 28, 29.  Ms. Javice objects to this discovery and opposed JPMC's motion. D.I. 36.  However, should this Court grant the instant motion, Ms. Javice would not oppose that portion of JPMC's motion seeking the partial lifting of the stay so that the parties can engage in appropriate document discovery, for the same reasons as set forth more fully herein, but would maintain her objection to the specific topics of JPMC's requested discovery, and would propose to address any objections to the substance of requested discovery in the ordinary course of the discovery process.

comment and speculate on their culpability based on biased and unproven allegations before a single document has been produced. Because the very purpose of the PSLRA stay would be thwarted by its continued imposition here over Ms. Javice's objections, and because Ms. Javice can amply demonstrate the extraordinary circumstances and undue prejudice ordinarily required to lift the stay, this Court should exercise its inherent discretion to lift the stay partially so as to permit the parties to commence immediate party and third-party production of documents during the pendency of Mr. Amar's motion to dismiss.

## STATEMENT OF FACTS

On September 14, 2021, following several weeks of extensive due diligence, JPMC acquired the equity interests of TAPD Inc. d/b/a Frank. *See* D.I. 10 (Javice Ans. & Counterclaims) ¶¶ 5, 22. In conjunction with the acquisition, JPMC hired Ms. Javice and Mr. Amar as employees of JPMC to continue shepherding the growth and operations of the Frank business at JPMC. D.I. 1 ¶ 15. But JPMC grossly mishandled the integration of that business onto its platform. *See* D.I. 10 ¶¶ 7, 79–96. And after certain unanticipated regulatory changes rendered Frank's core tool less effective, and after Ms. Javice vocally objected to the unethical and potentially illegal business strategy that JPMC managers wanted to pivot toward, both Frank and its founder fell victim to JPMC's mismanagement and viscous internal politicking. *Id.* ¶¶ 79–103; *see also* D.I. 1 ¶ 30. JPMC determined to shut down Frank and point the finger at Ms. Javice for its failure. D.I. 10 ¶ 7; *accord id.* ¶¶ 94–97. On September 13, 2022, after a series of pretextual internal investigations, and one day before the vesting date for a $5 million payment under Ms. Javice's incentive retention agreement with JPMC, JPMC placed Ms. Javice on administrative leave from her employment. D.I. 10 ¶ 14. JPMC also shut off Ms. Javice's access to her Frank email accounts and any Frank or JPMC documents or communication platforms on which they had previously

conducted Frank business. *See id.* JPMC then terminated Ms. Javice's employment purportedly "for cause" on November 4, 2022, *id.* ¶ 28.

On December 22, 2022—only after Ms. Javice sued JPMC for not honoring its contractual commitments to advance her legal fees required to defend against its pretextual investigations leading to her termination—JPMC initiated this retaliatory action against Defendants alleging two counts of federal securities fraud, three counts of common law fraud, and one equitable claim. *See* D.I. 1 (the "Complaint").

JPMC claims that its allegations are supported by a cache of relevant documents that it reviewed in the course of its internal investigations. JPMC's Complaint purports to quote from and characterize Ms. Javice's emails and communications, *e.g.*, D.I. 1 ¶¶ 87–95; it describes calendar invitations, *id.* ¶ 78, and records of electronic chats, *see id.* ¶ 21; and it represents the results of JPMC marketing campaigns with supposed mathematical precision, *id.* ¶ 178. JPMC avers that, before bringing its claims, it "reviewed various aspects of Frank's business," *id.* ¶ 20, and "examined emails, messages, and chats among Javice, the Data Science Professor, and Amar," *id.* ¶ 21—all of which remain in its exclusive possession.

The cherry-picked selection of emails and documents that JPMC contends support the allegations in its Complaint have since been exhaustively repeated in the press and in two separate criminal and regulatory actions against Ms. Javice. On April 4, 2023, the USAO-SDNY and the SEC publicly unveiled apparently coordinated actions against Ms. Javice, and further pressed their advantage to generate a new round of press, calculatedly favorable to the prosecutors and adverse to Defendants. *See United States v. Charlie Javice*, No. 1:23-cr-00251-AKH-1 (S.D.N.Y); *SEC v.*

*Charlie Javice*, No. 1:23-cv-02795-LJL (S.D.N.Y.), D.I. 1.[2] These complaints closely mimic and repeat the same allegations in JPMC's Complaint and reference the same selective set of documents that JPMC used against Defendants. *See United States v. Charlie Javice*, No. 1:23-cr-00251-AKH-1 (S.D.N.Y), D.I. 1 ¶ 18 (USAO-SDNY complaint confirming that its allegations are "based on [Special Agent Jeremy Rosenman's] review of documents obtained from JPMC, another major bank . . ., and from a Manhattan-based investment bank hired by Frank to assist in its acquisition"); Press Release, SEC, *supra* n.2 ("The SEC appreciates the assistance of the U.S. Attorney's Office for the Southern District of New York, which announced a parallel, criminal investigation today, as well as the Federal Bureau of Investigation."). The Government has since frozen Ms. Javice's bank accounts, and has indicated it will make no allowance for the release of any funds to pay for her or ordinary living expenses, mortgage, or legal fees to defend herself.[3]

On March 1, 2023—prior to the filing of the governmental actions against Ms. Javice— Mr. Amar moved to dismiss JPMC's Complaint for failing to satisfy the heightened pleading

---

[2] *See* Press Release, U.S. Attorney's Office for the Southern District of New York, Former Start-Up CEO Charged In $175 Million Fraud (April 4, 2023), https://www.justice.gov/usao-sdny/pr/former-start-ceo-charged-175-million-fraud (U.S. Attorney for the Southern District of New York and the Special Agent in Charge of the New York Regional Office of the Federal Deposit Insurance Corporation's Office of the Inspector General publicly announcing the unsealing of the criminal complaint against Ms. Javice: "This arrest should warn entrepreneurs who lie to advance their businesses that their lies will catch up to them, and this Office will hold them accountable for putting their greed above the law."); Press Release, SEC, SEC Charges Founder of Frank with Fraud in Connection $175 Million Sale of Student Loan Assistance Company (April 4, 2023), https://www.sec.gov/news/press-release/2023-74 (Gurbir S. Grewal, Director of the SEC's Division of Enforcement, touting: "Even non-public, early-stage companies must be truthful in their representations, and when they fall short we will hold them accountable as in this case.").

[3] On May 8, 2023, the Delaware Court of Chancery agreed that JPMC was contractually required to advance Ms. Javice's and Mr. Amar's legal fees and costs in defending these various investigations and actions arising out of the events described in JPMC's Complaint, and granted Ms. Javice's and Mr. Amar's motion for summary judgment against JPMC. JPMC's strategy of resisting a clear contractual obligation to advance Ms. Javice's and Mr. Amar's legal defense costs was apparently designed to further choke off their resources and ability to defend themselves.

standards of Rule 9(b), among other reasons. *See* D.I. 14, 15. Ms. Javice did not file a motion to dismiss in this action, but instead answered the Complaint and asserted six counterclaims against JPMC. *See* D.I. 10. Between JPMC's claims and Ms. Javice's counterclaims, the parties have levied against each other no fewer than eight common law or equitable claims in this action, D.I. 1 ¶¶ 202–233; D.I 10 ¶¶ 111–145, along with two statutory securities fraud claim by JPMC against Defendants, D.I. ¶¶ 186–201. However, because Mr. Amar has filed a motion to dismiss those securities fraud claims (along with the other common law claims against him), the parties have thus far refrained from engaging in discovery in deference to the technical application of an automatic stay of discovery mandated by the PSLRA.

On April 7, 2023, JPMC nonetheless moved to partially lift the PSLRA's automatic discovery stay in order to obtain discovery regarding, among other things, Ms. Javice's personal use of funds paid to her from the merger proceeds. *See* D.I. 28–31. In so doing, JPMC argued that immediate partial discovery was appropriate, at least with respect to Ms. Javice, because "this is not a situation where a plaintiff seeks discovery from a defendant who itself has filed and may prevail on a motion to dismiss and thereby avoid discovery entirely," D.I. 31 at 17, and represented that "if this Court concludes that Javice and JPMC should begin to conduct discovery in this matter, JPMC is prepared to commence discovery promptly," *id.* at 1 n.1. Prior to moving for this relief, "JPMC invite[d] Ms. Javice to agree to the opening of full discovery or, at a minimum, Ms. Javice's agreement to open discovery for the purpose of sending preservation subpoenas to third parties." Ex. A (Apr. 6, 2023 Ltr. from W. Regan). Ms. Javice objected to the discovery that JPMC intended to seek as premature judgment enforcement discovery, not relevant to this action, and without basis, and refused to consent to JPMC's requested relief. Ms. Javice filed an opposition to JPMC's motion on April 21, 2023. While Ms. Javice does not object to a partial

lifting of the stay so that the parties may commence requests for and production of documents for the same reasons set forth in this motion, Ms. Javice maintains her objections to the specific subjects of discovery that JPMC sought in its motion.  D.I. 36.

Prior to filing this motion, Ms. Javice responded to JPMC's invitation to open discovery and requested JPMC's position on lifting the stay.  JPMC indicated that it would take no position in response to this motion. Ex. B (May 26, 2023 Email from W. Regan ("JPMC is prepared to move forward with discovery when permitted by the Court.  JPMC is the plaintiff in this case and wants to conduct discovery to advance [its] claims.").  Ms. Javice also conferred with Mr. Amar before filing this motion, and Mr. Amar indicated that he consents to the requested relief and, if granted, intends to participate in the permitted document discovery, but reserves the right to file a separate submission on this matter.

## **ARGUMENT**

### I.     **Lifting the Stay Aligns with the PSLRA's Underlying Policy and Purpose**

Congress enacted the PSLRA to deter plaintiffs from initiating frivolous and abusive securities litigation. *See Scott v. Vantage Corp.*, 64 F.4th 462, 467 (3d Cir. 2023). It accomplishes this goal through stringent pleading requirements and, as relevant here, an automatic stay of discovery "during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party."  15 U.S.C. § 78u-4(b)(3)(B).  The purpose of the PSLRA stay is to protect *defendants* against plaintiffs who file complaints "that lack adequate support for their allegations in the mere hope that the traditionally broad civil discovery proceedings will produce facts that could be used to state a valid claim."  *Podany v. Robertson Stephens, Inc.*, 350 F. Supp. 2d 375, 378 (S.D.N.Y. 2004) (citing S. Rep. 104-98, at 14 (1995)) (emphasis added); *Petrie v. Electronic Game Card, Inc.*, 761 F.3d 959, 969 (9th Cir. 2014) ("The discovery stay was intended

to prevent discovery abuses such as the unnecessary imposition of discovery costs on *defendants*, particularly as a means to coerce settlement.") (internal quotation marks and citations omitted) (emphasis added); *Desmarais v. First Niagra Fin. Grp., Inc.*, 2016 WL 768257, at *1 (D. Del. Feb. 26, 2016) (same); *see also* H.R. Conf. Rep. No. 104-369, at 32 (1995) (noting that the PSLRA "stay of discovery provisions are intended to prevent unnecessary imposition of costs on *defendants*") (emphasis added).

      Given these goals of the PSLRA, this procedural posture presents an exceedingly unusual circumstance. Ms. Javice has located no reported decision arising in an identical scenario, where all defendants are aligned in seeking to move forward with document discovery in a civil case that has been aggressively pursued against them by a private party, where only one defendant has moved to dismiss the claims, and where most (if not all) of the evidence necessary to exonerate the defendants resides in the plaintiff's sole possession. The PSLRA was plainly not intended to allow plaintiffs to pursue flawed claims against defendants (and to then broadcast those allegations selectively in the media and court of public opinion), all the while shielding *their own internal files and exculpatory evidence* from discovery by the defendants. Yet that would be the effect of a continued imposition of the stay here.

      This Court has "broad discretion to manage the discovery process, and can accelerate or otherwise alter the timing and sequence of discovery.'" *CytoDyn Inc. v. Rosenbaum*, 2021 WL 4935888, at *1 (D. Del. Aug. 24, 2021) (Noreika, J.) (quoting *Williams v. Ocwen Loan Servicing, LLC*, 2015 WL 184024, at *1 (D. Del. Jan. 13, 2015)); *see also Dow Chem. Canada Inc. v. HRD Corp.*, 287 F.R.D. 268, 270 (D. Del. 2012) ("Federal courts have broad discretion to manage discovery.") (citing *Sempier v. Johnson & Higgins*, 45 F.3d 724, 734 (3d Cir. 1995)); *In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 817 (3d Cir. 1982) ("[M]atters of docket control and

conduct of discovery are committed to the sound discretion of the district court."). The PSLRA also recognizes the Court's inherent discretion to decide whether to partially lift the stay. *See, e.g.*, *In re Colonial Bancgroup, Inc. Sec. Litig.*, 2009 WL 4585928, at *1 (M.D. Ala. Dec. 2, 2009) (holding that the PSLRA "grants the court the discretion to lift the stay of discovery if" it finds the requirements of 15 U.S.C. § 78u-4(b)(3)(B) have been met). This discretion is most often exercised to lift a stay where the Court determines that the statutory purpose of the stay would not be implicated or impaired by allowing discovery to proceed. *See, e.g.*, *In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301, 306 (S.D.N.Y. 2002); *see also* D.I. 31, at 16–17 (collecting cases).

It is beyond doubt that the statutory purpose would be neither implicated nor impaired by permitting document discovery to proceed here. Ms. Javice has not moved to dismiss the claims against her, and thus their legal sufficiency is not subject to challenge and discovery will eventually proceed on them one way or another.[4] And although Mr. Amar has moved to dismiss the claims, he consents to document discovery moving forward while his motion is pending, and he intends to participate in document discovery should the Court lift the stay. Because no Defendant has any

---

[4]    Because only Mr. Amar has moved to dismiss, it is unclear whether any automatic imposition of a stay under the PSLRA even extends to Ms. Javice, as JPMC itself acknowledged in support of its motion to partially lift the PSLRA stay as to Ms. Javice, *see* D.I. 31, at 14, 17. *See In re Lernout & Hauspie Sec. Litig.*, 214 F. Supp. 2d 100, 105 (D. Mass. 2002) (lifting PSLRA stay against defendants whose motions to dismiss had been denied because the PSLRA stay "provision could also be read to mean that all discovery against a party must be stayed during the pendency of any motion to dismiss filed by that party" only); *Latham v. Stein*, 2010 WL 3294722, at *3 (D.S.C. Aug. 20, 2010) (allowing discovery to proceed against and over the objection of defendants whose motions to dismiss had been denied, as there was no pending challenge to the sufficiency of the claims against these defendants and therefore "the purpose of the statutory stay has been served in this case."). It is also unclear whether the PSLRA stay applies to JPMC's non-PSLRA claims. *See In re Reserve Fund Sec. & Derivative Litig.*, 2009 WL 10467937, at *2 (S.D.N.Y. Aug. 26, 2009) (addressing the effect of the stay on discovery as it relates to two consolidated actions, one with PSLRA claims and one without). Although these appear to remain open questions in the Third Circuit, this Court need not resolve them here to grant Ms. Javice's instant request for a partial lift of the stay.

interest in preventing or deferring document discovery from proceeding during the pendency of Mr. Amar's motion to dismiss, the stay has no protective or deterrent purpose here and should not be enforced.  *See, e.g.*, *In re Salomon Analyst Litig.*, 373 F. Supp. 2d 252, 254–55 (S.D.N.Y. 2005) (lifting the stay because, in "a case where the court already has sustained the legal sufficiency of the complaint, this purpose has been served" and recognizing that "[s]ome judicial discretion to evaluate the desirability of a . . . stay appears to be necessary."); *In re CFS-Related Sec. Fraud Litig.*, 213 F.R.D. 435, 445–47 (N.D. Okla. 2003) (reasoning that stay's statutory purpose would not be served if stay applied to defendants who filed motions dismiss cross-claims and counterclaims against each other); *Latham v. Stein*, 2010 WL 3294722, at *3 (D.S.C. Aug. 20, 2010) (allowing discovery to proceed where "the purpose of the statutory stay has been served in this case"); *In re Lernout & Hauspie Sec. Litig.*, 214 F. Supp. 2d at 106 (holding that "allowing limited discovery to proceed against the four senior officers is consistent with the intent of the stay provision" because "[n]either of the perceived abuses addressed by Congress is present in this situation").[5]

Indeed, defendants (as the intended beneficiaries of the PSLRA's procedural safeguards) have the congruent right to forgo those protections and proceed with party and third-party document discovery.  It is axiomatic that any "party may waive any provision, either of a contract or of a statute, intended for his benefit."  *United States v. Mezzanatto*, 513 U.S. 196, 201 (1995) (citation omitted); *see Bobka v. Toyota Motor Credit Corp.*, 968 F.3d 946, 954 (9th Cir. 2020) ("'[A]bsent some affirmative indication of Congress' intent to preclude waiver, . . . statutory

---

[5] JPMC itself relied on the *Lernout* decision in support of its own motion to partially lift the stay.  While *Lernout* had limited applicability to JPMC's motion that was focused primarily on preservation concerns, *see* D.I. 36 at 10–11, the policy principles underlying the *Lernout* decision and recognizing that the stay has minimal utility and may be lifted where the sufficiency of the claims is not subject to challenge are instructive here.

provisions are subject to waiver by voluntary agreement of the parties.'") (quoting *Mezzanatto*, 513 U.S. at 201).  The PSLRA stay provision is no exception.  While Ms. Javice understands that the stay will eventually expire upon this Court's decision on Mr. Amar's motion to dismiss, it is often the case that relief delayed is relief denied, and even a few months' delay in obtaining relevant documents will cause prejudice to Ms. Javice. Ms. Javice is facing actions and investigations in multiple forums, and suffering judgment in the court of public opinion as each day goes by, while her funds are frozen and she is without the means to carry on with her ordinary life.  She has an overwhelming interest in proceeding swiftly to discovery and judgment in this action, as well as in every other action against her. And both Defendants have a strong desire for the documentary evidence that they believe will exonerate them to come swiftly to light.   A stay that is statutorily intended only for the protection and benefit of defendants must be within their rights to waive.  *See Evcco Leasing Corp. v. Ace Trucking Co.*, 828 F.2d 188, 193 (3d Cir. 1987) ("It is well settled that a party may waive statutory provisions (as well as other rights) intended for that party's benefit and not affecting the public interest.") (citing *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 704 (1945)); *cf. Sec'y, U.S. Dep't of Lab. v. Preston*, 873 F.3d 877, 887 (11th Cir. 2017) (concluding that it would be "bizarre" not to allow a defendant to waive ERISA's statute of repose); *Ramadan v. Chase Manhattan Corp.*, 229 F.3d 194, 203 (3d Cir. 2000) (citation and internal quotation marks omitted) ("[P]arties to a contract may waive statutory protections and assume liabilities not required by law.").  This should conclusively end the inquiry, and the Court should exercise its discretion to partially lift the stay to permit the parties to engage in document discovery from parties and third parties pending the resolution of Mr. Amar's motion to dismiss.

II.   **The Statutory Test For Partial Lifting of the Stay, to the Extent Implicated Here, Amply Supports The Requested Relief**

The PSLRA provides that the automatic stay may be lifted in "'extraordinary circumstances' where . . . particularized discovery is necessary to prevent undue prejudice." *Dipple v. Odell*, 870 F. Supp. 2d 386, 391 (E.D. Pa. 2012) (citation omitted); 15 U.S.C. § 78u-4(b)(3)(B).  Although this standard for obtaining a partial lift of the PSLRA stay is not squarely applicable here—as it plainly contemplates a motion by a *plaintiff* to lift the PSLRA's statutory protections over the defendant's objection and thereby seeks to safeguard the animating purposes of the statutory stay[6]—the standard nonetheless is instructive and readily satisfied here.

## A. "Extraordinary Circumstances" Require a Partial Lift of the Stay

This motion presents an apparently unprecedented circumstance in which a *defendant*, with the express consent of her co-defendant, is requesting a reprieve from the stay of document discovery, where only one of the defendants has moved to dismiss securities fraud claims (among many common law claims to which the stay does not apply), and where the plaintiff's unequal access to the majority of the documents required to disprove the fraud has resulted in extreme and ongoing prejudice to the defendants' ability to adequately defend themselves.  The fact that Defendants may eventually obtain access to these documents following a decision on the motion to dismiss is no adequate answer.  Even weeks or months of further delay would prejudice Ms. Javice, who is facing increasing monetary constraints and reputational damage with each passing day.  Given that the PSLRA's statutory purpose to protect *defendants* is effectively inverted here

---

[6] *See City of Birmingham Retirement and Relief Sys. v. Armstrong*, 2016 WL 880503, at *1 (D. Del. Mar. 1, 2016) ("*Plaintiff* bears the burden of demonstrating that a mandatory Stay should be lifted.") (emphasis added); *In re Pattern Energy Grp. Inc. Sec. Litig.*, 2021 WL 312752, at *1 (D. Del. Jan. 28, 2021) (holding that a court may lift the PSLRA stay to the extent it "finds that particularized discovery is necessary to either preserve evidence or to prevent 'undue prejudice' to *Plaintiffs*") (emphasis added); *In re Smith Barney Transfer Agent Litig.*, 2006 WL 1738078, at *3 (S.D.N.Y. June 26, 2006) ("The proper inquiry under the PSLRA is whether the *plaintiff* would be unduly prejudiced by the stay, not whether the defendant would be burdened by lifting the stay.")  (emphasis added).

with a continued imposition of the stay over those defendants' objections, this factor is, in itself, sufficiently extraordinary to justify lifting the stay.

The unique circumstances do not stop there. Courts recognize that informational asymmetry to the detriment of a *plaintiff* is common because "[i]t is generally the case that in a securities fraud case the evidence of fraud is primarily within the defendant's control." *In re CFS-Related Sec. Fraud Litig.*, 179 F. Supp. 2d 1260, 1265 (N.D. Okla. 2001). And for *plaintiffs*, therefore, it is often the case that an "informational disadvantage does not rise to the level of undue prejudice contemplated by the narrow statutory exception" when compared against the statutes animating principles of discouraging vexatious and baseless litigation by opportunistic plaintiffs. *Dipple*, 870 F. Supp. 2d at 394.

Yet the opposite is true here when applied to *defendants*. This is the extraordinary case where the plaintiff—the world's largest bank with boundless resources at its disposal—not only has asymmetrical access to the evidence, but has employed that access selectively against Defendants in ways that have wide-ranging public and professional implications. Defendants (who were required to turn over and relinquish all relevant documents and information to JPMC upon their departures) have been left without access to the majority of relevant documents or communications concerning the events that Plaintiff has put at issue through the filing of its Complaint. And Defendants know that the documents that JPMC has selectively employed in support of its claims do not come close to telling the whole story, and that exculpatory evidence exists in JPMC's files that the world has not seen. Yet Defendants are unable to even begin to rebut or defend against JPMC's allegations without equal access to these documents and the documents in the possession of third parties.

Indeed, not only has JPMC employed its unilateral access to documents to further its own litigation objectives, but these same cherry-picked snippets of documents have been repeated aggressively in the press and, more tellingly, provided by JPMC to governmental authorities for use in those authorities' investigations. *Compare, e.g.*, D.I. 1, *with United States v. Charlie Javice*, No. 1:23-cr-00251-AKH-1 (S.D.N.Y), D.I. 1, *and SEC v. Charlie Javice*, No. 1:23-cv-02795-LJL (S.D.N.Y.), D.I. 1.  "In a sense this discovery has already been made, and it is merely a question of keeping it from a party because of the strictures of a statute designed to prevent discovery abuse."  *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 2002 WL 31845114, at *2 (S.D. Tex. Aug. 16, 2002) (granting motion to lift stay).  JPMC, having brought this lawsuit, should not be able to use the PSLRA stay—designed to protect defendants—as both a sword and a shield to further its objectives while depriving Defendants of access to the evidence necessary to defend against the claims that JPMC itself initiated.

Neither should the PSLRA stay be employed to delay justice when every day of delay amplifies the extreme reputational and financial pressures that Ms. Javice is living under while this case remains pending.  Indeed, although "it is customary to consider whether a production request places an undue burden on the party from which it is requested," *In re WorldCom*, 234 F. Supp. 2d at 306, that is not at issue where, as here, that party has already gathered and provided the documents to others, *see id.*; *Westchester Putnam Heavy & Highway Laborers Local 60 Benefit Funds v. Sadia S.A.*, 2009 WL 1285845, at *1 (S.D.N.Y. May 8, 2009); *see also In re Delphi Corp.*, 2007 WL 518626, at *6 (E.D. Mich. Feb. 15, 2007).  While Ms. Javice is not limiting her requests to documents that JPMC already shared with the Government, these standards highlight the exceedingly low (if not nonexistent) burden on JPMC to produce documents readily available

at its fingertips.  That is particularly true where, as here, JPMC has itself moved to lift the stay to suit its own purposes and indicated that it "invites" immediate and open discovery in this action.

**B.**   **Ms. Javice Will Suffer Undue Prejudice If This Court Does Not Lift The Stay Of Document Discovery**

The case law is clear that "[t]he proper inquiry under the PSLRA is whether the plaintiff would be unduly prejudiced by the stay, not whether the defendant would be burdened by lifting the stay." *In re Smith Barney Transfer Agent Litig.*, 2006 WL 1738078,  at *3 (S.D.N.Y. June 26, 2006).   This prevailing test again underscores the tellingly unique posture of this case and the inaptitude of existing case law to directly address these unusual circumstances.   However, even if Ms. Javice were required to show undue prejudice to herself under an inverted reading of the relevant law, she would easily satisfy that burden here.  "In determining whether to lift the stay, courts may take all facts into account to determine whether undue burden would exist."  *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 2009 WL 4796169, at *2 (S.D.N.Y. Nov. 16, 2009) (citing *In re Worldcom*, 234 F. Supp. 2d at 306).  "'Undue prejudice' in the context of a discovery stay means improper or unfair treatment amounting to something less than irreparable harm."  *In re Smith Barney Transfer Agent Litig.*,  2006 WL 1738078, at *2.

Ms. Javice has suffered, and will continue to suffer, tremendous prejudice as a result of the continued imposition of the PSLRA stay blocking her ability to obtain documents necessary to defend herself.  Ms. Javice is facing investigations and claims on at least three fronts, has had her name and reputation dragged through the mud, has been subjected to intense and unwarranted public scrutiny, and has had her bank accounts and access to funds frozen, while the emotional and financial costs of these allegations continue to mount with no end in sight.  Having been haled into this Court to face serious statutory and common law claims, Ms. Javice has a right to gain swift and efficient access to the documentary evidence needed to defend herself and advance this

litigation to a close.

Nor does this case present the kind of complications that typically arise when some, but not all, defendants have moved to dismiss the complaint and request a corresponding stay of discovery. Cases from other jurisdictions imposing a stay on non-moving defendants address whether the moving defendant is adequately protected against any prejudice that may result from discovery proceeding against other defendants, where *plaintiff* seeks to lift the stay and the non-moving defendant *opposes*. *See, e.g.*, *In re CFS-Related Sec. Fraud Litig.*, 179 F. Supp. 2d 1260, 1263 (N.D. Okla. 2001) (reasoning that "[i]f a plaintiff and a non-moving defendant are engaging in discovery, a moving defendant is going to want to be part of that process to protect its own interests"); *In re Refco, Inc. Sec. Litig.*, 2006 WL 2337212, at *4 (S.D.N.Y. Aug. 8, 2006).

That is not the case here. Because no defendant opposes the lifting of the stay, and no defendant has identified any prejudice to proceeding with discovery, no similar impediment exists. In this case, Ms. Javice has not moved to dismiss the claims against her, and Mr. Amar— who has moved to dismiss the claims against him (which includes several common law claims not even subject to the stay)—consents to the requested relief and is prepared to proceed with document discovery while his motion remains pending. JPMC, too, has represented that it "is prepared to commence discovery promptly . . . if this Court concludes that Javice and JPMC should begin to conduct discovery in this matter," and has argued that a a partial lifting of the stay is all the more appropriate "[g]iven that Javice filed an answer" rather than move to dismiss the Complaint "and that JPMC's cause of action under Section 10(b) is just one of seven causes of action" in its lawsuit.[7] D.I. 31, at 1 n.1. There is simply no reason to impose a continued stay of

---

[7] In addition, Ms. Javice's counterclaims filed against JPMC on February 27, 2023 (D.I. 10, at 93-102) are not implicated by the PSLRA stay and should be the subject of discovery. *See*

document discovery here.

> **C.     The Requested Party and Third-Party Document Discovery Is Sufficiently Particularized Under The Circumstances Presented Here**

 "Although the concept of particularized discovery is a nebulous one, and the phrase is not devoid of ambiguity, a discovery request is particularized within the meaning of 15 U.S.C. § 78u-4(b)(3)(B) if the party seeking discovery under the exception . . . adequately specif[ies] the target of the requested discovery." *Dipple*, 870 F. Supp. 2d at 391 (citations and internal quotation marks omitted).  "Discovery is sufficiently particularized when it is directed at specific persons and sufficiently limits the type of documents to be preserved." *In re Heckmann Corp. Sec. Litig.*, 2011 WL 10636718, at *4 (D. Del. Feb. 28, 2011) (citations and internal quotation marks omitted). "[W]hether discovery requests are 'particularized' depends upon 'the nature of the underlying litigation.'" *Dipple*, 870 F. Supp. 2d at 391 (quoting *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 220 F.R.D. 246, 250 (D. Md. 2004)).

Ms. Javice intends to seek all relevant documents and communications from JPMC and relevant third parties related to the claims, counterclaims, and defenses at issues in this action, including, but not limited to, any documents JPMC gathered during the course of its internal investigations or referenced or relied upon in its Complaint; any documents JPMC provided or showed to the USAO-SDNY, SEC, or any other third party; and any documents that any relevant third parties provided to the USAO-SDNY, SEC or any other third party.  There should be no impediment for JPMC or others to produce the foregoing universe of documents,  given that they have already been collected and, in some instances, provided to others.

---

*In re CFS-Related Sec. Fraud Litig.*, 179 F. Supp. 2d at 1263 (holding that the PSLRA's discovery stay does not apply unless the claims "arise under Chapter 2B of the 1934 Securities Act"); 15 U.S.C. § 78u-4(b)(3)(B).

Ms. Javice also intends to seek all relevant documents and communications from JPMC and relevant third parties including but not limited to those relating to the negotiation of the merger; the due diligence performed in connection with the merger; the role and understanding of the various professional investment and legal advisors to Frank and JPMC in the diligence and merger process; JPMC's evaluation and investment thesis regarding the Frank business; the basis for the purchase price for the Frank business offered by JPMC; JPMC's integration strategy and execution regarding the Frank business; the relevant metrics surrounding Frank's "users" or "customers"; the data validation request by JPMC and the use of synthetic data to complete that request; JPMC's understanding of the regulatory constraints impacting Frank's business, including the use of personal identifying information and direct marketing to Frank customers; Ms. Javice's whistleblowing complaints and protests to JPMC leadership; JPMC's retaliatory actions and internal investigations directed against Ms. Javice; Ms. Javice's suspension and termination by JPMC; and any other documents and communications generally relevant to any of the facts, claims, counterclaims or defenses at issue in this litigation through the use of appropriate and negotiated search terms and parameters.

The third parties from whom Ms. Javice intends to seek documents include those referenced in JPMC's Complaint or Ms. Javice's counterclaims. These third parties, who were all involved in the underlying events or featured in the parties' pleadings, are well aware of their relevance to this matter and the scope of potentially relevant documents they may possess.

Given the unique circumstances presented by this motion, this requested scope of document discovery amply meets the subjective standard for particularization contemplated by the PSLRA—especially since the particularity requirement is intended as a limitation on boundless pre-dismissal discovery by *plaintiffs* seeking to bolster a potentially frivolous claim and not, as here, by

defendants seeking the documents needed to defend themselves. *See, e.g.*, *In re WorldCom*, 234 F. Supp. 2d at 306 (discovery requests of documents already provided to government agents in related proceedings met particularity requirement even over *defendants'* objection where plaintiffs were not "in any sense engaged in a fishing expedition or an abusive strike suit" nor acting "in contravention of the fundamental rationales underlying the PSLRA discovery stay," holding that "defendants cannot call upon the ambiguous notion of 'particularized' discovery to bend Section 78u-4(b)(3)(B) to a purpose for which it was not intended"). The legislative purpose of the stay also may be considered in assessing the meaning of particularity, *see, e.g.*, *In re LaBranche Sec. Litig.*, 333 F. Supp. 2d 178, 183 (S.D.N.Y. 2004); *In re Firstenergy Corp. Sec. Litig.*, 229 F.R.D. 541, 545 (N.D. Ohio 2004), and where, as here the requested scope of discovery does not contravene the "rationale[s] underlying the PSLRA's discovery stay provision," subjective notions of particularity should impose to impediment to appropriately lifting the stay for the requested purposes. *In re WorldCom*, 234 F. Supp. 2d at 305; *Mishkin v. Ageloff*, 220 B.R. 784, 793 (S.D.N.Y. 1998) (noting that "the concept of particularized discovery is a nebulous one, and the phrase is not devoid of ambiguity"). Here, Ms. Javice, as the intended beneficiary of the statute, could not possibly be acting "in contravention of the fundamental rationales underlying the PSLRA," *In re WorldCom,* 234 F. Supp. 2d at 306, and her request to lift the stay to permit discovery solely for the production of documents and tangible things pursuant to Federal Rules of Civil Procedure 26, 34 and 45 should be granted.

## CONCLUSION

For the foregoing reasons, Ms. Javice respectfully requests that the Court grant this motion, on consent of her co-defendant Mr. Amar, to permit discovery solely for the production of documents and tangible things, pursuant to Federal Rules of Civil Procedure 26 and 34 and, as applied to nonparties, pursuant to Federal Rule of Civil Procedure 45.

*/s/ Michael A. Barlow*

Michael A. Barlow (#3928)

OF COUNSEL:

Samuel D. Cordle (#6717)

Alex Spiro

ABRAMS & BAYLISS LLP

Maaren A. Shah

20 Montchanin Drive, Suite 200

JP Kernisan

Wilmington, Delaware 19807

QUINN EMANUEL URQUHART

(302) 778-1000

  & SULLIVAN, LLP

barlow@abramsbayliss.com

51 Madison Avenue, 22nd Floor

cordle@abramsbayliss.com

New York, New York 10010

(212) 849-7000

alexspiro@quinnemanuel.com

*Attorneys for Defendant / Counterclaim*

maarenshah@quinnemanuel.com

*Plaintiff Charlie Javice*

jpkernisan@quinnemanuel.com

Dated: June 1, 2023

21