# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JPMORGAN CHASE BANK, N.A., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CHARLIE JAVICE, OLIVIER AMAR, CHARLIE JAVICE, in her capacity as Trustee of CHARLIE JAVICE 2021 IRREVOCABLE TRUST #1, CHARLIE JAVICE, in her capacity as Trustee of CHARLIE JAVICE 2021 IRREVOCABLE TRUST #2, and CHARLIE JAVICE in her capacity as Trustee of CHARLIE JAVICE 2021 IRREVOCABLE TRUST #3, | ) ) ) ) ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |

C.A. No. 22-01621-JDW

## PLAINTIFF'S BRIEF IN RESPONSE TO DEFENDANTS' MOTION TO LIFT THE PSLRA'S AUTOMATIC DISCOVERY STAY

OF COUNSEL:

William M. Regan
Allison M. Wuertz
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
(212) 918-3000

POTTER ANDERSON & CORROON LLP
Peter J. Walsh, Jr. (#2437)
Michael A. Pittenger (#3212)
Jonathan A. Choa (#5319)
Carla M. Jones (#6046)
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
mpittenger@potteranderson.com
pwalsh@potteranderson.com
jchoa@potteranderson.com
cjones@potteranderson.com

Dated: June 15, 2023

*Attorneys for JPMorgan Chase Bank, N.A.*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

RELEVANT BACKGROUND ................................................................................................. 1

ARGUMENT ............................................................................................................................. 2

I.      JPMC OPPOSES JAVICE'S AND AMAR'S REQUEST FOR A PARTIAL LIFTING OF THE DISCOVERY STAY; IF DISCOVERY IS OPENED, FULL DISCOVERY SHOULD BE ALLOWED. ........................................................................................................ 2

      A.      Javice and Amar Misrepresented JPMC's Position on a Partial Lifting of the PSLRA Discovery Stay. ............................................................................. 3

      B.      Defendants' Request Is One-Sided and Contrary to Discovery Envisioned Under the Federal Rules of Civil Procedure. ............................................ 3

      C.      Full Discovery Allows Each Party to Pursue Evidence in Support of Their Claims and Defenses. .................................................................... 5

CONCLUSION ......................................................................................................................... 9

# TABLE OF AUTHORITIES

**Cases**

*Lawson v. Love's Travel Stops & Country Stores, Inc.*,
    No. 1:17-CV-1266, 2019 WL 5622453 (M.D. Pa. Oct. 31, 2019) ......................................4

*Liguria Foods, Inc. v. Griffith Labs., Inc.*,
    320 F.R.D. 168 (N.D. Iowa 2017) ......................................................................................4

*Sentis Grp., Inc. v. Shell Oil Co.*,
    763 F.3d 919 (8th Cir. 2014) ..............................................................................................4

*Winer Fam. Tr. v. Queen*,
    No. CIV.A. 03-4318, 2004 WL 350181 (E.D. Pa. Feb. 6, 2004) ........................................5

*In re Lernout & Hauspie Sec. Litig.*,
    214 F. Supp. 2d 100 (D. Mass. 2002) .................................................................................5

Plaintiff JPMorgan Chase Bank, N.A. ("JPMC") respectfully submits this brief in opposition to: (i) Defendant Charlie Javice's motion to partially lift the automatic stay of discovery provided for in the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); and (ii) Defendant Olivier Amar's parallel and duplicative motion to partially lift the PSLRA stay.

## PRELIMINARY STATEMENT

JPMC opposes Javice's and Amar's motions requesting a **partial** lifting of discovery for three reasons: (1) Defendants misrepresented JPMC's position on their motions, as JPMC indicated it had no position on a motion to open **full** discovery; (2) Defendants seek a one-sided discovery process that benefits them only, the opposite of what is contemplated by the Federal Rules of Civil Procedure; and (3) full discovery allows both parties to pursue evidence supporting their respective claims and defenses, and JPMC has identified below specific discovery that would support lifting the PSLRA's stay of discovery. Accordingly, if the PSLRA stay on discovery is lifted, **full** discovery should be allowed, including depositions and third-party requests, so that both JPMC and Defendants are allowed to develop facts to support their claims and defenses. Otherwise, Defendants' request for partial discovery for their benefit should be denied.

## RELEVANT BACKGROUND

In late May, Javice (acting through counsel) contacted JPMC with the following message: "We are writing to seek your position as to whether you would agree to open **full** discovery in the above-referenced matter." *See* Walsh Dec., Ex. A (May 21-29, 2023 Email Correspondence Between JP Kernisan and W. Regan), 3-4 (emphasis added). In response, JPMC asked Javice to clarify that "full discovery" included actual participation by Javice in the

discovery process (*i.e.*, that Javice would produce documents and provide deposition testimony to JPMC without invoking her Fifth Amendment right against self-incrimination). *See id.* at 2-3. Javice responded that she "does not agree to waive anything" and "reserves all rights" but again asked that JPMC provide its position on "agreeing to lift the PSLRA stay and open **full** discovery." *See id.* at 2 (emphasis added). JPMC responded that it would "take no position" on Javice's proposed motion to open full discovery. *See id.* at 1-2.[1]

In filing this motion, however, Javice disregarded the entirety of the meet and confer exchange, filed a motion to lift the PSLRA stay **solely** as to document discovery, and indicated that JPMC took no position on the motion. JPMC, however, never represented that it took no position on a request for partial, documents-only discovery because Javice **never attempted** to meet and confer on that request. To the extent the Court considers lifting the PSLRA discovery stay in response to Defendants' motion, it is JPMC's position that the Court should lift the stay as to all discovery (including but not limited to depositions of Javice and Amar). JPMC opposes partial, selective discovery that only favors Defendants.

## ARGUMENT

**I.  JPMC OPPOSES JAVICE'S AND AMAR'S REQUEST FOR A PARTIAL LIFTING OF THE DISCOVERY STAY; IF DISCOVERY IS OPENED, FULL DISCOVERY SHOULD BE ALLOWED.**

If the PSLRA stay is lifted, Defendants' request for partial, documents-only discovery should be denied, and instead **full** discovery for all of the parties should be allowed, including but not limited to depositions of witnesses with knowledge of relevant facts, such as Javice,

---

[1] Shortly before Javice's request to JPMC, the United States Attorney's Office for the Southern District of New York ("SDNY") had filed a motion to stay the SEC action filed against Javice (*SEC v. Javice*, No. 23 Civ. 2795-LJL (S.D.N.Y. May 24, 2023), ECF No. 19-20). Given the SDNY's position in that case, JPMC advised Javice's counsel that it should ascertain the position of the SDNY before filing a motion in the instant case.

Amar, the data science professor retained by Javice, investment bankers retained by Frank for JPMC's acquisition, Frank's former employees, Frank's Board members and investors, and Javice's accountants.

### A. Javice and Amar Misrepresented JPMC's Position on a Partial Lifting of the PSLRA Discovery Stay.

As an initial matter, Defendants' request for a partial lifting of the PSLRA discovery stay should be denied because Defendants misrepresented JPMC's position to the Court and, in fact, the parties have not met and conferred regarding a request for partial opening of discovery for document productions only. During the meet and confer process, Javice expressly stated on two occasions that she intended to file a motion asking this Court to "open full discovery." In response, JPMC advised that it was the plaintiff in this action and stood ready to engage in **full** discovery, and in particular to depose Javice and Amar and question them directly about their fraud. Javice then pulled a bait-and-switch, filing a motion seeking the "partial lifting" of the PSLRA stay to allow for documents-only discovery and falsely stating that JPMC had taken no position on Javice's request to **partially** lift the stay. Not true: JPMC took no position only when Javice's proposal was to open full discovery. On this basis alone, Defendants' motion is improper and should be denied.

### B. Defendants' Request Is One-Sided and Contrary to Discovery Envisioned Under the Federal Rules of Civil Procedure.

Defendants' request for a partial lifting of the stay is also improper because it represents a request for one-sided discovery that is intended to be beneficial only to Defendants. Throughout her brief, Javice repeats a narrative that she has no documents to defend herself and JPMC

3

possesses the relevant evidence in this case.[2] Javice Br. at 1-4, 12-17. Based on Defendants' premise, a partial lifting of the stay to allow for documents-only discovery is tantamount to sanctioning a discovery process where JPMC is the only party providing information, almost certainly in response to discovery requests that would amount to a fishing expedition. In fact, Javice already made clear that she will not answer any discovery, written or otherwise, related to the more than $9 million dollars she appears to have fraudulently conveyed or the systems passwords she has misappropriated.[3] Defendants' notion of a selective discovery process is the opposite of what is contemplated by the Federal Rules of Civil Procedure, and the Court should reject it. *See, e.g.*, *Lawson v. Love's Travel Stops & Country Stores, Inc*., No. 1:17-CV-1266, 2019 WL 5622453, at *4 (M.D. Pa. Oct. 31, 2019) ("[T]he legal principles governing the[ parties] reciprocal discovery obligations are fixed, firm, and absolutely symmetrical."); *Liguria Foods, Inc. v. Griffith Labs., Inc.*, 320 F.R.D. 168, 183 (N.D. Iowa 2017) (quoting *Sentis Grp., Inc. v. Shell Oil Co.*, 763 F.3d 919, 925 (8th Cir. 2014)) ("Rule 26(b)(1) does not give any party 'the unilateral ability to dictate the scope of discovery based on their own view of the parties' respective theories of the case,' because '[l]itigation in general and discovery in particular . . . are not one sided.'").

---

[2] In its first-filed motion for discovery, JPMC noted that Javice has refused to turnover access to JPMC system passwords. Javice opposed discovery in that motion and, in this motion too, she indicated that she plans to object to any non-document discovery on that topic. Javice cannot have it both ways: she cannot claim to have no access to discovery but continue to withhold passwords to JPMC's systems.

[3] JPMC filed its own motion to partially open discovery on these two discrete issues related to Javice's transfer of merger proceeds to an apparent shell company and her continued possession of JPMC property. *See* ECF No. 28-29. In that motion, JPMC provided specific, fact-based reasons as to why discovery on the two topics is urgent and should occur before the Court rules on Amar's motion to dismiss. In contrast, Javice provides **no facts** related to her core arguments that discovery will somehow explain that, among other things, her misrepresentation that Frank had 4.265 million customers was not fraudulent.

### C. Full Discovery Allows Each Party to Pursue Evidence in Support of Their Claims and Defenses.

Defendants' "heads, I win; tails, you lose" approach to discovery is built on a 26-page unsupported narrative that the discovery process will "exonerate" them. Javice Br. at 1-2, 9; Amar Br. at 1. Defendants, however, have **no** appetite for a discovery process that would allow them to be deposed and questioned under oath. The Court should not sanction a discovery process that aims to allow Defendant to try to "exonerate" themselves, as it would be unduly prejudicial to permit special treatment for Defendants while denying Plaintiff the discovery it seeks to prove their claims. Instead, it should allow full discovery where all the parties can pursue evidence supporting their respective claims and defenses. As required to conduct discovery under the PSLRA while a motion to dismiss is pending,[4] JPMC identifies below specific discovery and information needed to support lifting the PSLRA's stay on discovery.

This case involves a calculated scheme to defraud, originating at least ten months prior to the Merger Agreement. Defendants' fraudulent scheme is documented extensively in emails and Slack messages and, in light of Defendants' unfounded claim that these emails were cherry-picked, JPMC wants to move forward with prompt depositions of Javice and Amar. JPMC made its desire known during the meet and confer process, and Javice already has stated that she has no plans to waive her Fifth Amendment rights. That certainly is her constitutional right, but it is not a basis to limit discovery that Defendants have asked to be opened. In short, deposition of the parties is a specific form of discovery justifies lifting the PSLRA's stay.

Similarly, Defendants' requested approach to discovery would prevent JPMC from

---

[4] Specifically, a party seeking discovery must "'specify the target of the requested discovery and the types of information needed . . . .'" *Winer Fam. Tr. v. Queen*, No. CIV.A. 03-4318, 2004 WL 350181 (E.D. Pa. Feb. 6, 2004) (quoting *In re Lernout & Hauspie Sec. Litig.*, 214 F. Supp. 2d 100, 108 (D. Mass. 2002)).

5

deposing third-party witnesses to determine what they heard Defendants say in meetings and what they saw in documents. Here, JPMC seeks to depose: (1) the data science professor that Javice hired to create a fake list; (2) the marketing vendors that Amar hired to supply email and mailing addresses for 4.5 million college students; and (3) the investment bankers who represented Javice's dealing with two potential buyers and saw decks where Javice expressly pitched the business strategy of marketing to Frank's historical and current customers (this contemporaneous pitch material is wholly inconsistent with Javice's core defense for this case).[5]

Next, JPMC seeks discovery from a number of former Frank employees who followed Javice's instructions in January 2021 to change all public-facing student customer numbers to 4.25 million users but privately expressed disbelief at Javice's claims.[6]

More specifically, right at the time Javice was meeting with an investment banker in January 2021 to persuade the banker to take Frank on as a client, Javice directed her team to change Frank's public-facing numbers to state that Frank had 4.25 million student customers.[7] To justify this number, Javice told certain members of her team that she had changed Frank's

---

[5] Walsh Dec., Ex. B (April 3, 2021 Talking Points) ("Data: FAFSA application has 136 data points and covers all financial product KYC & apps (like students loans & bank accounts). [Bank Buyer] could seamlessly upsell / cross sell customers with a complete profile with one click. Competition? Frank will either build the card & account products in the next 12-18 months or you can move now."); Walsh Dec., Ex. C (Frank Pitch Book), 9 ("The Frank Solution . . . Post-College Student Loan Repayment, Credit Cards, Bank Accounts, Investment Accounts . . . Frank is a centralized suite of products where students can apply for and other financial products after they file FAFSA for seamless KYC and onboarding."); *id.* at 12 (listing "bank accounts" as a driver of sustainable growth); *id.* at 14 ("136 question Student FAFSA survey provides user-approved access to unparalleled data and insights?"); Walsh Dec., Ex. D (July 22, 2021 Javice Email) (during due diligence, Javice specifically stated to JPMC that she envisioned a plan to "Embed Chase Card Services with Frank: The Frank Scholar Card," which would "Integrate into Frank FAFSA Flow.")

[6] Walsh Dec., Ex. E (January 11, 2021 Slack Exchange).

[7] Walsh Dec., Ex. F (January 19, 2021 Slack Exchange) ("please change the [home page]").

reporting metric such that website visitors now would be treated as "users." In private Slack messages, junior members of the team expressed uniform disbelief:



Walsh Dec., Ex. G (January 11, 2021 Slack Exchange);

7



Walsh Dec., Ex. E (January 11, 2021 Slack Exchange). Other members of the team privately wrote to each other: "Are we setting ourselves up for [a] rough reckoning in diligence."[8] The groundswell of concern prompted one Frank executive to ask Javice to "please wait"[9] to change the number, at which point Javice turned to her second in command, Olivier Amar, and instructed him to "make [the] numbers happy."[10]

After changing Frank's reporting metrics and public-facing numbers in January 2021, Defendants then populated a data room and made express statements in pitch meetings for JPMC regarding Frank's user base. These statements were memorialized by dedicated notetakers, and the evidence shows that Javice reported Frank's 4.25 million users to JPMC based on Frank's **prior** reporting metric, namely consumers who created a Frank account by providing their name,

---

[8]   Walsh Dec., Ex. H (January 5, 2021 Slack Exchange).

[9]   Walsh Dec., Ex. F.

[10]  Walsh Dec., Ex. I (February 25, 2021 Slack Exchange).

8

email number, telephone number, and password. Walsh Dec., Ex. J (Due Diligence Meeting Notes), 6. In short, the foregoing events involving Frank's former employees represent specific discovery that JPMC seeks to develop via depositions and should be allowed to do so if the PSLRA stay is lifted.

Finally, Javice claims that JPMC has cherry-picked emails from Frank's systems to support its fraud claim. Although JPMC disputes this claim, it is telling that Defendants never (1) argued in any of their pleadings "I did not provide JPMC with a Fake Customer List" or "the list was not fake because I actually had 4 million users, (2) pointed to any list that would substantiate Frank's claims that more than 2 million of their customers had started Frank's questionnaire regarding FAFSA (as Frank's data room unequivocally represents); or (3) offered any explanation regarding millions of email addresses for college students that were purchased on the open market but provided to JPMC as "Frank's users" during JPMC's marketing campaign. These topics, which are not exhaustive, are specific discovery topics that JPMC seeks to raise with witnesses if the Court grants full discovery.

## CONCLUSION

JPMC opposes the Javice and Amar motion for a partial lifting of the PSLRA stay. If the Court decides to allow discovery to proceed, it should order full and open discovery to avoid undue prejudice and direct all parties to fully participate in all of the discovery contemplated by the Federal Rules of Civil Procedure.

| | |
|---|---|
| OF COUNSEL: | POTTER ANDERSON & CORROON LLP |
| William M. Regan<br>Allison M. Wuertz<br>HOGAN LOVELLS US LLP<br>390 Madison Avenue<br>New York, NY 10017<br>(212) 918-3000 | By: /s/ Jonathan A. Choa<br>    Peter J. Walsh, Jr. (#2437)<br>    Michael A. Pittenger (#3212)<br>    Jonathan A. Choa (#5319)<br>    Carla M. Jones (#6046)<br>    Hercules Plaza<br>    P.O. Box 951<br>    Wilmington, DE 19899<br>    (302) 984-6000<br>    mpittenger@potteranderson.com<br>    pwalsh@potteranderson.com<br>    jchoa@potteranderson.com<br>    cjones@potteranderson.com |
| Dated:  June 15, 2023 | *Attorneys for JPMorgan Chase Bank, N.A.* |