IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **JPMORGAN CHASE BANK, N.A.,**<br><br>*Plaintiff,*<br><br>v.<br><br>**CHARLIE JAVICE, et al.**<br><br>*Defendants.* | **Case No. 1:22-cv-01621-JDW** |

### MEMORANDUM

When JPMorgan Chase Bank N.A. ("JPMC") hired Charlie Javice, it entered into an arbitration agreement. Now that the relationship has soured and Ms. Javice has asserted counterlciams against JPMC, JPMC seeks to invoke that arbitration agreement. At least four of the counterclaims are subject to arbitration, but not in Delaware, so I can't compel arbitration. The other two counterclaims might be subject to arbitration, but JPMC and Ms. Javice agreed to let an arbitrator decide that question, so I will stand aside and let an arbitrator make that decision.

**I.    BACKROUND**

  **A.    Facts**

Ms. Javice is the founder and original owner of TAPD, Inc., which did business under the name "Frank." Frank operates a service that helps students apply for financial aid. In July 2021, JPMC and Ms. Javice discussed a possible acquisition of Frank. On August 1,

2021, in the course of negotiating the acquisition, JPMC offered Ms. Javice a job as Managing Director – Head of Student Solutions. The Parties signed the Employment Agreement ("EA") on August 4, 2021, through which JPMC hired Ms. Javice.

The EA contains an arbitration agreement, pursuant to which Ms. Javice agreed to submit all "legally protected employment related claims . . . which arise out of or relate to [her] employment or separation from employment with JPMorgan Chase . . . including, but not limited to, . . . breach of an express or implied contract," to binding arbitration. (D.I. 25-1 at Ex. A, App. IV, ¶ 2.) The arbitration agreement also provides that arbitration should occur "in the state where [Ms. Javice is] currently or was most recently employed by" JPMC. (*Id.* at ¶ 6.) It also provides that "[a]ny dispute as to the arbitratibility of a particular issue or claim pursuant to this Agreement is to be resolved in arbitration." (*Id.* at ¶ 8.)

A second contract, the Merger Agreement ("MA"), governs JPMC's purchase of Frank. The Parties signed the MA on August 8, 2021, and it became effective on September 14, 2021. Section 9.10 of the MA contains a forum selection clause through which the Parties "irrevocably submit to the exclusive jurisdiction" of Deleware courts for any "Related Claims." (D.I. 16 at § 9.10.) It also contains an explicit waiver of any objection to bringing a Related Claim pursuant to that clause. Section 1.1 of the MA defines Related Claims as "all claims or causes of action . . . that may be based upon, arise out of or relate to this Agreement, the Related Documents and any other document or instrument

delivered pursuant to this Agreement . . . ." (*Id.* at § 1.1.) It defines Related Documents as "the Escrow Agreement and any other document, agreement, certificate or instrument entered into in connection with this Agreement[.]" (*Id.*)

When they signed the MA, JPMC and Ms. Javice also executed a third contract, the Payment Direction Agreement ("PDA"). The PDA delayed payments that JPMC owed Ms. Javice under the MA for her equity stake in Frank to a later date so long as she continued to work for JPMC. Paragraph D of the PDA clarifies that if Ms. Javice is fired for "Cause," JPMC can halt payments under the PDA and claw back any payments it already tendered. It also adopts the EA's definition of "Cause." (D.I. 25-1 at Ex. B, ¶ D.) Regarding dispute resolution, Paragraph F of the PDA incorporates Article 9 of the MA in its entirety, including Section 9.10's forum selection clause.

JPMC fired Ms. Javice in September 2022 because it claims to have discovered that Ms. Javice and Olivier Amar (her co-defendant) committed fraud in connection with JPMC's due diligence and acquisition of Frank. JPMC contends its termination of Ms. Javice was for Cause as defined in the EA, so it halted payments under the PDA and invoked the PDA's clawback provisions.

B.   **Procedural History**

JPMC filed its Complaint alleging various securities fraud, conspiracy, and other related claims, on December 22, 2022. Ms. Javice filed her Answer and Counterclaims on February 27, 2023. Ms. Javice's Counterclaims fall into two buckets: those based on or

related to the EA (Counterclaims 1, 2, 4, and 6, the "EA Counterclaims") and those based on the PDA (Counterclaims 3 and 5, the "PDA Counterclaims"). On March 20, 2023, JPMC filed a Motion To Dismiss And Compel Arbitration Of Charlie Javice's Counterclaims.

## II.     LEGAL STANDARD

The Court may grant a motion to compel arbitration at the pleadings stage if "it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause' . . ." *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir.2013) (citing *Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F.Supp.2d 474, 482 (E.D. Pa. 2011)). The Court must deny such a motion, however, when "the complaint and its supporting documents are unclear regarding the agreement to arbitrate." *Id*. A motion to compel arbitration calls for a two-step inquiry into whether (1) a valid agreement to arbitrate exits and (2) the particular dispute falls within the scope of that agreement. *See Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir.2005).

## III.    DISCUSSION

Ms. Javice and JPMC agree that they entered into a valid agreement to arbitrate and that the EA Counterclaims fall within the scope of that agreement. They disagree about whether the PDA Counterclaims apply and whether I have the power to compel arbitration.

### A. The PDA Counterclaims

"[A]rbitartion is a matter of contract and a party cannot be required to submit to arbitration any dispute which [the party] has not agreed so to submit." *Steelworkers v. Warrior & Gulf Nav. Co.*, 353 U.S. 574, 582 (1960). The FAA "presumptively favors the enforcement of arbitration agreements." *Harris v. Green Tree Fin. Corp.*, 183 F.2d 173, 178 (3d Cir. 1999). In fact, the FAA mandates that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

"To determine whether a valid arbitration agreement exists, [courts] apply ordinary state-law principles that govern the formation of contracts." *James v. Global TelLink Corp.*, 852 F.3d 262, 265 (3d Cir. 2017) (quotations omitted). However, federal law applies to the determination of whether a particular dispute is within the scope of an arbitration clause. *See Century Indem. Co. v. Certain Underwriters at Lloyd's, London, subscribing to Retrocessional Agreement Nos. 950548, 950549, and 950646*, 584 F.3d 513, 524 (3d Cir. 2009). Parties can agree by contract to arbitrate questions of arbitrability, but there must be clear and unmistakebale evidence that they did so. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943-44 (1995). The Third Circuit describes that burden as "onerous." *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 221 (3d Cir. 2007).

Ms. Javice and JPMC agreed to arbitrate disputes about arbitrability. As with any contract, the best evidence of the parties' intent is the language they use. In the arbitration

5

agreement, the language they use could not be more clear: "**[a]ny dispute** as to the arbitratibility of a particular issue or claim pursuant to this Agreement is to be resolved in arbitration.) (D.I. 25-1 at Ex. A, App. IV, ¶ 8.) That language demonstrates in clear and unmistakable terms the parties' agreement to submit to arbitration any dispute about whether a particular issue is subject to arbitration.

JPMC has made at least a colorable argument that the PDA Counterclaims are subject to arbitration. The arbitration agreement applies to any "employment-related claims … which arise out of or relate to my … separation from employment with JPMorgan Chase." (*Id.* at ¶ 2.) The use of the phrase "arise out of or relate to" indicates the parties intent that the arbitration clause would have a broad scope. *See., e.g., Zeller-Landau v. Sterne Agee CRT, LLC*, 2018 WL 334970, at * 4 (E.D. Pa. Jan. 9, 2018) (collecting cases); *see also Battaglia v. McKendry*, 233 F.3d 720, 727 (3d Cir. 2000) ("when phrases such as 'arising under' and 'arising out of' appear in arbitration provisions, they are normally given broad construction"). The PDA Counterclaims assert that JPMC breached the PDA because it claimed to have terminated Ms. Javice for cause. Those claims relate to Ms. Javice's separation from employment with JPMC, so they arguably fall within the scope of the arbitration agreement.

Ms. Javice's contrary arguments about Section 9.10 of the MA are not frivolous. I have my doubts about whether they're right, but given the Parties' clear and unmistakeable decision to have an arbitrator decide questions of arbitrability, it's not for

me to decide. Instead, I will permit Ms. Javice and JPMC make those arguments to an arbitrator.

### B.     Stay Vs. Dismissal

Under the FAA, a judge may issue an order directing an arbitration to proceed in the manner provided for in an arbitration agreement. *See* 9 U.S.C. § 4. But the FAA restricts my power to compel arbitration to "the district in which the petition for an order directing such arbitration is filed." 9 U.S.C. § 4. Therefore, I can only compel arbitration in Delaware. *See Econo-Car Int'l, Inc. v. Antilles Car Rentals, Inc.*, 499 F.2d 1391, 1394 (3d Cir. 1974). The arbitration agreement requires the arbitration to occur in the place where Ms. Javice worked when JPMC terminated her employment (unless the parties agree otherwise). I understand that to be New York, although that's not necessarily clear in the pleadings. In any event, it does not appear to be Delaware. As a result, I cannot compel arbitration without altering the arbitration agreement.

While I can't compel arbtiration, I also can't let Ms. Javice pursue claims in this Court that she has agreed to arbitrate. When a court can't compel arbitration because the chosen forum is in another district, the practice in this Circuit is to dismiss the claims. *See, e.g.*, *Dizon v. J.P. Morgan Chase*, No. 22-716, 2023 WL 2456063 *2 (D. Del. Mar. 10, 2023); *Gold Lion Steel LLC v. Global Merchant Cash, Inc.*, 21-cv-10702, 2022 WL 596997 at *6 (D.N.J. Feb. 28, 2022). *See also Shaffer v. Graybill*, 68 Fed. App'x 374, 377 (3d Cir. 2003). That practice makes sense for the EA Counterclaims, which Ms. Javice has to arbitrate if

she wants to pursue them. But it doesn't make sense for the PDA Counterclaims because I don't yet know if they will be heard in arbitration. That's up to an arbitrator. So I will stay the PDA Counterclaims pending an arbitrator's decision about whether those claims are arbitrable.

### IV. CONCLUSION

Ms. Javice's EA Counterclaims are subject to arbitration, but not in Delaware. Her PDA Counterclaims might be subject to arbitration, and the question of whether they are is, itself, subject to arbitration. I will dismiss the EA Counterclaims and stay the PDA Counterclaims until an arbitrator decides if they will be heard in arbitration. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

July 10, 2023