## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

J.P. Morgan Chase Bank, N.A.,

                 Plaintiff,

    v.

CHARLIE JAVICE and
OLIVIER AMAR,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Civil Action No. 22-01621-JDW

## THE GOVERNMENT'S MOTION TO INTERVENE AND STAY DISCOVERY

DAVID C. WEISS
United States Attorney for the
District of Delaware

By: /s/ Jacob Laksin
      Jacob Laksin
      Assistant United States Attorney
      1313 N. Market Street
      Suite 400
      Wilmington, Delaware 19801
      Telephone: (302) 225-9409

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND ......................................................................................................... 2

   I.    FACTUAL BACKGROUND ............................................................................. 2

   II.   PROCEDURAL BACKGROUND...................................................................... 4

       A.    The Criminal Case in the U.S. District Court for the Southern District of New York 5

       B.    The SEC Case in the U.S. District Court for the Southern District of New York ...... 7

       C.    The Civil Case in the U.S. District Court for the District of Delaware ..................... 8

ARGUMENT .............................................................................................................. 9

   I.    THE GOVERNMENT SHOULD BE GRANTED PERMISSION TO INTERVENE...... 9

   II.   A STAY OF DISCOVERY IN THIS ACTION SHOULD BE GRANTED ................ 11

       A.    Applicable Law ............................................................................................ 11

       B.    Discussion ................................................................................................... 14

           1.    The Extent of the Overlap................................................................... 14

           2.    The Status of the Criminal Case .......................................................... 14

           3.    The Potential Prejudice to the Parties ................................................... 15

           4.    The Interests of the Court ................................................................... 16

           5.    The Public Interest ............................................................................ 17

CONCLUSION ......................................................................................................... 22

TABLE OF AUTHORITIES

**Cases**

*Bd. of Governors of the Federal Reserve System v. Pharaon*, 140 F.R.D. 634 (S.D.N.Y. 1991) 19

*Bryer v. Jefferson*, No. Civ. 12-1028-GMS, 2013 WL 3753420 (D. Del. July 8, 2013)........ 13, 17

*Bureerong v. Uvawas*, 167 F.R.D. 83 (C.D. Cal. 1996) ............................................................ 10

*Campbell v. Eastland*, 307 F.2d 478 (5th Cir. 1952)) ................................................................ 19

*Colombo v. Bd. of Educ. for the Clifton Sch. Dist.*, No. Civ.A. 11-00785 (CCC), 2011 WL
  5416058 (D.N.J. Nov. 4, 2011) .............................................................................................. 13

*Doe v. Schneider*, No. Civ. 08-3805, 2010 WL 11561113 (E.D. Pa. June 8, 2010)................... 13

*In re Par Pharm, Inc. Sec. Litig.*, 133 F.R.D. 12 (S.D.N.Y. 1990) ........................................... 15

*Landis v. N. Am. Co.*, 299 U.S. 248 (1936) ............................................................................... 11

*Maloney v. Gordon*, 328 F. Supp. 2d 508 (D. Del. 2004).............................................. 13, 15, 17

*Parker v. Dawson*, No. 06 Civ. 6191 (JFB), 2007 WL 2462677 (E.D.N.Y. Aug. 27, 2007)....... 14

*Phillip Morris Inc. v. Heinrich*, No. 95 Civ. 328 (LMM), 1996 WL 363156 (S.D.N.Y. June 28,
  1996)....................................................................................................................................... 19

*S.E.C v. Nicholas*, 569 F.Supp.2d 1065 (C.D. Cal. 2008) .............................................. 10, 18, 19

*S.E.C. v. Dresser Indus., Inc.*, 628 F.2d 1368 (D.C. Cir. 1980) .............................................. 16

*S.E.C. v. One or More Unknown Purchasers of Secs. of Global Indus.*, 2012 U.S. Dist. LEXIS
  162772, (S.D.N.Y. Nov. 9, 2012)........................................................................................... 17

*SEC v. Beacon Hill Asset Management LLC*, No. 02 Civ. 8855 (LAK), 2003 WL 554618
  (S.D.N.Y. Feb. 27, 2003)........................................................................................................ 18

*SEC v. Chakrapani*, Nos. 09 Civ. 325 (RJS), 09 Civ. 1043 (RJS), 2010 WL 2605819 (S.D.N.Y.
  June 29, 2010).......................................................................................................................... 19

*SEC v. Chestman*, 861 F.2d 49 (2d Cir. 1988)........................................................................... 10

*SEC v. Coburn*, No. Civ. 195820 (KMM), 2019 WL 6013139 (D.N.J. Nov. 14, 2019)........ 13, 16

*SEC v. Contorinis*, No. 09 Civ. 1043 (RJS), 2012 WL 512626 (S.D.N.Y. Feb. 3, 2012)........... 17

*SEC v. Credit Bancorp.*, 297 F.3d 127, 130 (2d Cir. 2002)........................................................ 10

*SEC v. Javice*, No. 23 Civ. 02795 (LJL)................................................................................... 4

*SEC v. Schiff*, No. Civ. 05-4132 (FSH), 2006 WL 2690266 (D.N.J. Sept. 19, 2006) ............... 13

*SEC v. Shkreli*, No. 15 Civ. 7175 (KAM), 2016 WL 1122029 (E.D.N.Y. Mar. 22, 2016) .......... 15

*Trustees of Plumbers and Pipefitters Nat'l Pension Fund, et al. v. Transworld Mechanical, Inc.*,
  886 F. Supp. 1134 (S.D.N.Y. 1995) .................................................................................. 12, 15

*Tucker v. New York Police Dep't*, No. 08-CV-2156 (DMC), 2010 WL 703189 (D.N.J. Feb. 23,
  2010)................................................................................................................................. 13, 15

*Tuzman*, No. 15 Civ. 7057 (AJN), ECF No. 43 ......................................................................... 18

*Twenty First Century Corp. v. LaBianca*, 801 F. Supp. 1007 (E.D.N.Y. 1992)......................... 10

*United States v. Kordel*, 397 U.S. 1 (1970) .............................................................................. 11

*United States v. McCarthy*, 292 F. Supp. 937 (2d Cir. 1968) ................................................... 18

*United States v. Mellon Bank*, 7545 F.2d 869 (3d Cir. 1976).......................................... 11, 12, 17

*United States v. One 1964 Cadillac Coupe DeVille*, 41 F.R.D. 352 (S.D.N.Y. 1966)................. 14

*United States v. Percevault*, 490 F.2d 126 (2d Cir. 1974)......................................................... 18

*Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd.*, 7 F. Supp. 2d 523 (D.N.J. 1998).................... 12, 14

**Statutes**

15 U.S.C. § 78u-4(b)(3)(B)......................................................................................................... 8

18 U.S.C. § 3500(b) .................................................................................................................... 20

**Rules**

Rule 24(a)(2) of the Federal Rules of Civil Procedure .................................................................... 9
Rule 24(b)(2) of the Federal Rules of Civil Procedure .................................................................... 9

The United States of America respectfully submits this motion (i) to intervene in the above-captioned case (the "Civil Case"), pursuant to Rule 24 of the Federal Rules of Civil Procedure; and (ii) to stay discovery in the Civil Case until the conclusion of the parallel criminal case, *United States v. Charlie Javice*, 23-cr.-251 (S.D.N.Y.) (AKH) (the "Criminal Case").

## PRELIMINARY STATEMENT

This Court should stay discovery in the Civil Case until the conclusion of the trial in the Criminal Case. The Civil Case arises from the same conduct and circumstances that underlie the Criminal Case and litigation of the Civil Case will necessarily involve the same facts, documents, and witnesses relevant to the criminal trial. A stay of discovery is appropriate because any exchange of discovery in the Civil Case would be asymmetrical and would allow the defendants to circumvent the criminal discovery rules and improperly tailor their defenses in the Criminal Case. And a stay of discovery now would be fair because it would permit the defendants to litigate putatively dispositive motions to dismiss in the Civil Case, while conserving the parties' resources and preventing improper abuse of civil discovery tools to gain advantage in the Criminal Case.

Counsel for J.P. Morgan Chase Bank N.A. has informed the Government that their client takes no position on the Government's motion.    Counsel for Javice has informed the Government that their client opposes the Government's motion.    Counsel for Amar has informed the Government that he opposes the Government's motion, inasmuch as Amar requests that document discovery proceed, but that any testimonial discovery be revisited upon completion of document discovery.[1]  But as detailed below, the fairness, efficiency, and public good resulting from a stay

---

[1] Amar's position, as provided by his counsel in a May 31, 2023 email to the Government, is the following:

> Mr. Amar opposes the Government's motion to intervene to seek a stay of discovery in this proceeding, which was commenced by JPMorgan's civil

of discovery outweighs the defendants' preferences. Accordingly, and for the reasons set forth below, the Government respectfully requests that this Court enter an order staying discovery in this action until the completion of the Criminal Case.

## BACKGROUND

### I.   FACTUAL BACKGROUND

As alleged in the complaint in the Criminal Case (the "Complaint," attached as Exhibit A) and the complaint by J.P. Morgan Chase Bank, N.A. ("JPMC") in this action (the "Civil Complaint"), in 2021, Javice and Amar engaged in a calculated scheme to falsely and dramatically inflate the number of customers of their company, Frank, in order to fraudulently induce JPMC to acquire Frank for $175 million. *See, e.g.*, Compl. ¶ 8.[2]

In or about 2017, Javice founded Frank, a for-profit company that offered an online platform designed to simplify the process of filling out the Free Application for Federal Student Aid ("FAFSA").   The FAFSA is a federal government form, available free of charge, that students use to apply for financial aid for college or graduate school.   Javice was Frank's CEO.   *See, e.g.*, Compl. ¶¶ 9, 15-16.   Amar was Frank's Chief Growth Officer.   In or about 2021, Javice began to pursue the sale of Frank to a larger financial institution.   Two major banks—one being JPMC—

---

complaint, because he believes that such a motion is premature and that a blanket stay of all discovery would unfairly prejudice his rights.   Rather, Mr. Amar believes that document discovery should proceed, and that the parties and the Court should revisit the issue of the timing of any testimonial discovery (e.g., interrogatories, requests for admission, depositions, etc.) following the close of document discovery.   This will give the parties in the civil action equal access to critical documents that Mr. Amar currently does not have, while affording greater and clearer insight into what, if any, interests of the parties to the action – and the Government – could be implicated by such testimonial discovery if the parties ultimately decide to seek such testimonial discovery.

[2] Citations to "Compl." refer to the criminal complaint.

expressed interest and began acquisition processes with Frank. Javice represented repeatedly to those banks that Frank had 4.25 million customers or "users." Javice explicitly defined "users"—to both banks—as individuals who had signed up for an account with Frank and for whom Frank therefore had at least four identified categories of data (i.e., first name, last name, email address, and phone number). In fact, Frank had less than 300,000 users. *See, e.g.*, Compl. ¶¶ 10, 18-19, 22-23.

When JPMC sought to verify the number of Frank's users and the amount of data collected about those users—information that was critical to JPMC's decision to move forward with the acquisition process—Javice fabricated a data set. In order to do this, Javice and Amar first approached a Frank employee and asked him to create a synthetic data set using, as a starting point, a smaller set of actual Frank data. After raising concerns about the legality of the request, the employee declined. *See* Compl. ¶ 22.

Javice then approached a data scientist and hired him to create an artificially generated data set (a so-called synthetic data set). Then, Javice provided that synthetic data set to an agreed-upon third-party vendor in an effort to confirm to JPMC that the data set had over 4.25 million rows, consistent with Javice's misrepresentations. Through this process, Javice caused the third-party vendor to convey to JPMC that the data set had over 4.25 million entries. *See, e.g.*, Compl. ¶¶ 11, 21, 24-26.

In reliance on Javice's fraudulent representations about Frank's users, JPMC agreed to purchase Frank for $175 million. Javice made millions of dollars from the acquisition. *See, e.g.*, Compl. ¶¶ 12, 31.

Unbeknownst to JPMC, at or about the same time that Javice was creating the fabricated data set, Javice and Amar sought to purchase, on the open market, real data for over 4.25 million college students to cover up their lies. Javice and Amar succeeded in purchasing a data set of 4.5

million students for $105,000, but it did not contain all the data fields that Javice had represented to JPMC were maintained by Frank.   Javice then purchased an additional set of data on the open market, in order to augment the data set of 4.5 million users.   After JPMC acquired Frank, JPMC employees asked Javice and Amar to provide the data set of Frank users so that JPMC could begin a marketing campaign to those users.   In response, Javice and Amar provided what was supposedly Frank's user data.   In fact, Javice provided the data she and Amar had purchased on the open market, at a small fraction of the price that JPMC paid to acquire Frank and its purported users. *See, e.g.*, Compl. ¶¶ 13, 28-30, 32.

## II.    PROCEDURAL BACKGROUND

The events set forth above have resulted in three different federal court proceedings: (1) a criminal prosecution against Javice and Amar in the Southern District of New York (*i.e.*, the Criminal Case); (2) an action by the Securities and Exchange Commission ("SEC") filed against Javice and Amar in the Southern District of New York, *SEC v. Javice*, No. 23 Civ. 02795 (LJL) (the "SEC Case"); and (3) the above-captioned civil case filed by JPMC against Javice and Amar in the District of Delaware (*i.e.*, the Civil Case). As described below, shortly after her indictment, aware that the Government intended to move for stays of discovery, Javice sought civil discovery in both the Civil Case and the SEC Case. The Government has sought and obtained a stay of discovery in the SEC Case, and now moves for the same in this case.

### A.   The Criminal Case in the U.S. District Court for the Southern District of New York

On April 3, 2023, Charlie Javice was arrested pursuant to a criminal complaint (the "Complaint") filed in the U.S. District Court for the Southern District of New York, charging Javice with conspiracy to commit wire fraud and bank fraud, wire fraud, bank fraud, and securities fraud.

On May 18, 2023, a grand jury in the Southern District of New York issued Indictment 23 Cr. 251 (AKH) charging Javice in four counts with conspiracy to commit wire fraud and bank fraud, wire fraud, bank fraud, and securities fraud.

On June 6, 2023, the Government and Javice appeared for their initial conference before Judge Hellerstein in the Criminal Case, at which the Government: (1) produced voluminous Rule 16 discovery to the defense; and (2) requested a trial date in October 2023—which was in fact scheduled, but then adjourned *sine die* at Javice's request.

With respect to discovery, prior to the start of the conference, the Government provided Javice's counsel a production cover letter and a hard drive containing discovery materials, pursuant to Federal Rule of Criminal Procedure 16, in the Criminal Case. The Government confirmed the same on the record, explaining that the Government "actually handed the defense a hard drive today, containing all or, if not all, the vast majority of the Rule 16 discovery in our possession presently." (Exhibit B (June 6, 2023 Tr.) at 4). The Government described "the size of the discovery" it had just produced, explaining that "the data is about 90 gigabytes, and to put it in a less technical way, it's about 106,000 files" consisting primarily "of subpoena returns from about 30 different . . . third parties." (*Id.* at 4). The discovery also included "three warrants related to cellphones," one of which was "for the cellphone that Ms. Javice had on her at her arrest," the contents of which the Government had not yet accessed. (*Id.* at 4-5). A fourth warrant, for the

seizure of assets in bank accounts, was "the extent of the warrants in the case." (*Id.* at 5-6). Finally, the Government noted that the criminal "investigation is ongoing, and as we receive additional materials, we will be providing them to the defense" promptly. (*Id.* at 6).

With respect to scheduling, the Government explained that the "defense has requested . . . that the Court set another conference in about 45 days," but "[t]he government's ready to try the case," "prepared to set a trial date today," and is "available in October" for the trial. (*Id.* at 8). Judge Hellerstein responded that he would "set a trial date when we're all ready, then I'll set it quickly." (*Id.* at 8). Judge Hellerstein set a conference for approximately 45 days later, on July 13, as requested by the defense. (*Id.*).

The Government then moved to exclude time under the Speedy Trial Act until the date of the conference requested by the defense, to which the defense objected. (*Id.* at 8-9). In response, the Government renewed its request "to set a trial date in October," estimating that the trial would take "eight to ten trial days." (*Id.* at 9). Judge Hellerstein accordingly scheduled trial to begin October 16. (*Id.*). Javice—immediately abandoning her objection to the exclusion of Speedy Trial time—requested that trial *not* proceed on that date and that a trial date not be set. (*Id.*).

On July 12, 2023, a grand jury in the Southern District of New York issued a superseding Indictment in the Criminal Case charging Amar in the same four counts as Javice. The superseding indictment is attached as Exhibit C.

The following day, at the July 13, 2023 conference, the Government again reiterated that it was ready to set a trial date, but understood that the defendants were requesting to return for another conference before setting a motions schedule. (July 13, 2023 Tr. attached as Exhibit D at 2-3). Judge Hellerstein scheduled another pretrial conference for August 15, 2023, to set a motions schedule and receive an update on the status of JPMC's rolling productions in response to the Government's grand jury subpoena. (*Id.* at 13-14). No trial date has yet been set.

**B.     The SEC Case in the U.S. District Court for the Southern District of New York**

On April 4, 2023, the SEC filed a complaint against Javice in the U.S. District Court for the Southern District of New York related to the same scheme charged in the Complaint.

On May 23, 2023, after learning that the Government intended to seek a stay of discovery in the SEC Case, Javice served requests for the production of documents on the SEC pursuant to Federal Rules of Civil Procedure 26 and 34, which call for the production of responsive documents on or before June 22, 2023. (SEC Case Dkt. 25 at 2). The SEC asked the district court to adjourn its deadline to respond to those discovery requests until 21 days after the court's ruling on the Government's motion to stay discovery. (*See id.* at 1). Javice opposed this request. (*See id.* at 2).

On May 24, 2023, the Government moved to intervene and to stay discovery in the SEC Case. (SEC Case Dkt. 20). Javice filed an opposition. (SEC Case Dkt. 29). The Government filed a reply. (SEC Case Dkt. 32). Oral argument on the motion was heard before the Honorable Lewis J. Liman on June 15, 2023.   On June 20, 2023, Judge Liman issued an eighteen-page opinion granting the Government's motion to intervene and its motion to stay the SEC Case.   (SEC Case Dkt. 34, attached as Exhibit E).[3] Carefully assessing the same six factors that courts apply in this Circuit,[4] Judge Liman held that none of the factors favored proceeding with discovery, two of the factors were neutral, and four of the factors favored a stay.   (*Id.* at 7-17).   Specifically, Judge Liman found that the private interests of, and any burdens on, the plaintiff and the defendant were

---

[3] *SEC v. Javice*, No. 23 Civ. 2795 (LJL), 2023 WL 4073797 (S.D.N.Y. June 20, 2023)

[4] *Compare* Ex. E at 7 (quoting the six factors from *Trustees of Plumbers & Pipefitters Nat. Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995) applicable in the Second Circuit), *with*, *Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd.*, 7 F. Supp. 2d 523, 526–27 (D.N.J. 1998) (citing the six factors from *Trustees of Plumbers & Pipefitters* applicable in the Third Circuit; *see also, e.g.*, *SEC v. Coburn*, No. CV195820KMMAH, 2019 WL 6013139, at *2–3 (D.N.J. Nov. 14, 2019) (following "the *Walsh* factors").

neutral, whereas (a) the overlap between the Criminal Case and the SEC Case, (b) the status of the Criminal Case, (c) the interests of the courts, and (d) the public interest all favored a stay of discovery. (*Id.*). Accordingly, Judge Liman stayed discovery.

On July 12, 2023, the SEC amended its complaint to add Amar as a defendant. (SEC Case Dkt. 41, attached as Exhibit F).

### C.     The Civil Case in the U.S. District Court for the District of Delaware

On December 22, 2022, JPMC filed a complaint (the "Civil Complaint") in this court against Charlie Javice and Olivier Amar. (Civil Case Dkt. 1). On February 27, 2023, Javice filed an answer and counterclaim. (Civil Case Dkt. 10). On March 1, 2023, Amar filed a motion to dismiss the Civil Complaint for failure to state a claim. (Civil Case Dkt. 14). This motion triggered an automatic stay of discovery in the Civil Case pursuant to the Private Securities Litigation Reform Act (the "PSLRA"). *See* 15 U.S.C. § 78u-4(b)(3)(B).

On April 7, 2023, in the Civil Case, JPMC filed a motion to partially lift the PSLRA stay in order to "conduct limited, particularized discovery targeting Defendant Charlie Javice's transfer of proceeds from the merger at issue in this litigation and failure to preserve evidence." (*See* Civil Case Dkt. 30 at 1). On April 10, 2023, Javice opposed the motion to partially lift the stay of discovery. In her opposition, Javice noted that "Congress intended that the stay be lifted only in rare circumstances—its only example was the preservation of a dying witness' testimony through deposition." (*See* Civil Case Dkt. 36 at 7).

As set forth above, the grand jury in the Southern District of New York indicted Javice on May 18th, a Thursday. On Sunday, May 21st, counsel for Javice[5]  asked counsel for JPMC whether

---

[5] Javice is represented by the same counsel in the Civil Case, the Criminal Case, and the SEC Case.

JPMC "would agree to the opening of full discovery" in the Civil Case. (Exhibit G (May 21, 2023 email to JPMC counsel)).

On June 1, 2023, Javice filed a motion to lift the PSLRA stay. (*See* Civil Case Dkt. 43). In that motion, Javice stated that she "is not limiting her requests to documents that JPMC already shared with the Government."  (*See id.* at 15).   JPMC opposed the motion.

On or about July 13, 2023, this Court denied Amar's motion to dismiss, which had the effect of lifting the PSLRA stay.  (*See* Civil Case Dkt. No. 58).

## ARGUMENT

The Government's requests to intervene and for a stay of discovery in the Civil Case should be granted. Were discovery in the Civil Case to proceed, there would be a risk of significant interference with the Criminal Case. A stay of discovery in the Civil Case would prevent the circumvention of important statutory limitations on criminal discovery, avoid asymmetrical discovery, and preserve the Court's resources because many of the issues presented by the Civil Case will be resolved in the Criminal Case. And particularly because such a stay would be limited to delaying the production of discovery, it would not prejudice any party to the Civil Case.

## I.    THE GOVERNMENT SHOULD BE GRANTED PERMISSION TO INTERVENE

Under Rule 24(a)(2) of the Federal Rules of Civil Procedure, anyone may intervene as of right in an action when the applicant "claims an interest relating to the property or transaction that is the subject of the action" and the applicant "is so situated that 'disposing of the action may as a practical matter impair or impede the movant's ability to protect its interests. . . .'" Alternatively, Rule 24(b)(2) provides for permissive intervention when the movant "has a claim or defense that shares with the main action a common question of law or fact." The Government respectfully submits that its application satisfies both of these provisions, given the effect upon the Criminal

Case this civil proceeding would have and the similarity of claims and facts between the parallel proceedings.

As a general rule, courts "have allowed the government to intervene in civil actions—especially when the Government wishes to do so for the limited purpose of moving to stay discovery." *Twenty First Century Corp. v. LaBianca*, 801 F. Supp. 1007, 1009 (E.D.N.Y. 1992); *see also SEC v. Credit Bancorp.*, 297 F.3d 127, 130 (2d Cir. 2002); *S.E.C. v. Abdallah*, 313 F.R.D. 59, at 64 (N.D. Ohio 2016) (quoting *S.E.C v. Nicholas*, 569 F.Supp.2d 1065, 1068 (C.D. Cal. 2008) for the proposition that "numerous courts have allowed the United States government to intervene in a civil case for the purpose of moving to stay discovery and other proceedings until resolution of a related criminal case."). The Government has a "discernible interest in intervening in order to prevent discovery in a civil case from being used to circumvent the more limited scope of discovery in the criminal matter." *SEC v. Chestman*, 861 F.2d 49, 50 (2d Cir. 1988).

As an initial matter, intervention is warranted because the public interest in enforcement of the criminal laws cannot be protected adequately by the existing parties in this civil litigation, none of whom represents the Government's interests with respect to the investigation and enforcement of federal criminal statutes. *See Bureerong v. Uvawas*, 167 F.R.D. 83 (C.D. Cal. 1996) ("[T]he Government's prosecutorial and investigative interest is not adequately protected by any of the civil parties . . . . Clearly neither the plaintiff or the defendants have this identical interest.").

Moreover, a trial in this action in advance of a related criminal trial could impair or impede the Government's ability to protect its interests in the enforcement of federal criminal law. This case and the related Criminal Case arise from the same alleged scheme to commit fraud in connection with Frank's acquisition. Holding a civil trial before a criminal trial would create the possibility that there will be two trials concerning the same fraudulent acts and therefore the probability that witnesses will be unnecessarily burdened by having to testify twice. In light of

those circumstances, the Government respectfully submits that its application to intervene should be granted.

## II.    A STAY OF DISCOVERY IN THIS ACTION SHOULD BE GRANTED

The Court can and should stay proceedings to prevent Javice and Amar from using the civil discovery process to circumvent the limitations that the Federal Rules of Criminal Procedure place on discovery in criminal cases. A stay would also serve the ends of justice, in that it would allow the Court to conserve judicial resources, would prevent the possibility of conflicting legal decisions, and would spare witnesses the burden of having to testify in civil depositions at or near the same time they are testify at the criminal trial.

### A.    Applicable Law

This Court has the inherent power to stay discovery in the interests of justice pending the completion of a parallel criminal trial. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see also United States v. Kordel*, 397 U.S. 1, 12 n.27 (1970) (collecting cases) (noting "[f]ederal courts have deferred civil proceedings pending the completion of parallel criminal prosecutions when the interest of justice seemed to require such action"); *United States v. Mellon Bank*, 7545 F.2d 869, 872–73 (3d Cir. 1976) ("It was clearly within the power of the district court to balance 'competing interests' and decide that judicial economy would best be served by a stay of civil proceedings."). In particular, courts in this Circuit and around the country have recognized that where the same or similar facts and issues are presented in separate civil and criminal actions, staying the civil action promotes the administration of justice because "resolution of the criminal case would moot, clarify, or otherwise affect various contentions in the civil case" and eliminate "the possibility that [the defendant] might improperly exploit civil discovery for the advancement

of his criminal case." *Mellon Bank*, 7545 F.2d at 872–73. When considering whether to grant a stay, courts balance the following factors:

> (1) the extent to which the issues in the criminal case overlap with those presented in the civil case;

> (2) the status of the case, including whether the defendants have been indicted;

> (3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay;

> (4) the private interests of and burden on the defendants;

> (5) the interest of the court; and

> (6) the public interest.

*See Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd.*, 7 F. Supp. 2d 523, 526–27 (D.N.J. 1998) (citing *Trustees of Plumbers and Pipefitters National Pension Fund v. Transworld Mechanical, Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995)).

Here, the Criminal Case arises from an identical set of facts and circumstances that underlie this action. In similar situations, courts in this Circuit and others[6] have routinely entered a stay of

---

[6] *See, e.g., CFTC v. Baldwin, et al.*, No. 21 Civ. 5707 (LJL), ECF Doc. 54 (S.D.N.Y. Nov. 15, 2021) (granting stay of all proceedings except for entry of default judgment against non-appearing defendants); *SEC v. Hu*, No. 20 Civ. 5496 (DLC), ECF Doc. 12 (S.D.N.Y. Sep. 21, 2020) (granting full stay with consent of defendant and non-objection of plaintiff); *SEC v. LaGuardia*, No. 19 Civ. 5895 (ALC) (SDA), ECF Doc. 31 (S.D.N.Y. Jan. 23, 2020) (granting partial stay over defendant's objection); *SEC v. Blakstad*, No. 19 Civ. 6387 (DLC), ECF Doc. 17 (S.D.N.Y. Sep. 10, 2019) (granting full stay that was unopposed); *SEC v. Pinto-Thomaz*, No. 18 Civ. 5757 (JPO), ECF Doc. 21 (S.D.N.Y. Oct. 11, 2018) (granting full stay that was unopposed); *SEC v. Wey*, No. 15 Civ. 7116 (PKC) (S.D.N.Y. June 9, 2016) (after Government's motion for partial stay of discovery, and over objection of multiple defendants, implementing full stay of discovery, with the exception that SEC would produce testimony transcripts that had been produced in criminal case); *SEC v. Town of Ramapo N.Y., et al.*, No. 16 Civ. 2779 (CS), ECF Doc. 90 at 42 (S.D.N.Y. Nov. 4, 2016) (granting partial stay requested by Government over defense objection); *SEC v. Durante et al.*, No. 15 Civ. 9874 (RJS) (S.D.N.Y. Mar. 23, 2016) (after Government's initial motion for partial stay of discovery, fully staying discovery and proceedings in the matter); *SEC v. Shkreli, et al.*, No. 15

parallel civil actions, even over a defendant's objection. *See, e.g.*, *SEC v. Coburn*, No. Civ. 195820 (KMM), 2019 WL 6013139 (D.N.J. Nov. 14, 2019) (granting stay and denying defendants' requests for partial discovery); *Bryer v. Jefferson*, No. Civ. 12-1028-GMS, 2013 WL 3753420 (D. Del. July 8, 2013) (granting stay after plaintiff indicted and over defendants' objections); *Colombo v. Bd. of Educ. for the Clifton Sch. Dist.*, No. Civ.A. 11-00785 (CCC), 2011 WL 5416058 (D.N.J. Nov. 4, 2011) (granting stay over plaintiff's objection); *Tucker v. New York Police Dep't*, No. 08-CV-2156 (DMC), 2010 WL 703189, at *8 (D.N.J. Feb. 23, 2010) (granting stay); *Doe v. Schneider*, No. Civ. 08-3805, 2010 WL 11561113 (E.D. Pa. June 8, 2010) (granting stay over plaintiff's objection after defendant indicted); *SEC v. Schiff*, No. Civ. 05-4132 (FSH), 2006 WL 2690266 (D.N.J. Sept. 19, 2006) (granting stay over defendants' objections); *Maloney v. Gordon*, 328 F. Supp. 2d 508, 514 (D. Del. 2004) (staying all proceedings in a civil case pending resolution of parallel criminal proceeding).

---

Civ. 7175 (KAM), 2016 WL 1122029, at *2-7 (E.D.N.Y. Mar. 22, 2016) (granting, over defendants' opposition, a full stay); *SEC v. Dubovoy*, 15 Civ. 6076, Docket No. 244 (Transcript of Oral Decision) (D.N.J. Jan. 29, 2016) (granting stay of discovery of civil case in light of parallel criminal action, notwithstanding "vigorous[] oppos[ition]" from certain of the civil defendants who were not a party to the criminal action); *Harris v. Nassau County et al.*, No. 13 Civ. 4728 (NGG) (RML), 2014 WL 3491286, at *4 (E.D.N.Y. July 11, 2014) ("Courts consistently hold that a stay of a civil case is most appropriate where a party to the civil case has already been indicted for the same conduct." (quotation marks omitted)); *SEC v. One or More Unknown Purchasers of Securities of Global Indus., Ltd.*, No. 11 Civ. 6500 (RA), 2012 WL 5505738, at *3 (S.D.N.Y. Nov. 9, 2012) (granting request for full stay of discovery for six months over defendant's objection while criminal investigation was proceeding but prior to any criminal charge); *SEC v. Nicholas*, 569 F. Supp. 2d 1065, 1070 (C.D. Cal. 2008) (granting full stay over defendants' objections).

## B.      Discussion

Application of each of the relevant factors here weighs in favor of the stay sought by the Government.

### 1.      *The Extent of the Overlap*

That the criminal and civil cases involve essentially identical facts and issues weighs heavily in favor of a stay. "The similarity of issues has been termed 'the most important issue at the threshold' in determining whether or not to grant a stay." *Walsh Sec., Inc.*, 7 F. Supp. 2d at 527 (quoting Judge Milton Pollack, *Parallel Civil and Criminal Proceedings*, 129 F.R.D. 201, 203 (S.D.N.Y. 1989)); *see also Parker v. Dawson*, No. 06 Civ. 6191 (JFB), 2007 WL 2462677, at *4 (E.D.N.Y. Aug. 27, 2007) (same); *United States v. One 1964 Cadillac Coupe DeVille*, 41 F.R.D. 352, 353 (S.D.N.Y. 1966) ("Where both civil and criminal proceedings arise out of the same or related transactions the government is ordinarily entitled to a stay of all discovery in the civil case until disposition of the criminal matter.").

Here, as described above, the Criminal Case and this case involve the same alleged fraudulent scheme perpetrated by Javice and Amar. Virtually all of the same documents, witnesses, and other evidence that would be used by the parties to prove their claims would also be used to prove aspects of the Government's case. As a result, this factor weighs heavily in favor of a stay. *See* Ex. E at 7 ("The parties do not dispute that the first two factors [the extent of the overlap and the status of the criminal case] favor a stay."). Allowing the Civil Case to proceed at this time would create a serious risk that substantially the same set of facts would have to be proven twice in two different proceedings, draining resources from the courts and inconveniencing witnesses.

### 2.      *The Status of the Criminal Case*

The filing of the Indictment in the Criminal Case also weighs in favor of a stay. "If criminal indictments are returned against the civil defendants, then a court should strongly consider staying

the civil proceedings until the related criminal proceedings are resolved." *Maloney*, 328 F. Supp. 2d at 512; *accord In re Par Pharm, Inc. Sec. Litig*., 133 F.R.D. 12, 13 (S.D.N.Y. 1990) ("The weight of authority in this Circuit indicates that courts will stay a civil proceeding when the criminal investigation has ripened into an indictment."); *SEC v. Shkreli*, No. 15 Civ. 7175 (KAM), 2016 WL 1122029, at *5 (E.D.N.Y. Mar. 22, 2016) ("[T]he strongest argument for granting a stay is where a party is under criminal indictment." (quotation and citation omitted)); *Trustees of Plumbers and Pipefitters Nat'l Pension Fund, et al. v. Transworld Mechanical, Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995) ("A stay of a civil case is most appropriate when a party to the civil case has already been indicted for the same conduct for two reasons: first, the likelihood that a defendant may make incriminating statements is greatest after an indictment has issued, and second, the prejudice to the plaintiffs in the civil case is reduced since the criminal case will likely be quickly resolved."). Javice and Amar have been indicted and have received, or will shortly receive, discovery pursuant to Rule 16 of the Federal Rules of Criminal Procedure. Accordingly, this factor likewise weighs in favor of a stay.

### 3.        *The Potential Prejudice to the Parties*

A stay of discovery will not prejudice any party. *See, e.g.*, *Tucker*, 2010 WL 703189, at *7 (granting full stay of civil case and explaining that "[t]he mere fact that additional time will pass" is insufficient to "establish prejudice"). As an initial matter, the requested stay is limited to a stay of discovery, and the defendants will therefore still be able to continue to litigate motions to dismiss the Civil Case while the Criminal Case is pending. Moreover, granting a stay of discovery in the Civil Case to permit the Criminal Case to proceed to its conclusion would in fact benefit Javice and Amar, as granting a stay of discovery in the Civil Case would, for now, obviate their being forced to choose between being prejudiced in the Civil Case by the assertion of Fifth

Amendment rights or being prejudiced in the Criminal Case if they waived those rights. *See S.E.C.*
*v. Dresser Indus., Inc.*, 628 F.2d 1368, 1376 (D.C. Cir. 1980).

In the SEC case, Javice argued that this factor weighed in her favor because (1) "Ms.
Javice's life is on the line here, and time is of the essence," and (2) should she win an acquittal in
the Criminal Case, she would be "forced to start completely over again in [the SEC Case]." *See*
SEC Case Dkt. 29, attached as Exhibit H. Judge Liman concluded that these arguments "are
without merit." Ex. E at 10.   He noted that, "If [Javice] had an interest in adjudicating the claims
against her as quickly as possible, she had that opportunity." *Id.* Judge Liman also rejected Javice's
claim that she would "be forced to start all over again" if she were acquitted in the criminal action,
concluding that (1) "any delay in the ultimate resolution of all of the governmental cases against
Javice is at least partially of her own manufacture," and (2) due to the volume of discovery
produced in the Criminal Case, "Javice is wrong to suggest that after the criminal case is
concluded, she will have to start at square one." *Id.* at 11. Judge Liman therefore found that this
factor was neutral.

In terms of the prejudice to the plaintiff, JPMC has informed the Government that it takes
no position on the Government's motion. This factor is therefore also neutral as to JPMC. *See* Ex.
E at 9 ("The third factor is the private interest of the plaintiff—in this case, the SEC—in proceeding
expeditiously. This factor is neutral as the SEC has taken no position on this motion."").
Accordingly, a stay of discovery would not prejudice the parties to the Civil Case.

### 4.     *The Interests of the Court*

Considerations of judicial economy also weigh in favor of granting a stay of discovery.
Issues common to both cases can be resolved in the criminal proceeding, thereby simplifying the
civil action. *See Coburn*, 2019 WL 6013139, at *5 ("[J]udicial economy favors a stay because the

Criminal Case may clarify, moot, and refine some issues common to both cases"); *Maloney*, 328 F. Supp. 2d at 513 ("Staying this case is better for judicial efficiency"); *Jefferson*, No. CV 12-1028-GMS, 2013 WL 3753420, at *1 ("proceeding with discovery under the shadow of the criminal action would actually create greater inefficiency"); *SEC v. Contorinis*, No. 09 Civ. 1043 (RJS), 2012 WL 512626, at *2 (S.D.N.Y. Feb. 3, 2012) ("Courts in this district have consistently found that a defendant convicted of securities fraud in a criminal proceeding is collaterally estopped from relitigating the underlying facts in a subsequent civil proceeding."); *SEC v. One or More Unknown Purchasers of Secs. of Global Indus.*, 2012 U.S. Dist. LEXIS 162772, at *12 (S.D.N.Y. Nov. 9, 2012) ("[T]he Civil Case is likely to benefit to some extent from the Criminal Case no matter its outcome.").

Because the Criminal Case's outcome will likely affect the conduct, scope, and result of the Civil Case, potentially streamlining issues in this matter and avoiding duplication of effort and judicial resources, this factor favors the Government's application. *See* Ex. E at 14 ("Judicial efficiency will be promoted by a stay . . . [If] Javice is convicted, the jury's findings likely would be entitled to collateral estoppel effect. And even if she is not convicted, proceedings in the criminal case will no doubt be helpful in clarifying the issues between the parties and more quickly bringing this case to conclusion.") (internal citation omitted).

### 5.    *The Public Interest*

The Government and the public have an important interest in ensuring that civil discovery is not used to circumvent the well-founded restrictions that pertain to criminal discovery— restrictions that, *inter alia*, preserve the truth-seeking functions of the criminal process by restraining the ability of criminal defendants to tailor testimony, suborn perjury, manufacture evidence or intimidate witnesses. *See Mellon Bank*, 545 F.2d at 872 (affirming stay where "the similarity of the issues" in the civil and criminal cases "left open the possibility that [the defendant]

17

might improperly exploit civil discovery for the advancement of his criminal case"); *United States v. Percevault*, 490 F.2d 126, 129 (2d Cir. 1974) (noting that the Jencks Act, 18 U.S.C. § 3500, "represents a legislative determination that access to a witness' statements could be useful in impeaching a witness but was not intended to be utilized in preparation for trial"); *United States v. McCarthy*, 292 F. Supp. 937, 942 (2d Cir. 1968) ("The claimed need to see such statements in advance in order to prepare to rebut them is little more than open notice of an intention to tailor testimony to fit the statement."); *Nicholas*, 569 F. Supp. 2d at 1070 (the criminal rules were "purposefully limited so as to prevent perjury and manufactured evidence, to protect potential witnesses from harassment and intimidation, and to level the playing field between the government and the defendant, who would be shielded from certain discovery by the Fifth Amendment").

In *Tuzman*, Judge Nathan outlined three principal Government interests justifying a stay of discovery of civil proceedings while parallel criminal proceedings are pending:

> First, broad disclosure of the essentials of the prosecution's case may lead to perjury and manufactured evidence. Second, revelation of the identity of prospective witnesses may create the opportunity for intimidation. Third, criminal defendants may unfairly surprise the prosecution at trial with information developed through [civil] discovery, while the self-incrimination privilege would effectively block any attempts by the Government to discover relevant evidence from the defendants.

*Tuzman*, No. 15 Civ. 7057 (AJN), ECF No. 43 at 3-4 (internal citations and quotations omitted). Based on these concerns, courts frequently have granted Government requests to limit discovery in a parallel civil action in order to prevent the civil discovery rules from being subverted into a device for improperly obtaining discovery in the criminal proceeding. *See, e.g.*, *id.* at 3-7 (granting stay sought by Government); *SEC v. Beacon Hill Asset Management LLC*, No. 02 Civ. 8855 (LAK), 2003 WL 554618, at *1 (S.D.N.Y. Feb. 27, 2003) (in granting government's motion to stay, court noted: "The principal concern with respect to prejudicing the government's criminal

18

investigation is that its targets might abuse civil discovery to circumvent limitations on discovery in criminal cases."); *Phillip Morris Inc. v. Heinrich*, No. 95 Civ. 328 (LMM), 1996 WL 363156, at *19 (S.D.N.Y. June 28, 1996) (granting stay motion because if "civil discovery is not stayed, the criminal investigation will be prejudiced, as the Defendants may have an opportunity to gain evidence to which they are not entitled under criminal discovery rules."); *Bd. of Governors of the Federal Reserve System v. Pharaon*, 140 F.R.D. 634, 639 (S.D.N.Y. 1991) ("'A litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and thereby obtain documents he would not otherwise be entitled to for use in his criminal trial.'" (quoting *Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1952))).

Indeed, the rationale underlying a stay is even stronger in an indicted matter, given that a defendant in a charged criminal case likely will invoke his Fifth Amendment rights in the civil case and not participate in the very discovery process he or she seeks to use affirmatively. *See, e.g., SEC v. Chakrapani*, Nos. 09 Civ. 325 (RJS), 09 Civ. 1043 (RJS), 2010 WL 2605819 (S.D.N.Y. June 29, 2010) (inviting the Government to renew its motion to stay discovery if the defendant intends to invoke the Fifth Amendment if noticed for a deposition); *Nicholas*, 569 F. Supp. 2d at 1070 (noting when granting full stay that "[t]he specter of parties and witnesses invoking their Fifth Amendment rights would render discovery largely one-sided; the SEC would produce scores of documents and witness testimony only to be precluded from gathering reciprocal discovery from the defendants").

A denial of the Government's requested stay would therefore result in asymmetrical discovery, pursuant to which the Civil Case defendants would be able to obtain statements from relevant witnesses through depositions and to use other discovery mechanisms, such as requests

for admission and interrogatories, to obtain information from the Civil Case plaintiff and others, while the Civil Case plaintiff would be unable to use any of these discovery mechanisms to obtain information from Javice or Amar, because of the assertion of their Fifth Amendment rights. Such asymmetry is both unfair and a circumvention of the criminal discovery rules that govern when criminal defendants are entitled to obtain prior statements of the Government's trial witnesses. *See* 18 U.S.C. § 3500(b) (prior statements of Government witnesses must be made available after the witnesses have testified on direct examination).

Here, the record makes plain that Javice is seeking civil discovery for use in her criminal trial. Indeed, Javice's counsel expressly told the SEC as much. (*See* Exhibit I (SEC Dkt. 31), at 2 n.1 ("[D]efense counsel explained, in substance, that Javice's interest in obtaining documents from the Commission related to her need to defend herself in a private action pending in Delaware *as well as the parallel criminal case*." (emphasis added))). Javice's actions are in accord with that moment of candor with the SEC. While the SEC filed its Complaint in April, Javice served discovery requests on the SEC only after Javice was indicted in the Criminal Case. (*See id.* at 1 (noting Javice's May 23 discovery request—a mere five days after the May 18 indictment)).

Likewise, in this action between Javice and JPMC, Javice began efforts to obtain civil discovery only after—and very shortly after—her criminal indictment. The grand jury in the Southern District of New York indicted Javice on May 18, a Thursday. On Sunday, May 21, counsel for Javice asked counsel for JPMC whether JPMC "would agree to the opening of full discovery." (Exhibit G (May 21, 2023 email to JPMC counsel)). Javice made this request notwithstanding the fact that, *prior* to her indictment, Javice had *opposed* JPMC's request for a partial lifting of the discovery stay in effect in that case pursuant to the Private Securities Litigation

Reform Act (the "PSLRA").[7]  (Civil Case Dkt. 36). On June 1, Javice filed a motion in this case to lift the PSLRA stay, in which she made clear that she "is not limiting her [discovery] requests to documents that JPMC already shared with the Government." (Civil Case Dkt. 43 at 15). Javice's transparent efforts to use the civil discovery process as an end run around the criminal discovery process jeopardizes the integrity of the criminal process, wastes judicial resources, and is contrary to the public interest.

In the SEC Case, Judge Liman found this factor favored a stay.   In so finding, Judge Liman noted that a stay is "often necessary where liberal discovery rules will allow a litigant to undermine, or gain an unfair advantage in, a potential criminal prosecution which parallels the subject matter of the civil action." Ex. E at 14.   Judge Liman concluded that "[a]lthough Javice contends that the public has an interest in a 'fair, open, and expeditious civil legal proceeding,' and in 'seeing this action promptly resolved,' that interest is not limited to the resolution of the civil action. It also applies to the resolution of the criminal action, which must take place in a manner that respects the rules of criminal procedure applicable to all other criminal defendants. A stay is necessary to protect the integrity of those rules." *Id.* at 14-15. (internal citations omitted).

Therefore, in order to avoid circumvention of the criminal discovery restrictions, including the provisions that are designed to prevent defendants from tailoring their testimony and obtaining asymmetrical discovery, and because the Civil Case defendants will not in any way be prejudiced in preparing and defending themselves, this factor weighs in favor of the Government's application.

---

[7]  *See* 15 U.S.C. § 78u-4(b)(3)(B).

**CONCLUSION**

For the reasons set forth above, the Government respectfully requests that its motion to intervene and for a stay of discovery in this matter be granted.

Dated: New York, New York
       July 25, 2023

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

By:  /s/ Dina McLeod
     Dina McLeod
     Micah F. Fergenson
     Assistant United States Attorneys
     One Saint Andrew's Plaza
     New York, New York 10007
     Telephone: (212) 637-1040 / -2190

DAVID C. WEISS
United States Attorney for the
District of Delaware

By:  /s/ Jacob Laksin
     Jacob Laksin
     Assistant United States Attorney
     1313 N. Market Street
     Suite 400
     Wilmington, Delaware 19801
     Telephone: (302) 225-9409

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |
|---|---|
| J.P. Morgan Chase Bank, N.A., | : |
|  | : |
| Plaintiff, | : |
|  | : |
| v. | :    Civil Action No. 22-01621-JDW |
|  | : |
| CHARLIE JAVICE and | : |
| OLIVIER AMAR, | : |
|  | : |
| Defendants. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## (PROPOSED) ORDER

WHEREAS, on July 25, 2023, the Government submitted a motion seeking to intervene in this action and seeking a stay of discovery in this action, in light of the pendency of the parallel criminal action *United States v. Charlie Javice and Olivier Amar*, 23 Cr. 251 (AKH) (the "Criminal Case"), in which an indictment has been returned; and

WHEREAS, J.P. Morgan Chase Bank, N.A. takes no position on the stay of discovery requested by the Government; and

WHEREAS, the Court finds that the stay of discovery requested by the Government is in furtherance of the interests of justice and judicial economy and will not prejudice any party; it is hereby

ORDERED that the Government's motion to intervene is GRANTED;

IT IS FURTHER ORDERED that discovery in this action is stayed during the pendency of the Criminal Case.

SO ORDERED:

_____                    _____
  HONORABLE JOSHUA D. WOLSON                         DATE
  UNITED STATES DISTRICT JUDGE

23