# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

JPMORGAN CHASE BANK, N.A.,

      Plaintiff,

v.

CHARLIE JAVICE, OLIVIER AMAR,
CHARLIE JAVICE, in her capacity as Trustee
of CHARLIE JAVICE 2021 IRREVOCABLE
TRUST #1, CHARLIE JAVICE, in her capacity as
Trustee of CHARLIE JAVICE 2021
IRREVOCABLE TRUST #2, and CHARLIE
JAVICE in her capacity as Trustee of CHARLIE
JAVICE 2021 IRREVOCABLE TRUST #3,

      Defendants.

Case No. 1:22-cv-01621-JDW

## DEFENDANTS' JOINT OPPOSITION TO GOVERNMENT'S
## MOTION TO INTERVENE AND FOR A STAY OF DISCOVERY

Michael A. Barlow (#3928)
Samuel D. Cordle (#6717)
ABRAMS & BAYLISS LLP
20 Montchanin Drive, Suite 200
Wilmington, Delaware 19807
(302) 778-1000
barlow@abramsbayliss.com
cordle@abramsbayliss.com

OF COUNSEL:
Alex Spiro
Maaren A. Shah
JP Kernisan
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

Jacob R. Kirkham (#5768)
KOBRE & KIM LLP
600 North King Street, Suite 501
Wilmington, Delaware 19801
Telephone: (302) 518-6460
Facsimile: (302) 518-6461
Jacob.Kirkham@kobrekim.com

Steven G. Kobre (appearance *pro hac vice*)
Sean S. Buckley (appearance *pro hac vice*)
Alexandria E. Swette (appearance *pro hac vice*)
KOBRE & KIM LLP
800 Third Ave
New York, New York 10022
Telephone: (212) 488-1200
Facsimile: (212) 488-1220
Steven.Kobre@kobrekim.com
Sean.Buckley@kobrekim.com

alexspiro@quinnemanuel.com
maarenshah@quinnemanuel.com
jpkernisan@quinnemanuel.com

*Attorneys for Defendant / Counterclaim
Plaintiff Charlie Javice*

Alexandria.Swette@kobrekim.com

Sydney Sgambato Johnson (appearance *pro
hac vice* forthcoming)
KOBRE & KIM LLP
1919 M Street, NW
Washington, DC 20036
Telephone: (202) 664-1900
Facsimile: (202) 664-1920
Sydney.Johnson@kobrekim.com

*Attorneys for Defendant Olivier Amar*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ iv

PRELIMINARY STATEMENT ......................................................................................... 1

BACKGROUND ................................................................................................................ 3

ARGUMENT ...................................................................................................................... 6

     I.     The Government Should Not Be Allowed to Intervene ......................................... 6

          A.     There Is No Basis For Intervention As Of Right ....................................... 6

          B.     There Is No Basis For Permissive Intervention ......................................... 8

     II.     The Government Has Not Met Its Burden To Establish Any Basis For A Stay ...................................................................................................................... 9

          A.     Defendants Would Be Directly And Severely Prejudiced By Any Stay Of Discovery, And There Is No Articulated Prejudice To JPMC Or The Government Of Proceeding ........................................................ 10

          B.     The Extent of Overlap Between the Civil and Criminal Cases Does Not Warrant a Stay .................................................................................. 14

          C.     The Mere Fact of Indictment Does Not Justify a Stay ............................. 16

          D.     A Stay of Discovery Will Waste Judicial Resources and Impose Unnecessary Burdens on this Court ........................................................ 19

          E.     The Public Interest Favors Prompt Resolution of JPMC's Case ............. 20

CONCLUSION ................................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Saul*,
    2019 WL 13200600 (M.D. Pa. Sept. 10, 2019) ................................................ 17

*Anthony v. City of Philadelphia*,
    2001 WL 118964 (E.D. Pa. Feb. 9, 2001) .............................................. 19, 24

*Cheyney State Coll. Faculty v. Hufstedler*,
    703 F.2d 732 (3d Cir. 1983) ............................................................ 17

*Conestoga Wood Specialties Corp. v. Sec'y of U.S. Dep't of Health & Human Servs.*,
    2013 WL 1277419 (3d Cir. Feb. 8, 2013) ................................................ 9

*Cooper v. Newsom*,
    13 F.4th 857 (9th Cir. 2021) ........................................................... 8

*Dean v. Douglas*,
    2012 WL 6151137 (M.D. Ga. Dec. 11, 2012) ............................................ 9

*DeVita v. Sills*,
    422 F.2d 1172 (3rd Cir. 1970) ...................................................... 9, 15

*E.I. du Pont de Nemours & Co. v. Hou*,
    2017 WL 2531940 (D. Del. June 9, 2017) ............................................. 10

*First Bank Business Capital, Inc. v. Agriprocessors, Inc.*,
    2009 WL 2584842 (N.D. Iowa Aug. 18, 2009) ....................................... 7, 8

*Forrest v. Corzine*,
    757 F. Supp. 2d 473 (D.N.J. 2010) .................................................... 9

*Galicki v. State of New Jersey*,
    2015 WL 6522815 (D.N.J. Oct. 26, 2015) ............................................. 10

*Gold v. Johns-Manville Sales Corp.*,
    723 F.2d 1068 (3d Cir. 1983) .......................................................... 9

*In re Blood Reagents Antitrust Litig.*,
    756 F. Supp. 2d 623 (E.D. Pa. 2010) ................................................. 20

*In re Chemed Corp., Shareholder Deriv. Litig.*,
    2017 WL 1712530 (D. Del. Apr. 25, 2017) ............................................. 8

*In re Plastics Additives Antitrust Litig.*,
    2004 WL 274359 (E.D. Pa. Nov. 29, 2004) ........................................... 20

*Javier H. v. Garcia–Botello,*
    218 F.R.D. 72 (W.D.N.Y. 2003).................................................................... 9

*Kaiser v. Stewart,*
    1997 WL 66186 (E.D. Pa. Feb. 6, 1997) ...................................................... 15

*Keating v. Office of Thrift Supervision,*
    45 F.3d 322 (9th Cir. 1995) ........................................................................ 25

*Kenney v. Cal. Tanker Co.,*
    381 F.2d 775 (3d Cir. 1967)........................................................................ 20

*Landis v. North American Co.,*
    299 U.S. 248 (1936).................................................................................... 9

*Louis Vuitton Malletier S.A. v. LY USA, Inc.,*
    676 F.3d 83 (2d Cir. 2012).......................................................................... 14

*Maloney v. Gordon,*
    328 F. Supp. 2d 508 (D. Del. 2004).............................................................. 10

*New England Sports Network, LP v. Alley Interactive, LLC,*
    2023 WL 2140474 (D. Mass. Feb. 21, 2023) ................................................ 12

*Nosik v. Singe,*
    40 F.3d 592 (2d. Cir. 1994).......................................................................... 15

*Pagtalunan v. Galaza,*
    291 F.3d 639 (9th Cir. 2002) ...................................................................... 13

*Pierson v. United States,*
    71 F.R.D. 75 (D. Del. 1976) ........................................................................ 8

*SEC v. Balwani,*
    2019 WL 2491963 (N.D. Cal. June 14, 2019) ........................................ 20, 21

*SEC v. Chakrapani,*
    2010 WL 2605819 (S.D.N.Y. June 29, 2010) ............................ 10, 12, 17, 19, 21, 23, 24

*SEC v. Chestman,*
    861 F.2d 49 (2d Cir. 1988).......................................................................... 7

*SEC v. Cioffi,*
    2008 WL 4693320 (E.D.N.Y. Oct. 23, 2008) ................................................ 23

*SEC v. Fraser,*
    2009 WL 1531854 (D. Ariz. June 1, 2009) .............................................. 22, 23

*SEC v. Gilbertson*,
   2017 WL 5172313 (D. Minn. May 12, 2017) ................................................. 24

*SEC v. Jones*,
   2005 WL 2837462 (S.D.N.Y. Oct. 28, 2005) ................................................. 12

*SEC v. Kanodia*,
   153 F. Supp. 3d 478 (D. Mass. 2015) ................................................. 20, 21, 24

*SEC v. Mazzo*,
   2013 WL 812503 (C.D. Cal. Feb. 25, 2013)................................................. 23

*SEC v. O'Neill*,
   98 F. Supp.3d 219 (D. Mass. 2015) ........................................ 14, 16, 17, 23, 25

*SEC v. Oakford Corp.*,
   181 F.R.D. 269 (S.D.N.Y. 1998) ........................................ 21, 22, 25

*SEC v. Rampoldi*,
   2016 WL 11621801 (S.D. Cal. Oct. 27, 2016) ................................................. 9

*SEC v. Saad*,
   229 F.R.D. 90 (S.D.N.Y. 2005) ........................................ 12, 14, 17, 21, 24

*SEC v. Sandifur*,
   2006 WL 3692611 (W.D. Wash. Dec. 11, 2006) ........................................ 21

*SoftView LLC v. Apple Inc.*,
   2012 WL 3061027 (D. Del. July 26, 2012) ................................................. 13

*Sterling Nat. Bank v. A-1 Hotels Intern., Inc.*,
   175 F. Supp. 2d 573 (S.D.N.Y. 2001)................................................. 25

*Swainson v. City of Philadelphia*,
   2012 WL 17669708 (E.D. Pa. Dec. 14, 2022) ................................................. 19

*United States v. Dist. Council of N.Y. City & Vicinity of United
   Bhd. of Carpenters & Joiners of Am.*,
   1991 WL 243385 (S.D.N.Y. Nov. 8, 1991)................................................. 15

*United States v. Okatan*,
   728 F.3d 111 (2d Cir. 2013)................................................. 24

*Volmar Distribs., Inc. v. N.Y. Post Co.*,
   152 F.R.D. 36 (S.D.N.Y. 1993) ................................................. 10, 11

*Weil v. Markowitz*,
   829 F.2d 166 (D.C. Cir. 1987) ................................................. 9

**Other Authorities**

J. Wolson's Rule 26(f) Report Template ........................................................................... 20

**Rules**

Fed. R. Civ. P. 24(a)(2) ................................................................................................... 7

Fed. R. Civ. P. 24(b)(1)(B) .............................................................................................. 8

J. Wolson's Policies and Procedures ................................................................. 5, 9, 20

## PRELIMINARY STATEMENT

The U.S. Attorney's Office for the Southern District of New York (the "Government"), a nonparty, seeks to intervene in this case and obtain the extraordinary relief of completely halting discovery—indeed the entire progress of the litigation—without the consent of any party and against the express opposition of two. The Government fails to establish that such extraordinary relief is warranted and instead confirms why discovery should proceed without delay.

There is no basis to stay and prolong this private litigation. The world's largest bank and the Government have worked in tandem to bring their collective resources to bear against Ms. Javice and Mr. Amar (collectively, "Defendants"), and Plaintiff JPMorgan Chase Bank, N.A. ("JPMC") is in control of effectively all the discovery Defendants need to defeat the ruinous allegations in this lawsuit and move on with their lives. The Third Circuit and this Court have made clear that a stay is an *extraordinary* remedy that should apply to *extraordinary* cases, not relief to which the Government is automatically entitled every time it indicts a defendant in a pending civil lawsuit. The Government's motion sidesteps this standard and does little more than repeat the mantra that criminal discovery is narrower than civil discovery. But JPMC's allegations in *this* civil lawsuit impose significant hardship on Ms. Javice and Mr. Amar, and no constitutional provision, rule, or statute prevents them from accessing civil discovery to defend themselves simply because they are simultaneously defending against related criminal charges. Ms. Javice and Mr. Amar had no control over JPMC's or the Government's decision to bring actions against them, and the Government has not articulated any legitimate prejudice or basis to prevent them from using the appropriate procedural means to defend themselves fully in this action.

The Government's motion is designed to maximize pressure on Defendants, who are facing the threat of prison in a separate criminal case and for months have suffered reputational and financial ruin because of this one. Based largely on selective and incomplete evidence proffered

1

by JPMC and in *de facto* coordination with JPMC, the Government made a calculated decision to file criminal charges *months after* JPMC initiated the instant civil lawsuit.  Yet the Government now demands a wholesale stay of civil discovery, supposedly so Defendants cannot "gain advantage" in the criminal case against them by making an end run around the limits on criminal discovery.  But it is the Government that is seeking to deprive Defendants of a level playing field and their right to timely defend themselves against JPMC's claims while the Government pursues its rash and derivative criminal claims, all of which JPMC aggressively pushed in the media as part of a public smear campaign against Defendants.

The Government also resorts to speculation about the prejudice it might suffer if Ms. Javice and Mr. Amar seek appropriate civil discovery, baldly asserting that its entire criminal case will be harmed by "any" exchange of discovery here.  This lack of specificity undercuts any notion that this is an extraordinary case that deserves extraordinary treatment.  As a particularly egregious example of the Government's boilerplate request, it leads with the puzzling argument that "a stay of discovery now would be fair because it would permit the defendants to litigate putatively dispositive motions to dismiss in [this case]."  D.I. 60 at 1.  Of course, this seemingly copied-and-pasted justification is entirely moot because Ms. Javice never moved to dismiss, this Court ruled on Mr. Amar's motion to dismiss *before* the Government filed the instant motion, and both Ms. Javice and Mr. Amar already filed separate answers to JPMC's Complaint.

Nothing about this private civil action warrants forcing two defendants accused of serious misconduct to defer gathering and preserving critical exculpatory evidence until the conclusion of a separate criminal case in another jurisdiction months or years from now.  Even after Ms. Javice and Mr. Amar are acquitted in the criminal case, the pending civil complaint brought by JPMC will continue to stain their reputations and employment prospects.  Proceeding expeditiously with

discovery now will allow them to litigate this case and clear their names.  Any prejudice the Government claims it will sustain from civil discovery in this first-filed case is entirely exaggerated.  Discovery in the criminal case is already underway, and the Government fails to articulate in any particularized way how *it* would be prejudiced by the parties proceeding with discovery.  The Government should be prepared to pursue the charges it brought notwithstanding this previously pending civil case.  For these reasons, this Court should deny the Government's motion to intervene and stay discovery.

## BACKGROUND

On September 14, 2021, following several weeks of extensive due diligence involving two highly reputable outside law firms, an independent investment bank, and dozens of JPMC employees, JPMC acquired Ms. Javice's company, Frank, for $175 million.  D.I. 1 ¶¶ 41-72, 109-16.  Frank was a college financial planning website that offered students a broad range of content, services, and tools to support students and families in navigating the path towards higher education.  *See id.* ¶¶ 1-2.  JPMC was especially interested in, and ultimately acquired, Frank because it was "hoping to grow its market share" of the "student segment."  *See id.* ¶ 39.

In conjunction with the acquisition, JPMC hired almost the entire Frank team, including Ms. Javice and Mr. Amar.  *Id.* ¶ 15.  But after Ms. Javice vocally objected to JPMC's suggestion to pivot toward an unethical and potentially illegal business strategy for Frank, and after unforeseen regulatory changes outside of Ms. Javice's or Mr. Amar's control rendered Frank's core tool less effective, JPMC suddenly needed, and found, a scapegoat to publicly blame for its own mishandling of the Frank integration.  JPMC pointed the finger at Ms. Javice and Mr. Amar and, after a series of pretextual investigations, placed them on administrative leave.  *Id.* ¶¶ 180-81.  JPMC also cut off Ms. Javice's and Mr. Amar's access to documents, their Frank email accounts, and all Frank and JPMC communication platforms on which they had previously conducted Frank

business.  On December 22, 2022, JPMC sought to recoup its failed investment by suing Ms. Javice and Mr. Amar in this Court for five counts of common law fraud and two counts of securities fraud.  *See* D.I. 1 ¶¶ 186-201.  Both Ms. Javice and Mr. Amar answered JPMC's Complaint. D.I. 10; D.I. 61.

From the inception of this case, JPMC has made clear its intent to proceed immediately with discovery.  On March 16, 2023, JPMC noted that it "will seek discovery concerning Ms. Javice's asset transfers as well as her preservation of social media and possession of JPMC property," and asked "whether Ms. Javice is willing to voluntarily provide this discovery."  Ex. A at 2 (Mar. 16, 2023 letter from W. Regan).  On April 6, 2023, "JPMC invite[d] Ms. Javice to agree to the opening of full discovery or, at a minimum, Ms. Javice's agreement to open discovery for the purpose of sending preservation subpoenas to third parties."  Ex. B at 1 (Apr. 6, 2023 letter from W. Regan).  On April 10, 2023, JPMC filed a motion "seek[ing] to take early and targeted discovery from defendant Charlie Javice as an exception to the general discovery stay under the Private Securities Litigation Reform Act of 1995" ("PSLRA"), D.I. 31 at 1, which imposed a temporary stay during the pendency of Mr. Amar's now-resolved motion to dismiss.  On May 26, 2023, JPMC reiterated that it "is the plaintiff in this case and wants to conduct discovery to advance it's (sic.) claims."  Ex. C at 1 (May 26, 2023 Email from W. Regan).  And on July 18, 2023, just five days after the PSLRA stay was lifted, *see* D.I. 59, JPMC emailed both Defendants "to schedule an initial meet and confer call to discuss the discovery process and schedule for this litigation," and pressed again "to discuss the discovery process" less than one week later.  Ex. D at 6 (July 24, 2023 email from A. Wuertz).  Likewise, Defendants too have been consistent in their desire to proceed with merits discovery in this case, jointly moving to lift the PSLRA stay prior to the Court's decision on Mr. Amar's motion to dismiss, *see* D.I. 41, and actively engaging with JPMC

to press forward with discovery after the stay was lifted.  All parties met and conferred on August 2, 2023, and agreed to proceed with drafting a joint Rule 26(f) report, in accordance with this Court's individual rules.[1]  The Government now belatedly attempts to intervene and entirely halt discovery months after it indicted Ms. Javice.

Concurrently with preparing to file this retaliatory lawsuit, JPMC was also working with the Government and the U.S. Securities and Exchange Commission ("SEC") to bring additional civil and criminal charges against Ms. Javice and Mr. Amar—co-opting taxpayer-funded governmental resources for its private gain.  JPMC shared cherry-picked documents with the Government and the SEC to induce them to file charges against Defendants.  This ultimately led to both agencies bringing—and announcing with great fanfare—two separate cases against Ms. Javice and Mr. Amar:  the Government's criminal action for purported bank and wire fraud, and the SEC's civil enforcement action for purported violations of the federal securities laws.  *See United States v. Javice*, No. 1:23-cr-00251-AKH-1 (S.D.N.Y); *SEC v. Javice*, No. 1:23-cv-02795-DLC (S.D.N.Y.).  The Government conceded that it made its charging decisions "[b]ased on [a] review of documents obtained from JPMC," D.I. 60-1, Ex. A at ¶¶ 18-19, 21-25, 27, 30-33, and the SEC similarly touted its coordination with and "assistance" from the Government.[2]  It has since become apparent that the Government rushed to file its criminal case against Defendants largely on JPMC's say-so, and without obtaining much of the evidence that would and should have been required for them to make a considered charging decision.  The Government charged Ms. Javice

---

[1]   Pursuant to the Court's guidance to proceed expeditiously with discovery "as soon as the Rules permit, without waiting for the Rule 16 conference and regardless of whether a motion is pending," J. Wolson's Policies and Procedures, Section II.A.2, Ms. Javice served initial requests for the production of documents on JPMC on August 8, 2023.

[2]   Press Release, SEC, SEC Charges Founder of Frank with Fraud in Connection $175 Million Sale of Student Loan Assistance Company (April 4, 2023), https://www.sec.gov/news/press-release/2023-74.

by criminal complaint on March 31, 2023, arrested her on April 3, 2023, and indicted her on May 18, 2023. Yet to date, it has still not obtained much of the evidence it requested from JPMC and that it should have considered prior to making a charging decision. Ms. Javice and Mr. Amar—who relinquished their emails and documents composed on Frank servers and Frank email addresses when they sold Frank to JPMC—are in the uniquely disadvantageous position of not even possessing or having access to their own email correspondence and documents authored by or sent to them that are at the core of this case; JPMC has it all.

The Government then moved to stay the SEC case over Ms. Javice's objection, to prevent Ms. Javice from proceeding to defend herself in the SEC action that these agencies had knowingly filed in tandem.[3] The Court in the Southern District of New York ultimately agreed to stay the SEC case—pending in the same jurisdiction as the criminal matter—after heated argument. *See* Ex. E (June 15, 2023 Hr'g Tr. in *SEC v. Javice*, No. 23-cv-2795-DLC (S.D.N.Y.)) at 24-25. The Government seeks to piggyback off of Judge Liman's decision and "now moves for the same in this case" notwithstanding that this lawsuit presents different circumstances, was filed months in advance in a different jurisdiction, and is a grievance between completely private parties that has been actively litigated from the outset. *See* D.I. 60 at 4.

## ARGUMENT

### I.     The Government Should Not Be Allowed to Intervene

#### A.     There Is No Basis For Intervention As Of Right

The Government first claims it has a *right* to intervene in this case under Rule 24(a)(2), which requires intervention for anyone who "claims an interest relating to the property or

---

[3]  Mr. Amar was not yet a defendant in the SEC case when the Government moved for a stay preventing Ms. Javice from seeking civil discovery.

transaction that is subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest."  Fed. R. Civ. P. 24(a)(2).  The Government argues that it has a "discernible interest in intervening in order to prevent discovery in the civil action from being used to circumvent the more limited scope of discovery in the criminal matter."  D.I. 60 at 10 (quoting *SEC v. Chestman,* 861 F.2d 49, 50 (2d Cir. 1988)).  The Government no doubt has invoked this exact language numerous times in suggesting that it should *always* be allowed to intervene in *any* civil action if there is a related criminal case.  But neither Rule 24(a)(2) nor the Second Circuit's *per curiam* decision in *Chestman* supports the Government's argument for intervention as of right.

"[J]ust because the Government has an interest in limiting the discovery which may be obtained for use in the criminal case, doesn't mean it has an interest" recognized by Rule 24(a)(2). *First Bank Business Capital, Inc. v. Agriprocessors, Inc.*, 2009 WL 2584842, at *5 (N.D. Iowa Aug. 18, 2009).  Although the Government relies heavily on *Chestman*, that case says nothing about Rule 24(a)(2)'s requirement that the proposed intervenor's interest must relate "to the property or transaction that is the subject of the action."  Fed. R. Civ.P. 24(a)(2); *see also Agriprocessors, Inc.*, 2009 WL 2584842, at *5.  And Rule 24(a)(2) does not recognize "an interest in intervening to prevent discovery in a civil case from being used in a related criminal action" unless the Government's interest relates to the "transaction that is the subject of the action."  *See Agriprocessors, Inc.*, 2009 WL 2584842, at *5.  Here, the "transaction" that is the "subject of the action" is JPMC's acquisition of Frank.  The Government claims no interest in that transaction; rather its "interest here is in the litigation *process*, not in the subject matter of the litigation."  *Id.* Nor does the Government make any effort to explain how the *disposition* of this action "may as a practical matter impair or impede" its claimed interest in preventing Ms. Javice and Mr. Amar

"from using the more liberal discovery permitted in civil cases from being used in the criminal case." *Id.*  Accordingly, the Government does not even come close to satisfying its burden for intervention as of right.  *See In re Chemed Corp., Shareholder Deriv. Litig.*, 2017 WL 1712530, at *4 (D. Del. Apr. 25, 2017) ("The burden is on the movant seeking to intervene to show that these elements have been satisfied, and failure to prove any one of the criteria is sufficient grounds to deny the motion.").

### B.      There Is No Basis For Permissive Intervention

Just as intervention as of right should be denied, so too should permissive intervention under Rule 24(b).  This Rule potentially permits a third party to intervene if it "has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  Courts must consider, however, "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights" and may deny intervention in such circumstances.  *Id.*; *see also Cooper v. Newsom*, 13 F.4th 857, 868 (9th Cir. 2021); *Pierson v. United States*, 71 F.R.D. 75, 81 (D. Del. 1976).

The Government seeks to intervene and stay this entire litigation, arguing that "[t]his case and the related Criminal Case arise from the same alleged scheme to commit fraud in connection with Frank's acquisition."  *See* D.I. 60 at 10.  But the Government's request completely ignores the very real prejudice that a complete stay would impose on Ms. Javice's and Mr. Amar's timely defense of this action.  *See id.* at 9-11.  JPMC has made highly-damaging, highly-publicized allegations against Ms. Javice and Mr. Amar, based on a supposed abundance of documentary evidence collected in internal investigations preceding its Complaint, and JPMC's selective snippets from cherry-picked documents have been roundly repeated in the press and in the governmental complaints against Ms. Javice.  Ms. Javice and Mr. Amar do not have access to the many documents and emails that they know exist in JPMC's files confirming their side of the story,

and they continue to suffer extreme reputational and financial pressures every day that this case remains ongoing.  Defendants respectfully request that this Court exercise its discretion to prohibit the Government from intervening in this private action.  *SEC v. Rampoldi*, 2016 WL 11621801, at *1 (S.D. Cal. Oct. 27, 2016) (denying motion for permissive intervention even though the Government claimed the parallel criminal case "raise[s] the same or very similar factual and legal questions"); *see also Dean v. Douglas*, 2012 WL 6151137, at *5 (M.D. Ga. Dec. 11, 2012); *Javier H. v. Garcia–Botello*, 218 F.R.D. 72, 75–76 (W.D.N.Y. 2003).

## II.  The Government Has Not Met Its Burden To Establish Any Basis For A Stay

Even if the Government is permitted to intervene in this private litigation, the Government has not established that a stay—an extraordinary and disfavored remedy given the prejudice caused to the parties forced to wait years to litigate an otherwise ripe dispute—is justified here.  "A total stay of civil discovery pending the outcome of related criminal matters is an extraordinary remedy appropriate for extraordinary circumstances."  *Weil v. Markowitz*, 829 F.2d 166, 174 n.17 (D.C. Cir. 1987); *see also DeVita v. Sills,* 422 F.2d 1172, 1181 (3rd Cir. 1970); *Conestoga Wood Specialties Corp. v. Sec'y of U.S. Dep't of Health & Human Servs.*, 2013 WL 1277419, at *1 (3d Cir. Feb. 8, 2013); *Forrest v. Corzine*, 757 F. Supp. 2d 473, 476 (D.N.J. 2010) ("[A] stay of a civil proceeding is an extraordinary remedy and is not favored.").  This Court's rules similarly make clear that a stay of discovery will be granted "only in extraordinary circumstances."  J. Wolson's Policies and Procedures, Section II.A.2.  "It is well settled that before a stay may be issued, the petitioner"—here, the Government—"must demonstrate 'a clear case of hardship or inequity,' if there is 'even a fair possibility' that the stay would work damage on another party."  *Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1075-76 (3d Cir. 1983) (quoting *Landis v. North American Co.*, 299 U.S. 248, 255 (1936)).  To satisfy this burden, a motion to stay must be supported "with a basis that goes beyond mere recitation of conclusory and broad legal arguments."  *Galicki v.*

*State of New Jersey*, 2015 WL 6522815, at *2 (D.N.J. Oct. 26, 2015) (denying Government's motion to stay civil discovery pending the completion of a related criminal case).  There is no question that the Government has fallen short of that burden here.

In considering whether to grant the extraordinary remedy of a stay, this Court often relies on the following factors as a guide to assess whether the Government has met its burden:

> (1) the extent to which the issues in the civil and criminal cases overlap;
> (2) the status of the criminal proceedings, including whether any defendants have been indicted;
> (3) the plaintiff's interests in expeditious civil proceedings weighed against the prejudice to the plaintiff caused by the delay;
> (4) the burden on the defendants;
> (5) the interests of the court;
> (6) and the public interest.

*Maloney v. Gordon*, 328 F. Supp. 2d 508, 511 (D. Del. 2004) (citations omitted); *see also E.I. du Pont de Nemours & Co. v. Hou*, 2017 WL 2531940, at *1 (D. Del. June 9, 2017).  The Government has not, and cannot, meet its burden of justifying the disfavored remedy of a complete discovery stay based on these factors.  Rather, the Government relies on boilerplate and speculative arguments to transform an "extraordinary remedy" reserved for "extraordinary circumstances" into one routinely and reflexively granted whenever the Government demands it.  But contrary to the Government's framing, each of the relevant factors—particularly prejudice to Ms. Javice and Mr. Amar—weighs heavily *against* a stay of discovery in this private litigation.  As a result, the Government's motion should be denied, and this case should proceed with discovery now.

## A.   Defendants Would Be Directly And Severely Prejudiced By Any Stay Of Discovery, And There Is No Articulated Prejudice To JPMC Or The Government Of Proceeding

"Prejudice to the parties" is "by far the most important" factor in deciding whether to grant the extraordinary remedy of a stay.  *SEC v. Chakrapani*, 2010 WL 2605819, at *10 (S.D.N.Y. June 29, 2010); *see also Volmar Distribs., Inc. v. N.Y. Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993)

("Balancing these factors is a case-by-case determination, with the basic goal being to *avoid prejudice*." (emphasis added)).  In seemingly deliberate disregard to the consequences of its own actions, the Government remarkably asserts that "delaying the production of discovery . . . would not prejudice any party to the Civil Case," D.I. 60 at 9, and that "the fairness, efficiency, and public good resulting from a stay of discovery outweighs the defendants' preference," *id.* at 1-2 (emphasis added).  Contrary to these conclusory and self-serving assertions, JPMC's and the Government's *mere unproven allegations* already have severely prejudiced Ms. Javice and Mr. Amar. Defendants do not merely "prefer[]" moving forward with an expeditious defense to this action, *see id.* at 2; rather, they would be directly and severely prejudiced by a stay of discovery that prevents them from having any timely opportunity to defend themselves, their reputations, and their livelihoods, through the full presentation of evidence.  Therefore, the most important factor in the Court's analysis—prejudice—strongly weighs against a stay in this case.  *See Volmar Distribs.*, 152 F.R.D. at 39 ("[T]he basic goal [is] to avoid prejudice.").

To start, JPMC's fraud allegations have publicly called into question Ms. Javice's and Mr. Amar's previously unblemished reputations and credibility, and have clouded their future career prospects and personal lives.  The media coverage surrounding this case has been particularly vicious, one-sided, and prolific.[4]  Staying all discovery until *after* the criminal proceeding

---

[4]    *See generally* Ron Lieber, *How Charlie Javice Got JPMorgan to Pay $175 Million for ... What Exactly?*, N.Y. Times (Jan. 27, 2023), https://www.nytimes.com/2023/ 01/21/business/jpmorgan-chase-charlie-javice-fraud.html (highlighting JPMC's "jaw-dropping accusations," including that "Ms. Javice and Olivier Amar, Frank's chief growth and acquisition officer, faked their customer list and hired a data science professor to help pull the wool over the eyes of the bank's due-diligence team."); Alexandra S. Levine and Iain Martin, *'Fake It 'Til You Make It': Meet Charlie Javice, The Startup Founder Who Fooled JP Morgan*, Forbes (Jan. 19, 2023), https://www.forbes.com/sites/alexandralevine/2023/01/19/charlie-javice-jp-morgan-frank-lawsuit/; Emily Bloch, *JPMorgan Files Lawsuit Against Wharton Grad, Saying Her Financial Aid Company Was a Fraud*, The Philadelphia Inquirer (Jan. 23, 2023) https://www.inquirer.com/ news/nation-world/charlie-javice-jp-morgan-chase-penn-wharton-20230123.html; Mike Degen,

concludes will delay clearing of their names for years to come.  It is hardly "routine[]" or justifiable for the Government to intervene in a private civil matter, move to stay all discovery indefinitely, and prevent individual defendants from timely defending against the claims against them.  *See* D.I. 60 at 12; *SEC v. Jones*, 2005 WL 2837462, at *2 (S.D.N.Y. Oct. 28, 2005) (holding that defendants "deserve[] a timely opportunity to clear his [or her] name").  Indeed, even when they succeed in defeating the criminal case, Ms. Javice and Mr. Amar must then defeat the allegations in this case, where JPMC is held to a lower standard of proof and where discovery disputes and motion practice will only delay an ultimate outcome.  Ms. Javice and Mr. Amar should not have to wait until the close of the criminal case to *begin* clearing their names in this case.  *SEC v. Saad*, 229 F.R.D. 90, 92 (S.D.N.Y. 2005) (denying a general stay and allowing civil discovery to proceed in tandem with the criminal trial so that the civil case could be "ready for trial within a few weeks after the completion of the criminal case").

A stay that benefits only the Government is particularly inappropriate here because this case has progressed considerably, and Ms. Javice, Mr. Amar, and JPMC have all expressed a desire to proceed expeditiously with discovery in this matter.  *See* Exs. A-D.  Notably, no party to the civil case joins the Government's stay motion.  Where, as here, defendants "want the civil case to move forward," there should be "no reason to override [their] own evaluation of the prejudice that may result from the civil case proceeding."  *New England Sports Network, LP v. Alley Interactive, LLC*, 2023 WL 2140474, at *4 (D. Mass. Feb. 21, 2023); *Chakrapani*, 2010 WL 2605819, at *11

---

*Meet Charlie Javice, the Woman Who JP Morgan Believes Bilked Them for $175 Million*, Grit Daily (Jan. 27, 2023), https://gritdaily.com/charlie-javice-jp-morgan-believes-bilked-175-million/; Natalie Schwartz, *JPMorgan Chase Alleges Ed Tech Firm Faked Student Accounts to Lure it Into Acquisition*, Higher Ed Dive (Jan. 12, 2023), https://www.highereddive.com/news/jpmorgan-chase-alleges-ed-tech-firm-faked-student-accounts-frank/640325/.

(concluding that "prejudice to the parties[] clearly favor[s] proceeding with discovery" where the defendant "obviously want[ed] to proceed").

Moreover, postponing discovery until after the conclusion of a lengthy criminal trial, likely months or years in the future, further prejudices Defendants because it "inherently increases the risk that witnesses' memories will fade and evidence will become stale." *Pagtalunan v. Galaza*, 291 F.3d 639, 643 (9th Cir. 2002); *SoftView LLC v. Apple Inc.*, 2012 WL 3061027, at *4 (D. Del. July 26, 2012). This risk is particularly heightened because this is the rare case where it is *the plaintiff* that controls of the majority of documentary and testimonial evidence necessary to uncover the flaws in the plaintiff's allegations of fraud, and the *defendants* are requesting to proceed with civil discovery (notwithstanding pending criminal charges) so they can gain swift and immediate access to the evidence they need to disprove civil allegations. Ms. Javice and Mr. Amar are entitled to expeditiously defend themselves against JPMC's claims, and to put JPMC's selectively cherry-picked evidence that it shared with the Government (and seemingly with the press) to the test in this action *now*—before memories fade, witnesses move, and evidence erodes. *Cf.* D.I. 51 at 9 n.4 (describing some of JPMC's sanctions for not preserving relevant evidence).

The Government boldly claims that a stay would "in fact *benefit* [Ms.] Javice and [Mr.] Amar" because it would obviate the prejudice imposed by having to choose between asserting or waiving their Fifth Amendment rights. D.I. 60 at 15 (emphasis added). But that is *Defendants'* constitutional right to weigh, not the Government's, and Ms. Javice and Mr. Amar each oppose the stay and are prepared to proceed. What would truly prejudice Defendants here is to enable JPMC to sit back with no discovery obligations while the Government proceeds to deploy its considerable resources to prosecute Defendants, and then leverage any conviction that might result to secure a *de facto* victory in this civil case—thereby usurping the civil process and depriving

Defendants of any meaningful ability to defend themselves and avail themselves of the civil rules in this action.  Equally prejudicial would be for Ms. Javice and Mr. Amar to spend months or years to exonerate themselves in the criminal case, and then have to start anew defending this civil case for the next several years.  Instead, Ms. Javice and Mr. Amar want to defend this civil case *now on the merits* despite the concurrent risk to their Fifth Amendment protections.

In any event, indefinitely interrupting all discovery at this juncture is unnecessary to mitigate this hypothetical prejudice.  Courts regularly and routinely allow documentary discovery to proceed while limiting depositions of criminal defendants and other key witnesses. *See, e.g.*, *SEC v. O'Neill*, 98 F. Supp.3d 219, 222-23 (D. Mass. 2015) (denying the government's motion to stay and ordering that the defendant not be deposed until all other discovery is complete, at which point the court would consider whether to allow his deposition); *Saad*, 229 F.R.D. at 91 (explaining its previous decision to deny "a general stay of discovery" but postpone civil depositions of six defendants).  Should the Court find such a measured approach necessary, it has the discretionary power to impose it.

In sum, the Government does not offer any legitimate grounds to ignore the "hardship, inequity, [and] injustice" that Ms. Javice and Mr. Amar will suffer from a stay of discovery in this action, in favor of further loading the scales for the Government and allowing it to deprive defendants of evidence to which they are entitled as a matter of law and under the Federal Rules of Civil Procedure to defend themselves here.  *See Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 99 (2d Cir. 2012).  This factor weighs heavily in favor of denying the stay.

## B. The Extent of Overlap Between the Civil and Criminal Cases Does Not Warrant a Stay

The Government argues "[t]hat the criminal and civil cases involve essentially identical facts and issues," and a stay is necessary to avoid the "serious risk that substantially the same set

of facts would have to be proven twice in two different proceedings." D.I. 60 at 14. But that is the natural result of the Government's and JPMC's decisions to bring claims against Defendants in two different proceedings in two different fora, subject to different elements, causes of action, and standards of proof, and will therefore eventually happen whether now or later. Although JPMC's and the Government's allegations overlap to an extent—an unsurprising occurrence given that the Government made its charging decisions "[b]ased on [a] review of documents obtained from JPMC," D.I. 60-1, Ex. A at ¶¶ 18-19, 21-25, 27, 30-33—the partial overlap on its own does not justify a stay. *See Kaiser v. Stewart*, 1997 WL 66186, at *2 (E.D. Pa. Feb. 6, 1997) (citing *Sills*, 422 F.2d at 1181) (noting that "there is no constitutional requirement that a civil action be stayed when there is also a parallel criminal proceeding pending"); *Nosik v. Singe*, 40 F.3d 592, 596 (2d. Cir. 1994) ("Nothing in the Constitution forbids contemporaneous civil and criminal proceedings concerning the same subject matter.").

Here, the Government merely states that "the Criminal case and this case involve the same alleged fraudulent scheme perpetrated by [Defendants]." D.I. 60 at 14. Given that JPMC's Complaint is approximately seven times longer than the Superseding Indictment, *compare* D.I. 1, *with* D.I. 60-1, Ex. C, and asserts different and non-overlapping claims than the charges set forth in the Superseding Indictment (including Fraud Within the Contract and Unjust Enrichment, D.I. 1 ¶¶ 202-208, 227-233), the breadth of JPMC's allegations belie the Government's claim that the criminal and civil cases "involve essentially identical facts and issues." D.I. 60 at 14.

But even so, the Government wholly fails to explain to this Court *why* some overlap between JPMC's Complaint and its Superseding Indictment actually matters *in this case*. *See United States v. Dist. Council of N.Y. City & Vicinity of United Bhd. of Carpenters & Joiners of Am.*, 1991 WL 243385, at *4 (S.D.N.Y. Nov. 8, 1991) (holding Government "must make a

showing that special circumstances . . . actually exist in the present case").  This failure is fatal to

its motion as a matter of law.  That the Government elected—in its sole discretion—to review

JPMC's Complaint, cooperate with JPMC, and rely on JPMC's proffered materials to file criminal

charges parroting "essentially identical facts and issues" as JPMC's earlier-filed Complaint, D.I.

60 at 14, does not alone satisfy the Government's extraordinary burden to support a stay of private

litigation long pending at the time of indictment.  This is the rare case where the plaintiff and third

parties have sole control of the majority of documentary evidence necessary to uncover the flaws

in the plaintiff's allegations of fraud, and the *defendants* are requesting to proceed with civil

discovery (notwithstanding pending criminal charges) so they can gain swift and immediate access

to the evidence they need to disprove civil allegations.  That civil discovery might reveal aspects

of the government's criminal case or result in witnesses having to testify twice, *id.* at 10-11, is

irrelevant to this case and is a risk the Government accepted when it elected to pursue these

criminal charges months after JPMC filed this action.  *O'Neill*, 98 F. Supp. 3d at 224.

### C.    The Mere Fact of Indictment Does Not Justify a Stay

The Government's argument for a stay relies heavily on the fact that there has been an

indictment in the criminal case, yet the progress made by the parties in *this* case and the remoteness

of the criminal trial both favor denying a stay of civil discovery.  Even though the Government

had the benefit of JPMC's Complaint and closely coordinated with JPMC to file charging

documents against Ms. Javice and Mr. Amar, it waited seven months after JPMC filed its

Complaint to seek a stay in this case.  By the time the Government moved, Ms. Javice has already

filed an answer, D.I. 10, this Court has ruled on Mr. Amar's motion to dismiss, D.I. 59, Mr. Amar

has filed an answer, D.I. 61, the parties met and conferred about the discovery process and case

schedule, and Ms. Javice has served discovery requests on JPMC.  Thus, this case has advanced

considerably, and there is no need to undo that progress and let this case stay idle for months or

years to come just because the Government now comes late to seek a stay.  Trial in the criminal case, by contrast, has not even been scheduled.  And it is unclear when the trial will be, how many days or weeks the trial will last, and whether either side will pursue an appeal, all of which make it impossible to predict how long the Government's requested stay will last.  *See Anderson v. Saul,* 2019 WL 13200600, at *3 (M.D. Pa. Sept. 10, 2019) ("Stays of indefinite duration are disfavored."); *Cheyney State Coll. Faculty v. Hufstedler*, 703 F.2d 732, 738 (3d Cir. 1983).

Notwithstanding the parties' substantial progress in this litigation, the Government argues that the status of the criminal case supports a stay simply because Defendants have been indicted and "will shortly receive" additional discovery in the criminal case.  *See* D.I. 60 at 15.  But that position does not satisfy the Government's burden for a stay, as demonstrated by courts that have *denied* stays even where a defendant has been indicted and a trial was actually scheduled.  *See Chakrapani*, 2010 WL 2605819, at *11; *Saad*, 229 F.R.D. at 91; *O'Neill*, 98 F. Supp. 3d at 221. These courts reason that an indictment creates an obligation for the Government "to produce *Brady* and other materials covered by the automatic discovery rules" in the criminal case, and "[a]t this point in the proceedings, the government should be preparing to share its theory of the case and the evidence in support of it, rather than looking for ways to delay the disclosure of relevant information."  *O'Neill*, 98 F. Supp. 3d at 221; *see also Chakrapani*, 2010 WL 2605819, at *11 (denying even a limited stay of discovery of witness statements until such documents were produced in the criminal case); *Saad*, 229 F.R.D. at 91 (denying Government's motion to preclude civil discovery of documents prior to disclosure of those documents in the criminal case).  That more documents remain to be produced does not justify a wholesale delay of any exchange of documents by the private parties in this lawsuit—*none of whom object to proceeding with such discovery in tandem with the criminal action.*

17

To support this factor, the Government also attempts to make the criminal case appear more advanced than it is. But the Government's recitation of the status of the criminal case is inaccurate. Contrary to the Government's assertion, Judge Hellerstein has never scheduled a trial date in the criminal case, whether in October or otherwise. *But see* D.I. 60 at 9 (representing that "a trial date in October 2023 . . . was in fact scheduled, but then adjourned *sine die* at [Ms.] Javice's request"). There is no minute order, scheduling order, or docket entry mentioning a scheduled trial date that was withdrawn—and, tellingly, the Government has not pointed to one. Instead, the Government takes out of context a brief colloquy between the Government, counsel for Ms. Javice, and Judge Hellerstein concerning whether Ms. Javice would exclude time under the Speedy Trial Act before the next status conference, wherein Judge Hellerstein indicated that if Ms. Javice would not waive time, he would schedule a trial for the Government's requested date in October, but if she did waive time he would adjourn without a trial date set—which is what he ultimately did. *See* D.I. 60-1, Ex. B at 8.

Moreover, the Government also omits that foundational to its request to set a trial date were its representations to Judge Hellerstein that it had already received and produced to Ms. Javice all of the investigatory material it expected to obtain, with the exception of only minimal straggling discovery that it represented would be produced before the next status conference on July 13, 2023. *See id.* at 6-8. These representations have not proven accurate. At the July 13 conference, the Government admitted to the Court that there were "voluminous" additional materials potentially comprising hundreds of thousands of documents that they had not yet received from JPMC or produced to Defendants. D.I. 60-1, Ex. D at 12. Upon hearing this, Judge Hellerstein ordered the Government to "give a terminal date to Chase" to complete productions and "discharge its obligations under Rule 16 promptly, not at a leisurely pace." *Id.* at 12-13. Yet this has still not

happened.  As of late July, the Government has now conceded in correspondence to Ms. Javice's counsel that the outstanding discovery yet to be obtained comprises "voluminous material" that will require a "significant undertaking" before it is even received by the Government, much less by Defendants.   Contrary to the Government's assertions of readiness, and as Judge Hellerstein has repeatedly emphasized, the Government's failure to fulfill its discovery obligations remains a key obstacle to setting any motions date, much less a trial date.

By contrast, the progress made in this case prior to the Government's proposed stay, paired with the indefinite length of time that will elapse before civil proceedings can resume if a stay is granted, therefore weigh in favor of denying the stay.

### D.     A Stay of Discovery Will Waste Judicial Resources and Impose Unnecessary Burdens on this Court

The Court's interest in efficiently managing its docket and encouraging the timely resolution of disputes also favors denying the stay.  *See Chakrapani*, 2010 WL 2605819, at *10 (citation omitted) ("The interest of the courts . . . supports expeditious discovery" and "the expeditious resolution of cases."); *see also Swainson v. City of Philadelphia*, 2012 WL 17669708, at *3 (E.D. Pa. Dec. 14, 2022) (denying motion to stay because, among other things, a stay would frustrate the Court's interests in efficiency).   In taking the opposite position, the Government simply rehashes its conclusory argument that the criminal case "will likely affect" how this case proceeds, citing the potential that the outcome of the criminal case will "potentially streamlin[e]" the issues here.  D.I. 60 at 17.  But the Government's optimism that the criminal case will simplify issues in the civil case does not satisfy its burden for a stay.  *See Anthony v. City of Philadelphia*, 2001 WL 118964, at *2 (E.D. Pa. Feb. 9, 2001) (rejecting argument as too speculative that court will benefit from stay because resolution of criminal case may reduce or simplify issues in the civil case).  Ms. Javice and Mr. Amar are confident that the Government will fail to meet its burden of

proof beyond a reasonable doubt.  Or, "[i]t is possible that the Criminal Case could result in a mistrial leaving the Criminal Case unresolved and this case stayed with discovery open."  *SEC v. Balwani*, 2019 WL 2491963, at *3 (N.D. Cal. June 14, 2019) (denying the Government's request for a stay of a parallel civil proceeding).

But more importantly, even if resolving the criminal case could streamline *some* issues in this litigation, this Court should "still be wary of abridging [Defendants'] procedural and discovery rights in an effort to save resources and time."  *Id.* (citing *SEC v. Kanodia*, 153 F. Supp. 3d 478, 483 (D. Mass. 2015)); *O'Neill*, 98 F. Supp. 3d at 223.  Absent anything other than a total victory for the Government, this Court and Defendants would have waited months or years with this case languishing on the docket only for the parties to finally begin seeking discovery from each other and third parties once the criminal case concludes.  The only way to balance Ms. Javice's and Mr. Amar's procedural rights with "judicial efficiency" is to proceed expeditiously with discovery so that the civil case is ready to proceed to trial in tandem with or upon immediate conclusion of the criminal proceeding.  A stay under these circumstances runs counter to this Court's local rules that clearly contemplate swift discovery and respect the prompt resolution of cases, and will only cause unnecessary delay and interfere with judicial administration and the just, speedy, and inexpensive determination of this action.  *See* J. Wolson's Policies and Procedures, Section II.C.1; J. Wolson's Rule 26(f) Report Template at 4; *see also Kenney v. Cal. Tanker Co.*, 381 F.2d 775, 777 (3d Cir. 1967); *see also In re Blood Reagents Antitrust Litig.*, 756 F. Supp. 2d 623, 636 (E.D. Pa. 2010); *In re Plastics Additives Antitrust Litig.*, 2004 WL 2743591, at *7 (E.D. Pa. Nov. 29, 2004).

### E.     The Public Interest Favors Prompt Resolution of JPMC's Case

The Government's final contention that the public has an interest in preventing Ms. Javice and Mr. Amar from obtaining discovery to which they are entitled under the Federal Rules of Civil Procedure in this action, merely because civil discovery might also enable them to prepare a better

defense in the criminal action, D.I. 60 at 17-21, is as troubling as it is unavailing.  Although the Government spills much ink conflating its own litigation advantage with the public interest, the two are *not* synonymous.  *See Chakrapani*, 2010 WL 2605819, at *11 (rejecting Government's argument "that its interest in preserving its cooperating witness for the criminal trial is synonymous with . . . the public interest").

The Government's argument boils down to its usual, perfunctory claim that it is entitled to a stay "because, if [Defendants] were only facing a criminal indictment, they would not be entitled to [discovery] at this time."  *Saad*, 229 F.R.D. at 92.  But the Government knew about JPMC's lawsuit—and actively coordinated and shared information with JPMC—months before bringing any criminal charges against either Defendant.  *See SEC v. Sandifur*, 2006 WL 3692611, at *3 (W.D. Wash. Dec. 11, 2006).  To the extent JPMC's first-filed civil lawsuit threatens the Government's tactical discovery advantage over Defendants, that problem is entirely of the Government's own making.  *See Balwani*, 2019 WL 2491963, at *4.  This Court should not relieve the Government of the drawbacks of its calculated, strategic choice to bring criminal charges when it did, and shift those drawbacks over to Defendants instead.

Nor are the Government's generic references to the "well-founded restrictions" of criminal discovery sufficient to justify a stay in this particular private civil lawsuit.  *See* D.I. 60 at 17.  To the contrary, the Government's desire to "jealous[ly] protect[]" its witnesses and documents, *Chakrapani*, 2010 WL 2605819, at *11, "is a strategic and tactical consideration that has little to do with the public interest," *Kanodia*, 153 F. Supp. 3d at 484.  Further, the availability of the Federal Rules of Civil Procedure does not turn on whether any of the parties are facing criminal charges.  *Cf. Saad*, 229 F.R.D. at 92; *SEC v. Oakford Corp.*, 181 F.R.D. 269, 270 (S.D.N.Y. 1998).  As other courts have recognized, "there is no cognizable harm to the government in providing such

discovery beyond its desire to maintain a tactical advantage." *Oakford Corp.*, 181 F.R.D. at 273; *cf. SEC v. Fraser*, 2009 WL 1531854, at *2 (D. Ariz. June 1, 2009) (holding that the "conclusory allegation that the criminal case might be harmed because civil discovery rules are more broad than criminal discovery rules" is "a blanket assertion" that does not show "substantial prejudice"). That the government wants to maximize its already superior tactical advantage in the criminal case does not justify completely halting discovery in this purely private litigation, filed in a completely different forum, more than *seven months* in advance of the Government's indictment against Ms. Javice and Mr. Amar.

The Government also fails to articulate any *specific* concerns about *how* allowing discovery to proceed in this case would enable defendants to "tailor testimony, suborn perjury, manufacture evidence[,] or intimidate witnesses"—because there are none. D.I. 60 at 17. These are white collar defendants who do not present any concrete risk of intimidating witnesses to create evidence or testify in their favor. *See* Ex. E at 7 (noting that the Government's argument on this point was "somewhat abstract" because this case involves "a white collar defendant who doesn't seem to present a particular risk of threatening witnesses"). There is no suggestion, for example, that civil discovery would uncover the identity of witnesses that are not already known to the defense. And in any event, a no-contact order is already in place. *See* Ex. D (Apr. 4, 2023 Hr'g Tr. in *United States v. Javice*, No. 1:23-cr-00251-AKH-1 (S.D.N.Y)) at 14. The Government cites no specific facts that would lend any credulity to an actual threat of witness intimidation or artificially tailored testimony.

Additionally, the Government does not, and cannot, articulate any specific concern about how allowing civil discovery to proceed might result in manufactured evidence. Nor could it, as the relevant evidence—which *Defendants* are seeking access to—resides almost exclusively with

JPMC or third parties.   Instead, the Government simply requests to stay this case on the off-chance that defendants *may* someday try to obtain some unspecified form of discovery that might somehow implicate these vague interests.   This is the worst kind of speculation.   "[T]he limits on criminal discovery do not exist for their own sake," but to "guard against *specific* concerns."  *SEC v. Cioffi*, 2008 WL 4693320, at *2 (E.D.N.Y. Oct. 23, 2008).   And those limits certainly do not exist to provide the Government with a tactical advantage over criminal defendants premised on obscuring, rather than revealing, all of the relevant facts and evidence.   Courts thus routinely deny motions to stay when the underlying reasoning is to prevent future civil discovery that might in some speculative and unspecified way affect the Government's case.  *See SEC v. Mazzo*, 2013 WL 812503, at *2 (C.D. Cal. Feb. 25, 2013); *Chakrapani*, 2010 WL 2605819, at *11; *Fraser*, 2009 WL 1531854, at *2; *Cioffi*, 2008 WL 4693320, at *2.   The Government suggests that permitting discovery here would *obstruct* the truth-seeking function of proceedings; in reality, permitting discovery would *further* such aims.  *O'Neill*, 98 F. Supp. 3d at 224.

In an effort to demonstrate that its concerns are not purely speculative, the Government claims that Ms. Javice "is seeking civil discovery for use in her criminal trial."  D.I. 60 at 20.   But this accusation is based solely on what the SEC wrote in a self-serving letter, which itself was unaccompanied by any declaration or affirmation under oath.  *See id.* (citing D.I. 60-1, Ex. I).  Ms. Javice maintains that the SEC misapprehended and mischaracterized the discussion that took place, as reflected in the SEC's email itself, *id.*, and in contemporaneous emails exchanged between the SEC and Ms. Javice's counsel, Ex. G at 1 (June 2, 2023 Email from S. Concannon).  Even so, this allegation has nothing to do with Mr. Amar, who similarly opposes a stay and against whom the Government does not allege seeks civil discovery for use elsewhere.

The Government further claims that a full stay is necessary to prevent "asymmetrical discovery," should Ms. Javice or Mr. Amar assert their Fifth Amendment rights. D.I. 60 at 19-20. Setting aside the irony of this argument—given that asymmetrical discovery is precisely what the Government, which has been working with JPMC for at least ten months, is seeking to maintain here—neither Ms. Javice nor Mr. Amar have yet "invoked their Fifth Amendment privileges in connection with discovery." *See Chakrapani*, 2010 WL 2605819, at \*11 & n.5 (assertion of Fifth Amendment privilege in answer did not support stay). Moreover, the Government's argument is *irrelevant* to the *criminal* case or any alleged prejudice to the Government. Defendants in a criminal case *always* have the right to invoke their Fifth Amendment privilege without suffering an adverse inference at trial. *See United States v. Okatan*, 728 F.3d 111, 116 (2d Cir. 2013). If anything, any resulting prejudice that the Government has identified would be to JPMC, not the Government—and it is not the Government's job to protect JPMC's position in this civil case, particularly where JPMC consistently has taken no position on the Government's motion. *See* D.I. 60 at 1, 16. Further, to the extent this issue arises later, this Court can always fashion appropriate relief to avoid any potential Fifth Amendment issues if the parties require the Court's intervention. *See, e.g.*, *Saad*, 229 F.R.D. at 91 (staying depositions of all defendants); *SEC v. Gilbertson*, 2017 WL 5172313, at \*3 (D. Minn. May 12, 2017) (staying defendant's deposition and responses to "written discovery requests that require a sworn response"); *Kanodia*, 153 F. Supp. 3d at 483 (staying deposition of defendant); *see also Anthony*, 2001 WL 118964, at \*2 (denying Government's motion to stay but allowing it to file a protective order if it opposes production of certain discovery).

The public interest therefore does not favor the Government. To the contrary, the public interest favors preventing the Government from using criminal proceedings to "escalate the

pressure on" its citizens who are already defending against civil lawsuits. *See Sterling Nat. Bank v. A-1 Hotels Intern., Inc.*, 175 F. Supp. 2d 573, 578-79 (S.D.N.Y. 2001).  It favors ensuring that the presumption of innocence is maintained and that only those proven guilty beyond a reasonable doubt are convicted, not in further tilting the scales of justice against unwitting defendants. *O'Neill*, 98 F. Supp. 3d at 224 ("[E]vidence supporting an indicted criminal case ought to be able to survive scrutiny, and the government should not be so invested in withholding information until disclosure is required—after all, the goal is a just resolution in both the civil and criminal cases, and there is no doubt that confidence in an outcome is highest where the evidence is known and can be tested.").  It favors preventing private plaintiffs, like JPMC, from sullying defendants' names without subjecting themselves to the truth-seeking function of the U.S. courts, and from using Government resources to obtain unfair advantage against civil defendants in civil proceedings.  *See Oakford Corp.*, 181 F.R.D. at 273.  And it favors the public's interest in seeing this widely-publicized action promptly resolved based on the truth, often only revealed through the adversary process that the Federal Rules of Civil Procedure are designed to promote.  *See O'Neill*, 98 F. Supp. 3d at 224; *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 326 (9th Cir. 1995).

## CONCLUSION

For the foregoing reasons, Ms. Javice and Mr. Amar respectfully request that this Court deny the Government's motion.

  */s/ Michael A. Barlow*
Michael A. Barlow (#3928)
Samuel D. Cordle (#6717)
ABRAMS & BAYLISS LLP
20 Montchanin Drive, Suite 200
Wilmington, Delaware 19807
(302) 778-1000

  */s/ Jacob R. Kirkham*
Jacob R. Kirkham (#5768)
KOBRE & KIM LLP
600 North King Street, Suite 501
Wilmington, Delaware 19801
Telephone: (302) 518-6460
Facsimile: (302) 518-6461
Jacob.Kirkham@kobrekim.com

barlow@abramsbayliss.com
cordle@abramsbayliss.com

OF COUNSEL:
Alex Spiro
Maaren A. Shah
JP Kernisan
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000
alexspiro@quinnemanuel.com
maarenshah@quinnemanuel.com
jpkernisan@quinnemanuel.com

*Attorneys for Defendant / Counterclaim
Plaintiff Charlie Javice*

Steven G. Kobre (appearance *pro hac vice*)
Sean S. Buckley (appearance *pro hac vice*)
Alexandria E. Swette (appearance *pro hac vice*)
KOBRE & KIM LLP
800 Third Ave
New York, New York 10022
Telephone: (212) 488-1200
Facsimile: (212) 488-1220
Steven.Kobre@kobrekim.com
Sean.Buckley@kobrekim.com
Alexandria.Swette@kobrekim.com

Sydney Sgambato Johnson (appearance *pro hac
vice* forthcoming)
KOBRE & KIM LLP
1919 M Street, NW
Washington, DC 20036
Telephone: (202) 664-1900
Facsimile: (202) 664-1920
Sydney.Johnson@kobrekim.com

*Attorneys for Defendant Olivier Amar*

DATED:  August 8, 2023