# EXHIBIT A



Hogan Lovells US LLP
390 Madison Avenue
New York, NY 10017
T  +1 212 918 3000
F  +1 212 918 3100
www.hoganlovells.com

March 16, 2023

<u>**Via E-mail**</u>

Alex Spiro, Esq.
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue
New York, NY 10010
alexsprio@quinnemanuel.com

    **Re:**      **Demand for Preservation of Documents**

Dear Mr. Spiro:

      We write on behalf of JPMorgan Chase Bank, N.A. ("JPMC") in response to your letter, dated March 13, 2023 (the "March 13 Letter").  As explained below, the March 13 Letter does not allay the concerns JPMC expressed in its letter dated February 14, 2023 (the "February 14 Letter").

      As a preliminary matter, it is concerning that it took Ms. Javice over 30 days to respond to JPMC's letter, given that the March 13 Letter contains only conclusory assertions.  More critically, however, the March 13 Letter fails to address a number of issues raised by JPMC.

      <u>**First**</u>, Ms. Javice has provided no information whatsoever regarding Chariot X Holdings, LLC, the Nevada shell company to which Ms. Javice has transferred a large portion of the Merger Proceeds.[1]  Your letter incorrectly asserts that Ms. Javice transferred her assets because JPMC terminated its banking relationship with Ms. Javice.  Not so.  The questionable transfers to Chariot X Holdings occurred between September and December 2022, long before JPMC took any action with respect to its banking relationship with Ms. Javice.  Moreover, if Ms. Javice has simply transferred her assets to accounts in her name at another reputable banking institution, JPMC would not have the same concerns.  What Ms. Javice did, however, was establish a Nevada limited liability company with no apparent business purpose and then transfer nearly $9 million dollars to that entity, directly undermining your assertion that her transfers do not suggest misconduct or an attempt to shield assets from litigation recovery.  Further amplifying JPMC's concerns is that the transfers to Chariot X Holdings were to Signature Bank, which the FDIC has since seized.

---

[1]     Capitalized terms not defined in this letter shall have the meaning attributed to them in the February 14 Letter.

March 16, 2023
Alex Spiro, Esq.
Page 2

 Ms. Javice's behavior raises red flags about fraudulent conveyances to Chariot X Holdings that are not addressed in the March 13 Letter.  Nor does the March 13 Letter provide any of the representations that JPMC requested.  *See* Feb. 14 Letter at 2-3 (listing items 1-5).[2]

 **Second**, the conclusory assertion that "Ms. Javice is aware of, has complied with, and will continue to comply with the ongoing duty to preserve, including with respect to data from her Twitter account" fails to address the fact that Ms. Javice deactivated her Twitter account, risking destruction of relevant evidence, and only very recently restored it.  The March 13 Letter does not represent that no data was lost in the process of deactivating and restoring the Twitter account.

 **Third**, your response regarding Ms. Javice's access to Frank's Systems and Applications is incomplete.  It is irrelevant whether Ms. Javice was "the administrative [or] system owner" of Frank's Applications and Systems.  If Ms. Javice has in her possession, custody, or control any passwords or other credentials to those Applications and Systems, she must return them to JPMC.  In addition, the March 13 Letter ignores the issue of two-factor authentication.  Frank's Dropbox account, for example, is tied to Ms. Javice's email and/or phone number.  JPMC does not have the username and password to that account and cannot reset that password because the account is controlled by Ms. Javice.

 In light of the foregoing, JPMC intends to make a motion to request a partial lifting of the discovery stay imposed by the Private Securities Litigation Reform Act of 1995 ("Reform Act").  In particular, JPMC will seek discovery concerning Ms. Javice's asset transfers as well as her preservation of social media and possession of JPMC property.  In an effort to avoid motion practice, please confirm whether Ms. Javice is willing to voluntarily provide this discovery.

 As required by the local rules, our Delaware counsel will be contacting Ms. Javice's to meet and confer regarding JPMC's motion.

 Sincerely,

William M Regan

 William M. Regan

---

[2]  Your assertion that JPMC has "improperly abused its banking relationship with Ms. Javice" has no basis in law or fact.  Financial institutions are permitted to review transactions that occur in a depositor's accounts, and applicable privacy policies allow JPMC to use that information to enforce or defend legal rights and share that information with third parties to protect against suspected fraud or protect JPMC's rights.  JPMC has in no way "harassed" Ms. Javice.

# EXHIBIT B



Hogan Lovells US LLP
390 Madison Avenue
New York, NY 10017
T  +1 212 918 3000
F  +1 212 918 3100
www.hoganlovells.com

April 6, 2023

**<u>Via E-mail</u>**

Alex Spiro, Esq.
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue
New York, NY 10010
alexsprio@quinnemanuel.com

Re:      **Preservation of Documents**

Dear Mr. Spiro:

We write on behalf of JPMorgan Chase Bank, N.A. ("JPMC") in response to the requests in your January 18, 2023, March 13, 2023, and March 20, 2023 letters regarding the preservation of certain information (the "Letters").

Through these Letters, Ms. Javice has requested the preservation of items outside JPMC's possession, custody, and control or of no relevance to disputed issues. For example, your January 18, 2023 correspondence asked JPMC to preserve data in the possession, custody, or control of third parties regarding systems that have no relevance. If Javice wants to preserve such data, JPMC invites Ms. Javice to agree to the opening of full discovery or, at a minimum, Ms. Javice's agreement to open discovery for the purpose of sending preservation subpoenas to third parties. Additionally, seeking to deflect attention from specific discovery concerns that JPMC has raised, Ms. Javice has made non-specific inquiries regarding JPMC's preservation efforts. In response to such inquires, JPMC states that it has taken, and continues to evaluate, reasonable steps to preserve relevant evidence as contemplated by the Federal Rules of Civil Procedure.

Sincerely,

William M Regan

William M. Regan

# EXHIBIT C

**From:** JP Kernisan
**Sent:** Monday, May 29, 2023 10:07 PM
**To:** Regan, William M. <william.regan@hoganlovells.com>
**Cc:** Barlow, Michael A <barlow@abramsbayliss.com>; Maaren Shah <maarenshah@quinnemanuel.com>; Alex Spiro <alexspiro@quinnemanuel.com>; Walsh, Jr. Peter J. <pwalsh@potteranderson.com>; Pittenger, Michael A. <mpittenger@potteranderson.com>; Wuertz, Allison M <allison.wuertz@hoganlovells.com>
**Subject:** RE: JPMorgan Chase Bank, N.A. v. Javice et al., D. Del. C.A. No. 22-1621-MN

Bill,

Mike and Pete spoke last week prior to your 11 pm email Friday night indicating your position on lifting the PSLRA stay, so we don't think any further discussion is necessary.  We have also conferred with counsel for Mr. Amar and will move tomorrow to lift the PSLRA stay for document discovery.  We are available for a call tomorrow at 10 am to the extent you think any further discussion is needed.

Thanks,

JP

---

**From:** Regan, William M. <william.regan@hoganlovells.com>
**Sent:** Friday, May 26, 2023 11:01 PM
**To:** JP Kernisan <jpkernisan@quinnemanuel.com>
**Cc:** Barlow, Michael A <barlow@abramsbayliss.com>; Maaren Shah <maarenshah@quinnemanuel.com>; Alex Spiro <alexspiro@quinnemanuel.com>; Walsh, Jr. Peter J. <pwalsh@potteranderson.com>; Pittenger, Michael A. <mpittenger@potteranderson.com>; Wuertz, Allison M <allison.wuertz@hoganlovells.com>
**Subject:** RE: JPMorgan Chase Bank, N.A. v. Javice et al., D. Del. C.A. No. 22-1621-MN

<mark>**[EXTERNAL EMAIL from william.regan@hoganlovells.com]**</mark>

---

JP:

JPMC is prepared to move forward with discovery when permitted by the Court.  JPMC is the plaintiff in this case and wants to conduct discovery to advance it's claims.  As you know, even prior to the litigation, JPMC requested that Ms. Javice participate in an interview to discuss the Frank transaction.  Ms. Javice agreed in writing to participate in that interview but reneged at the 11th hour and failed to appear.  In connection with the agreed interview, JPMC provided your firm with the documents referenced in the Complaint and other key materials.  Ms. Javice, in contrast, has provided no information to JPMC.

We assume that Ms. Javice is aware of the motion that the USAO-SDNY filed seeking to stay discovery in the SEC Action.  It is to be expected that the USAO-SDNY will likewise seek a stay if and when discovery begins in the civil litigation between JPMC and Ms. Javice.  Given the USAO-SDNY's now public position, we suggest that Ms. Javice solicit the USAO-SDNY's view before Ms. Javice submits any motion to the Court in the civil litigation.

Finally, we note that it was Mr. Amar's decision to file a motion to dismiss that triggered the PSLRA discovery stay.  Given that fact, we suggest that Ms. Javice confer with Mr. Amar and determine his position prior to filing any motion in the civil litigation.

In the event Ms. Javice elects to file a motion to lift the PSLRA discovery stay without first conferring with the USAO-SDNY and Mr. Amar, JPMC will take no position on that motion based on the considerations outlined above and considering your May 24 response to my earlier questions.

Regards,

Bill

**William Regan**
Partner

**Hogan Lovells US LLP**
390 Madison Avenue
New York, NY 10017
Tel:      +1 212 918 3000
Direct:  +1 212 918 3060
Fax:     +1 212 918 3100
Email:   william.regan@hoganlovells.com
           www.hoganlovells.com

---

**From:** JP Kernisan <jpkernisan@quinnemanuel.com>
**Sent:** Wednesday, May 24, 2023 11:37 AM
**To:** Regan, William M. <william.regan@hoganlovells.com>; Walsh, Jr. Peter J. <pwalsh@potteranderson.com>; Pittenger, Michael A. <mpittenger@potteranderson.com>; Wuertz, Allison M <allison.wuertz@hoganlovells.com>
**Cc:** Barlow, Michael A <barlow@abramsbayliss.com>; Maaren Shah <maarenshah@quinnemanuel.com>; Alex Spiro <alexspiro@quinnemanuel.com>
**Subject:** RE: JPMorgan Chase Bank, N.A. v. Javice et al., D. Del. C.A. No. 22-1621-MN

**[EXTERNAL]**
Bill,

Our client reserves all rights and does not agree to waive anything related to the specific issues mentioned in your email below. Please let us know your position on agreeing to lift the PSLRA stay and open full discovery as soon as possible and no later than this Friday.

We're available to meet and confer tomorrow or Friday.  Please let us know your availability.

Thanks,

JP

---

**From:** Regan, William M. <william.regan@hoganlovells.com>
**Sent:** Tuesday, May 23, 2023 5:26 PM
**To:** JP Kernisan <jpkernisan@quinnemanuel.com>
**Cc:** Walsh, Jr. Peter J. <pwalsh@potteranderson.com>; Pittenger, Michael A. <mpittenger@potteranderson.com>;

Wuertz, Allison M <allison.wuertz@hoganlovells.com>; Alex Spiro <alexspiro@quinnemanuel.com>; Maaren Shah <maarenshah@quinnemanuel.com>; Barlow, Michael A <barlow@abramsbayliss.com>
**Subject:** RE: JPMorgan Chase Bank, N.A. v. Javice et al., D. Del. C.A. No. 22-1621-MN

**[EXTERNAL EMAIL from william.regan@hoganlovells.com]**

---

JP:

We write to clarify several issues with respect to your email below.  First, has Mr. Amar, as a party to the litigation and the PSLRA stay, consented to the proposal to open full discovery?  Second, is Ms. Javice proposing to fully participate in the discovery process (*i.e.*, producing documents, answering interrogatories, providing deposition testimony, etc.) without asserting her 5th Amendment rights or any other objections related to the pending criminal and SEC matters?  Third, will Ms. Javice waive all objections and fully respond to the limited discovery that JPMC is seeking in its PSLRA discovery motion?  Finally, will Ms. Javice agree to not seek advancement for any fees associated with her opposition to JPMC's motion, which she is now proposing to withdraw?

Regards,

Bill

**William Regan**
Partner

**Hogan Lovells US LLP**
390 Madison Avenue
New York, NY 10017
Tel:      +1 212 918 3000
Direct:  +1 212 918 3060
Fax:     +1 212 918 3100
Email:   william.regan@hoganlovells.com
           www.hoganlovells.com

---

**From:** JP Kernisan <jpkernisan@quinnemanuel.com>
**Sent:** Sunday, May 21, 2023 8:35 PM
**To:** Regan, William M. <william.regan@hoganlovells.com>; Walsh, Jr. Peter J. <pwalsh@potteranderson.com>; Pittenger, Michael A. <mpittenger@potteranderson.com>; Wuertz, Allison M <allison.wuertz@hoganlovells.com>
**Cc:** Alex Spiro <alexspiro@quinnemanuel.com>; Maaren Shah <maarenshah@quinnemanuel.com>; Barlow, Michael A <barlow@abramsbayliss.com>
**Subject:** JPMorgan Chase Bank, N.A. v. Javice et al., D. Del. C.A. No. 22-1621-MN

**[EXTERNAL]**
Counsel:

We are writing to seek your position as to whether you would agree to open full discovery in the above-referenced matter.

On April 6, in response to several of our requests that JPMC preserve documents from sites, accounts, and platforms maintained with certain JPMC and/or Frank vendors, you asked if Ms. Javice would "agree to the opening of full discovery." Before we had an opportunity to respond, on April 7, you filed a motion to partially lift the PSLRA stay in order to obtain discovery relating to, inter alia, Ms. Javice's transfers of funds from Chase. Ms. Javice opposed this motion primarily on the grounds that we believe the discovery sought was improper and premature judgment discovery. JPMC's motion remains pending before the court.

Ms. Javice is willing to agree to the opening of full discovery. If you agree, we will withdraw our pending opposition, subject to a stipulation that Ms. Javice and JPMC each reserve all rights to object to specific discovery requests.

Would you please let us know as soon as possible, and no later than close of business on Tuesday, your position on lifting the stay and proceeding with full discovery?

As stated above, Ms. Javice reserves all rights to oppose any particular discovery requests; further, she reserves all rights in connection with the applicability of the PSLRA stay.

Thanks,

JP

**JP Kernisan | Partner |** **Quinn Emanuel Urquhart & Sullivan, LLP**

---

**About Hogan Lovells**
Hogan Lovells is an international legal practice that includes Hogan Lovells US LLP and Hogan Lovells International LLP. For more information, see www.hoganlovells.com.


CONFIDENTIALITY. This email and any attachments are confidential, except where the email states it can be disclosed; it may also be privileged. If received in error, please do not disclose the contents to anyone, but notify the sender by return email and delete this email (and any attachments) from your system.

PRIVACY. Hogan Lovells processes personal data, including data relating to email communications, in accordance with the terms of its privacy policy which is available at www.hoganlovells.com/en/privacy.

# EXHIBIT D

| From: | Wuertz, Allison M <allison.wuertz@hoganlovells.com> |
|---|---|
| Sent: | Saturday, July 29, 2023 6:26 PM |
| To: | Alexandria Swette; JP Kernisan; Maaren Shah; Alex Spiro; Jenny Braun; Barlow, Michael A; cordle@abramsbayliss.com; Jacob R. Kirkham; Steve G. Kobre; Sean S. Buckley; Genna Sinel |
| Cc: | Regan, William M.; McGovern, James G.; Rackear, Samuel; Walsh, Jr. Peter J.; Pittenger, Michael A.; Choa, Jonathan A. |
| Subject: | RE: [EXTERNAL] RE: JPMorgan Chase Bank, N.A. v. Javice, et al., Case No. 22-1621 (JDW) |

**[EXTERNAL EMAIL from allison.wuertz@hoganlovells.com]**

Alex,

We disagree with many of the assertions in your email, and JPMC reserves all of its rights.

We are available at 11 am on Wednesday to meet and confer.  Please confirm that counsel for both Mr. Amar and Ms. Javice will be in attendance.

Regards,
Allison

**From:** Alexandria Swette <Alexandria.Swette@kobrekim.com>
**Sent:** Friday, July 28, 2023 4:28 PM
**To:** Wuertz, Allison M <allison.wuertz@hoganlovells.com>; JP Kernisan <jpkernisan@quinnemanuel.com>; Maaren Shah <maarenshah@quinnemanuel.com>; Alex Spiro <alexspiro@quinnemanuel.com>; Jenny Braun <jennybraun@quinnemanuel.com>; Barlow, Michael A <barlow@abramsbayliss.com>; cordle@abramsbayliss.com; Jacob R. Kirkham <Jacob.Kirkham@kobrekim.com>; Steve G. Kobre <Steven.Kobre@KobreKim.com>; Sean S. Buckley <Sean.Buckley@kobrekim.com>; Genna Sinel <Genna.Sinel@kobrekim.com>
**Cc:** Regan, William M. <william.regan@hoganlovells.com>; McGovern, James G. <james.mcgovern@hoganlovells.com>; Rackear, Samuel <Samuel.Rackear@HoganLovells.com>; Walsh, Jr. Peter J. <pwalsh@potteranderson.com>; Pittenger, Michael A. <mpittenger@potteranderson.com>; Choa, Jonathan A. <jchoa@potteranderson.com>
**Subject:** RE: [EXTERNAL] RE: JPMorgan Chase Bank, N.A. v. Javice, et al., Case No. 22-1621 (JDW)

[EXTERNAL]
Allison,

Mr. Amar does not have a "newly discovered interest in pursuing prompt discovery." As you know, almost two months ago, Mr. Amar joined in Ms. Javice's motion to partially lift the PSLRA's automatic stay of discovery, while his motion to dismiss was pending.

That Mr. Amar moved to dismiss is beside the point. In many cases, a pending motion to dismiss does not stay the parties' discovery obligations. The discovery stay here was automatic under the PSLRA. Mr. Amar had the right to seek dismissal of the claims against him, and any delay in discovery that resulted from that motion was a function of the applicable law. And again, notwithstanding the statutory automatic stay, Mr. Amar specifically sought to partially lift the stay to get discovery moving. That stay is no longer in effect, and so discovery must proceed. The Judge's rules are

1

unambiguous on this point and provide no exception for a pending motion to stay, particularly one filed by a non-party seeking to intervene.

For the same reasons, there is no merit to your threats to seek legal fees. Moving forward with the Rule 26(f) process in compliance with the Judge's rules is reasonable and advanceable. As you are aware, JPM is not entitled to control Mr. Amar's litigation strategy through the threat of non-payment of its advancement obligations. If JPM improperly refuses advancement, we obviously reserve our right to seek fees for fees in the Rule 88 process.

We are available on Monday at 2:30 p.m. and on Wednesday at 11 a.m. To avoid any further delay in coordinating schedules, we ask that JPM respond promptly with its availability.

Kind regards,
Alex



Alexandria Swette
+1 212 488 4917

## KOBRE & KIM

**www.kobrekim.com**

**Americas** (New York, Delaware, Miami, San Francisco, São Paulo, Washington DC)
**APAC** (Hong Kong, Seoul, Shanghai), **Caribbean** (BVI, Cayman Islands), **EMEA** (Cyprus, Dubai, London, Tel Aviv)


This e-mail message is from Kobre & Kim LLP, a limited liability partnership established under the laws of New York, referred to above as Kobre & Kim, and may contain legally privileged and/or confidential information. If the reader of this message is not the intended recipient(s), or the employee or agent responsible for delivering the message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please notify the sender immediately and delete this e-mail message and any attachments from your computer without retaining a copy.

**From:** Wuertz, Allison M <allison.wuertz@hoganlovells.com>
**Sent:** Friday, July 28, 2023 9:12 AM
**To:** Alexandria Swette <Alexandria.Swette@kobrekim.com>; JP Kernisan <jpkernisan@quinnemanuel.com>; Maaren Shah <maarenshah@quinnemanuel.com>; Alex Spiro <alexspiro@quinnemanuel.com>; Jenny Braun <jennybraun@quinnemanuel.com>; Barlow, Michael A <barlow@abramsbayliss.com>; cordle@abramsbayliss.com; Jacob R. Kirkham <Jacob.Kirkham@kobrekim.com>; Steve G. Kobre <Steven.Kobre@KobreKim.com>; Sean S. Buckley <Sean.Buckley@kobrekim.com>; Genna Sinel <Genna.Sinel@kobrekim.com>
**Cc:** Regan, William M. <william.regan@hoganlovells.com>; McGovern, James G. <james.mcgovern@hoganlovells.com>; Rackear, Samuel <Samuel.Rackear@HoganLovells.com>; Walsh, Jr. Peter J. <pwalsh@potteranderson.com>; Pittenger, Michael A. <mpittenger@potteranderson.com>; Choa, Jonathan A. <jchoa@potteranderson.com>
**Subject:** RE: [EXTERNAL] RE: JPMorgan Chase Bank, N.A. v. Javice, et al., Case No. 22-1621 (JDW)

Alex:

Mr. Amar's newly discovered interest in pursuing prompt discovery is of course inconsistent with his filing of a meritless motion to dismiss that triggered the PSLRA stay and delayed the discovery process in this case for months.  In addition,

JPMC reached out to Defendants to begin the discovery process on July 18, 2023 and received no response whatsoever until after JPMC followed up on its initial request one week later.

We continue to believe that engaging in the discovery process while the Court is addressing a stay motion by the U.S. Attorney's Office does not make sense.  Judge Wolson's Policies and Procedures suggest he will promptly rule on the motion filed by the U.S. Attorney's Office (see Policies and Procedures at 14), and Defendants' apparent plans to oppose that motion represent arguments that have been flatly rejected by another court.  Against this record, we reiterate our request to wait for a short period of time to allow the Court to rule on the government's motion to stay.  If Defendants insist on proceeding, JPMC reserves the right to object to the unreasonable legal fees that Defendants will incur on this topic but, without waiving such objections, we are prepared to meet and confer regarding a discovery schedule.  Please let us know your availability early next week.

Regards,
Allison

---

**From:** Alexandria Swette <Alexandria.Swette@kobrekim.com>
**Sent:** Wednesday, July 26, 2023 8:00 PM
**To:** Wuertz, Allison M <allison.wuertz@hoganlovells.com>; JP Kernisan <jpkernisan@quinnemanuel.com>; Maaren Shah <maarenshah@quinnemanuel.com>; Alex Spiro <alexspiro@quinnemanuel.com>; Jenny Braun <jennybraun@quinnemanuel.com>; Barlow, Michael A <barlow@abramsbayliss.com>; cordle@abramsbayliss.com; Jacob R. Kirkham <Jacob.Kirkham@kobrekim.com>; Steve G. Kobre <Steven.Kobre@KobreKim.com>; Sean S. Buckley <Sean.Buckley@kobrekim.com>; Genna Sinel <Genna.Sinel@kobrekim.com>
**Cc:** Regan, William M. <william.regan@hoganlovells.com>; McGovern, James G. <james.mcgovern@hoganlovells.com>; Rackear, Samuel <Samuel.Rackear@HoganLovells.com>; Walsh, Jr. Peter J. <pwalsh@potteranderson.com>; Pittenger, Michael A. <mpittenger@potteranderson.com>; Choa, Jonathan A. <jchoa@potteranderson.com>
**Subject:** RE: [EXTERNAL] RE: JPMorgan Chase Bank, N.A. v. Javice, et al., Case No. 22-1621 (JDW)

**[EXTERNAL]**
Allison,

The government's pending motion to intervene and to stay discovery has no effect on the parties' meet and confer obligations. Judge Wolson's rules specifically provide that "pending motions . . . do not stay the parties' obligations to meet and confer pursuant to [Rule] 26(f)." *See* Judge Wolson's Policies and Procedures at 6. His rules further provide that "[t]he parties should begin discovery as soon as the Rules permit, without waiting for the Rule 16 conference and regardless of whether a motion is pending." *Id.* If JPMC wishes to stay discovery while the government's motion is pending, "it should present its request in person at the Rule 16 conference." *Id.* at 6-7. Judge Wolson's rules explicitly caution, however, that stays of discovery are granted only in "extraordinary circumstances." *Id.* at 7. And in any event, the government's brief indicates that JPMC has expressed no position on the government's request for a stay.

Delaying our meet and confer to discuss the Rule 26(f) report is not only contrary to Judge Wolson's rules, but will prejudice the parties. Judge Wolson's rules provide that the Court "will consider the time that was available and unused in determining an appropriate schedule for the case." *Id.* at 6. The motion to dismiss was denied almost two weeks ago. Waiting several more weeks to initiate discussions on the scope and timing of discovery serves only to prejudice the parties.

In light of Judge Wolson's rules, and given that discovery is not stayed in this case (and may never be), we should schedule our initial meet and confer as soon as possible. Please respond with your availability, either Friday at 4 p.m. or otherwise.

Kind regards,
Alex

Alexandria Swette
+1 212 488 4917

## KOBRE & KIM

**www.kobrekim.com**

**Americas** (New York, Delaware, Miami, San Francisco, São Paulo, Washington DC)
**APAC** (Hong Kong, Seoul, Shanghai), **Caribbean** (BVI, Cayman Islands), **EMEA** (Cyprus, Dubai, London, Tel Aviv)

This e-mail message is from Kobre & Kim LLP, a limited liability partnership established under the laws of New York, referred to above as Kobre & Kim, and may contain legally privileged and/or confidential information. If the reader of this message is not the intended recipient(s), or the employee or agent responsible for delivering the message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please notify the sender immediately and delete this e-mail message and any attachments from your computer without retaining a copy.

**From:** Wuertz, Allison M <allison.wuertz@hoganlovells.com>
**Sent:** Wednesday, July 26, 2023 4:16 PM
**To:** Alexandria Swette <Alexandria.Swette@kobrekim.com>; JP Kernisan <jpkernisan@quinnemanuel.com>; Maaren Shah <maarenshah@quinnemanuel.com>; Alex Spiro <alexspiro@quinnemanuel.com>; Jenny Braun <jennybraun@quinnemanuel.com>; Barlow, Michael A <barlow@abramsbayliss.com>; cordle@abramsbayliss.com; Jacob R. Kirkham <Jacob.Kirkham@kobrekim.com>; Steve G. Kobre <Steven.Kobre@KobreKim.com>; Sean S. Buckley <Sean.Buckley@kobrekim.com>; Genna Sinel <Genna.Sinel@kobrekim.com>
**Cc:** Regan, William M. <william.regan@hoganlovells.com>; McGovern, James G. <james.mcgovern@hoganlovells.com>; Rackear, Samuel <Samuel.Rackear@HoganLovells.com>; Walsh, Jr. Peter J. <pwalsh@potteranderson.com>; Pittenger, Michael A. <mpittenger@potteranderson.com>; Choa, Jonathan A. <jchoa@potteranderson.com>
**Subject:** RE: [EXTERNAL] RE: JPMorgan Chase Bank, N.A. v. Javice, et al., Case No. 22-1621 (JDW)

Alexandria,

In light of the motion to intervene and to stay discovery filed by the U.S. Attorney's Office yesterday evening, we do not think it makes sense to proceed with the 26(f) conference this Friday as proposed.  If the stay is granted, discovery may be delayed for a long period of time or may not ever occur, depending on the developments in the criminal matters.  Given that uncertainty, we do not think it is a good use of time and resources to discuss a discovery schedule at this time.  We propose that, If the Court denies the motion to stay, the parties agree to meet and confer on a discovery schedule within 7 days of that decision.

Regards,
Allison

**From:** Alexandria Swette <Alexandria.Swette@kobrekim.com>
**Sent:** Wednesday, July 26, 2023 10:30 AM
**To:** Wuertz, Allison M <allison.wuertz@hoganlovells.com>; JP Kernisan <jpkernisan@quinnemanuel.com>; Maaren Shah <maarenshah@quinnemanuel.com>; Alex Spiro <alexspiro@quinnemanuel.com>; Jenny Braun <jennybraun@quinnemanuel.com>; Barlow, Michael A <barlow@abramsbayliss.com>; cordle@abramsbayliss.com;

Jacob R. Kirkham <Jacob.Kirkham@kobrekim.com>; Steve G. Kobre <Steven.Kobre@KobreKim.com>; Sean S. Buckley <Sean.Buckley@kobrekim.com>; Genna Sinel <Genna.Sinel@kobrekim.com>
**Cc:** Regan, William M. <william.regan@hoganlovells.com>; McGovern, James G. <james.mcgovern@hoganlovells.com>; Rackear, Samuel <Samuel.Rackear@HoganLovells.com>; Walsh, Jr. Peter J. <pwalsh@potteranderson.com>; Pittenger, Michael A. <mpittenger@potteranderson.com>; Choa, Jonathan A. <jchoa@potteranderson.com>
**Subject:** RE: [EXTERNAL] RE: JPMorgan Chase Bank, N.A. v. Javice, et al., Case No. 22-1621 (JDW)

[EXTERNAL]
Following up on the below. Are you available on Friday at 4 p.m. to M&C? If not, can you please propose other times/dates that work for you?


Alexandria Swette
+1 212 488 4917

# KOBRE & KIM

**www.kobrekim.com**

**Americas** (New York, Delaware, Miami, San Francisco, São Paulo, Washington DC)
**APAC** (Hong Kong, Seoul, Shanghai), **Caribbean** (BVI, Cayman Islands), **EMEA** (Cyprus, Dubai, London, Tel Aviv)


This e-mail message is from Kobre & Kim LLP, a limited liability partnership established under the laws of New York, referred to above as Kobre & Kim, and may contain legally privileged and/or confidential information. If the reader of this message is not the intended recipient(s), or the employee or agent responsible for delivering the message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please notify the sender immediately and delete this e-mail message and any attachments from your computer without retaining a copy.

**From:** Alexandria Swette <Alexandria.Swette@kobrekim.com>
**Sent:** Monday, July 24, 2023 9:30 PM
**To:** Wuertz, Allison M <allison.wuertz@hoganlovells.com>; JP Kernisan <jpkernisan@quinnemanuel.com>; Maaren Shah <maarenshah@quinnemanuel.com>; Alex Spiro <alexspiro@quinnemanuel.com>; Jenny Braun <jennybraun@quinnemanuel.com>; Barlow, Michael A <barlow@abramsbayliss.com>; cordle@abramsbayliss.com; Jacob R. Kirkham <Jacob.Kirkham@kobrekim.com>; Steve G. Kobre <Steven.Kobre@KobreKim.com>; Sean S. Buckley <Sean.Buckley@kobrekim.com>; Genna Sinel <Genna.Sinel@kobrekim.com>
**Cc:** Regan, William M. <william.regan@hoganlovells.com>; McGovern, James G. <james.mcgovern@hoganlovells.com>; Rackear, Samuel <Samuel.Rackear@HoganLovells.com>; Walsh, Jr. Peter J. <pwalsh@potteranderson.com>; Pittenger, Michael A. <mpittenger@potteranderson.com>; Choa, Jonathan A. <jchoa@potteranderson.com>
**Subject:** RE: [EXTERNAL] RE: JPMorgan Chase Bank, N.A. v. Javice, et al., Case No. 22-1621 (JDW)

Allison,

We are still confirming availability on our end, but it looks like Friday at 4 p.m. ET will work. Please let us know if that time works on your end.

Thanks,
Alexandria

Alexandria Swette
+1 212 488 4917

# KOBRE & KIM

www.kobrekim.com

**Americas** (New York, Delaware, Miami, San Francisco, São Paulo, Washington DC)
**APAC** (Hong Kong, Seoul, Shanghai), **Caribbean** (BVI, Cayman Islands), **EMEA** (Cyprus, Dubai, London, Tel Aviv)

---

**From:** Wuertz, Allison M <allison.wuertz@hoganlovells.com>
**Sent:** Monday, July 24, 2023 4:04 PM
**To:** JP Kernisan <jpkernisan@quinnemanuel.com>; Maaren Shah <maarenshah@quinnemanuel.com>; Alex Spiro <alexspiro@quinnemanuel.com>; Jenny Braun <jennybraun@quinnemanuel.com>; Barlow, Michael A <barlow@abramsbayliss.com>; cordle@abramsbayliss.com; Jacob R. Kirkham <Jacob.Kirkham@kobrekim.com>; Steve G. Kobre <Steven.Kobre@KobreKim.com>; Sean S. Buckley <Sean.Buckley@kobrekim.com>; Alexandria Swette <Alexandria.Swette@kobrekim.com>; Genna Sinel <Genna.Sinel@kobrekim.com>
**Cc:** Regan, William M. <william.regan@hoganlovells.com>; McGovern, James G. <james.mcgovern@hoganlovells.com>; Rackear, Samuel <Samuel.Rackear@HoganLovells.com>; Walsh, Jr. Peter J. <pwalsh@potteranderson.com>; Pittenger, Michael A. <mpittenger@potteranderson.com>; Choa, Jonathan A. <jchoa@potteranderson.com>
**Subject:** [EXTERNAL] RE: JPMorgan Chase Bank, N.A. v. Javice, et al., Case No. 22-1621 (JDW)


Counsel:

Following up on our email below, please provide dates for an initial meet and confer to discuss the discovery process.

Thanks,
Allison

**From:** Regan, William M. <william.regan@hoganlovells.com>
**Sent:** Tuesday, July 18, 2023 6:17 PM
**To:** JP Kernisan <jpkernisan@quinnemanuel.com>; Maaren Shah <maarenshah@quinnemanuel.com>; Alex Spiro <alexspiro@quinnemanuel.com>; Jenny Braun <jennybraun@quinnemanuel.com>; Barlow, Michael A <barlow@abramsbayliss.com>; cordle@abramsbayliss.com; Jacob R. Kirkham <Jacob.Kirkham@kobrekim.com>; Steve G. Kobre <Steven.Kobre@KobreKim.com>; Sean S. Buckley <Sean.Buckley@kobrekim.com>; Alexandria Swette <Alexandria.Swette@kobrekim.com>; Genna Sinel <Genna.Sinel@kobrekim.com>
**Cc:** McGovern, James G. <james.mcgovern@hoganlovells.com>; Wuertz, Allison M <allison.wuertz@hoganlovells.com>; Rackear, Samuel <Samuel.Rackear@HoganLovells.com>; Walsh, Jr. Peter J. <pwalsh@potteranderson.com>; Pittenger, Michael A. <mpittenger@potteranderson.com>; Choa, Jonathan A. <jchoa@potteranderson.com>
**Subject:** JPMorgan Chase Bank, N.A. v. Javice, et al., Case No. 22-1621 (JDW)

Counsel:

In light of the Court's July 13, 2023 order denying Mr. Amar's motion to dismiss the Complaint, we wanted to reach out to schedule an initial meet and confer call to discuss the discovery process and schedule for this litigation.  A copy of the Court's form Rule 26(f) report is attached.  Please let us know your availability later this week or early next week.

Regards,

Bill

**William Regan**
Partner

—

**Hogan Lovells US LLP**
390 Madison Avenue
New York, NY 10017
Tel:      +1 212 918 3000
Direct:   +1 212 918 3060
Fax:      +1 212 918 3100
Email:    william.regan@hoganlovells.com
          www.hoganlovells.com

—

---

**About Hogan Lovells**
Hogan Lovells is an international legal practice that includes Hogan Lovells US LLP and Hogan Lovells International LLP. For more information, see www.hoganlovells.com.

CONFIDENTIALITY. This email and any attachments are confidential, except where the email states it can be disclosed; it may also be privileged. If received in error, please do not disclose the contents to anyone, but notify the sender by return email and delete this email (and any attachments) from your system.

PRIVACY. Hogan Lovells processes personal data, including data relating to email communications, in accordance with the terms of its privacy policy which is available at www.hoganlovells.com/en/privacy.

# EXHIBIT E

```
N6FBJAVO
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

SECURITIES AND EXCHANGE
COMMISSION,

                    Plaintiff,

              v.                        23 Civ. 2795 (LJL)

JAVICE, et al,

                    Defendants.
                                        Oral Argument
------------------------------x
                                        New York, N.Y.
                                        June 15, 2023
                                        2:00 p.m.

Before:

                      HON. LEWIS J. LIMAN,

                                        District Judge

                            APPEARANCES

U.S. SECURITIES AND EXCHANGE COMMISSION
      Attorneys for Plaintiff SEC
BY:   DANIEL LOSS
      LINDSAY S. MOILANEN


UNITED STATES ATTORNEY'S OFFICE, SDNY
      Attorneys for Intervenor United States
BY:   MICAH F. FERGENSON
      DINA McLEOD


QUINN EMANUEL URQUHART & SULLIVAN, LLP
      Attorneys for Defendants
BY:   SARAH H. CONCANNON
      MATTHEW LANGLEY

N6FBJAVO

1              (Case called; appearances noted)

2              THE COURT:  All right.  So we're here today for

3    argument on the motion to intervene and to stay discovery.

4    I'll hear first from the government as the movant party.  If

5    the SEC wants to add anything, I'll hear from the SEC after

6    that, then I'll hear from the defendant, and then I'll give the

7    government, as the moving party, the last word.  I don't think

8    you need to spend much time on the motion to intervene itself.

9    You may proceed.

10             MR. FERGENSON:  Understood, your Honor.  And I'll go

11   directly to the motion to stay.  Your Honor, this is not a

12   close call.  All of the factors that courts consider when

13   assessing a motion to stay discovery in this context, favor

14   granting the stay.  And just to -- I know the Court has

15   carefully read the papers as it does, so I'll be brief.  But

16   first, the overlap.  It's undisputed that the two cases involve

17   essentially the same facts and issues.  The status of the

18   criminal case, Ms. Javice has been indicted.  She's received

19   Rule 16 discovery.  And until the defendant objected, there was

20   an October trial date.

21             THE COURT:  Can you tell me, I take it through the

22   access request, you've gotten access to the SEC investigative

23   file; is that correct?

24             MR. FERGENSON:  We have received the materials that

25   the SEC has received from third parties, as opposed to perhaps

N6FBJAVO

1   the entirety of the investigative file, but we received their

2   third-party records, your Honor.  They're currently, just to

3   give you the full status, they're currently being loaded to our

4   review platform so that we can take a look at them and then

5   provide the Rule 16 in the criminal case.  Our understanding is

6   that they are largely, if not entirely, duplicative of what has

7   already been produced, but we will produce it out of an

8   abundance of caution as well.

9          THE COURT:  Do I hear you making the representation

10  that with respect to documents from third parties collected by

11  the SEC during its investigation that all of those will be

12  turned over to Ms. Javice?

13         MR. FERGENSON:  Yes, your Honor.

14         THE COURT:  Okay.  What does that leave from the

15  investigative file, or maybe it's a question for counsel for

16  Ms. Javice.  I assume it would leave work product.  It may

17  leave investigative testimony they took, but what's not in

18  there?

19         MR. FERGENSON:  I would, if I may, your Honor, I would

20  probably respectfully defer to SEC counsel on that point.

21         THE COURT:  They'll address that after you're done.

22         MR. FERGENSON:  Thank you, your Honor.  So that's the

23  status of the criminal case.  Turning to personal prejudice to

24  the parties involved.  For the same reason that I just

25  mentioned that there was a trial date four months away until

N6FBJAVO

```
 1    Ms. Javice requested that there not be, there's no prejudice
 2    here.  She can't make any credible claim for prejudice here
 3    based on delay.  And again because Rule 16 has been produced,
 4    third-party materials from the SEC will be produced.  There's
 5    no prejudice here from pausing discovery in this case.
 6            Turning to the interest of the court, clearly favors a
 7    stay for the efficiency of judicial administration.  Simply
 8    conserving judicial resources and avoiding things like
 9    inconsistent rulings.  And finally, the public interest.  A
10    stay in this case helps ensure the integrity and truth-seeking
11    function of the criminal process.  As we laid out in our reply
12    brief, the defendant is transparently seeking to use civil
13    discovery here and in the Delaware case against involving JPMC,
14    the private action, for use in her criminal case.  And that's
15    antithetical to the criminal discovery rules carefully
16    considered to reflect the asymmetry posed by the Fifth
17    Amendment privilege in a criminal context, which are meant to
18    avoid undue burdening of witnesses and third parties, as well
19    as tailored or perjured testimony in a criminal case.
20            So for all those reasons, each of the factors favors a
21    stay.  And I think we would just respectfully submit again it's
22    not a close case.  I would want to address one other point if I
23    may, your Honor, briefly.
24            THE COURT:  Go ahead, and then I've got a couple of
25    questions.
```

N6FBJAVO

1          MR. FERGENSON:  The defense made a lot of baseless

2     accusations of essentially bad faith, even accusing the

3     government of bad faith with respect to discovery in attempting

4     to withhold its discovery.  We responded to those points in our

5     reply brief, but we want to make perfectly clear to the Court

6     that there's absolutely no truth to any of those accusations.

7     The government had already produced discovery as I noted before

8     that opposition was filed and those accusations were made.  As

9     we laid out in the reply, those claims are simply contradicted

10    by the record.  Thank you, your Honor.

11          THE COURT:  Maybe you can help me on a couple of

12    things.  I take it you would agree the case law indicates that

13    a stay of discovery is generally disfavored in the law,

14    correct?

15          MR. FERGENSON:  I think there is often included in

16    cases, albeit cases where they are granting a stay of discovery

17    recognizing staying a civil case is generally disfavored.

18    However, in the cases I'm thinking of -- and in many cases that

19    we cited, courts weigh that against the potential harm to the

20    criminal process, the efficiencies gained by staying discovery

21    in the civil case.  And in context like this, simply the lack

22    of any prejudice to staying the case and balancing all those

23    factors find that staying discovery is warranted.

24          THE COURT:  I understand that, but this is a little

25    bit of an unusual case in that it appears that the SEC brought

N6FBJAVO

1   its complaint well within the time period that it could bring a

2   SEC complaint.  I presume -- and maybe this will be a question

3   for the SEC -- that if I were to deny your motion, the SEC

4   might well decide to dismiss its complaint without prejudice,

5   which it would be within its rights to do.  There's been no

6   answer in this case, and you still have plenty of time on the

7   clock.  So what do you say about the fact that the cases were

8   brought at the same time and by the SEC sort of knowing full

9   well what was going to happen.

10          I mean, it doesn't take a Ph.D. to know that when

11   parallel proceedings are brought, the government is going to

12   move to stay.  And that under these unusual circumstances, I

13   should deny your application for a stay and put the question to

14   them, are you going to proceed or not?

15          MR. FERGENSON:  I think on certain aspects of that I

16   would defer to the SEC's view; however, I would offer as an

17   observation reading these many opinions brought in identical

18   circumstances when parallel proceedings are brought and the SEC

19   actions are stayed for discovery.  As the courts recognize --

20   and I could let the SEC speak to this -- that the SEC has an

21   interest in enforcing its statutory dictates.  And the

22   enforcement by the SEC also has interest and should -- they're

23   well within their rights indeed doing what they're supposed to

24   do by bringing actions promptly.  Now, weighing the factors

25   that the Court is suppose to weigh --

N6FBJAVO

1           THE COURT:  Bringing it promptly, but knowing full

2    well -- being able to anticipate full well the motion that you

3    now are making.

4           MR. FERGENSON:  Well, your Honor, I guess where you

5    stand on these is a function of where you sit.  And from the

6    United States's point of view, we believe discovery should be

7    stayed.  I understand the SEC's position is they take no

8    position on it, but this is not an uncommon posture that we

9    find ourselves in.  And courts in this district routinely,

10   nonetheless, stay the SEC proceedings.  And I'm not aware that

11   courts consider, for instance, the running of the statute when

12   doing so and the timeliness of the SEC's case.  I think the

13   application of the well-established factors here clearly favor

14   a stay, and we would submit that the Court should stay

15   discovery in this matter.

16          THE COURT:  Let me ask you two more questions.  I

17   accept your notion that permitting this case to go forward

18   through discovery would threaten the integrity of Rule 16 and

19   criminal discovery and the limitations on criminal discovery.

20   That said, that concern seems somewhat abstract, and maybe you

21   can be a little bit more concrete for me in a case where it's a

22   white collar defendant who doesn't seem to present a particular

23   risk of threatening witnesses or what the real concern is in

24   terms of letting discovery go forward.

25          MR. FERGENSON:  I think there's a few points to make,

N6FBJAVO

1    your Honor.  I take your Honor's point that this isn't a mafia

2    case where witnesses are going to be threatened for their life,

3    but there is still a concern in a criminal case like this one

4    about the tampering with the integrity of the criminal process.

5    And one is that the structures of the criminal discovery

6    process are designed to try and eliminate, if not the

7    intimidation of witnesses that your Honor sort of referenced,

8    still the tailoring of testimony.

9            And I would submit that these kinds of concerns are

10   present in this case where, as the government has alleged, the

11   defendant fabricated documents.  She fabricated a dataset.  It

12   was a brazen scheme, your Honor, with bald-face lies repeated

13   over and over, orally, in print, in presentations, and then

14   through fabricated documents.  That poses a concern.  I think

15   the second point I'd make, your Honor, is that in the Delaware

16   proceeding, JPMC sued Ms. Javice and another individual.  The

17   other individual filed a motion to dismiss.  Ms. Javice did not

18   do so.  She filed, not only an answer, but a counterclaim

19   against the victim of her fraud.  She has countersued the

20   victim.  And that countersuit relies on allegations that are

21   demonstrably false.  And I think in this context pairing that

22   with the procedural history that we've outlined in our reply

23   brief raises serious concerns about the efforts being taken

24   through the civil process to try and effect the criminal case.

25           And so I take your Honor's point, it's not a violent

N6FBJAVO

1    crime case or one where people are going to be threatened with

2    their lives, but there are still real concerns about improperly

3    effecting and tampering with the criminal process in this case.

4              THE COURT:  What is the status of the Delaware case?

5              MR. FERGENSON:  The status is that the motion to

6    dismiss by the other individual is pending.  There are sort of

7    multiple motions related to the potential opening of discovery

8    pending, and the government intends to file a motion to stay

9    discovery in that proceeding as well.  It has not done so yet,

10   but that's the current status.  The motions are essentially

11   pending.  Discovery has not proceeded.

12             THE COURT:  In this case the defendant has argued as

13   an alternative the document discovery should be permitted to

14   proceed.  And while they talk about documents from the SEC, I'm

15   also presuming that they're talking about subpoenas, Rule 45

16   subpoenas to third parties.  They don't say it, but that's

17   pretty transparent what would happen.  But what would be the

18   danger of that from the perspective of the criminal case?  I

19   realize that Rule 17 subpoenas ordinarily are only returnable

20   at the time of trial, but judges frequently allow defendants to

21   serve Rule 17 subpoenas earlier than that.  And so why

22   shouldn't I grant that limited relief?

23             MR. FERGENSON:  I think there are a couple of reasons,

24   your Honor.  One is just consideration of the waste of

25   resources, both judicial, and the burdening of third parties

N6FBJAVO

1   and witnesses if they are being subpoenaed and compelled in

2   multiple proceedings at the same time over essentially the same

3   facts, same issues.

4          The second is that, relatedly, they're going to be

5   getting the third-party materials that the SEC has collected.

6   They already have our Rule 16 discovery presently produced, and

7   Rule 17 and criminal discovery is typically narrower than sort

8   of the broad civil discovery rules -- and I think intentionally

9   so for many of the factors I've outlined, or the consideration

10  and principles I've outlined previously in ensuring sort of

11  truth-seeking function of the criminal process; when the stakes

12  are highest and people's incentives are probably also at their

13  highest to not necessarily play by the rules.

14         I think all those reasons would counter in favor in

15  also staying document discovery.  One, it's essentially moot

16  because again they're getting the documents.  Two, it's a waste

17  of the court's resources and a burden on these third parties;

18  and three, it just wouldn't align with the purposes of the

19  criminal process and its truth-seeking function.

20         THE COURT:  It's that third point that I'm focused on,

21  and I'm not sure you've gotten me across the line on it.  The

22  first two seem to me to be not particularly powerful.  If it's

23  a waste of time and they already have the documents, then

24  there's not going to be all that much work for me to do.  And

25  if there's work for me to do, then maybe it's a good thing.  It

N6FBJAVO

1  means that once this case gets started, then it can get started

2  pretty quickly.  So your argument has to be driven by the third

3  point, give me a little bit more on the third point if you've

4  got more.

5          MR. FERGENSON:  Well, I was going to say, I thought

6  two out of three was not bad.  I guess I can at least point you

7  to the fact that courts have found that point compelling in

8  other cases.  For instance, at our brief at pages 11 to 12, we

9  cited the *Pharaon* case in which they basically say that a

10  litigant should not be allowed to make use of the liberal

11  discovery procedures applicable to a civil suit as a dodge to

12  avoid the restrictions on criminal discovery and thereby obtain

13  documents he would not otherwise be entitled to for use in his

14  criminal trial.

15          Maybe the points I touched on today and we describe in

16  our brief about the criminal discovery process is more

17  circumscribed, and intentionally so and for good reasons.  I

18  think those are the reasons the courts have found compelling in

19  staying even document discovery in these context.

20          THE COURT:  All right.  Let me hear from the SEC.

21          MR. LOSS:  Yes, your Honor.  The SEC takes no position

22  as the Court is aware on the government's request.  I can try

23  to address a couple of the questions that I think the Court

24  raised during the government's presentation.  With respect to

25  the scope of the SEC's investigative file, in this matter the

N6FBJAVO

1    documents produced by third parties which totaled approximately

2    107,000 documents and have all been provided to the government

3    we understand, and we understand in turn will be provided to

4    defense in the parallel criminal case.  That universe

5    represents the lining share, the overwhelming majority of what

6    is included in the SEC's investigative file in this particular

7    matter.

8              THE COURT:  What's the other category?

9              MR. LOSS:  The other categories would include, for

10   example, emails between members of the SEC staff and third

11   parties, such as counsel for various witnesses.  Many of these

12   often tend to be logistical in nature, but it does include

13   external emails.  It would include investigative subpoenas, the

14   actual subpoena, not the subpoena return.  It would include

15   agreements, such as proffer agreements with witnesses.  And

16   those I believe would be sort of the principal categories of

17   additional materials in this case.  There are also as your

18   Honor mention work product.  There may be categories of

19   internal communications, internal documents analyses that are

20   subject to work product or other applicable privileges and

21   protections, which typically would not be produced as part of

22   an investigative file in a civil case of which privilege may be

23   asserted.

24             THE COURT:  Was there investigative testimony?

25             MR. LOSS:  There was no investigative testimony in

N6FBJAVO

1    this matter.

2            THE COURT:  Okay.  There was some other questions I

3    asked.

4            MR. LOSS:  Yes, I think your Honor asked whether in

5    the event that the government's motion is not granted whether

6    the SEC would intend to dismiss its complaint without

7    prejudice.

8            THE COURT:  Put another way, what was the exigency of

9    bringing this case when it was brought, presumably in the face

10   of knowing that the government was also doing an investigation

11   was likely to bring charges, did bring charges.

12           MR. LOSS:  To address I think both of the issues

13   embedded in your Honor's questions.  First, just to be clear,

14   the SEC does not -- would not presently intend to dismiss its

15   complaint in the event that the government's motion were to be

16   denied and it is prepared to proceed with the litigation in the

17   civil matter in the event that the government's motion is

18   denied.  With respect to the SEC bringing its complaint when it

19   did.  As the government alluded to in its presentation to the

20   Court, the SEC has independent interests, an independent

21   mission.  It's a separate agency, as the Court is of course

22   aware.  It's not part of the department of justice.  We have a

23   separate interest to protect investigators and to seek the

24   relief that we seek in the complaint.  And there are a variety

25   of facts and circumstances that always go into determining when

N6FBJAVO

1    to bring an action.

2          In this case, the SEC felt that it was ready to

3    proceed when it did.  I would add as an illustrative example of

4    the relief being sought in the SEC action that cannot be

5    sought -- and is not being sort in the criminal case.  There's

6    an officer and director bar as one example of that.  So for

7    those reasons, the SEC felt it was important to move forward

8    when we did.

9          THE COURT:  One other question for you.  If when this

10   case proceeds, is the SEC going to have any objection to the

11   defendant's use in this case of documents that the defendant

12   has obtained in the criminal case?

13         MR. LOSS:  Your Honor, my understanding is there may

14   be a protective order that governs documents that are produced

15   in the parallel criminal case, and so I think it would depend

16   on --

17         THE COURT:  Fair enough.  On the assumption that your

18   colleague -- or not your colleague, but the prosecutor next to

19   you doesn't object to Ms. Javice using, in this case, documents

20   that she has received from the government in their case, is the

21   SEC going to present an independent obstacle to that?

22         MR. LOSS:  Your Honor, I don't anticipate that.  In

23   order to provide fuller assurance, I would need to get

24   additional approvals than what I have right now, but I don't

25   presently anticipate that that would be the case, provided that

N6FBJAVO

1   whatever materials that have been provided to the defendant in

2   the criminal case that would be potential use in the civil case

3   provided that the discovery obligations are complied with in

4   the civil case, I don't anticipate --

5          THE COURT:  You could serve a document demand for

6   everything that she got in the criminal case.

7          MR. LOSS:  That's right, your Honor, and that's why I

8   don't anticipate there will be any objection.

9          THE COURT:  I ask because as you know one of the

10  arguments that the defendants make is that they would have to

11  start all over again in the SEC case, in this case, if I were

12  to grant a stay.  I'm not sure that that's the case.  All

13  right.  Let me hear from the defense.

14         MS. CONCANNON:  Good afternoon, your Honor.  So this

15  case boils down to the question whether this Court should

16  exercise its discretion in the face of vehement opposition by

17  Charlie Javice to impose a stay.  And we respectfully submit

18  that four out of six of the *Louis Vuitton* factors clearly weigh

19  against a stay under the unique circumstances of this case.

20  But before I address those, I want to get to the elephant in

21  the room, which is this question of Rule 16 discovery.  And I

22  would direct the Court to the SEC's letter, which is docket 25,

23  in which SEC informed the Court of its intention, despite

24  expressing neutrality with regard to the stay, to continue to

25  use its investigative authority to conduct an investigation

N6FBJAVO

1    during the pendency of a stay.

2          What that means is that the SEC continues to use

3    investigative subpoenas, to take investigative testimony, to

4    conduct witness interviews, all under the specter of Section

5    1001.

6          THE COURT:  Why is that a ripe issue for me to

7    consider right now?  They can do whatever they want

8    administratively.  They're investigating other people.  If it

9    comes to the use in this case, then whatever arguments you've

10   got now, you can make later on.  I don't quite understand your

11   argument.

12         MS. CONCANNON:  Your Honor, it is a question of

13   timing, and it's also a question of having chosen to avail

14   itself of the court by filing its litigation now, the SEC has

15   taken the position that further discovery should be pursuant to

16   the Federal Rules of Civil Procedure.  But now they're saying

17   they wish to conduct a further investigation.  They assert,

18   your Honor, that this is of unrelated individuals, but it is in

19   this same file.  It assuredly is going to contain information

20   that is directly related to Ms. Javice's defense of the SEC's

21   case.

22         THE COURT:  Again, you know, if this case goes forward

23   for discovery, wouldn't you agree with me that it would be an

24   improper use of civil discovery for them to use it for

25   investigative purposes rather than for evidence that's relevant

N6FBJAVO

1    to the prosecution against Ms. Javice.  And if you agree with

2    that, that presupposes that the SEC has the power, which it

3    always has, to use its investigative techniques.

4              MS. CONCANNON:  What is unusual about this case, your

5    Honor, is the fact that the SEC is saying it wants to use its

6    investigative techniques after the filing of a litigated case,

7    but during the pendency of a stay. What they have represented

8    to this Court is that they're intention is that they would

9    produce none of those documents to Ms. Javice until the end of

10   the pendency of any stay after the conclusion of the criminal

11   case.

12             THE COURT:  Maybe I'll ask the SEC this question.  I

13   had understood that they were going to make all of the

14   materials that they obtained through their continued

15   investigation available to the prosecutor through their access

16   request.  And then to the extent it's relevant to the criminal

17   case, you would get it.  But let me ask both parties that

18   question, because I understand your point.

19             MR. LOSS:  Yes, your Honor.  So, first, as your Honor

20   rightfully observed, the continuing investigation the SEC

21   intends to conduct is with respect to uncharged parties.  To

22   the extent that the SEC obtains documents in connection with

23   its investigation of uncharged parties that are relevant to

24   this litigation, we'll produce them directly to the defendant

25   at the appropriate time.

N6FBJAVO

1          THE COURT:  No.  No.  No.  You're not answering my

2    question about when you're going to make available to the U.S.

3    government through an access request.

4          MR. LOSS:  Yes, your Honor.  I apologize.  I should

5    have led with that.  To the extent that the U.S. Attorney's

6    office makes a request for us to produce those documents

7    pursuant to our access request, we will of course do so with

8    the understanding that they may in turn be produced in criminal

9    discovery.

10          MR. FERGENSON:  We intend to do so, your Honor.

11          MS. CONCANNON:  So, your Honor, obviously to the

12    extent documents are provided in a timely fashion by the SEC to

13    the government and then produced by the government in the

14    criminal case to Ms. Javice, that would be better, frankly,

15    less prejudicial to my client.  But I have not heard anything

16    other than that the SEC intends in the normal course of time to

17    conduct an investigation.  As you're well-aware, the criminal

18    case will be moving on an expedited timeline.  And if the SEC

19    is representing that essentially document discovery will be

20    made to Ms. Javice, then I agree with the Court that the

21    appropriate solution here is the compromise that we proposed,

22    which is document discovery goes forward, cut out the middle

23    man.  Have the SEC produce to Ms. Javice their investigative

24    file now.  And as they continue to create an investigative file

25    that contains relevant responsive information to Ms. Javice's

N6FBJAVO

1    defense of the SEC case, they can timely turn it over to us so

2    that after the pendency of a stay, we're not prejudiced by

3    being behind the nine months to ten months to 12 months behind

4    in developing our defense to the SEC's case.

5         THE COURT:  What is it that you're not getting through

6    the prosecutor in this case from the investigative file that

7    you contend that you would have a right to, either in this case

8    or to defend the criminal case?

9         MS. CONCANNON:  So, your Honor, for example, in the

10   Rule 16 discovery that we recently received from the

11   government, we appear to not have any subpoenas to J.P. Morgan

12   Chase.  We appear to not have any text between LionTree which

13   was an advisor in connection with this matter.  We have no text

14   from JPMC.  Our understanding of what happened here, your

15   Honor, is that JPMC after filing its civil litigation against

16   Ms. Javice back in December of 2022, made certain documents

17   available to the government, the SEC, and the criminal

18   authorities that comprise the majority of the investigative

19   files on which both the government and the SEC brought their

20   litigated actions against Ms. Javice.

21        Now the SEC is saying, it wants to go out and develop

22   further evidence.  And so that is the evidence that should be

23   timely produced to Ms. Javice, again in connection with this

24   action.  And among other things, Mr. Loss mentioned to the

25   Court that they would intend to withhold their subpoenas.  What

N6FBJAVO

1    they request in their subpoenas to third parties are directly

2    relevant to our determination of whether they have a full and

3    complete record of these third party documents to which

4    Ms. Javice no longer has access in connection with her defense;

5    or whether in fact the third parties have selectively provided

6    the government with incomplete records.  And that's something

7    that we should be permitted to test sooner rather than later

8    through the fullness of civil discovery, the SEC having chosen

9    to file a litigated action now.

10           THE COURT:  Isn't that a matter that's better taken up

11   with Judge Hellerstein.  I understand the point that you don't

12   know through your Rule 16 discovery what it is that is missing.

13   You're getting a huge number of documents, but why isn't that

14   something that Judge Hellerstein is better able to address?

15           MS. CONCANNON:  And we intend to, your Honor.  But

16   because the issue is before this Court with regard to the

17   appropriateness of civil discovery in the defense of the SEC

18   action, what both the government and the SEC have described is

19   essentially a funnel process.  So the government will receive

20   from the SEC when it request it and what it request.  It will

21   then upload, as Mr. Fergenson said at the beginning of his

22   arguments, those documents into the government's review

23   database.  It will then determine what it feels it is obligated

24   to produce to Ms. Javice under Rule 16, and that will then be

25   produced to us.

N6FBJAVO

1          For example, we still don't have the documents that

2     the SEC has already provided to the government, so we have the

3     government's Rule 16 production, but we do not have the SEC

4     file.

5          THE COURT:  Actually, how do you know that?  You got a

6     whole bunch of documents from the government.  It may not

7     indicate the provenance whether they came to the U.S.

8     Attorney's office through the SEC or directly to the

9     prosecutor.

10         MS. CONCANNON:  So the government stated in its reply

11    brief to this Court and Mr. Fergenson said it earlier today in

12    the argument that they have received the SEC's file.  They have

13    uploaded it into their review database.  They intend at the

14    appropriate time to produce that to Ms. Javice.  We don't have

15    it.  And under the exigencies of moving this case forward and

16    allowing Ms. Javice to fully reach resolution in each of the

17    areas in which she has been prejudiced and her reputation has

18    been dragged through the mud, we would like to ensure that the

19    SEC case is moving forward in a timely fashion.

20         And as the Court said, if the SEC would like to

21    continue to investigate during the pendency of a stay, the

22    appropriate thing for the SEC to do, because there is no

23    statute of limitations in this issue or in this case at all, is

24    to voluntarily dismiss its action without prejudice.

25    Ms. Javice would be more than willing to sign a tolling

N6FBJAVO

 1    agreement.  And then in the fullness of time after they've

 2    completed their investigation, they can come back before the

 3    Court and engage in a full and robust civil discovery process

 4    under the Federal Rules of Civil Procedure.  But unless and

 5    until the SEC is ready to do that, what I'm hearing the

 6    government and the SEC represent to this Court is that they

 7    will decide when and how much of the SEC's file Ms. Javice is

 8    entitled to, and that is deeply prejudicial.

 9              THE COURT:  Anything else?

10              MS. CONCANNON:  Your Honor, you mentioned with regard

11    to the compromise solution.  We respectfully submit that full

12    discovery should go forward.  The SEC should litigate its

13    claims now.  As you mentioned, third-party discovery is

14    incredibly important to the defense in the SEC action.  But in

15    the alternative, we would submit that there should be document

16    production at a minimum.

17              THE COURT:  Document production from the SEC.

18              MS. CONCANNON:  Correct.  And as you said under Rule

19    45 as well because, since Ms. Javice was terminated, the bulk

20    of the documents relevant to her defense do rest in the hands

21    of third parties.  And because we have this concern that third

22    parties potentially are providing cherry-picked self-serving

23    documents to the government, we should be able to pursue

24    third-party discovery in order to ensure that we in fact are

25    getting full responses.

N6FBJAVO

1          THE COURT:  Aren't you able to get all of that

2    information through Rule 17 subpoenas in the criminal case?

3    And if you can't get it through Rule 17 in the criminal case

4    because Judge Hellerstein doesn't sign off on the subpoenas for

5    early production, then wouldn't discovery in this case be a way

6    of you just advantaging yourself in the criminal case in a way

7    that the rules don't contemplate, essentially circumventing

8    Judge Hellerstein's decision not to sign a Rule 17 subpoena?

9          MS. CONCANNON:  Respectfully, your Honor, no, that is

10   not our intention.  Our intention is just to avail Ms. Javice

11   of the best defense possible in the SEC case, which does

12   include that third-party discovery in a timely fashion.

13         THE COURT:  You may say that's not your intention, but

14   it would be the effect, wouldn't it?  That essentially if I let

15   document discovery go forward in this case, it would relieve

16   you of the obligation of having to satisfy Judge Hellerstein?

17         MS. CONCANNON:  Well, your Honor, first I think in

18   order for us to avail ourselves of any documents in this

19   action, in the criminal action, we would need to go before

20   Judge Hellerstein and inform him of that intent, so I believe

21   the Court still controls that.  But as many, many courts have

22   said, the mere incidental fact that civil discovery has some

23   relevance to the criminal case is not a factor that's

24   dispositive in whether or not the civil litigant should be

25   permitted to move forward with the timely adjudication or

N6FBJAVO

1   timely litigation and then adjudication of the claims.

2          Again, Ms. Javice is eager to obtain resolution of all

3   of the matters in which she finds herself, the D. Delaware

4   action, the criminal action and the SEC action.  And here where

5   the SEC has chosen to file its case, we do believe that the SEC

6   has an obligation to either move forward under the rules of

7   Federal Rule of Civil Procedure, or in the alternative

8   voluntarily dismiss its action and come back before the Court

9   when it is ready to litigate.

10         THE COURT:  All right.  Anything further from the

11  government?

12         MR. FERGENSON:  No, your Honor.

13         THE COURT:  I've got one further question for you

14  which is the concern that was mentioned by the defense, and

15  it's a concern it's pretty obvious that without the subpoenas

16  and without knowing what restrictions the third parties put on

17  what was going to be produced, the defense, either in this case

18  or in the criminal case has no idea as to what was missing from

19  the production?

20         There might be a smoking gun.  There might be an email

21  where Ms. Javice said to J.P. Morgan, these customers are not

22  yet real customers where we have information, identifying

23  information.  And the SEC said to them, you know what, hold

24  back on that document.

25         MR. FERGENSON:  I think I can maybe make a few points,

N6FBJAVO

1   your Honor.  This is the first we've heard of this particular

2   concern and any kind of request from the defense for the

3   substance of our request to third parties so that they can

4   assess if there are missing materials.  It's certainly

5   something we would have been happy to discuss with them and

6   probably come to a resolution without court intervention.

7          I think as the Court is probably aware, it is

8   customary practice that in producing Rule 16 discovery, we

9   don't produce our actual grand jury subpoenas.  We produce the

10  documents received.  That said as I noted, I'm sure we could

11  come to some kind of accommodation with the defense on this

12  topic.

13         THE COURT:  One reason why you don't produce grand

14  jury subpoenas is because of grand jury secrecy.  It's not

15  quite applicable to SEC administrative subpoenas.

16         MR. FERGENSON:  No, that's fair, your Honor.  I'm

17  speaking from the perspective of the criminal case primarily.

18  I had heard defense counsel say that in the Rule 16 discovery

19  there were no subpoenas and that is customary.  But to the

20  extent this is an issue that is important to the defense, we're

21  happy to have discussions with them about it and hopefully come

22  to some kind of resolution.

23         THE COURT:  All right. I'm going to take the matter

24  under advisement.  I'll get you an opinion pretty quickly.

25  Thank you all.  (Adjourned)

# EXHIBIT F

```
                    UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF NEW YORK
        ----------------------------:

UNITED STATES OF AMERICA,         :

                                  : Docket #23-MJ-2638

                Plaintiff,        :

        v.                        :

CHARLIE JAVICE,                   : New York, New York

                Defendant.        : April 4, 2023

        ----------------------------: Conference



        TRANSCRIPT AND STATUS CONFERENCE PROCEEDINGS

           BEFORE THE HONORABLE BARBARA C. MOSES

              UNITED STATES MAGISTRATE JUDGE



    APPEARANCES:

    For Plaintiff:        UNITED STATES ATTORNEY'S OFFICE
                          SOUTHERN DISTRICT OF NEW YORK
                          BY:  Dina McLeod
                               Micah Fergenson
                          One St. Andrew's Plaza
                          New York, New York 10007


    For Defendant:        QUINN EMANUEL URQUHART & SULLIVAN
                          BY:  Maaren Shah
                               JP Kernisan
                          51 Madison Avenue - 22nd Floor
                          New York, New York 10010




    Proceedings recorded by electronic sound recording;
    Transcript produced by transcription service

             AMM TRANSCRIPTION - 631.334.1445
```

         1              THE DEPUTY CLERK:  The court now calls the
         2      United States of America versus Charlie Javice; case
         3      number 23MJ2638.
         4              Counsel, please make your appearances for
         5      the record.
         6              MS. McLEOD:  Good afternoon, Your Honor.
         7      Dina McLeod and Micah Fergenson for the government.
         8              THE COURT:  Ms. McLeod, Mr. Fergenson.
         9      Good afternoon.
        10              MS. SHAH:  Good afternoon, Your Honor.
        11      Maaren Shah from Quinn Emmanuel for defendant,
        12      Charlie Javice.  I'm here with my partner, JP
        13      Kernisan.  And my partner, Alex Spiro couldn't be
        14      here today, but will be appearing in the case also.
        15              Nice to see you again, your Honor.
        16              THE COURT:  Ms. Kernigan.  Ms. Shah, I
        17      don't usually see you in this courtroom; good
        18      afternoon.
        19              MS. SHAH:  Good afternoon.
        20              THE COURT:  And Ms. Javice, am I
        21      pronouncing your last name correctly?
        22              THE DEFENDANT:  Yes, ma'am.
        23              THE COURT:  You don't have to stand up.
        24      You can all be seated.  I am Magistrate Judge Moses.
        25              For the record, not that I have any doubt

                    AMM TRANSCRIPTION - 631.334.1445

1    about this, please confirm that you speak and

2    understand English.

3            THE DEFENDANT:  I do.  Yes, ma'am.

4            THE COURT:  May I have the date and time of

5    the defendant's arrest, please?

6            MS. McLEOD:  Yes, Your Honor.  The

7    defendant was arrested at approximately 6:20 p.m.

8    yesterday at Newark Liberty.

9            THE COURT:  Thank you.

10           So, Ms. Javice, the purpose of our

11   proceeding this afternoon is to advise you of

12   certain rights that you have, to inform you of the

13   charges against you, to consider whether counsel

14   shall be appointed for you, and to decide under what

15   conditions, if any, you shall be released pending

16   trial.

17           I'm going to begin by explaining some of

18   your constitutional rights.  You have the right to

19   remain silent.  You are not required to make any

20   statements to law enforcement authorities, even if

21   you've already spoken to the authorities, you are

22   not required to make any further statements.

23   Anything that you do say can be used against you.

24   You have the right to be released, either

25   conditionally or unconditionally pending trial,

1    unless I determine that there are no conditions that

2    would reasonably assure your presence at future

3    court appearances and the safety of the community.

4          If you are a foreign national, you have the

5    right to request that a consular officer from your

6    country of origin be notified of your arrest.  In

7    some cases, a treaty or other agreement may require

8    the U.S. government to give that notification,

9    whether you request it or not.

10         I am informed that you are a dual citizen

11   of the United States and France.  I am further

12   informed that France is not a mandatory notification

13   nation.  So that notification will not be made

14   automatically, but you may request that that

15   notification be given.

16         You have the right to be represented by an

17   attorney during all court proceedings, including

18   this one, and during any questioning by the

19   authorities.  If you cannot afford an attorney, I

20   will appoint one today to represent you.

21         Ms. Shah, your presence here suggests to me

22   that there is not going to be an application for

23   appointed counsel; is that correct?

24         MS. SHAH:  Correct, Your Honor.

25         THE COURT:  So we will then move on.  I

1    have been given a copy of the sealed complaint in
2    this matter, which I'm sure you've seen.  I will
3    review it for you briefly.  This is the document
4    that contains the criminal charges against you.
5              You are charged in Count 1 with conspiracy
6    to commit wire and bank fraud, in violation of 18
7    United States Code § 1349.
8              You are charged in Count 2 with wire fraud,
9    in violation of 18 United States Code §§ 1343 and 2.
10             You are charged in Count 3 with bank fraud,
11   in violation of 18 United States Code §§ 1344 and 2.
12             And you are charged in Count 4 with
13   securities fraud, in violation of Title 15, United
14   States Code, §§ 78j(b) and 78f(f), and also Title 17
15   of the Code of Federal Regulations, § 240.10(b)(5)
16   and Title 18, United States Code § 2.
17             Counsel, have you received a copy of the
18   complaint and had an opportunity to review it with
19   your client?
20             MS. SHAH:  Yes, Your Honor.
21             THE COURT:  And do you waive its detailed
22   public reading?
23             MS. SHAH:  Yes, Your Honor.
24             THE COURT:  Okay.  Because you have been
25   charged by Complaint, Ms. Javice, you are entitled

1    to a preliminary hearing.  At the preliminary

2    hearing, the government will have the burden of

3    establishing that there is probable cause to believe

4    that the crimes for which you are being charged were

5    committed and that you are the person who committed

6    them.

7              If you are in custody, you have a right to

8    that hearing within 14 days.  If you're out of

9    custody, you have a right to that hearing within 21

10   days.

11             However, no preliminary hearing will be

12   held if before the date on which it is scheduled you

13   are indicted by a Grand Jury or an Information is

14   filed against you by the government.  I'll set a

15   preliminary hearing date before we conclude our

16   proceedings this afternoon.  But what I now wish to

17   turn to is the issue of bail, or to be more formal,

18   conditions of release.

19             Have counsel discussed this?

20             MS. McLEOD:  Yes, Your Honor.  And we have

21   a joint proposed bail package.

22             THE COURT:  Excellent.  Who would like to

23   present that to me?

24             MS. McLEOD:  I will, Your Honor.

25             THE COURT:  Go ahead.

1            MS. McLEOD:  The parties propose a $2

2    million personal recognzance bond to be signed by

3    two financially responsible persons, to be secured

4    by the defendant's property.  And I can give you the

5    address.  It's the residence on the --

6            THE COURT:  This is real estate?

7            MS. McLEOD:  It's real estate.  It's a home

8    in Miami.

9            THE COURT:  Do you want to put that on the

10   record or not?

11           MS. SHAH:  I think we'd prefer not, if

12   that's all right, but I think Your Honor has it in

13   front of you in the Pretrial report.

14           THE COURT:  Is it the same address which is

15   listed in the Pretrial report?

16           MS. McLEOD:  Yes, it's the one on the first

17   page of the Pretrial report.

18           THE COURT:  Fine.  And that's the

19   defendant's personal residence?

20           MS. McLEOD:  Correct.

21           THE COURT:  All right.  So there will be

22   then what type of security?

23           MS. McLEOD:  It will be secured by that

24   property.

25           THE COURT:  All right.  And is there a

1   mortgage on that property?

2           MS. McLEOD:  There is.

3           THE COURT:  And you're satisfied that

4   there's enough equity in the property to give the

5   government adequate security?

6           MS. McLEOD:  Yes.

7           THE COURT:  Okay.  Are you trying to say

8   something or you're just standing up to stretch your

9   legs?

10           MS. SHAH:  I'm just standing up to show

11   respect to Your Honor.  I wasn't sure if you'd need

12   me again.

13           THE COURT:  No, you're fine.

14           MS. SHAH:  Thank you.

15           THE COURT:  You can be seated.  Go ahead.

16           MS. McLEOD:  Regular pretrial supervision.

17           THE COURT:  As directed?

18           MS. McLEOD:  As directed.

19           THE COURT:  Okay.  Any travel restrictions?

20           MS. McLEOD:  Southern -- SDNY, EDNY and the

21   Southern District of Florida.  And all points in

22   between for travel for court appearances.

23           THE COURT:  And she'll be supervised out of

24   Florida?

25           MS. McLEOD:  That's our expectation.


                AMM TRANSCRIPTION - 631.334.1445

```
 1                    THE COURT:  Okay.
 2                    MS. McLEOD:  Surrender all travel documents
 3       and no new applications.
 4                    THE COURT:  It's my understanding that both
 5       the U.S. and the French passport are in law
 6       enforcement custody; is that right?
 7                    MS. McLEOD:  That's correct, Your Honor.
 8                    MS. SHAH:  That's correct, Your Honor.
 9                    THE COURT:  Got it.
10                    MS. McLEOD:  A curfew to be enforced by
11       location monitoring.
12                    THE COURT:  Curfew?  Okay.  Tell me why.
13                    MS. McLEOD:  The curfew, Your Honor --
14                    THE COURT:  I mean, usually it's a
15       different kinds of crime that calls for curfew.
16                    MS. McLEOD:  Yes.  So that was to
17       mitigate --
18                    THE COURT:  I see you, Ms. Shah.  I'll call
19       on you in a moment.
20                    MS. SHAH:  Thank you.
21                    MS. McLEOD:  Parkinson was to mitigate the
22       risk of flight here based on the defendant's dual
23       nationality.
24                    THE COURT:  What, airplanes only run at
25       night?
```

1          MS. McLEOD:  Well, the curfew is to set

2     some parameters around the location monitoring.

3          THE COURT:  It's not a time curfew.

4          MS. McLEOD:  Well, it is a time curfew.

5     The curfew is to set a particular time in which she

6     must be in the home, but it provides a framework for

7     Pretrial to check in and make sure that she's there.

8     It's a way to -- the location monitoring enforces

9     the curfew.

10          THE COURT:  I'm not entirely sure I follow.

11     If it's, let's say, an hour from her home to the

12     nearest international airport, if she were going to

13     make a run for it, which we all trust and hope she's

14     not, couldn't she do it at nine in the morning just

15     as easily as at one in the morning?

16          MS. McLEOD:  I mean, I think that's right,

17     Your Honor.  I think typically Pretrial likes not to

18     have standalone monitoring, which is one of the

19     reasons we asked for it.  And in addition to set a

20     framework for the location monitoring.  If the Court

21     wants to place standalone location monitoring, it

22     can.  It is recommended by Pretrial as one of the

23     conditions.

24          THE COURT:  Well, I've jumped on your words

25     a couple of times already.  Why don't you give me

AMM TRANSCRIPTION - 631.334.1445

1    your pitch.

2           MS. McLEOD:  And this is agreed upon.  So

3    curfew to be enforced by location monitoring.

4           THE COURT:  With the hours to be set by

5    Pretrial?

6           MS. McLEOD:  Hours to be set in conjunction

7    with Pretrial, likely in the Southern District of

8    Florida.

9           THE COURT:  All right.  And the form of

10   location monitoring would also be up to Pretrial, so

11   not necessarily an ankle bracelet?

12          MS. McLEOD:  I think that's right, Your

13   Honor.

14          THE COURT:  Okay.  Got it.

15          MS. SHAH:  Your Honor, if I may be heard on

16   that point.

17          THE COURT:  Sure.

18          MS. SHAH:  Thank you.  And as Ms. McLeod

19   noted, this was agreed, but although, as Your Honor

20   knows, I don't appear very often in this courtroom

21   before you, we are also under the understanding that

22   that condition was imposed because it is, I gather,

23   a standard framework.  We have had discussions with

24   opposing counsel about thinking it's not necessary.

25   We would certainly prefer to proceed without a

1   curfew.  We don't think it's justified by the

2   circumstances here.  So if Your Honor is so

3   inclined --

4          THE COURT:  Well, let me lay out what your

5   realistic choices may be, now that I understand the

6   lay of the land, so to speak.  Pretrial services is

7   interested in not having the defendant be out of

8   electronic contact with them for long enough to make

9   a run for it.  Not to put too fine a point on it.

10         One way of doing that is to have location

11  monitoring in the home that records when she's home

12  and when she's not, but doesn't tell Pretrial

13  services where she is when she's not there because

14  she's not wearing an ankle bracelet.

15         You kind of need a curfew, as Ms. McLeod

16  explained, to put a framework on that because if she

17  isn't required to be in the home at a certain hour

18  every evening, then what does Pretrial services do

19  with the fact that she's not in the home at any

20  given moment?

21         The other way to keep tabs on her would be

22  to put her in an ankle bracelet without a curfew.

23  But now she's wearing a hunk of ankle around -- a

24  hunk of metal around her ankle wherever she goes.

25         Now, neither of these is ideal from the

1    defendant's perspective, but it may well be that the

2    curfew with no ankle bracelet is considered the

3    lesser of two evils.  Do you want to have a moment

4    to discuss that?

5              MS. SHAH:  I believe, Your Honor, that we

6    would agree that the curfew and no ankle bracelet is

7    the lesser of the two evils here.  And I don't want

8    to speak for my colleague on the other side of the

9    table.  My understanding is that what was being

10   proposed was an ankle bracelet and a curfew.  If

11   that's not the case, then the curfew is fine.

12             THE COURT:  Let me get clarification.

13             MS. SHAH:  Thank you.

14             THE COURT:  Ms. McLeod.

15             MS. McLEOD:  I think we would be fine with

16   the curfew to be enforced by -- at the discretion of

17   Pretrial.  Often they would choose not to do GPS at

18   that point, but that's something that I think is

19   within their province.

20             THE COURT:  All right.  So what I could

21   order, and what the Assistant U.S. Attorney is

22   suggesting is that I put the curfew in place and

23   leave it up to Pretrial services as to the exact

24   form of electronic monitoring.  This does not

25   guarantee no ankle bracelet, but it gives you a

1   decent chance of no ankle bracelet.

2           Are both sides reasonably accepting of that

3   compromise?

4           MS. McLEOD:  Yes, Your Honor.

5           MS. SHAH:  That's fine, Your Honor.

6           THE COURT:  All right.  Let's go on.

7           MS. McLEOD:  No contact -- this is going to

8   be a long one.  No contact with -- and I'm going to

9   give a number of categories of people.

10          THE COURT:  You're saying I should get

11   another piece of paper out here.

12          MS. McLEOD:  I don't know how far you've

13   gotten, but probably yes, Your Honor.

14          And as a caveat for this, this is sort of a

15   no contact with witnesses rule, and I just want to

16   preface this with saying that we have confirmed with

17   counsel ahead of time that they are aware of the

18   identities of these people.

19          THE COURT:  Because you knew I was going to

20   ask that question.

21          MS. McLEOD:  I did.  I was here for your

22   prior proceeding.

23          THE COURT:  Okay.

24          MS. McLEOD:  So the condition as agreed

25   would be no contact with the following categories of

1    people; former employees of Frank, which is the
2    company name, Frank.
3            THE COURT:  Right.
4            MS. McLEOD:  Current employees of JPMorgan
5    Chase.
6            THE COURT:  That's a big company, JPMorgan
7    Chase.
8            MS. McLEOD:  Yes.  We've discussed this
9    with defense counsel.  And I have one more caveat at
10   the end of that as well.
11           The person identified in the complaint as
12   CC1.
13           THE COURT:  All right.  CC1.
14           MS. McLEOD:  The person identified in the
15   complaint as Data Scientist 1.
16           THE COURT:  And, Ms. Shah, you know who
17   that is?
18           MS. SHAH:  Yes, we do, Your Honor.
19           THE COURT:  Okay.
20           MS. McLEOD:  And the final caveat on that
21   is there should be no communications.  There should
22   be no communications about -- my understanding is
23   some people in these categories, there may be a
24   prior personal relationship.  And so the agreement
25   with the parties is that if there's a communication

1    in the personal capacity, it should not be about --

2    there should be no discussion of the substance of

3    the case outside the presence of counsel.  Oh, I'm

4    sorry, I missed one category.  My colleague is

5    reminding me there's one other category, which is

6    former investors in Frank and former members of the

7    board of Frank.

8              THE COURT:  Former investors and board

9    members of Frank.

10             MS. McLEOD:  Yes, Your Honor.

11             THE COURT:  All right.  Now to which of

12   these -- I have five categories here.  One, former

13   employees of Frank; two, former investors and/or

14   board members of Frank; three, current employees of

15   JPMorgan Chase.  I have to renumber my list here.

16   Four, CC1; Five, Data Scientist 1.

17             To which categories does your carve out

18   apply?  When I say "your carve out," I mean your

19   explanation that social or personal contact is

20   acceptable so long as there's no discussion of

21   matters relevant to this case?

22             MS. McLEOD:  Let me discuss for one second.

23             (Pause in proceedings)

24             MS. McLEOD:  Okay.  Your Honor, we are

25   ready to answer your question.

1          So the carve out as to communications

2    limited to substance of the case, only in the

3    presence of counsel.  That applies to the following

4    categories, board members and investors and former

5    employees of Frank.

6          THE COURT:  All right.

7          MS. McLEOD:  And I'm sorry, we have one

8    additional caveat, which is that technically the

9    defendant's mother and her mother's boyfriend fall

10   in the investor category.  But the parties have

11   agreed that those two individuals, the defendant's

12   mother and her mother's boyfriend, can be excluded

13   from the condition altogether in order that she can

14   speak to her mother about the case, for example.

15         THE COURT:  So let me say it back to you.

16   With respect to former employees of Frank, the

17   condition is that the defendant is to have no

18   communication with them related to this case except

19   in the presence of counsel.  With respect to current

20   employees of JPMorgan Chase, the condition is the

21   defendant is to have no contact with them except in

22   the presence of counsel.  With respect to former

23   investors and/or board members of Frank, but not

24   counting mom or mom's boyfriend, the condition is

25   that the defendant is to have no substantive

1   communication with them concerning this case except

2   in the presence of counsel.  Mom and Mom's boyfriend

3   are unrestricted.  And with respect to the two

4   remaining individuals identified as CC1 and Data

5   Scientist 1, the defendant is to have no

6   communication with them on any topic other than in

7   the presence of counsel.

8           MS. McLEOD:  That's correct, Your Honor.

9           THE COURT:  Okay.  Let's move on.

10          MS. McLEOD:  Almost done.  And the final

11   condition is what's listed as number six on the

12   Pretrial services report, which is the defendant is

13   not to open any new bank accounts or lines of credit

14   without the approval of pretrial.  And then the

15   final note is that the defendant can be released on

16   her own signature, all other conditions to be met

17   within two weeks.

18          THE COURT:  All right.  So let me recite

19   for the record what I understand the agreed upon

20   conditions of release to be.  And then I will ask

21   the defendant if I've gotten them correct insofar as

22   she has agreed to these.

23          The defendant will be released on a bond in

24   the amount of $2 million, which will be cosigned by

25   two financially responsible persons acceptable to

AMM TRANSCRIPTION - 631.334.1445

1    the U.S. Attorney's Office in the Southern District

2    of New York, and will be secured by the defendant's

3    residence in Florida.

4            The defendant's travel will be restricted

5    to the Southern and Eastern Districts of New York,

6    the Southern District of Florida, and points in

7    between for purposes of travel only.

8            The defendant will surrender her passports,

9    which she's already done, as I understand it, and

10   will make no new application for passports or

11   similar travel documents.

12           The defendant will be supervised as

13   directed by Pretrial services.  The defendant will

14   be subject to a curfew at her residence, the exact

15   parameters of which will be set by Pretrial

16   services, and the curfew will be enforced by

17   location monitoring at the discretion of Pretrial

18   services.

19           The defendant will open no new -- wait one

20   second -- will not open any new bank accounts or

21   lines of credit without the approval of Pretrial

22   services.  And the defendant will be subject to the

23   following restrictions on contact with other

24   individuals potentially relevant to this case.

25           As to CC1, Data Scientist 1, and current

1    employees of JPMorgan Chase, the defendant will have
2    no contact with individuals in those categories
3    outside the presence of counsel.
4            With respect to former employees of Frank
5    and former investors and/or board members of Frank
6    who are not mom or mom's boyfriend, the defendant
7    will have no communication with these individuals
8    concerning this case or facts relevant to this case
9    outside the presence of counsel.
10           There are no communication restrictions
11   with regard to the defendant's mother or the
12   mother's boyfriend.  The defendant will be released
13   today upon her own signature.  All remaining
14   conditions must be met within two weeks.
15           Let me ask the government first, is there
16   anything you want to add or clarify there?
17           MS. McLEOD:  I'm sorry, Your Honor.
18           THE COURT:  You weren't listening.
19           MS. McLEOD:  I just wasn't sure if I missed
20   the PRB being secured by the Miami address.
21           THE COURT:  That was in there.  All right.
22           Ms. Shah, anything to add or clarify?
23           MS. SHAH:  Yes, Your Honor, we're good.
24           THE COURT:  All right.
25           Ms. Javice, do you understand the terms of

1   your release as I have just summarized them for you?

2           MS. McLEOD:  Yes, ma'am.

3           THE COURT:  You may be seated.  Let me warn

4   you, Ms. Javice, that if you fail to appear in court

5   when due or if you violate any of the conditions of

6   your release, whether you consider these conditions

7   important or unimportant, I can assure you that the

8   government tends to consider all of them important,

9   so if you were to violate them, a new warrant would

10  be issued for your arrest.

11          You and those who cosign the bond could be

12  liable each for up to the full amount of the bond,

13  in this case, $2 million.  Not a trivial sum.  And

14  you could be charged with a separate crime known as

15  bail jumping.

16          In addition, if you were to commit a new

17  offense while you are on release in this case, then

18  in addition to whatever sentence you would

19  ordinarily get for the new offense, you can be

20  sentenced to an additional term of imprisonment

21  because you were out on bail when you committed it.

22  And that additional term of imprisonment could be up

23  to ten years if the new offense is a felony.  Up to

24  one year, if the new offense is a misdemeanor.  And

25  that additional term would be imposed and executed

1    after and on top of any other sentence of

2    imprisonment is completed.

3             Do you understand what I have told you?

4             THE DEFENDANT:  Yes, ma'am.

5             THE COURT:  Ms. Shah, when shall I set the

6    preliminary hearing?

7             MS. SHAH:  I think 21 days works for us,

8    Your Honor.

9             THE COURT:  21 days.  That takes us to

10   April the 25th.  You sure you don't want to waive to

11   the 30th day?

12            MS. SHAH:  I'm sorry?

13            THE COURT:  I expected you to say you

14   wanted to waive to the 30th day.  I assume you have

15   a lot to talk about with the government.  Up to you.

16            MS. SHAH:  I think we're good with the 21.

17            THE COURT:  You're good with the 21.  All

18   right.  So I'll set the preliminary hearing for

19   April the 25th.  April the 25th, 2023.

20            Anything further from the government?

21            MS. McLEOD:  No, Your Honor.  Thank you.

22            THE COURT:  Anything from the defense?

23            MS. SHAH:  No, thank you, Your Honor.

24            THE COURT:  Thank you.  We will be

25   adjourned.

          AMM TRANSCRIPTION - 631.334.1445

```
 1                 C E R T I F I C A T E

 2

 3        I, Adrienne M. Mignano, certify that the

 4   foregoing transcript of proceedings in the case of

 5   United States of America v. Charlie Javice;

 6   Docket #23MJ2638 was prepared using digital

 7   transcription software and is a true and accurate

 8   record of the proceedings.

 9

10

11   Signature  _____
                    Adrienne M. Mignano
12              ADRIENNE M. MIGNANO, RPR

13

14   Date:      April 5, 2023

15

16

17

18

19

20

21

22

23

24

25
```

# EXHIBIT G

| | |
|---|---|
| **From:** | Sarah Heaton Concannon |
| **Sent:** | Friday, June 2, 2023 11:44 AM |
| **To:** | Loss, Daniel; Moilanen, Lindsay S; Wintermyer, Wesley |
| **Cc:** | Alex Spiro; Maaren Shah; JP Kernisan; Matthew Langley |
| **Subject:** | RE: Activity in Case 1:23-cv-02795-LJL Securities and Exchange Commission v. Javice et al Order for Initial Pretrial Conference |

Since you apparently misapprehended our discussions of yesterday and mischaracterized them in your email of last night, please provide us with a copy of your intended submission to the Court in advance of filing, so that we can correct any inaccuracies prior to filing and without need to raise them with the Court.  To be clear, we object to any extension.  We timely filed our document requests before the Government moved to stay, and unless and until that stay is granted, your responses are due 6/22.  An extension is prejudicial to our client's defense of the SEC action.

**Sarah Heaton Concannon**
*Partner and Co-Chair of SEC Enforcement Practice*
**Quinn Emanuel Urquhart & Sullivan, LLP**

1300 I Street, NW, Suite 900
Washington, D.C. 20005

51 Madison Ave., 22nd Floor
New York, N.Y. 10010

202.538.8122 Direct
703.554.5521 Cell
sarahconcannon@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited.  If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

---

**From:** Loss, Daniel <LossD@SEC.GOV>
**Sent:** Friday, June 2, 2023 12:29 PM
**To:** Sarah Heaton Concannon <sarahconcannon@quinnemanuel.com>; Moilanen, Lindsay S <moilanenl@SEC.GOV>; Wintermyer, Wesley <WintermyerWe@SEC.GOV>
**Cc:** Alex Spiro <alexspiro@quinnemanuel.com>; Maaren Shah <maarenshah@quinnemanuel.com>; JP Kernisan <jpkernisan@quinnemanuel.com>; Matthew Langley <matthewlangley@quinnemanuel.com>
**Subject:** RE: Activity in Case 1:23-cv-02795-LJL Securities and Exchange Commission v. Javice et al Order for Initial Pretrial Conference

**[EXTERNAL EMAIL from lossd@sec.gov]**

---

Hi Sarah,

This is not consistent with the information relayed in yesterday's discussion and we disagree with your characterizations.  In any event, we plan to ask the Court for 21 days following a ruling on the Stay Motion and will describe our understanding of your client's position based on the email below.

Best,

Dan

---

**From:** Sarah Heaton Concannon <sarahconcannon@quinnemanuel.com>
**Sent:** Thursday, June 1, 2023 9:45 PM
**To:** Loss, Daniel <LossD@SEC.GOV>; Moilanen, Lindsay S <moilanenl@SEC.GOV>; Wintermyer, Wesley <WintermyerWe@SEC.GOV>
**Cc:** Alex Spiro <alexspiro@quinnemanuel.com>; Maaren Shah <maarenshah@quinnemanuel.com>; JP Kernisan <jpkernisan@quinnemanuel.com>; Matthew Langley <matthewlangley@quinnemanuel.com>
**Subject:** Re: Activity in Case 1:23-cv-02795-LJL Securities and Exchange Commission v. Javice et al Order for Initial Pretrial Conference

> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

That is incorrect. Our position is that when we first met and conferred, the SEC proposed an aggressive schedule and CMP, and indicated that you would begin rolling productions shortly after the then-planned status conference. We agreed to that aggressive CMP and served written discovery requests with a response date of 6/22, before the Government moved to intervene and stay. We also provided a protective order.

The SEC claims to take no position on the Government's motion. Accordingly, the SEC should timely respond to our written discovery requests, including through the immediate production of the investigative file. We proposed a reasonable compromise that is without prejudice and at nominal cost to your client.

Your failure to produce discovery is inconsistent with your professed neutrality on the stay and prejudicial to our client in the SEC's case, where you acknowledge you are sitting on third party productions that could be immediately produced and that we are confident contain exculpatory information critical to our client's defense of the SEC action.

**Sarah Heaton Concannon**
*Partner and Co-Chair of SEC Enforcement Practice*
**Quinn Emanuel Urquhart & Sullivan, LLP**

1300 I Street, NW, Suite 900
Washington, D.C. 20005

51 Madison Ave., 22nd Floor
New York, N.Y. 10010

202.538.8122 Direct
703.554.5521 Cell

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

---

**From:** Loss, Daniel <LossD@SEC.GOV>
**Sent:** Thursday, June 1, 2023 8:48:55 PM
**To:** Sarah Heaton Concannon <sarahconcannon@quinnemanuel.com>; Moilanen, Lindsay S <moilanenl@SEC.GOV>; Wintermyer, Wesley <WintermyerWe@SEC.GOV>
**Cc:** Alex Spiro <alexspiro@quinnemanuel.com>; Maaren Shah <maarenshah@quinnemanuel.com>; JP Kernisan <jpkernisan@quinnemanuel.com>; Matthew Langley <matthewlangley@quinnemanuel.com>

**Subject:** Re: Activity in Case 1:23-cv-02795-LJL Securities and Exchange Commission v. Javice et al Order for Initial Pretrial Conference

**[EXTERNAL EMAIL from lossd@sec.gov]**

We can't agree to that. We plan to ask for 30 days following a ruling on the stay motion to respond to your requests (unless the stay is granted). We will note your client's objection. As I understand it, your client's position is based on (1) the view that there is no reason the documents shouldn't be produced by 6/22 absent a stay, (2) the importance of the documents to the Delaware case, and (3) the importance of the documents to the criminal case. Please let us know if our understanding of the reasons is incorrect so that we can accurately convey your client's position.

**From:** Sarah Heaton Concannon <sarahconcannon@quinnemanuel.com>
**Sent:** Thursday, June 1, 2023 8:06 PM
**To:** Loss, Daniel <LossD@SEC.GOV>; Moilanen, Lindsay S <moilanenl@SEC.GOV>; Wintermyer, Wesley <WintermyerWe@SEC.GOV>
**Cc:** Alex Spiro <alexspiro@quinnemanuel.com>; Maaren Shah <maarenshah@quinnemanuel.com>; JP Kernisan <jpkernisan@quinnemanuel.com>; Matthew Langley <matthewlangley@quinnemanuel.com>
**Subject:** RE: Activity in Case 1:23-cv-02795-LJL Securities and Exchange Commission v. Javice et al Order for Initial Pretrial Conference

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Dan and Lindsay,

Thanks for the call earlier today.  Will the SEC agree to immediately produce third-party documents in its possession, custody, or control, regardless of whether the Court grants the USAO's motion to stay?  The mere production of third-party documents already within the SEC's file cannot possibly impact the parallel criminal action, and the burdens of production are nominal.

If so, then we will agree that for (i) the SEC's written responses; and (ii) all other documents called for by our 5/22 requests, the SEC will have until 2 weeks after the Court's order on the stay motion to respond.

Best,
Sarah

**Sarah Heaton Concannon**
*Partner and Co-Chair of SEC Enforcement Practice*
**Quinn Emanuel Urquhart & Sullivan, LLP**

1300 I Street, NW, Suite 900
Washington, D.C. 20005

51 Madison Ave., 22nd Floor
New York, N.Y. 10010

202.538.8122 Direct
703.554.5521 Cell
sarahconcannon@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended

recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited.  If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** Loss, Daniel <LossD@SEC.GOV>
**Sent:** Wednesday, May 31, 2023 12:22 PM
**To:** Sarah Heaton Concannon <sarahconcannon@quinnemanuel.com>; Wintermyer, Wesley <WintermyerWe@SEC.GOV>; Alex Spiro <alexspiro@quinnemanuel.com>; Maaren Shah <maarenshah@quinnemanuel.com>; JP Kernisan <jpkernisan@quinnemanuel.com>; Matthew Langley <matthewlangley@quinnemanuel.com>
**Cc:** Moilanen, Lindsay S <moilanenl@SEC.GOV>
**Subject:** RE: Activity in Case 1:23-cv-02795-LJL Securities and Exchange Commission v. Javice et al Order for Initial Pretrial Conference

**[EXTERNAL EMAIL from lossd@sec.gov]**

Great – thanks.

**From:** Sarah Heaton Concannon <sarahconcannon@quinnemanuel.com>
**Sent:** Wednesday, May 31, 2023 12:17 PM
**To:** Loss, Daniel <LossD@SEC.GOV>; Wintermyer, Wesley <WintermyerWe@SEC.GOV>; Alex Spiro <alexspiro@quinnemanuel.com>; Maaren Shah <maarenshah@quinnemanuel.com>; JP Kernisan <jpkernisan@quinnemanuel.com>; Matthew Langley <matthewlangley@quinnemanuel.com>
**Cc:** Moilanen, Lindsay S <moilanenl@SEC.GOV>
**Subject:** Re: Activity in Case 1:23-cv-02795-LJL Securities and Exchange Commission v. Javice et al Order for Initial Pretrial Conference

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

We're available then and will send a dial in.

**Sarah Heaton Concannon**
*Partner and Co-Chair of SEC Enforcement Practice*
**Quinn Emanuel Urquhart & Sullivan, LLP**

1300 I Street, NW, Suite 900
Washington, D.C. 20005

51 Madison Ave., 22nd Floor
New York, N.Y. 10010

202.538.8122 Direct
703.554.5521 Cell

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** Loss, Daniel <LossD@SEC.GOV>
**Sent:** Wednesday, May 31, 2023 11:53:39 AM
**To:** Sarah Heaton Concannon <sarahconcannon@quinnemanuel.com>; Wintermyer, Wesley <WintermyerWe@SEC.GOV>; Alex Spiro <alexspiro@quinnemanuel.com>; Maaren Shah

<maarenshah@quinnemanuel.com>; JP Kernisan <jpkernisan@quinnemanuel.com>
**Cc:** Moilanen, Lindsay S <moilanenl@SEC.GOV>
**Subject:** RE: Activity in Case 1:23-cv-02795-LJL Securities and Exchange Commission v. Javice et al Order for Initial Pretrial Conference

**[EXTERNAL EMAIL from lossd@sec.gov]**

---

No problem, would 3:30 tomorrow work?  I'm at 212-336-5571 if you want to give me a call then.

Thanks,
Dan

---

**From:** Sarah Heaton Concannon <sarahconcannon@quinnemanuel.com>
**Sent:** Wednesday, May 31, 2023 11:31 AM
**To:** Loss, Daniel <LossD@SEC.GOV>; Wintermyer, Wesley <WintermyerWe@SEC.GOV>; Alex Spiro <alexspiro@quinnemanuel.com>; Maaren Shah <maarenshah@quinnemanuel.com>; JP Kernisan <jpkernisan@quinnemanuel.com>
**Cc:** Moilanen, Lindsay S <moilanenl@SEC.GOV>
**Subject:** RE: Activity in Case 1:23-cv-02795-LJL Securities and Exchange Commission v. Javice et al Order for Initial Pretrial Conference

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Traveling and completely out of pocket today, but I'm available for a call tomorrow.

**Sarah Heaton Concannon**
*Partner and Co-Chair of SEC Enforcement Practice*
**Quinn Emanuel Urquhart & Sullivan, LLP**

1300 I Street, NW, Suite 900
Washington, D.C. 20005

51 Madison Ave., 22nd Floor
New York, N.Y. 10010

202.538.8122 Direct
703.554.5521 Cell
sarahconcannon@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited.  If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

---

**From:** Loss, Daniel <LossD@SEC.GOV>
**Sent:** Wednesday, May 31, 2023 11:05 AM
**To:** Sarah Heaton Concannon <sarahconcannon@quinnemanuel.com>; Wintermyer, Wesley <WintermyerWe@SEC.GOV>; Alex Spiro <alexspiro@quinnemanuel.com>; Maaren Shah <maarenshah@quinnemanuel.com>; JP Kernisan <jpkernisan@quinnemanuel.com>
**Cc:** Moilanen, Lindsay S <moilanenl@SEC.GOV>
**Subject:** RE: Activity in Case 1:23-cv-02795-LJL Securities and Exchange Commission v. Javice et al Order for Initial Pretrial Conference

**[EXTERNAL EMAIL from lossd@sec.gov]**

Thanks, Sarah.  Are you available for a quick call today?  I'd like to see if we can try to resolve this without going to the Court.

---

**From:** Sarah Heaton Concannon <sarahconcannon@quinnemanuel.com>
**Sent:** Tuesday, May 30, 2023 8:19 PM
**To:** Loss, Daniel <LossD@SEC.GOV>; Wintermyer, Wesley <WintermyerWe@SEC.GOV>; Alex Spiro <alexspiro@quinnemanuel.com>; Maaren Shah <maarenshah@quinnemanuel.com>; JP Kernisan <jpkernisan@quinnemanuel.com>
**Cc:** Moilanen, Lindsay S <moilanenl@SEC.GOV>
**Subject:** Re: Activity in Case 1:23-cv-02795-LJL Securities and Exchange Commission v. Javice et al Order for Initial Pretrial Conference

> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Absent a stay, we see no reason that written responses should not be served on their due date, 6/22, with the investigative file produced immediately thereafter.

**Sarah Heaton Concannon**
*Partner and Co-Chair of SEC Enforcement Practice*
**Quinn Emanuel Urquhart & Sullivan, LLP**

1300 I Street, NW, Suite 900
Washington, D.C. 20005

51 Madison Ave., 22nd Floor
New York, N.Y. 10010

202.538.8122 Direct
703.554.5521 Cell

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

---

**From:** Loss, Daniel <LossD@SEC.GOV>
**Sent:** Tuesday, May 30, 2023 7:21:11 PM
**To:** Sarah Heaton Concannon <sarahconcannon@quinnemanuel.com>; Wintermyer, Wesley <WintermyerWe@SEC.GOV>; Alex Spiro <alexspiro@quinnemanuel.com>; Maaren Shah <maarenshah@quinnemanuel.com>; JP Kernisan <jpkernisan@quinnemanuel.com>
**Cc:** Moilanen, Lindsay S <moilanenl@SEC.GOV>
**Subject:** Re: Activity in Case 1:23-cv-02795-LJL Securities and Exchange Commission v. Javice et al Order for Initial Pretrial Conference

**[EXTERNAL EMAIL from lossd@sec.gov]**

---

Thanks, Sarah. What is your view as to what the deadline should be in light of the stay motion?

---

**From:** Sarah Heaton Concannon <sarahconcannon@quinnemanuel.com>
**Sent:** Tuesday, May 30, 2023 7:14:06 PM
**To:** Loss, Daniel <LossD@SEC.GOV>; Wintermyer, Wesley <WintermyerWe@SEC.GOV>; Alex Spiro
<alexspiro@quinnemanuel.com>; Maaren Shah <maarenshah@quinnemanuel.com>; JP Kernisan
<jpkernisan@quinnemanuel.com>
**Cc:** Moilanen, Lindsay S <moilanenl@SEC.GOV>
**Subject:** Re: Activity in Case 1:23-cv-02795-LJL Securities and Exchange Commission v. Javice et al Order for Initial
Pretrial Conference

> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you
> recognize the sender and know the content is safe.

Thank you, Dan. Hope your weekend was nice as well. We cannot agree to the proposal below.

Best
Sarah

**Sarah Heaton Concannon**
*Partner and Co-Chair of SEC Enforcement Practice*
**Quinn Emanuel Urquhart & Sullivan, LLP**

1300 I Street, NW, Suite 900
Washington, D.C. 20005

51 Madison Ave., 22nd Floor
New York, N.Y. 10010

202.538.8122 Direct
703.554.5521 Cell

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message
may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended
recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any
review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately
by e-mail, and delete the original message.

---

**From:** Loss, Daniel <LossD@SEC.GOV>
**Sent:** Tuesday, May 30, 2023 6:06:19 PM
**To:** Sarah Heaton Concannon <sarahconcannon@quinnemanuel.com>; Wintermyer, Wesley
<WintermyerWe@SEC.GOV>; Alex Spiro <alexspiro@quinnemanuel.com>; Maaren Shah
<maarenshah@quinnemanuel.com>; JP Kernisan <jpkernisan@quinnemanuel.com>
**Cc:** Moilanen, Lindsay S <moilanenl@SEC.GOV>
**Subject:** RE: Activity in Case 1:23-cv-02795-LJL Securities and Exchange Commission v. Javice et al Order for Initial
Pretrial Conference

**[EXTERNAL EMAIL from lossd@sec.gov]**

Sarah,

Hope you had a nice weekend.  Do you agree that the time period for responding to your First Set of Requests shall be
30 days following the Court's ruling on the stay motion?

Thanks,
Dan

**From:** Sarah Heaton Concannon <sarahconcannon@quinnemanuel.com>
**Sent:** Thursday, May 25, 2023 1:36 PM
**To:** Loss, Daniel <LossD@SEC.GOV>; Wintermyer, Wesley <WintermyerWe@SEC.GOV>; Alex Spiro <alexspiro@quinnemanuel.com>; Maaren Shah <maarenshah@quinnemanuel.com>; JP Kernisan <jpkernisan@quinnemanuel.com>
**Cc:** Moilanen, Lindsay S <moilanenl@SEC.GOV>
**Subject:** Re: Activity in Case 1:23-cv-02795-LJL Securities and Exchange Commission v. Javice et al Order for Initial Pretrial Conference

> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Yes, we agree that the CMP does not need to be submitted until one week before a to be rescheduled pretrial conference after the hearing on the Government's motion to intervene and stay.

We'll get the letter on file today.

**Sarah Heaton Concannon**
*Partner and Co-Chair of SEC Enforcement Practice*
**Quinn Emanuel Urquhart & Sullivan, LLP**

1300 I Street, NW, Suite 900
Washington, D.C. 20005

51 Madison Ave., 22nd Floor
New York, N.Y. 10010

202.538.8122 Direct
703.554.5521 Cell

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

---

**From:** Loss, Daniel <LossD@SEC.GOV>
**Sent:** Thursday, May 25, 2023, 12:11 PM
**To:** Sarah Heaton Concannon <sarahconcannon@quinnemanuel.com>; Wintermyer, Wesley <WintermyerWe@SEC.GOV>; Alex Spiro <alexspiro@quinnemanuel.com>; Maaren Shah <maarenshah@quinnemanuel.com>; JP Kernisan <jpkernisan@quinnemanuel.com>
**Cc:** Moilanen, Lindsay S <moilanenl@SEC.GOV>
**Subject:** Re: Activity in Case 1:23-cv-02795-LJL Securities and Exchange Commission v. Javice et al Order for Initial Pretrial Conference

[EXTERNAL EMAIL from lossd@sec.gov]

---

Sarah,

In light of the Court's order adjourning the IPTC do you agree that the deadline for the proposed case management order is also adjourned?  If so, no additional comments on your letter seeking an extension of the deadline to answer.

**From:** Loss, Daniel <LossD@SEC.GOV>
**Sent:** Thursday, May 25, 2023 6:55 AM
**To:** Sarah Heaton Concannon <sarahconcannon@quinnemanuel.com>; Wintermyer, Wesley
<WintermyerWe@SEC.GOV>; Alex Spiro <alexspiro@quinnemanuel.com>; Maaren Shah
<maarenshah@quinnemanuel.com>; JP Kernisan <jpkernisan@quinnemanuel.com>
**Cc:** Moilanen, Lindsay S <moilanenl@SEC.GOV>
**Subject:** Re: Activity in Case 1:23-cv-02795-LJL Securities and Exchange Commission v. Javice et al Order for
Initial Pretrial Conference

While we agree to your request for an extension of time to answer, we may have some additional language we
will ask you to include in the letter regarding our request, in light of the stay motion, and to the extent the Court
grants your request for an extension of time to answer, to adjourn the initial pretrial conference and case
management order deadline. Please stand by and we will get back to you shortly with proposed language.

---

**From:** Sarah Heaton Concannon <sarahconcannon@quinnemanuel.com>
**Sent:** Wednesday, May 24, 2023 9:12 PM
**To:** Loss, Daniel <LossD@SEC.GOV>; Wintermyer, Wesley <WintermyerWe@SEC.GOV>; Alex Spiro
<alexspiro@quinnemanuel.com>; Maaren Shah <maarenshah@quinnemanuel.com>; JP Kernisan
<jpkernisan@quinnemanuel.com>
**Cc:** Moilanen, Lindsay S <moilanenl@SEC.GOV>
**Subject:** Re: Activity in Case 1:23-cv-02795-LJL Securities and Exchange Commission v. Javice et al Order for
Initial Pretrial Conference

> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you
> recognize the sender and know the content is safe.

What is your position concerning immediate production of the investigative file and rolling productions of other
materials responsive to our document requests?  We can agree to postpone the status conference and CMP if the SEC
will agree to proceed with production in the interim.

Assume you do not object to the letter to the Court, given Wes's email of earlier today, but please let us know if that's
incorrect.

Thanks,
Sarah

**Sarah Heaton Concannon**
*Partner and Co-Chair of SEC Enforcement Practice*
**Quinn Emanuel Urquhart & Sullivan, LLP**

1300 I Street, NW, Suite 900
Washington, D.C. 20005

51 Madison Ave., 22nd Floor
New York, N.Y. 10010

202.538.8122 Direct
703.554.5521 Cell

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

---

**From:** Loss, Daniel <LossD@SEC.GOV>
**Sent:** Wednesday, May 24, 2023 7:02:01 PM
**To:** Sarah Heaton Concannon <sarahconcannon@quinnemanuel.com>; Wintermyer, Wesley <WintermyerWe@SEC.GOV>; Alex Spiro <alexspiro@quinnemanuel.com>; Maaren Shah <maarenshah@quinnemanuel.com>; JP Kernisan <jpkernisan@quinnemanuel.com>
**Cc:** Moilanen, Lindsay S <moilanenl@SEC.GOV>
**Subject:** Re: Activity in Case 1:23-cv-02795-LJL Securities and Exchange Commission v. Javice et al Order for Initial Pretrial Conference

**[EXTERNAL EMAIL from lossd@sec.gov]**

Sarah what are your thoughts on suggesting an adjournment of the deadline for the case management order and initial pretrial conference?

---

**From:** Sarah Heaton Concannon <sarahconcannon@quinnemanuel.com>
**Sent:** Wednesday, May 24, 2023 6:38:50 PM
**To:** Wintermyer, Wesley <WintermyerWe@SEC.GOV>; Loss, Daniel <LossD@SEC.GOV>; Alex Spiro <alexspiro@quinnemanuel.com>; Maaren Shah <maarenshah@quinnemanuel.com>; JP Kernisan <jpkernisan@quinnemanuel.com>
**Cc:** Moilanen, Lindsay S <moilanenl@SEC.GOV>
**Subject:** RE: Activity in Case 1:23-cv-02795-LJL Securities and Exchange Commission v. Javice et al Order for Initial Pretrial Conference

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Per Judge Liman's local rules, all requests for extension of time are to be submitted by letter.  Please let us know if you have any comments or concerns on the text of the letter below.

On behalf of our client, Charlie Javice, we respectfully submit this letter to request an extension of time for Ms. Javice to answer or otherwise respond to the Complaint in the above-referenced matter from June 5, 2023 until two weeks after this Court issues a decision on the Government's motion for an order authorizing intervention and staying discovery in this action until the conclusion of *United States v. Charlie Javice*, 23 Cr. 251 (AKH) [ECF Nos. 19-20].

We have conferred with Plaintiff U.S. Securities and Exchange Commission ("SEC") and the SEC consents to the relief sought herein.  This is the first such request.

Thank you
Sarah

**Sarah Heaton Concannon**
*Partner and Co-Chair of SEC Enforcement Practice*
**Quinn Emanuel Urquhart & Sullivan, LLP**

10

1300 I Street, NW, Suite 900
Washington, D.C. 20005

51 Madison Ave., 22nd Floor
New York, N.Y. 10010

202.538.8122 Direct

703.554.5521 Cell
sarahconcannon@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited.  If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** Wintermyer, Wesley <WintermyerWe@SEC.GOV>
**Sent:** Wednesday, May 24, 2023 4:54 PM
**To:** Sarah Heaton Concannon <sarahconcannon@quinnemanuel.com>; Loss, Daniel <LossD@SEC.GOV>; Alex Spiro <alexspiro@quinnemanuel.com>; Maaren Shah <maarenshah@quinnemanuel.com>; JP Kernisan <jpkernisan@quinnemanuel.com>
**Cc:** Moilanen, Lindsay S <moilanenl@SEC.GOV>
**Subject:** RE: Activity in Case 1:23-cv-02795-LJL Securities and Exchange Commission v. Javice et al Order for Initial Pretrial Conference

**[EXTERNAL EMAIL from wintermyerwe@sec.gov]**

Dear Sarah:

In response to your request:

1. The SEC takes no position with regard to the stay of discovery requested by the Government; and

2. The SEC agrees to your proposed stipulation.

Many thanks,
Wes

**Wesley Wintermyer**
Counsel
Division of Enforcement | New York Regional Office
**OFFICE**   +1 212 336 5462
**MOBILE**   +1 646 954 6979
wintermyerwe@sec.gov



11

**From:** Sarah Heaton Concannon <sarahconcannon@quinnemanuel.com>
**Sent:** Wednesday, May 24, 2023 4:27 PM
**To:** Loss, Daniel <LossD@SEC.GOV>; Alex Spiro <alexspiro@quinnemanuel.com>; Maaren Shah <maarenshah@quinnemanuel.com>; JP Kernisan <jpkernisan@quinnemanuel.com>
**Cc:** Moilanen, Lindsay S <moilanenl@SEC.GOV>; Wintermyer, Wesley <WintermyerWe@SEC.GOV>
**Subject:** RE: Activity in Case 1:23-cv-02795-LJL Securities and Exchange Commission v. Javice et al Order for Initial Pretrial Conference

> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Dan, Wes, and Lindsay:

We are in receipt of the Government's motion to intervene in this action and to stay discovery.  Please let us know as soon as possible:

1. The SEC's position with regard to the stay of discovery requested by the Government;

2. Whether you will agree to stipulate to an extension of time for Ms. Javice to answer or otherwise respond to the Complaint until two weeks after the Court's decision on the Government's motion.

Thank you
Sarah

**Sarah Heaton Concannon**
*Partner and Co-Chair of SEC Enforcement Practice*
**Quinn Emanuel Urquhart & Sullivan, LLP**

1300 I Street, NW, Suite 900
Washington, D.C. 20005

51 Madison Ave., 22nd Floor
New York, N.Y. 10010

202.538.8122 Direct

703.554.5521 Cell
sarahconcannon@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such, is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited.  If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** Loss, Daniel <LossD@SEC.GOV>
**Sent:** Wednesday, May 24, 2023 10:38 AM
**To:** Sarah Heaton Concannon <sarahconcannon@quinnemanuel.com>; Alex Spiro <alexspiro@quinnemanuel.com>; Maaren Shah <maarenshah@quinnemanuel.com>; JP Kernisan <jpkernisan@quinnemanuel.com>
**Cc:** Moilanen, Lindsay S <moilanenl@SEC.GOV>; Wintermyer, Wesley <WintermyerWe@SEC.GOV>
**Subject:** RE: Activity in Case 1:23-cv-02795-LJL Securities and Exchange Commission v. Javice et al Order for Initial Pretrial Conference

**[EXTERNAL EMAIL from lossd@sec.gov]**

Got it – thanks very much.

---

**From:** Sarah Heaton Concannon <sarahconcannon@quinnemanuel.com>
**Sent:** Wednesday, May 24, 2023 10:33 AM
**To:** Loss, Daniel <LossD@SEC.GOV>; Alex Spiro <alexspiro@quinnemanuel.com>; Maaren Shah <maarenshah@quinnemanuel.com>; JP Kernisan <jpkernisan@quinnemanuel.com>
**Cc:** Moilanen, Lindsay S <moilanenl@SEC.GOV>; Wintermyer, Wesley <WintermyerWe@SEC.GOV>
**Subject:** RE: Activity in Case 1:23-cv-02795-LJL Securities and Exchange Commission v. Javice et al Order for Initial Pretrial Conference

> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

There is no word version for (1). (We entered our edits into the PDF CMP draft you sent to us.) Attached is word version of (2).

**Sarah Heaton Concannon**
*Partner and Co-Chair of SEC Enforcement Practice*
**Quinn Emanuel Urquhart & Sullivan, LLP**

1300 I Street, NW, Suite 900
Washington, D.C. 20005

51 Madison Ave., 22nd Floor
New York, N.Y. 10010

202.538.8122 Direct

703.554.5521 Cell
sarahconcannon@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

---

**From:** Loss, Daniel <LossD@SEC.GOV>
**Sent:** Wednesday, May 24, 2023 10:30 AM
**To:** Sarah Heaton Concannon <sarahconcannon@quinnemanuel.com>; Alex Spiro <alexspiro@quinnemanuel.com>; Maaren Shah <maarenshah@quinnemanuel.com>; JP Kernisan <jpkernisan@quinnemanuel.com>
**Cc:** Moilanen, Lindsay S <moilanenl@SEC.GOV>; Wintermyer, Wesley <WintermyerWe@SEC.GOV>
**Subject:** RE: Activity in Case 1:23-cv-02795-LJL Securities and Exchange Commission v. Javice et al Order for Initial Pretrial Conference

**[EXTERNAL EMAIL from lossd@sec.gov]**

---

Can you please send word versions for items 1 & 2? Thank you.

---

**From:** Sarah Heaton Concannon <sarahconcannon@quinnemanuel.com>
**Sent:** Tuesday, May 23, 2023 5:20 PM
**To:** Loss, Daniel <LossD@SEC.GOV>; Alex Spiro <alexspiro@quinnemanuel.com>; Maaren Shah <maarenshah@quinnemanuel.com>; JP Kernisan <jpkernisan@quinnemanuel.com>
**Cc:** Moilanen, Lindsay S <moilanenl@SEC.GOV>; Wintermyer, Wesley <WintermyerWe@SEC.GOV>

**Subject:** RE: Activity in Case 1:23-cv-02795-LJL Securities and Exchange Commission v. Javice et al Order for Initial Pretrial Conference

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Dan, Wes, and Lindsay,

Please find attached:

1. Our revisions to the proposed CMP (shown in green)
2. A proposed protective order in clean and with redlines against Judge Liman's standard protective order
3. Ms. Javice's first set of document requests (please let us know if you do not agree to service by email)

Best
Sarah

**Sarah Heaton Concannon**
*Partner and Co-Chair of SEC Enforcement Practice*
**Quinn Emanuel Urquhart & Sullivan, LLP**

1300 I Street, NW, Suite 900
Washington, D.C. 20005

51 Madison Ave., 22nd Floor
New York, N.Y. 10010

202.538.8122 Direct

703.554.5521 Cell
sarahconcannon@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited.  If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** Loss, Daniel <LossD@SEC.GOV>
**Sent:** Friday, May 19, 2023 5:12 PM
**To:** JP Kernisan <jpkernisan@quinnemanuel.com>; Maaren Shah <maarenshah@quinnemanuel.com>; Alex Spiro <alexspiro@quinnemanuel.com>; Jenny Braun <jennybraun@quinnemanuel.com>; Sarah Heaton Concannon <sarahconcannon@quinnemanuel.com>
**Cc:** Moilanen, Lindsay S <moilanenl@SEC.GOV>; Wintermyer, Wesley <WintermyerWe@SEC.GOV>
**Subject:** RE: Activity in Case 1:23-cv-02795-LJL Securities and Exchange Commission v. Javice et al Order for Initial Pretrial Conference

**[EXTERNAL EMAIL from lossd@sec.gov]**

Resending with JP's correct email address.

**From:** Loss, Daniel
**Sent:** Friday, May 19, 2023 5:10 PM
**To:** pkernisan@quinnemanuel.com; maarenshah@quinnemanuel.com; alexspiro@quinnemanuel.com; jennybraun@quinnemanuel.com; sarahconcannon@quinnemanuel.com

**Cc:** Moilanen, Lindsay S <moilanenl@SEC.GOV>; Wintermyer, Wesley <WintermyerWe@SEC.GOV>
**Subject:** RE: Activity in Case 1:23-cv-02795-LJL Securities and Exchange Commission v. Javice et al Order for Initial Pretrial Conference

Following up on our call today, attached please find a draft Case Management Plan with the dates we discussed.  Please let us know your thoughts and any proposals.  Also, shall we set a follow up call for next Friday to discuss any remaining open issues?

Thanks, and have a nice weekend.

---

**From:** Wintermyer, Wesley
**Sent:** Tuesday, May 16, 2023 5:03 PM
**To:** JP Kernisan <jpkernisan@quinnemanuel.com>
**Cc:** Maaren Shah <maarenshah@quinnemanuel.com>; Alex Spiro <alexspiro@quinnemanuel.com>; Jenny Braun <jennybraun@quinnemanuel.com>; Moilanen, Lindsay S <moilanenl@SEC.GOV>; Sarah Heaton Concannon <sarahconcannon@quinnemanuel.com>
**Subject:** RE: Activity in Case 1:23-cv-02795-LJL Securities and Exchange Commission v. Javice et al Order for Initial Pretrial Conference

It works for us. Thank you so much for the accommodation.

Best,
Wes

**Wesley Wintermyer**
Counsel
Division of Enforcement | New York Regional Office
**OFFICE**    +1 212 336 5462
**MOBILE**    +1 646 954 6979
wintermyerwe@sec.gov



**U.S. Securities and
Exchange Commission**

---

**From:** JP Kernisan <jpkernisan@quinnemanuel.com>
**Sent:** Tuesday, May 16, 2023 5:00 PM
**To:** Wintermyer, Wesley <WintermyerWe@SEC.GOV>
**Cc:** Maaren Shah <maarenshah@quinnemanuel.com>; Alex Spiro <alexspiro@quinnemanuel.com>; Jenny Braun <jennybraun@quinnemanuel.com>; Moilanen, Lindsay S <moilanenl@SEC.GOV>; Sarah Heaton Concannon <sarahconcannon@quinnemanuel.com>
**Subject:** Re: Activity in Case 1:23-cv-02795-LJL Securities and Exchange Commission v. Javice et al Order for Initial Pretrial Conference

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

15

Hi Wes - would Friday at 3 work? That works for those of us joining on our end.

**JP Kernisan** | *Partner*
**Quinn Emanuel Urquhart & Sullivan, LLP**

On May 16, 2023, at 4:43 PM, Wintermyer, Wesley <WintermyerWe@sec.gov> wrote:

**[EXTERNAL EMAIL from wintermyerwe@sec.gov]**

Hi JP – We were hoping that you might be able to move tomorrow's call to Friday after 11:30. Please let us know if you have a time Friday afternoon that works.

Best,
Wes

**Wesley Wintermyer**
Counsel
Division of Enforcement | New York Regional Office
**OFFICE**    +1 212 336 5462
**MOBILE**    +1 646 954 6979
wintermyerwe@sec.gov



---

**From:** Wintermyer, Wesley
**Sent:** Friday, May 12, 2023 2:23 PM
**To:** JP Kernisan <jpkernisan@quinnemanuel.com>; Maaren Shah <maarenshah@quinnemanuel.com>;
Alex Spiro <alexspiro@quinnemanuel.com>; Jenny Braun <jennybraun@quinnemanuel.com>
**Cc:** Moilanen, Lindsay S <moilanenl@SEC.GOV>
**Subject:** RE: Activity in Case 1:23-cv-02795-LJL Securities and Exchange Commission v. Javice et al Order for Initial Pretrial Conference

Hi JP – That works for us. I will circulate a dial in.

Wes

**Wesley Wintermyer**
Counsel
Division of Enforcement | New York Regional Office
**OFFICE**    +1 212 336 5462
**MOBILE**    +1 646 954 6979
wintermyerwe@sec.gov



**From:** JP Kernisan <jpkernisan@quinnemanuel.com>
**Sent:** Friday, May 12, 2023 2:21 PM
**To:** Wintermyer, Wesley <WintermyerWe@SEC.GOV>; Maaren Shah
<maarenshah@quinnemanuel.com>; Alex Spiro <alexspiro@quinnemanuel.com>; Jenny Braun
<jennybraun@quinnemanuel.com>
**Cc:** Moilanen, Lindsay S <moilanenl@SEC.GOV>
**Subject:** RE: Activity in Case 1:23-cv-02795-LJL Securities and Exchange Commission v. Javice et al Order
for Initial Pretrial Conference

> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments
> unless you recognize the sender and know the content is safe.

Hi Wes – are you available next Wednesday at 4?

**From:** Wintermyer, Wesley <WintermyerWe@SEC.GOV>
**Sent:** Friday, May 12, 2023 12:25 PM
**To:** JP Kernisan <jpkernisan@quinnemanuel.com>; Maaren Shah <maarenshah@quinnemanuel.com>;
Alex Spiro <alexspiro@quinnemanuel.com>; Jenny Braun <jennybraun@quinnemanuel.com>
**Cc:** Moilanen, Lindsay S <moilanenl@SEC.GOV>
**Subject:** FW: Activity in Case 1:23-cv-02795-LJL Securities and Exchange Commission v. Javice et al Order
for Initial Pretrial Conference

**[EXTERNAL EMAIL from wintermyerwe@sec.gov]**

JP:

Please see below from Judge Liman. Can you please let us know your availability after Tuesday of next
week for a call?

Many thanks,
Wes

**Wesley Wintermyer**
Counsel
Division of Enforcement | New York Regional Office
**OFFICE**    +1 212 336 5462
**MOBILE**    +1 646 954 6979
wintermyerwe@sec.gov



**From:** NYSD_ECF_Pool@nysd.uscourts.gov <NYSD_ECF_Pool@nysd.uscourts.gov>
**Sent:** Friday, May 12, 2023 12:03 PM
**To:** CourtMail@nysd.uscourts.gov
**Subject:** Activity in Case 1:23-cv-02795-LJL Securities and Exchange Commission v. Javice et al Order for Initial Pretrial Conference

> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**U.S. District Court**

**Southern District of New York**

## Notice of Electronic Filing

The following transaction was entered on 5/12/2023 at 12:02 PM EDT and filed on 5/12/2023

| | |
|---|---|
| **Case Name:** | Securities and Exchange Commission v. Javice et al |
| **Case Number:** | 1:23-cv-02795-LJL |
| **Filer:** | |
| **Document Number:** | 13 |

**Docket Text:**
**NOTICE OF INITIAL PRETRIAL CONFERENCE: It is hereby: ORDERED that counsel for all parties appear in-person for an Initial Pretrial Conference on June 7, 2023, at 10:00 a.m. in Courtroom 15C at the 500 Pearl Street Courthouse. IT IS FURTHER ORDERED that, by one week prior to the conference, the parties jointly submit to the Court a proposed Case Management Plan and Scheduling Order. A template is available at https://www.nysd.uscourts.gov/hon-lewis-j-liman. This document should be filed electronically on ECF, consistent with the Court's Individual Practices in Civil Cases, which are available on the same webpage. Parties should consult the Individual Practices for guidance on the matters to be discussed at the Initial Pretrial Conference and for the Court's rules with respect to communications with Chambers and other procedural matters. Counsel for Plaintiff is ordered to notify Defendants of this Notice. SO ORDERED. ( Initial Conference set for 6/7/2023 at 10:00 AM in Courtroom 15C, 500 Pearl Street, New York, NY 10007 before Judge Lewis J. Liman.) (Signed by Judge Lewis J. Liman on 5/12/23) (yv)**

**1:23-cv-02795-LJL Notice has been electronically mailed to:**

Nancy A Brown      brownn@sec.gov

Antonia Marie Apps      AppsA@sec.gov

Lindsay Senechal Moilanen      moilanenl@sec.gov

Wesley Warren Wintermyer      wintermyerwe@sec.gov

**1:23-cv-02795-LJL Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1008691343 [Date=5/12/2023] [FileNumber=29493173-0] [418179b50975ef9092fbd97b10c21ac54dba3ecba4b666fd8f0c0adec1e2111b59 03eedbbd22e6527f9f5403081a71272c963d3a4573c0c341f475272a60a99e]]