**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

------------------------------------- x
                                      :
J.P. Morgan Chase Bank, N.A.,         :
                                      :
            Plaintiff,            :
                                      :
  v.                                  :   Civil Action No. 22-01621-JDW
                                      :
CHARLIE JAVICE and                    :
OLIVIER AMAR,                         :
                                      :
            Defendants.           :
                                      x
-------------------------------------

**REPLY IN SUPPORT OF THE GOVERNMENT'S MOTION**
**TO INTERVENE AND STAY DISCOVERY**

**TABLE OF CONTENTS**

I. INTERVENTION IS WARRANTED ................................................................................ 1
    A. The Government Has a Right to Intervene ................................................................ 1
    B. The Government Should be Permitted to Intervene .................................................... 2
II. DISCOVERY SHOULD BE STAYED ............................................................................ 3
    A. The Extent of the Overlap Favors a Stay .................................................................... 3
    B. The Status of the Criminal Case Favors a Stay ........................................................... 4
    C. The Defendants' Arguments about Prejudice are Meritless ....................................... 7
    D. The Court's Interests Favor a Stay .............................................................................. 8
    E. The Public Interest Favors a Stay ................................................................................ 8
CONCLUSION ............................................................................................................................. 10

# TABLE OF AUTHORITIES

**Federal Cases**

*Doe v. Schneider*, No. CV 08-3805 (MSG), 2010 WL 11561113 (E.D. Pa. June 8, 2010) ........................ 2, 8
*First Bank Bus. Cap., Inc. v. Agriprocessors, Inc.*, No. C08-1035, 2009 WL 2584842 (N.D. Iowa Aug. 18, 2009) .... 1
*Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216 (3d Cir. 2005) ........................................................ 1
*Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361 (3d Cir. 1995) .............. 1
*SEC v. Abraaj Inv. Mgmt. Ltd.*, No. 19-CV-3244 (AJN), 2019 WL 6498282 (S.D.N.Y. Dec. 3, 2019) ....... 8
*SEC v. Blaszczak*, No. 17-CV-3919 (AJN), 2018 WL 301091 (S.D.N.Y. Jan. 3, 2018) ............................. 9
*SEC v. Fishoff*, No. CV 15-3725 (MAS), 2016 WL 1262508 ..................................................................... 2
*SEC v. Manor*, No. CV 20-597 (SRC), 2020 WL 3446306 (D.N.J. June 24, 2020) ................................... 2
*SEC v. Ott*, No. CV 06-4195 (GEB), 2006 WL 8462454 (D.N.J. Nov. 30, 2006) ....................................... 2
*United States v. Mellon Bank, N. A.*, 545 F.2d 869 (3d Cir. 1976) ......................................................... 2, 8

**Federal Rules**

Rule 24(a)(2) .................................................................................................................................................... 1
Rule 24(b) ........................................................................................................................................................ 1
Federal Rules of Civil Procedure Rule 24(b)(2) ............................................................................................... 4

I.  **INTERVENTION IS WARRANTED**

The Government should be allowed to intervene as a matter of right pursuant to Rule 24(a)(2), or in the alternative, permitted to intervene by the Court pursuant to Rule 24(b).

A.  **The Government Has a Right to Intervene**

The defendants argue that the Government's interest in preventing the use of civil discovery from circumventing the criminal rules of discovery is not an interest recognized by Rule 24(a)(2).[1] (*See* Dkt. 63 ("Def. Mem.") at 7). Specifically, they contend that the Government's interest in preventing abuse of the discovery process does not relate "to the property or transaction that is the subject of the action," because its interest is in the "litigation process, not in the subject matter of the litigation." (*Id.*). The sole authority on which the defendants rely is an opinion from the Northern District of Iowa, which itself acknowledged that its conclusion was an anomaly. *First Bank Bus. Cap., Inc. v. Agriprocessors, Inc.*, No. C08-1035, 2009 WL 2584842, at *5 (N.D. Iowa Aug. 18, 2009).

The defendants' argument runs contrary to the Third Circuit's interpretation of the "interest" required by Rule 24. The Third Circuit has never set forth a rigid definition of such an interest. Rather, "the precise nature of the interest required to intervene as of right has eluded precise and authoritative definition." *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995). What is required is that an intervenor's interest "be one that is significantly protectable"—meaning that "the interest must be a legal interest as distinguished from interests of a general and indefinite character." *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 220 (3d Cir. 2005). An economic interest in the matter is not only

---

[1] Javice did not contest the Government's right to intervene in the SEC Case. (*See* Gov't Mot., Ex. E at 5).

not required, but is not sufficient to intervene. *Id.* It is well-established in the Third Circuit that the granting of a stay is appropriate where "the similarity of the issues left open the possibility that [the criminal defendant] might improperly exploit civil discovery for the advancement of his criminal case." *See United States v. Mellon Bank, N. A.*, 545 F.2d 869, 873 (3d Cir. 1976). Consistent with this authority, multiple courts in the Third Circuit have permitted the United States to intervene as of right to protect a parallel criminal prosecution. *See, e.g.*, *SEC v. Manor*, No. CV 20-597 (SRC), 2020 WL 3446306, at *2 (D.N.J. June 24, 2020); *SEC v. Fishoff*, No. CV 15-3725 (MAS), 2016 WL 1262508, at *2 (D.N.J. Mar. 31, 2016); *Doe v. Schneider*, No. CV 08-3805 (MSG), 2010 WL 11561113, at *4 (E.D. Pa. June 8, 2010); *SEC v. Ott*, No. CV 06-4195 (GEB), 2006 WL 8462454, at *2 (D.N.J. Nov. 30, 2006). Accordingly, the Government's motion to intervene should be granted under Rule 24(a).

  **B.**  **The Government Should be Permitted to Intervene**

Alternatively, the Government's motion to intervene should be granted under Rule 24(b). Javice and Amar also contend that permissive intervention should be denied pursuant to Rule 24 because granting a stay in this case would prejudice them. That argument wrongly conflates prejudice related to granting the motion to *intervene* (the prejudice with which Rule 24 is concerned) and prejudice relating to granting the motion to *stay*. (*See* Def. Mem. 8-9 ("[T]he Government's request completely ignores the very real prejudice that a complete stay would impose . . . .").[2] Javice and Amar provide no reason why granting the Government's motion to *intervene* prejudices them—nor could they.

---

[2] Javice and Amar inaccurately characterize the Government's motion as a motion to "stay this entire litigation" and a motion for a "complete stay." (Def. Mem. 8). The Government's motion seeks a stay of discovery.

2

## II. DISCOVERY SHOULD BE STAYED

The applicable factors weigh in favor of staying discovery, as Judge Liman already found in the SEC Case. (*See* Gov't Mot, Ex. E ("Judge Liman Op.")).

### A. The Extent of the Overlap Favors a Stay

Javice and Amar contend that the facts and issues presented in the Criminal and Civil Cases do not sufficiently overlap. This argument is based primarily on the fact that JPMC's civil complaint is "seven times longer than the Superseding Indictment" and, as would be expected, asserts civil claims rather than criminal allegations. (Def. Mem. 15). The relative length of the civil complaint and the Superseding Indictment (which primarily consists of statutory charging language) is a strange and irrelevant hook on which to hang this argument. It also ignores the Government's twenty-three page complaint which sets forth factual allegations in great detail. (*See* Gov't Mot., Ex. A).

The essence of the civil and criminal claims are the same. Indeed, in the SEC Case, Javice conceded that "[t]he actions are based on *precisely the same* alleged misconduct—that Ms. Javice somehow fraudulently induced [JPMC] . . . to acquire Ms. Javice's student loan company . . . for $175 million." (*See* Gov't Mot., Ex. H at 2) (emphasis added). Javice and Amar also express bewilderment as to why any overlap between this case and the Criminal Case "actually matters." (Def. Mem. 15). The Civil Case and the criminal prosecution implicate virtually all of the same witnesses and evidence. This matters because the record makes plain that the defendants seek to leverage the broader rules of civil discovery as an end run around the criminal discovery rules. (*See* Gov't Mot. 20-21).

Javice and Amar—despite conceding the same factors apply here as in the SEC Case—do not engage with or distinguish Judge Liman's opinion applying this factor, or any factor, except in conclusory fashion. (*See* Judge Liman Op. 7-8). Javice and Amar say only that "this lawsuit

3

presents different circumstances, was filed months in advance in a different jurisdiction, and is a grievance between completely private parties that has been actively litigated from the outset." (Def. Mem. 6). They provide no explanation as to what meaningfully "different circumstances" exist or why the fact that the SEC Case was filed in one district and this case filed in another is material to the Court's consideration of this motion. Notably, although Javice and Amar's opposition is replete with baseless claims that the Government is acting as an arm of JPMC, in attempting to distinguish Judge Liman's opinion, they assert that JPMC is a "completely private" party.[3] (*Id.*). However, the relevant question is not whether the parties are private or not, it is the extent of the overlap between the two cases. Here, the overlap is significant.

B. **The Status of the Criminal Case Favors a Stay**

The defendants do not contest or otherwise address the ample authority establishing that where, as here, an indictment has been filed in the criminal case, the status of the criminal case favors a stay. (*See* Def. Mem. 16-19; Gov't Mot. 15-16). Instead, the defendants contend that the "progress made by the parties in *this* case" as well as "the remoteness of the criminal trial" favor denying a stay. (Def. Mem. 16). The defendants' arguments are meritless.

First, this case has not progressed in any material way with respect to discovery. Indeed, it is in virtually the same posture now that it would be in had discovery been stayed from the outset of the case—and that is because discovery in this case *was* stayed until days prior to the filing of the Government's motion in light of the pending motions to dismiss. Pre-discovery pleadings and

---

[3] The defendants have no basis whatsoever for their repeated assertions that the Government has brought a criminal prosecution "on JPMC's say-so" (*see* Def. Mem. 5) or that JPMC has "co-opt[ed] taxpayer-funded governmental resources for its private gain," (*see, e.g., id.*). The defendants' claims that JPMC has steered this prosecution in service of its own lawsuit are serious allegations to make to this Court and they are entirely unfounded. Among other things, as the defendants are well aware, the Government has collected evidence from a *second* bank that was subject to the same lies that were told by the defendants to JPMC. (*See, e.g.*, Gov't Mot, Ex. A (Complaint) ¶ 18; Gov't Mot., Ex. C (Superseding Indictment) ¶ 2).

motions to dismiss were not resolved in this case until July 2023, and the Government filed its motion to intervene and stay discovery less than two weeks after discovery was no longer stayed. Specifically:

- JPMC's complaint was filed on December 22, 2022.  (Dkt. 1).

- More than two months later, on February 27, 2023, Javice filed her answer and counterclaim.  (Dkt. 10).

- A few days later, on March 1, 2023, Amar filed a motion to dismiss, triggering an automatic stay of discovery in this matter.  (Dkt. 14).

- Later that month, on March 20, 2023, JPMC filed a motion to dismiss Javice's counterclaims.  (Dkt. 23).

- The Court granted JPMC's motion to dismiss on July 10, 2023, and denied Amar's motion to dismiss on July 13, 2023.  (Dkt. 56-59).

Thus, discovery in this matter had already been stayed through July 13, 2023. Twelve days later, on July 25, 2023, the Government filed the instant motion to intervene and stay discovery. (Dkt. 60). Neither defendant had served discovery requests[4]—and the parties had not even met and conferred regarding discovery—by the time the Government filed its stay motion. (*See* Dkt. 63, Ex. D (emails reflecting that JPMC prompted discussion regarding the conferral (prior to the filing of the Government's motion), had to follow up a week later (still prior to the filing of the Government's motion), and then defendants began pursuing the conferral only *after* the Government filed its motion)).[5]

---

[4] On August 8, 2023—the same date that the defendants filed their opposition and two weeks *after* the Government's motion was filed—Javice (but, seemingly, not Amar) served her first set of discovery requests on JPMC.  (Dkt. 62).

[5] Notwithstanding this clear record, shown in the defendants' own exhibit, the defendants claim that "[b]y the time the Government moved" to stay discovery, the defendants and JPMC had "met and conferred" regarding discovery.  (Def. Mem. 16). That is simply false, as admitted elsewhere in the defendants' brief. (Def. Mem. 5).

Second, there is not presently a trial date in the Crimnial Case only because the defendants have refused to propose or agree to one. Indeed, Judge Hellerstein even set a trial date in mid-October of this year, but it was adjourned *sine die* after Javice objected. (*See* Gov't Mem. 5-6; Judge Liman Op. at 11 ("[A]ny delay in the ultimately resolution of all of the governmental cases against Javice is at least partially of her own manufacture. The Government is ready for trial in the criminal case."). The record belies the defendants claim that Judge Hellerstein did not actually schedule trial for October at the June 6 conference, and Judge Liman already correctly found that Judge Hellerstein had done so. (*See* Gov't Mot., Ex. B (June 6, 2023 Tr.) at 9; Judge Liman Op. 3 ("Judge Hellerstein granted [the Government's] request and scheduled trial to begin on October 16, 2023.")). In any event, even without a trial date presently set in the Criminal Case, the Criminal Case will "proceed with relative alacrity" as compared to civil cases, which often "move at a slow pace in federal court." (Judge Liman Op. 9).

Finally, the defendant's claim that the Government has "fail[ed] to fulfill its discovery obligations" in the Criminal Case is utterly baseless. (Def. Mem. 19). The Government has provided Rule 16 discovery to the defendants in the Criminal Case consistent with its obligations, and the defendants have received a voluminous set of materials. The defendants have received over 712,000 pages of Rule 16 materials, of which over 619,000 pages came from JPMC and over 92,000 came from over three dozen different third parties (which third parties include the investment advisory firm used by Frank, as well as the other major bank the defendants attempted to defraud).[6] Consistent with the Government's discovery obligations, it has continued making discovery productions to the defendants on an ongoing basis as it receives additional materials.

---

[6] These page counts do not fully reflect certain materials that have been produced, such as a forensic extraction of Amar's cellphone that includes a WhatsApp conversation between Amar and Javice spanning thousands of messages.

6

The defendants appear to complain that the Government is continuing to receive subpoena returns from JPMC—including subpoena returns consisting of materials that Javice's counsel, in correspondence with the Government, has specifically requested be provided by JPMC—but that fact, if anything, cuts in favor of granting a stay as the defendants will be receiving even more JPMC records. Accordingly, the status of the criminal case favors a stay.

### C. The Defendants' Arguments about Prejudice are Meritless

In their opposition, the defendants press the same arguments regarding prejudice that Judge Liman found to be "without merit" when staying the SEC case. (*See* Gov't Mem. 16; Judge Liman Op. 10-13). The defendants complain about injuries to their reputation and purport to seek "the full presentation of evidence"—without explaining why the trial in the Criminal Case, during which the Government expects to prove the elements establishing this brazen fraud beyond a reasonable doubt, will not be exactly that. (Def. Mem. 11). The defendants are entitled to a speedy trial in the Criminal Case, but they have not asked for it; meanwhile, the Government is ready to try the case. (*See* Judge Liman Op. 3, 9, 11). Moreover, the defendants' assertion that staying discovery in this civil case will delay "clearing their names" (Def. Mem. 12) is "wrong" (Judge Liman Op. at 11). Even if the defendants were acquitted, they will have received substantial discovery in the criminal case and thus would not "have to start at square one" in the Civil Case. (*Id.* at 11). In any event, the SEC Case's discovery has already been stayed until conclusion of trial in the Criminal Case (*see id.*) so the defendants will face pending civil litigation at the conclusion of the criminal trial, whatever the outcome of this motion. That point severely undercuts the defendants' claims of prejudice here, and the defendants do not even address it. (*See* Def. Mem.

12). Finally, contrary to the defendants' assertions, "[t]here is little to no risk of memories fading or documents being lost or destroyed," in light of the Criminal Case. (Judge Liman Op. at 12).

### D. The Court's Interests Favor a Stay

Javice and Amar contend that judicial economy does not weigh in favor of a stay because absent "total victory" for the Government, the defendants will have to wait "months or years" to begin seeking civil discovery. (Def. Mem. 20). As noted above, any delay in the Criminal Case is at least partially of the defendants' own manufacture. (*See* Judge Liman Op. at 11). Nor is it the case that Javice and Amar will be starting from square one. (*See id.*). The litigation in the Criminal Case will streamline issues in this matter and avoid duplication of effort and judicial resources. (*See id.*); *Mellon Bank, N. A.*, 545 F.2d at 873; *Doe v. Schneider*, 2010 WL 11561113, at *4 (E.D. Pa. June 8, 2010).

### E. The Public Interest Favors a Stay

"It is, of course, in the public interest to prevent circumvention of the limitations on discovery in criminal proceedings." *SEC v. Abraaj Inv. Mgmt. Ltd.*, No. 19-CV-3244 (AJN), 2019 WL 6498282, at *3 (S.D.N.Y. Dec. 3, 2019) (quotations omitted). Courts routinely grant discovery stays to uphold the integrity of the criminal rules, and ensure that criminal defendants do not "improperly exploit civil discovery for the advancement of [their] criminal case." *Mellon Bank*, 545 F.2d at 872. Improperly exploiting civil discovery for use in the Criminal Case is exactly what the defendants seek to do here. (*See* Gov't Mem. 20-21). The defendants wrongly state that conclusion "is based solely on what the SEC wrote in a self-serving letter." (Def. Mem. 23; *see* Gov't Mem., Ex. I (SEC Dkt. 31) at 2 n.1)). To be sure, Javice's counsel's statements to the SEC are particularly powerful evidence, in that the defendant's counsel *explicitly stated* that she was seeking civil discovery for use in the Criminal Case. But the procedural history supports the same conclusion as well. (*See* Gov't Mem. 20-21). The defendants point to the fact that Amar did not

8

directly participate in Javice's efforts. But Amar was not yet in the Criminal Case. That Amar had not yet been indicted and therefore did not have the incentive to take the same steps as Javice—at least at that time—does not change the analysis as to whether the public interest favors a stay to prevent defendants from abusing civil discovery for gain in their criminal case.[7] *See, e.g.*, *SEC v. Blaszczak*, No. 17-CV-3919 (AJN), 2018 WL 301091, at *4 (S.D.N.Y. Jan. 3, 2018).

Similarly, there is no requirement that the Government somehow prove the specific means by which defendants *will* exploit civil discovery; it is sufficient that they could. *See id.* (citing cases); *see also* Judge Liman Op. 14-15). Even assuming more specific concerns were required—and they are not—they exist here. Given the comparatively much-broader rules governing civil subpoenas, "the only effect of the Court allowing Javice [or Amar] to proceed in this case with document discovery would be to circumvent the limits of discovery in the criminal case before Judge Hellerstein." (Judge Liman Op. 17). The defendants have tools for seeking records in the Criminal Case, in accordance with the criminal rules (*i.e.*, Rule 17 subpoenas); they just wish to use a much broader tool (*i.e.*, civil subpoenas). That wish does not override the many factors favoring a stay.[8]

The defendants also assert that the Government's concerns regarding asymmetrical discovery are "iron[ic]" because "asymmetrical discovery is precisely what the Government, which has been working with JPMC for at least ten months, is seeking to maintain here." (Def. Mem. 24). The defendants are wrong. The Government has subpoenaed records from JPMC, in accordance with the criminal process. The Government has produced those records *to the*

---

[7] In any event, Amar has now been indicted and is likely in a joint defense agreement with Javice.

[8] Indeed, Javice has already shown a willingness to abuse the civil process by filing a counterclaim against JPMC based on demonstrably false allegations. (*See* Def. Mem., Ex. E (June 15, 2023 Tr.) at 8 (discussing same)).

*defendants* in Rule 16 discovery, and in accordance with the criminal rules. There is nothing "asymmetrical" (much less "ironic") about that process. Conversely, while it is true that the defendants "have [not] yet" invoked their Fifth Amendment privilege, it is also true—as defendants also note—that the defendants "*always* have the right to invoke" that privilege. (Def. Mem. 24).

The defendants also contend that their potential misuse of civil discovery in the criminal case is a "problem . . . entirely of the Government's own making." (Def. Mem. 21). That contention—which appears to be based on the fact that the Government "knew about JPMC's lawsuit" before bringing criminal charges (*id.*)—does not make sense. The Government does not control if, or when, a private party brings a lawsuit. Just because a victim of a crime sues the perpetrators in a civil case does not mean that the United States's criminal laws should go unenforced—let alone that the perpetrators should get to misuse the civil discovery process in a subsequently-filed criminal prosecution.

## CONCLUSION

Accordingly, the Government respectfully requests that its motions be granted.

Dated: New York, New York
August 15, 2023

| | |
|---|---|
| DAMIAN WILLIAMS<br>United States Attorney for the<br>Southern District of New York | DAVID C. WEISS<br>United States Attorney for the<br>District of Delaware |
| By: /s/ Dina McLeod<br>Dina McLeod<br>Micah F. Fergenson<br>Assistant United States Attorneys<br>One Saint Andrew's Plaza<br>New York, New York 10007<br>Telephone: (212) 637-1040 / -2190 | By: /s/ Jacob Laksin<br>Jacob Laksin<br>Assistant United States Attorney<br>1313 N. Market Street<br>Suite 400<br>Wilmington, Delaware 19801<br>Telephone: (302) 225-9409 |